```
 1              UNITED STATES DISTRICT COURT OF MARYLAND
                          SOUTHERN DIVISION
 2
    ------------------------x
 3  UNITED STATES OF AMERICA   :
              Plaintiff        :
 4                             :
                               :
 5  vs                         :Criminal Action:    RWT-04-0235
                               :
 6                             :
    PAULETTE MARTIN, et al     :
 7         Defendants.         :
    ------------------------x
 8

 9                              Wednesday, August  16, 2006
                                Greenbelt, Maryland
10
         The above-entitled action came on for a Jury Trial
11  Proceeding before the HONORABLE ROGER W. TITUS, United
    States District Judge, in courtroom 4C, commencing at
12  3:36 p.m.

13       THIS TRANSCRIPT REPRESENTS THE PRODUCT
         OF AN OFFICIAL REPORTER, ENGAGED BY
14       THE COURT, WHO HAS PERSONALLY CERTIFIED
         THAT IT REPRESENTS THE TESTIMONY AND PROCEEDINGS
15       OF THE CASE AS RECORDED    AND REQUESTED BY COUNSEL.

16       APPEARANCES:

17       On behalf of the Plaintiff:

18       BONNIE GREENBERG, Esquire

19       On behalf of the Defendants:

20       MICHAEL  MONTEMARANO , Esquire
         ANTHONY MARTIN, Esquire
21       MARC HALL, Esquire
         TIMOTHY MITCHELL, Esquire
22       PETER WARD, Esquire
         EDWARD  SUSSMAN , Esquire
23       HARRY  MCKNETT , Esquire

24

25  Tracy Rae Dunlap,   RPR, CRR                  (301) 344-3912
    Official Court Reporter
```

```
 1                        I N D E X
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23                                                   Page
24 Reporter's Certificate                             18
25 Concordance                                        19
```

```
 1              (Roll call conducted by Sharon Townsend.)
 2         MS. TOWNSEND:   Let's make sure we have everyone.
 3         Mr. Montemarano?
 4         MR. MONTEMARANO:   Yes.
 5         MS. TOWNSEND:   Mr. Martin?
 6         MR. MARTIN:   Here.
 7         MS. TOWNSEND:   Mr. Hall?
 8         MR. HALL:   Here.
 9         MS. TOWNSEND:   Mr. Mitchell?
10         MR. MITCHELL:   Here.
11         MS. TOWNSEND:   Mr. Ward?
12         MR. WARD:   Here.
13         MS. TOWNSEND:   Mr. Sussman?
14         MR. SUSSMAN:   Yes, ma'am.
15         MS. TOWNSEND:   Mr. McKnett?
16         MR. MCKNETT:   Yes.
17         MS. TOWNSEND:   Ms. Greenberg?
18         MS. GREENBERG:   Yes.
19         MS. TOWNSEND:   Ms. Johnston?
20         MS. JOHNSTON:   Yes.
21         MS. TOWNSEND:   Judge Titus?
22         JUDGE CHASANOW:   We all need to speak up as loud
23 as we can.  We are reaching the limit of the telephone
24 system.
25         Can everyone hear me?
```

1          MS. JOHNSTON:  Yes.

2          MR. WARD:  Yes ma'am.

3          JUDGE CHASANOW:  The court reporter is in the
4  courtroom taking this down; is that correct, Ms. Merez?

5          THE CLERK:  Yes, that is correct, Judge.

6          MR. SUSSMAN:  Judge, how many are on the phone?

7          JUDGE CHASANOW:  Some are on the phone, and
8  three or four are in the courtroom.

9          JUDGE TITUS:  Let me remind counsel who are in
10 the courtroom to speak into the microphone so I can
11 hear you.

12         JUDGE CHASANOW:  We have received a note from
13 the jury.  It is rather long.  It is very clear.  I
14 have read it before with Judge Titus, and I will read
15 it now to all of you.

16         Question:  "We are at an impasse regarding
17 interpretation of the judge's instructions about how to
18 assign attributable type and/or quantities of drugs to
19 each defendant that we may find guilty of conspiracy.
20 Specifically, we refer to Pages 85 through 87 of the
21 judge's instructions.

22         1. Specifically, some among us believe that any
23 defendant who we find to be guilty of conspiracy is
24 therefore guilty of all drugs associated with the
25 conspiracy in the largest quantities attributed to any

1  other member of the conspiracy or the conspiracy as a
2  whole. That is, this interpretation of the judge's
3  instruction is that we are required to find any
4  defendant who we find to be guilty of conspiracy to be
5  therefore equally responsible for the same types and
6  quantities of drugs (e.g., all for one). For example,
7  if we find Defendant X guilty of conspiracy and
8  responsible for all three drugs at the maximum
9  quantity, are we required to find all other defendants
10 who we find guilty of conspiracy (Count One) equally
11 culpable as Defendant X for the same types and
12 quantities of drugs, regardless of the type of drugs
13 that Defendants Y and Z were involved with
14 individually?
15       2. Others interpret these instructions to mean
16 that the law allows us to find a defendant guilty of
17 conspiracy but that we are required to determine each
18 defendant's responsibility for attributable type and/or
19 quantity of drugs based on that individual's role in
20 the conspiracy (based on factors enumerated on Pages
21 85-87). For instance, if it was not reasonably
22 foreseeable that an individual Defendant A was
23 knowledgeable about the type and/or quantity of drugs
24 that are involved or associated with another member of
25 the conspiracy, we are not required to attribute such a

1  larger quantity to Defendant A.
2          Please clarify which of the above two
3  interpretations we are to follow in order to attribute
4  specific types and quantities of drugs to each
5  defendant we find to be guilty of conspiracy.
6          Signed, Jurors 1 through 12."
7          MS. JOHNSTON:  Your Honor, could we please get a
8  copy of that instruction?  It's quite lengthy, and I
9  didn't really write it down.
10         THE COURT:  I didn't want to do that, because I
11 can't get copies to all counsel at the same time.  You
12 are here in the courtroom, as is, I believe, Mr. Ward.
13         MR. WARD:  I am, Your Honor.
14         MS. JOHNSTON:  Yes, Your Honor.
15         MR. WARD:  I am the only defense lawyer in the
16 courtroom.
17         MS. JOHNSTON:  Quite frankly, Your Honor, Ms.
18 Greenberg has been here from Baltimore even though her
19 work is up there.  I don't know that we should be
20 penalized because some defense attorneys have elected
21 to be contacted by telephone.
22         JUDGE CHASANOW:  I understand it's a long note,
23 but I believe it's readily understandable and --.
24         MR. MONTEMARANO:  Your Honor?
25         JUDGE CHASANOW:  Judge Titus, do you want to

1  take over leading this discussion?
2         JUDGE TITUS:  Yeah.  I'm on the phone.  I have a
3  similar disability of the others that I don't have it
4  in front of me, but Judge Chasanow did read it to me
5  slowly, and I've listened to it twice.
6         My inclination, subject to hearing from counsel
7  for both sides, is that the second alternative is to a
8  direct interpretation of my instruction.
9         MS. SUSSMAN:  I agree that it's clear.
10        MR. MARTIN:  Mr. Martin agrees.
11        MR. MCKNETT:  I agree on behalf of Ms. Ali.
12        MS. JOHNSTON:  Your Honor, that's why I'm asking
13 for an opportunity to see it, or at least have it read
14 to us a second or third time so that we can fully grasp
15 what is said in those two alternatives.
16        JUDGE CHASANOW:  I can read it out loud.
17        Does any defense attorney -- if Ms. Merez has
18 the original in the courtroom, which is where they are
19 right now -- given that we -- I think all the defense
20 attorneys agree that it's the second interpretation of
21 -- and Judge Titus has tentatively concluded -- is
22 there any objection if they look along as I read this?
23        MR. WARD:  No.
24        JUDGE CHASANOW:  Mr. Ward is there.
25        MR. WARD:  If I may.  This is Peter Ward, Your

 1  Honor.  I certainly opt for option 2.  It seems to me,
 2  based on my recollection, that that was precisely what
 3  Judge Titus -- if Judge Titus is on the line, it seems
 4  to me exactly what you said in response to a note we
 5  got last Friday.
 6           JUDGE CHASANOW:  Let me read it aloud again.
 7           Ms. Merez is sharing it with counsel in the
 8  courtroom at the same time.  Are you ready?
 9           MS. GREENBERG:   Yes, Your Honor.
10           MR. WARD:  Yes, ma'am.
11           JUDGE CHASANOW:  Question.  We are at an impasse
12  regarding interpretation of the judge's instruction
13  about how to assign attributable type and/or quantities
14  of drugs to each defendant that we may find guilty of
15  conspiracy.  Specifically, we refer to Pages 85 through
16  87 of the judge's instructions.
17           1.  Specifically, some among us believe that any
18  defendant who we find to be guilty of conspiracy is
19  therefore guilty of all drugs associated with the
20  conspiracy in the largest quantities attributed to any
21  other member of the conspiracy or the conspiracy as a
22  whole.  That is, this interpretation of the judge's
23  instruction is that we are required to find any
24  defendant who we find to be guilty of conspiracy to be
25  therefore equally responsible for the same types and

1  quantities of drugs (e.g., all for one).  For example,
2  if we find defendant X guilty of conspiracy and
3  responsible for all three drugs at the maximum
4  quantity, are we required to find all other defendants
5  who we find guilty of conspiracy (Count One) equally
6  culpable as Defendant X for the same types and
7  quantities of drugs, regardless of the type of drugs
8  that Defendants Y and Z were involved with
9  individually?
10          2.  Others interpret these instructions to mean
11 that the law allows us to find a defendant guilty of
12 conspiracy but that we are required to determine each
13 defendant's responsibility for attributable type and/or
14 quantity of drugs based on that individual's role in
15 the conspiracy (based on factors enumerated on Pages 85
16 through 87).  For instance, if it was not reasonably
17 foreseeable that an individual Defendant A was
18 knowledgeable about the type and/or quantity of drugs
19 that are involved or associated with another member of
20 the conspiracy, we are not required to attribute such a
21 larger quantity to Defendant A.
22          Please clarify which of the above two
23 interpretations we are to follow in order to attribute
24 specific types and quantities of drugs to each
25 defendant we find to be guilty of conspiracy.

1          Signed, Jurors 1 through 12."
2          MR. WARD:   Thank you.
3          MR. MONTEMARANO:   Ms. Martin's diligent view is
4  the second interpretation.
5          MR. MITCHELL:   On behalf of Mr. Goodwin.  I
6  didn't comment the first time around.  I agree, the
7  second one.
8          MR. MCKNETT:   On behalf of Ms. Ali.  My only
9  concern would be to confirm that their page references
10 were accurate.
11         MR. MARTIN:   I'm looking at it now.  It is
12 accurate.
13         MR. MCKNETT:   Then Ms. Ali agrees with the
14 second option.
15         JUDGE TITUS:   Judge Chasanow, let's hear what
16 the government says.  I think we've heard from the
17 defense.
18         MS. JOHNSTON:   This is Deborah Johnston
19 speaking.
20         Your Honor, my only concern about that second
21 portion of the note is that it does not reference the
22 -- it references certain particular pages.  Those pages
23 talk about reasonable foreseeability and drugs that a
24 defendant particularly held and does not include the
25 fact that a defendant is liable for drugs under a

```
 1  Pinkerton theory or in particular an aiding and
 2  abetting theory because of those particular
 3  instructions, if I could get to them.  In terms of the
 4  numbers under 1, 2, 3 and 4.  It says, "the drugs that
 5  the person actually themselves distributed;" and then
 6  2, "or drugs that they intended or attempted to
 7  distribute" and then talks about drugs other people
 8  distributed which were reasonably foreseeable.
 9  It does not reference the fact that a defendant could
10  be guilty of the drug quantity where they aided and
11  abetted somebody else.
12          So, if the court is going to -- in responding to
13  this, I would suggest that the court reference them
14  also to the other pages in the instructions that
15  reference Pinkerton and the aiding and abetting, and I
16  believe the aiding and abetting begins on Page 79, and
17  the Pinkerton starts on, I believe, Page 82 -- the
18  bottom of Page 82.
19          I would like those instructions referenced,
20  because I think that the jury is emphasizing one
21  portion of the court's instructions in terms of drug
22  quantity, when there are the other two theories that
23  are not encompassed in the instruction that they've
24  referenced.
25          MR. MARTIN:  Your Honor, I don't think that's
```

1  necessary, because they're talking here about
2  foreseeability, and I don't see how an aiding and
3  abetting instruction is going to help them. I think
4  they focused on the part of the instructions that is
5  relevant to their question, and I think aiding and
6  abetting of the question and the Pinkerton rule as
7  vetted by the government is just going to confuse them
8  more. I think we should stay narrowly focused and we
9  don't need to go beyond the scope of their questions.
10            MR. MCKNETT: Your Honor, this is Harry McKnett.
11 I think the jury very narrowly focused their question
12 on the conspiracy, and to instruct them beyond the
13 scope of their question would be inappropriate.
14            MR. HALL: I would agree. The problem I have
15 with referencing them to another part of the
16 instructions is that as they are instructed, they're
17 supposed to consider these instructions as a whole.
18 Just because they referenced one particular part to
19 their question, I don't believe that means we need to
20 reference them to a Pinkerton instruction.
21            JUDGE TITUS: Counsel, wait a minute before you
22 say anything else.
23            First of all, I think the record should be clear
24 that I am not present and am on vacation this week but
25 that Judge Chasanow has been kind enough to reach me on

1 vacation so I can participate in the disposition of any
2 note. With regard to this, my inclination is to -- I
3 would love to hear Judge Chasanow's view as well, but
4 my inclination is to remind the jury that my
5 instructions should be taken as a whole and they should
6 not take one or two instructions but should consider
7 the instructions as a whole with regard to the specific
8 question.
9          The second interpretation is a --
10         MS. JOHNSTON:  Yes, your Honor I didn't hear
11 that.
12         JUDGE TITUS:  I don't feel that by pointing them
13 to a page -- wandering into pages that they have not
14 identified that it's going to be adequate for the --
15         MS. JOHNSTON:  Your Honor, I didn't hear the end
16 of what the court was going to tell them.  The phone
17 was ringing, and there was some static.
18         JUDGE TITUS:  What I said, Ms. Johnston, was
19 that my inclination is to remind the jury -- Judge
20 Chasanow can send them back a note or bring them in the
21 courtroom, either one, and indicate she has conferred
22 with me and counsel for all the parties and that, on my
23 behalf she wants to remind the jurors that my
24 instructions are to be taken as a whole and no one part
25 to the exclusion of all others, but with respect to the

1  specific questions they have posited -- the two
2  alternatives they have posited, that I believe the
3  second alternative is the correct interpretation of my
4  instructions taken as a whole.
5          MS. JOHNSTON:  The government's concern is on
6  Page 86, because on Page 86 of these instructions it
7  says, "First a defendant is accountable for any
8  quantity of drugs which he or she personally
9  distributed or possessed with intent to distribute."
10         The second goes the same way:  "A defendant is
11 accountable for any type and quantity of drugs of which
12 he or she attempted or planned to distribute or
13 possess."  It does not encompass their liability for
14 drug quantities where they aided and abetted someone
15 else's possession or --
16         JUDGE CHASANOW:  It says the defendant is also
17 accountable for any quantity of drugs for which another
18 member of the conspiracy distributed or attempted to
19 distribute so long as it was reasonably foreseeable.
20         MR. MONTEMARANO:  It refers to reasonable
21 foreseeability.
22         JUDGE CHASANOW:  It refers to Pages 85 through
23 87.
24         MR. MARTIN:  This seems to be between a street
25 version and a different approach.  Clearly, the second

1 version is the perfect one.

2          JUDGE TITUS:  I have completely advised the
3 jury beginning, end and middle of the deliberations
4 during the consideration of the case that they are to
5 make very individual judgments of the case and they are
6 not making a group judgment.  They are to make
7 individual assessments, and I want them to be careful
8 and thorough and fair with respect to each and every
9 defendant.  I think they've heard that from me loud and
10 clear from the first day to the last day.

11          Counsel, my inclination is -- we can discuss
12 which form you want to do it in.  Either have Judge
13 Chasanow pen a note to go back to the jury signed by
14 her on my behalf, or bring them into the courtroom and,
15 one way or the other, do what I just said, which is to
16 indicate that she has conferred with me, or I can do it
17 on the phone myself if you want to do it with the jury
18 in the courtroom, but --

19          MR. MONTEMARANO:  Your Honor, I think a written
20 response to the jury would be perfectly fine.

21          JUDGE CHASANOW:  We're going to be able to do it
22 much more quickly if we do it in writing.  I've drafted
23 a note sitting at my desk at my computer now.  It says,
24 "Members of the jury, you have asked for clarification
25 about determining the types and/or quantity of drugs

1 'attributable' to each defendant whom you find to be a
2 member of the conspiracy. After consultation among
3 Judge Titus and counsel, we offer the following
4 guidance. Please remember that you are to consider all
5 of the instructions as a whole and not to isolate any
6 portion. With respect to your specific question, the
7 second interpretation set forth in your question at
8 Page 3 of 4 is the correct one. I have enclosed a copy
9 of your question with this response."
10          And then I'll sign it "Judge Chasanow for Judge
11 Titus."
12          MR. MARTIN: That's agreeable.
13          MR. MONTEMARANO: I'm fine with that, Your
14 Honor.
15          MR. WARD: Certainly agreeable with Ms. Dobie.
16          JUDGE CHASANOW: I'm not sure I heard from the
17 government.
18          MS. JOHNSTON: Your Honor, I think we voiced our
19 objections to that response. In addition to that, I
20 would note that on Page 3 of that instruction, they're
21 saying that each -- "but that we are required to
22 determine each defendant's responsibility for
23 attributable type and/or quantity of drugs based on
24 that individual's role in the conspiracy," and they're
25 also supposed to include drugs that are reasonably

1 foreseeable to that individual, and that's not what
2 their note says. Their note is very limited to whether
3 they should decide it based on that individual's role
4 in the conspiracy, and then they give you the example
5 where they mention if it was not reasonably
6 foreseeable.
7          To tell them that it's okay to base it on merely
8 that individual's role in the conspiracy I think is an
9 incorrect statement in their proposed No. 2.
10         JUDGE TITUS:  All right.  I have heard the
11 objections of the government, and I believe that the
12 response that I have formulated and that Judge Chasanow
13 has accurately taken down is a correct one, and I
14 therefore conclude that it should be given to the jury
15 in writing, unless any counsel desires having the jury
16 brought into the courtroom to hear the verdict.
17         MR. MONTEMARANO:  In writing is fine with the
18 defense, Your Honor.  Thank you.
19         MR. WARD:  Thank you, Your Honor.  This is Peter
20 ward.  I do have a copy of the note.  As soon as I get
21 back to Mr. Montemarano's office, we will fax copies
22 everybody.
23         JUDGE CHASANOW:  We can do that, of course, on
24 behalf of the court.  It just was not possible to do
25 that.

```
 1            MR. WARD:  Yes, I understand.
 2            JUDGE CHASANOW:  I assume some of you are on
 3 cell phones, but I will print out the note as I have
 4 just read it to you and give it to Ms. Merez, along
 5 with a copy of the jury's own note to send in to the
 6 jury room.
 7            MR. MONTEMARANO:  Thank you, Your Honor.
 8            MR. WARD:  Thank you, Your Honor.
 9            Thank you, Judge Titus.
10            JUDGE TITUS:  We will adjourn for the moment,
11 and I will be available by telephone if you receive any
12 further notes or communications from the jury.
13                  (Off the record at 3:55 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATE

 2

 3      I, Tracy Rae Dunlap,  RPR, CRR, an Official Court

 4 Reporter for the United States District Court of

 5 Maryland, do hereby certify that I reported, by machine

 6 shorthand, in my official capacity, the proceedings had

 7 and testimony adduced upon the Jury Trial Proceedings

 8 in the case of UNITED STATES OF AMERICA versus PAULETTE

 9 MARTIN, et al, Criminal Action Number    RWT-04-0235 on

10 August 1 6, 2006.

11

12     I further certify that the foregoing    18 pages

13 constitute the official transcript of said proceedings,

14 as taken from my machine shorthand notes, of said

15 proceedings.

16

17     In witness whereof, I have hereto subscribed my

18 name, this 18th day of March 2008.

19

20

21                              _____

22                              TRACY RAE DUNLAP, RPR, CRR
                                OFFICIAL COURT REPORTER
23

24

25
```