1           UNITED STATES DISTRICT COURT OF MARYLAND
                        SOUTHERN DIVISION
2
    ------------------------x
3 UNITED STATES OF AMERICA:
            Plaintiff     :
4                         :
                          :
5 vs                      :Criminal Action:  RWT-04-0235
                          :
6                         :
  PAULETTE MARTIN, et al  :
7          Defendants.    :
    ------------------------x

8

9                        Monday, September 13, 2004
                         Greenbelt, Maryland
10
        The above-entitled action came on for a Jury
11 Trial Proceeding before the HONORABLE ROGER W. TITUS,
   United States District Judge, in courtroom 2A,
12 commencing at 9:06 a.m.

13      THIS TRANSCRIPT REPRESENTS THE PRODUCT
        OF AN OFFICIAL REPORTER, ENGAGED BY
14      THE COURT, WHO HAS PERSONALLY CERTIFIED
        THAT IT REPRESENTS THE TESTIMONY AND PROCEEDINGS
15      OF THE CASE AS RECORDED AND REQUESTED BY COUNSEL.

16      APPEARANCES:

17      On behalf of the Plaintiff:

18      DEBORAH JOHNSTON, Esquire
        BONNIE GREENBERG, Esquire
19
        On behalf of the Defendants:
20
        MICHAEL MONTEMARANO, Esquire
21      ANTHONY MARTIN, Esquire
        MARC HALL, Esquire
22      TIMOTHY MITCHELL, Esquire
        PETER WARD, Esquire
23      EDWARD SUSSMAN, Esquire
        HARRY MCKNETT, Esquire

24

25 Tracy Rae Dunlap, RPR, CRR          (301) 344-3912
   Official Court Reporter

1 **APPEARANCES CONT'D:**

2 On behalf of the Defendants:

3 WILLIAM BRENNAN, Esquire
  RICARDO ZWAIG, Esquire
4 THOMAS SAUNDERS, Esquire
  ELITA AMATO, Esquire
5 BERNARD GRIM, Esquire
  ARTHUR ROBBINS, Esquire
6 ALLEN ARTHUR, Esquire
  WARREN GORMAN, Esquire
7 ROLAND WALKER, Esquire
  PETER SEMEL, Esquire
8 JACK RUBIN, Esquire
  GARY TICKNOR, Esquire
9 DOUGLAS WOOD, Esquire
  PAUL BRENNER, Esquire
10 FRED SULLIVAN, Esquire
   JANE NORMAN, Esquire
11 DAVID FISCHER, Esquire
   TIMOTHY SULLIVAN, Esquire
12 JOSEPH CONTE, Esquire
   MANUEL RETURETA, Esquire

13

14

15

16

17

18

19

20

21

22
                                              Page

23 Reporter's Certificate                     54

24 Concordance                                55

25

2

1          MS. JOHNSTON:  We're here in the matter of United

2    States versus Paulette Martin, et al; case number

3    RWT-04-0235.  I'm Deborah Johnston, with my co-counsel

4    Bonnie Greenberg, representing the government.  The

5    matter is before the court for scheduling/status

6    conference.

7          THE CLERK:  Judge, may I call the roll?

8          THE COURT:  Please.

9          THE CLERK:  Counsel, as I call your client's

10   name, would you please give us your name?

11         Paulette Martin?

12         MR. MONTEMARANO:  Michael Montemarano on behalf

13   of Paulette Martin.  Good morning, Your Honor.

14         THE CLERK:  Felipe Mangual?

15         MR. BRENNAN:  Good morning, Your Honor, William

16   Brennan.

17         THE CLERK:  Learley Goodwin?

18         MR. MARTIN:  Good morning, Your Honor, Anthony

19   Martin on behalf of Learley Goodwin.

20         THE CLERK:  Larry Nunn?

21         MR. ZWAIG:  Good morning, Your Honor, Ricardo

22   Zwaig on behalf of Mr. Nunn.

23         THE CLERK:  John Martin?

24         MR. SAUNDERS:  Good morning, Your Honor, Thomas

25   Saunders.

1       THE CLERK:  Reece Whiting?

2       MR. HALL:  Marc Hall representing Mr. Whiting.

3       THE CLERK:  Derrek Bynum.

4       MR. MITCHELL:  Good morning, Timothy Mitchell.

5       THE CLERK:  Ruby Harden?

6       MR. SUSSMAN:  Good morning.  Ed Sussman on behalf

7  of Ms. Harden.

8       THE CLERK:  Lavon Dobie?

9       MS. AMATO:  Elita Amato.

10       THE CLERK:  LaNora Ali?

11       MR. MCKNETT:  Harry McKnett, M C K N E T T.

12       THE CLERK:  Pernell Philpot?

13       Counsel on behalf of Pernell Philpot?

14       (No response.)

15       THE CLERK:  Counsel on behalf of Eugene Byrd?

16       MR. GRIM:  Good morning, Your Honor, Bernard

17  Grim.

18       THE CLERK:  Milburn Walker?

19       MR. ROBBINS:  Arthur Robbins on behalf of Mr.

20  Walker.

21       THE CLERK:  Counsel, you're going to have to keep

22  your voices up, please.

23       On behalf of George Harris?

24       Is there counsel here on behalf of George Harris?

25       (No response.)

1       THE CLERK:  On behalf of Larry Lane?

2       MR. CONTE:  Good morning, Your Honor.  Joseph

3  Conte on behalf of Larry Lane.

4       THE CLERK:  On behalf of Claude Arnold?

5       MR. ARTHUR:  Good morning, Your Honor.  Allen

6  Arthur on behalf of Mr. Arnold.

7       THE CLERK:  Travel Riley?

8       MR. GORMAN:  Warren Gorman.

9       THE CLERK:  On behalf of Craig Scott?

10      MR. WALKER:  Roland Walker.

11      THE CLERK:  On behalf of Tony Solomon?

12      MR. RETURETA:  Good morning, Your Honor, Manuel

13 Retureta on behalf of Mr. Soloman.

14      THE CLERK:  On behalf of Milton Boyd?

15      MR. SEMEL:  Good morning, Your Honor.  Peter

16 Semel on behalf of Mr.- -- I'm standing in for Paul

17 Bergin, counsel who is in New Jersey and couldn't make

18 it this morning.

19      THE CLERK:  Counsel on the phone, are you able to

20 hear that?

21      MR. RUBIN:  I could not hear the response.  I

22 heard the call on the name.

23      THE CLERK:  Counsel, you have to keep your voices

24 up, please.

25      On behalf of Kimberly Rice?

1        MR. TICKNOR:  Good morning, Your Honor.  Gary

2  Ticknor on behalf of Kimberly Rice.

3        THE COURT:  That's better.

4        THE CLERK:  On behalf of Richard Gunn?

5        MR. WOOD:  Good morning, Your Honor.  Douglas

6  Wood representing Richard Gunn.

7        THE CLERK:  On behalf of Edward Barber?

8        MR. BRENNER:  Paul Brenner on behalf of Edward

9  Barber.

10       THE CLERK:  On behalf of Claude Booker?

11       MR. SULLIVAN:  Fred Sullivan.  Good morning, Your

12  Honor.

13       THE CLERK:  Donnell Berry?

14       MR. RUBIN:  Jack Rubin, R U B I N.

15       THE CLERK:  On behalf of Thomas Farmer?

16       MS. NORMAN:  Jane Norman on behalf of Thomas

17  Farmer.

18       THE CLERK:  On behalf of Gwendolyn Levi?

19       MR. FISCHER:  Dave Fischer on behalf of Gwendolyn

20  Levi.

21       THE CLERK:  Donna Johnson?

22       MR. SULLIVAN:  Good morning, Your Honor.  Tim

23  Sullivan on behalf of Ms. Johnson.

24       THE CLERK:  And Alex Zapeta?

25       MR. SULLIVAN:  Your Honor, Tim Sullivan standing

1  in for Curtis Fisher, who is from New York and

2  couldn't make it.

3      THE COURT:  Okay.

4      MR. MARTIN:  Madam Clerk, Anthony Martin.  I will

5  stand in for Idus Daniel, who is representing Mr.

6  Philpot.  He is running late, obviously.

7      THE COURT:  Okay.  You're going to stand in for

8  the defendant Pernell Philpot?

9      MR. MARTIN:  I will do that.

10      MR. MONTEMARANO:  I'll do the same with regard to

11  Mr. Waldman, Your Honor.

12      THE CLERK:  Thank you, counsel.

13      THE COURT:  Okay.  Ms. Johnston, can you give me

14  a report on the status of unserved defendants, if any?

15      MS. JOHNSTON:  Your Honor, we still have two

16  defendants that are unserved.  We are actively looking

17  for both of them.  One has ties to foreign country, so

18  that may be more difficult than the other one.  But,

19  as I've said, there are still two fugitives in this

20  case; the agents are still actively pursuing them.

21  One of those individuals has ties to at least one

22  foreign country, so I'm not sure how successful we're

23  going to be.  The other individual is a person who is

24  fairly local and has significant ties to the local

25  community, but I can't tell you anything more than

1  that.  We are still actively pursuing those two

2  individuals.

3      THE COURT:  All right.  Counsel, it is obvious

4  that unless I'm able to have Mr. Snyder give me FedEx

5  Field for the trial of this case, that it would not

6  surprise me if we had to do some severing in this

7  case.  What I wanted to know was whether the

8  government, at this stage, had any ideas that it

9  wanted to explore with how to try this case.

10      MS. JOHNSTON:  Your Honor, just a few.  Ms.

11 Greenberg and I have had discussions with our case

12 agent.  As well, we will be obtaining, with the grand

13 jury's permission, another superceding indictment that

14 will add substantive counts, as well as potential

15 money laundering charges.

16      THE COURT:  Any additional defendants?

17      MS. JOHNSTON:  I don't anticipate, at this time,

18 any additional defendants -- we will put them in a

19 separate indictment -- but there are some ways that

20 this case will break down naturally in terms of

21 severing.

22      It is also possible that we may indict separate

23 conspiracies to accommodate the courts need to have

24 separate trials, given the number of defendants in

25 this case.  For example, Mangual -- Luis Mangual,

8

1  who's in custody, was a source of supply for cocaine

2  for Paulette Martin.  In addition to that, Mr. Mangual

3  had a group of other individuals whom he was supplying

4  or receiving cocaine from.  We would anticipate trying

5  Mr. Mangual and those individuals, which include

6  Thomas Farmer, Donnell Berry, Edward Barber, Milton

7  Boyd, Travel Riley, Claude Booker, and the fugitive if

8  caught.

9      Those individuals could be easily tried in a

10  separate drug conspiracy.  So, if we get to the point

11  -- and I anticipate we will -- where we have more than

12  six defendants remaining of the 31, for --

13      THE COURT:  Could I ask counsel on the phone to

14  stop shuffling papers, because it's making a lot of

15  noise in the courtroom.

16      MS. JOHNSTON:  Although our last 30-defendant

17  case resulted in pleas and our fugitives in this case,

18  given the age and criminal history, I do not

19  anticipate we will be able to have one single trial.

20  I think it is likely that we will have three trials,

21  at least 18 defendants going to try out of this group.

22  So, one of the ways that Mr. Mangual, who we have,

23  throughout the course of the investigation, identified

24  some of his sources of supplies and his customers that

25  I think we could sever that portion of the case and

1  may, when we supercede, accommodate that by the way we

2  structure the superceding indictment.

3       THE COURT:  When do you anticipate the

4  superceding indictment?

5       MS. JOHNSTON:  If I could get out of trial with

6  Judge Messitte and then Judge Chasanow.

7       THE COURT:  Yes, I feel your pain.  That has

8  already caused a 3-week trial of mine to be bumped off

9  the calendar.

10      MS. JOHNSTON:  I've never had this kind of

11 experience in all my years of practicing law.

12      I would anticipate sometime between now and the

13 end of the year we'll go back in and get a superceding

14 indictment.  Again, there's no new evidence and

15 there's no new discovery.  It's just a question of our

16 adding substantive counts and breaking it down to

17 accommodate possible severance.  It also will give

18 time for people who may be in negotiations to complete

19 their negotiations with us.

20      There also is, then, another part of the case

21 that could be severed for trial, and that is the

22 heroin conspiracy.  The heroin conspiracy, again,

23 involves Paulette Martin and Gwendolyn Levi and Donna

24 Johnson, Craig Scott, Tony Solomon, Larry Nunn and

25 Rojas Castro Sarte and also a fugitive.  In that

1  instance, we would have eight defendants at most,

2  although as I said there's a fugitive, and I don't

3  expect to have all eight of those.  But that, again,

4  could be isolated for trial as the heroin conspiracy.

5  We would try Paulette Martin as part of that, along

6  with Gwendolyn Levi.

7      Then, sort of the third component of this case,

8  as the government sees it is the Paulette Martin

9  cocaine, cocaine base and insurance fraud aspect.

10      THE COURT:  First of all, can counsel on the

11  phone hear what Ms. Johnston is saying?

12      MR. RUBIN:  Your Honor, I hate to break in, but

13  this is Jack Rubin on the phone.  I can hear nothing.

14      MR. FISCHER:  This is Dave Fischer.  I can hear

15  very, very little of what Ms. Johnston is saying.

16      MR. RUBIN:  The only thing I heard was the roll

17  call.

18      THE COURT:  Ms. Johnston, could you go to the

19  podium so you're a little closer to the mike?

20      MS. JOHNSTON:  Okay.

21      THE COURT:  I'll ask again.  Counsel, every time

22  you shuffle papers, it makes a huge noise in the

23  courtroom, so please don't clear your throat or

24  shuffle papers or put anything on your phone at your

25  office if you can.

1     THE CLERK:  We want to move the phone and see if
2 we can make it a little better for them to hear.
3     THE COURT:  Okay.
4     MS. JOHNSTON:  Let me start over again, in
5 response to the court's question about how we might
6 try all of these defendants.
7     THE COURT:  Get close to the mike, Ms. Johnston.
8 There you go.
9     MS. JOHNSTON:  Given the age of most of the
10 defendants, as well as their criminal histories, we
11 don't believe that it's likely that we're going to
12 have no more than six or eight defendants for trial.
13 We think it's more likely that we will have at least
14 18 defendants for trial, not including the two
15 fugitives.
16     In that regard, when we look at the indictment
17 and the evidence that we have in this case, we believe
18 that we could try Luis Mangual and individuals
19 associated with him separate from the other
20 individuals.  For example, Luis Mangual was a cocaine
21 supplier.  He supplied Paulette Martin as one of his
22 customers.  We would not try her under his conspiracy.
23 Instead, we would try Luis Mangual, Thomas Farmer,
24 Donnell Berry, Edward Barber, Milton Boyd, Travel
25 Riley, Claude Booker and the fugitive, if the fugitive

1 is the found.  Those are eight defendants.

2      Again, we believe it's possible that there may be

3 some pleas in that mix, but that would be an isolated

4 part of the case that we could put on without

5 involving, for example, the heroin and all of Paulette

6 Martin's cocaine customers.

7      Then there would be -- also, we can sever out the

8 heroin conspiracy -- and under the heroin conspiracy,

9 again, we have the source of the New York contact, the

10 source of supply in New York or at least the New York

11 contact for Gwendolyn Levi, Rojas Castro Sarte,

12 Gwendolyn Levi, Donna Johnson, Craig Scott, Tony

13 Solomon, Paulette Martin, Larry Nunn and then the

14 other fugitive; that would be eight in that group.

15      Again, we would anticipate when we supercede the

16 indictment, and this is what we're considering doing

17 -- haven't absolutely decided, but in terms of making

18 it more feasible in terms of handling at trial would

19 be to charge that heroin conspiracy separate from the

20 cocaine conspiracy.

21      Then that leaves us with the remaining -- those

22 are 16 defendants, so that leaves us with the

23 remaining -- somebody can do the math -- 15

24 defendants, and those are involved in Paulette

25 Martin's cocaine, cocaine base and insurance fraud

1  charges.  Quite frankly, many -- that cocaine/cocaine

2  base involves Paulette Martin and her customers, a

3  couple of other sources she has that are unrelated to

4  Luis Mangual and not related to the heroin source of

5  supply.

6        In addition to that, many -- we anticipate that

7  many of those cocaine conspirators are also involved

8  in the insurance fraud.  The court may recall our

9  insurance fraud indictment only includes a few people

10 -- I want to say four or five at this point.  I am

11 optimistic that we may have some pleas.  I anticipate

12 that some of those individuals who may be charged only

13 in the insurance fraud may be subsequently indicted

14 for money laundering in relation to the drug

15 conspiracy and possible involvement in the drug

16 conspiracy itself.  So, I'm not sure that we will get

17 to the point where we'd have to sever those counts.

18       There may be significant overlap with those

19 counts but, again, I believe that there's a strong

20 likelihood that individuals involved only in the

21 insurance fraud may reach a disposition and therefore

22 we would be left only with individuals involved in

23 both of those conspiracies.  I anticipate that that

24 portion of the case will take much longer, because Ms.

25 Martin -- there are many, many more intercepted

1  telephone calls with her involving all of those

2  codefendants that I would anticipate -- I would

3  anticipate that trial would take much longer.

4       The Levi case is probably the easiest and the

5  quickest one to get ready for trial.  Ms. Levi's phone

6  was intercepted.  It was a brief period of intercepts.

7  Again, there would be some calls from Ms. Martin's

8  phone as well that would be utilized as well in that

9  case, and the -- Luis Mangual, similarly, would be of

10 a similar length to the heroin conspiracy.  So, that's

11 sort of where the government sees the case right now.

12      I'd ask the court -- I don't know if the court

13 wants to set trial dates, but we're looking at the

14 Levi or the heroin conspiracy, at the Mangual

15 conspiracy being much shorter trials.  Not "short,"

16 but much shorter than Paulette Martin.

17      THE COURT:  Well, as we sit here today, we have

18 an unsevered case.

19      MS. JOHNSTON:  Yes.

20      THE COURT:  I would like to have some process

21 whereby we address, as soon as possible -- and I

22 understand that may not be overnight -- a plan for

23 moving to sever any aspect of this case so that the

24 court can come up with the most intelligent way to

25 resolve this matter, consistent with Rule 14.  I

1 believe that the most appropriate way, at least from

2 the government's standpoint, would be to file a motion

3 that gives me a plan of how you would propose to sever

4 the case, and then any and all defense attorneys who

5 wish to can make their own proposal for how to sever

6 any one or more defendants and can respond to the

7 government's proposal.

8      Perhaps the best thing to do would be to set a

9 schedule for the government to make a proposal for how

10 it would sever the case in the groupings along the

11 lines that you've just mentioned and give a time for

12 the defendants both to respond and file their own

13 motions, rather than have everybody file a motion all

14 at once.

15      My thinking would be to set a deadline.  I

16 understand you're relatively occupied right now, Ms.

17 Johnston, so I don't want to kill you with too many

18 motions and paperwork to file.  When do you think you

19 reasonably could put together a motion that would make

20 a proposal for how to sever this case into groups for

21 trial on some rational basis?

22      MS. JOHNSTON:  My preference would be by November

23 5th.  I could do it by October 28th if need be.

24      THE COURT:  November 5 is fine with me, unless I

25 hear some other reaction from counsel.

1       Mr. Montemarano?

2       MR. MONTEMARANO:  Your Honor is going to hear

3  from me, so I didn't think you wanted to hear from me

4  --

5       THE COURT:  No.  I want to first address the

6  question of severance motions, and if you have ideas

7  on severance motions you or any your colleagues can

8  speak right now.

9       MR. MONTEMARANO:  Thank you, Your Honor.  On

10  behalf of Paulette Martin, Michael Montemarano.  My

11  client has been detained based on representations made

12  by the government to Judge Connelly in this matter, as

13  the lead defendant, and with at least the suggestion

14  that she's involved in what way may well be a series

15  of murders.

16      With all due respect, I'm sure the court, in

17  looking at the indictment, has posed the same question

18  I did, which is:  Insurance fraud, buying policies for

19  elderly people.  There's no certainty as when one

20  might collect.  And if those collection dates are

21  advanced a little, then we have a case that's in a

22  completely different posture.

23      My client, however, has been sitting for three

24  and a half months since that happened, and nothing has

25  happened in this matter.  While I certainly appreciate

1 the court's logistical issue in getting 30 defendants

2 together all at the same time, I don't represent the

3 other 30 people.  I don't represent Your Honor or Ms.

4 Johnston.  I do represent Ms. Martin.  She's been

5 sitting -- we're here on the 13th of September, and

6 Ms. Johnston is asking for another seven weeks to

7 determine how she'd like to try this case, while my

8 client could be sitting until I don't know when, Your

9 Honor.

10      This is getting a bit lengthy.  I know there are

11 other people who are detained who may well share this

12 view, but this is purely on behalf of Ms. Martin.  I

13 think the court should set much shorter deadlines,

14 because I think the government should be setting or

15 thinking about severing long before this.

16      Number two, and equally important, I think the

17 court has to address the issue of further charges, and

18 to give the government in essence a drop dead date as

19 to when they're going to bring further charges and

20 most particularly when they're going to bring -- if

21 they are going to bring a death penalty prosecution

22 with regard to my client, because that was put on the

23 table by the government three and a half months ago --

24 the possibility of it.  So, I don't quite understand

25 what's going on, and November 5 is of cold comfort.

1          THE COURT:  All right.  Assuming I pick a date

2   that -- whether you like the date or not, how much

3   time after that date would you like to make your own

4   proposals for severance?  Unless you want to be tried

5   with 30 other defendants.

6          MR. MONTEMARANO:  How I am tried is up to the

7   court initially, Your Honor, and I could probably

8   respond within a week, two at the outside, which is

9   what I think would be appropriate for the government's

10  response today, and we could have this matter sorted

11  out in well under a month.

12         THE COURT:  Okay.

13         MR. CONTE:  Good morning.

14         THE COURT:  Yes, sir?

15         MR. CONTE:  Your Honor, Joseph Conte on behalf of

16  Larry Lane.  There's also an issue of *Bruton* motions

17  when it comes to severance, and the government is

18  usually not forthcoming in those types of -- that type

19  of information to codefendants.  So, we need that

20  information or the statements from codefendants that

21  implicate other defendants.  Those have to be

22  addressed at some point.  I can file a standard motion

23  that doesn't say anything, but then down the line, if

24  we have information, then it becomes an issue.

25         THE COURT:  No, I understand.

1      Ms. Johnston, when you make your motion, which

2  I'll set a time for it, will you be in a position to

3  identify any *Bruton* issues at that time?

4      MS. JOHNSTON:  I don't know, Your Honor.  I will

5  -- I was just talking with Ms. Greenberg about it.  I

6  can't, off the top of my head, recall any post-arrest

7  statements that would give rise to *Bruton* issues, but

8  again there are 31 defendants and I don't want to say

9  that with absolute certainty.

10      I would indicate to the court one of the things

11  we will contemplate doing prior to that November --

12  whatever deadline the court sets is indeed returning a

13  superceding indictment which splits out the

14  conspiracies.  We will put it in a little bit of a

15  different posture, but that may be one of the things

16  we consider doing.

17      THE COURT:  Well, I do share the concern that we

18  ought to get this thing moving along as best we can.

19  I know it's hard to move a monster like this; it's

20  like turning a battleship, but --

21      MS. JOHNSTON:  I would -- my only reason for

22  asking for that much time, quite frankly, is I'm going

23  to be in trial on Wednesdays, and that's when the

24  grand jury sits.  I have scheduled some grand jury

25  time during my lunch hour at the end of September that

1 I -- for another matter I have before this member of

2 the bench for September.  So, we are being very

3 diligent.  Ms. Greenberg has made several trips down

4 from Baltimore to handle grand jury while I've been in

5 trial.

6      If the court would like to, we can schedule some

7 trial dates along the lines of the conspiracies that

8 we've suggested to the court so that we're not delayed

9 further.  We are estimating, and I'm assuming that --

10 I have not had a trial before Your Honor ,but I'm

11 assuming that the court will sit a full day on trial

12 days and sit four days a week.

13      THE COURT:  Yes, and I will chisel the dates of

14 trial and length of trial in granite.  We are not

15 going to have the problem that Judge Messitte's

16 having.

17      MS. JOHNSTON:  We have estimated that if we --

18 that in terms of what I've suggested to the court,

19 that the Levi heroin conspiracy case could go to

20 trial, absent any extraordinary defense case, that

21 that would take roughly six weeks of trial with the

22 government's case and a day or two for the defense

23 case and closing arguments.  As I've said, the

24 discovery as to that aspect of the case is more

25 limited than the Paulette Martin cocaine conspiracy

1 and insurance fraud.

2      Likewise, with the Luis Mangual aspect and his

3 coconspirators.  We would anticipate that that case as

4 well could be tried in six weeks, again, premised on

5 the notion that the defendant's case would take more

6 than -- would not take more than a day or two.  I was

7 going to say six to eight weeks, but I'm comfortable

8 saying six weeks if we're allowing a day or two for

9 all of the defense case.

10      The government has no objection to setting some

11 trial dates, if the court wants.

12      THE COURT:  I can't set trial dates now, other

13 than trial for a 31-defendant case, and I don't think

14 FedEx Field is available until next spring.  I don't

15 want to do that.  What I need to do is to get the

16 proposals in front of me from you and the defense on

17 motions of severances of this case, make decisions on

18 that and set trial dates on every one of them, and I

19 intend to do that.

20      MS. JOHNSTON:  Your Honor, then if the court

21 wants to set a date, we will make every effort in

22 getting it in sooner and give the defendants so many

23 days from the date our motion is filed to file a

24 response and recognizing that I will use whatever

25 deadline the court sets.

1      THE COURT:  I feel Mr. Montemarano's pain about

2  the length of time involved here, but I understand at

3  the same time you are involved in an ordeal that you

4  did not plan.  So, I want to be reasonable.

5      How about October 29th for the government to file

6  its omnibus proposal for how to bust this case up into

7  manageable commodities -- quantities, excuse me?

8      MS. JOHNSTON:  I don't know, Your Honor.  That's

9  fine with the government.  As I've indicated to the

10  court, we will make every effort to get it done before

11  then.

12      THE COURT:  How about for the defendants until

13  November 12th to respond and file their own -- I don't

14  want to call it "cross-motions," but their own motions

15  to sever, if they have a better plan than the

16  government's?

17      MR. RUBIN:  This is Jack Rubin speaking.  Is that

18  date applicable only to the response, or do you want

19  other motions, such as motions to suppress?

20      THE COURT:  I'm going to address that in just a

21  minute.  What I'm talking about now is simply motions

22  that deal with severance and how we plan the trial of

23  this case and parts.

24      MR. RUBIN:  All right.

25      THE COURT:  What I'm proposing, then, is the 29th

23

1  of October for the government to make its motion with

2  respect to groupings of defendants for severance out

3  for trials, and for the defense until November 12th to

4  respond.

5       Mr. Montemarano?

6       MR. RUBIN:  No problem with Mr. Rubin, on behalf

7  of Mr. Berry.

8       MR. MONTEMARANO:  Thank you, Your Honor.  Michael

9  Montemarano on behalf of Paulette Martin.

10      Just so we're clear -- I want to be entirely

11  clear about this:  The government's requirement to

12  file a motion is a requirement that it contain a

13  factual basis within the body of the motion so we can

14  understand why the government is choosing to lump

15  these people --

16      THE COURT:  I'm assuming they will tell me enough

17  so I can understand why I should do it and you will

18  have enough to respond to it.

19      MR. MONTEMARANO:  If we're going to be looking at

20  an extended trial date because everyone -- if we began

21  a trial, let's say, at the first of the year for Levi,

22  we would not be looking for the spring until my

23  client's end of the trial.  Will the court be

24  addressing detention or stipulations of the government

25  to release some of the individuals, if we're going to

1 have to sit this long?

2     THE COURT:  I will obviously be glad to revisit

3 detention motions when somebody files a motion and

4 shows me a good reason to revisit the decision of the

5 court with respect to its decision, but I cannot make

6 a blanket promise to let everybody out.  I'm not going

7 to do that.

8     MR. MONTEMARANO:  I'm not expecting a blanket

9 promise, Your Honor, but the court's ruling and the

10 government's requests sort of have an implicit

11 suggestion that the length of detention in advance of

12 trial is becoming a serious concern.

13     THE COURT:  No, I hear your concern and we're

14 going to address that as quick as we can.  That's one

15 of the most important things I want to address,

16 though, is to get some idea of how we're going to

17 break this case up into manageable groupings that are

18 fair to the government and fair to the defense and get

19 on with getting it done.

20     Now, with respect to other motions I heard Mr.

21 Rubin mention.  That was the next thing on my list is,

22 I'm assuming that the defense in this case have --

23 defense counsel have been able to get their arms

24 around the nature of the case and have some

25 understanding of what issues they think might be

1  appropriate for motions.  There are already some

2  motions that have been filed.  I've got a list here of

3  the pending motions, and I think five of the

4  defendants have filed motions.

5      What I need to know is whether there's any reason

6  why I should not set another deadline for the filing

7  of all pretrial motions for all defendants.

8      MR. RUBIN:  On behalf of Mr. Berry, Your Honor,

9  primarily they're going to be boilerplate motions,

10  because I don't have a clue what the evidence is in

11  this case as to Mr. Berry.

12      THE COURT:  All right.  What is the status, Ms.

13  Johnston, of making information available to the

14  defendants?

15      MS. JOHNSTON:  Your Honor, we have provided

16  discovery in this case; we are continuing to provide

17  discovery.  Anyone who signed the discovery agreement

18  has access through Mr. Sullivan, who's agreed to be

19  lead counsel for discovery purposes in this case.

20      In addition to that, we have maintained in our

21  office copies -- a duplicate set of the discovery.  So

22  if someone wants to come and look at our discovery,

23  that's been available.  Initially, there were all of

24  the wiretap affidavits, although there was some

25  redaction pursuant to an ongoing investigation which

1   does not impact on the defendants that are before the

2   court.  They've had copies of the search warrant

3   affidavits, the wiretap affidavits, the 10-day

4   reports, the logs, the CD with all of the -- CDs with

5   all of the calls from the wiretaps.

6        The last package of discovery, I think a letter

7   went out to defense  counsel around September 7th

8   listing thousands of pages of items that would be

9   available.  Mr. Sullivan was on vacation, I believe,

10  so he has not yet picked that up.  That is 14 boxes of

11  documents.  I would tell the court that it is beyond

12  Rule 16 discovery.  It is copies of pin register data,

13  air time records, items seized at various search

14  locations, records that we subpoenaed, insurance

15  policies that we've subpoenaed, and every item is

16  itemized or given a brief description so counsel can

17  figure out which item is their search location and

18  which one is not.

19       We anticipate giving them some more discovery in

20  that nature but not necessarily related to any

21  pretrial motions.  Again, for their convenience, we

22  maintain a copy in our office, and I believe Mr.

23  Sullivan is arranging to have all of the items scanned

24  into a computer so they will have access that way.

25       THE COURT:  All right.  Let me tell all of the

1  defense attorneys that when this status conference is
2  concluded, I will leave, Ms. Johnston will leave, and
3  Donna Sheerer is here to talk to you so you can talk
4  behind Ms. Johnston's back about the strategy.  But
5  more importantly, she has got some -- she wants to
6  discuss with you the question of documents and access
7  to documents and how to facilitate that to all counsel
8  through the auspices of Mr. Sullivan, who is starting
9  to work on that issue.  So, as soon as I leave, make
10 certain you talk to Ms. Sheerer.  She's an important
11 person also for other reasons -- financially, for you.
12 So, it sounds to me like there's a very large amount
13 of discovery material that's being furnished or in the
14 process of being furnished, and I don't know if
15 defense counsel are presently in a position to
16 formulate their best and brightest motions with
17 respect to those matters right now, unless I'm hearing
18 something incorrectly.
19      MR. RUBIN:  I think you're correct, Your Honor.
20 This is Jack Rubin.  I believe you are correct.
21      THE COURT:  If that's the case, then it seems to
22 me that, number one, you ought to all pursue
23 vigorously and as quickly as you can the review of a
24 large number of documents that are being made
25 available to you by the government to evaluate

1 whatever motions you may wish to file with respect to
2 those documents and other matters, and I'd like to set
3 a time line for filing all pretrial motions with
4 respect to this case, and it would seem to me
5 something like early December for you to be able to do
6 that would be reasonable.
7     Has anybody got any better or brighter idea than
8 that?  I want to make sure you have enough time.
9     MR. RUBIN:  I think that's enough time for Mr.
10 Berry's counsel, Your Honor.
11     THE COURT:  Yes, sir?
12     MR. MARTIN:  Anthony Martin on behalf of Mr.
13 Goodwin.  Your Honor, I don't have a better idea ,but
14 I do have a certain in that regard.  I have not signed
15 a discovery agreement letter, and it's been made known
16 to me by the government that unless I do so that I
17 will be entitled to some discovery but I may not be
18 entitled to other.  You're about to set a deadline,
19 and I don't know if I'm going to have all the
20 discovery that I need in order to meet that deadline,
21 and I don't want to file motions later on to extend
22 the discovery -- I mean the pretrial motions deadline.
23     THE COURT:  If any defense counsel believes just
24 prior to the deadline for filing motions that you have
25 a problem, then you can file a motion with me to

1  extend the time in your individual case for extra time

2  to file the motion.

3       MR. MARTIN:  I just wanted to bring it to the

4  court's attention.

5       THE COURT:  I'm going to be making certain that

6  we follow dates, but I'm not unreasonable if somebody

7  comes to me with a real problem and says, I need to

8  have extra time because of whatever the case may be.

9       THE CLERK:  Excuse me.  Counsel, if you could use

10  the podium when you speak, I would appreciate it, so

11  that counsel on the telephone can hear you.

12       THE COURT:  If any counsel wishes to speak,

13  please come up to the podium and speak and identify

14  the defendant you represent.

15       MR. SUSSMAN:  Your Honor, Ed Sussman on behalf of

16  Ms. Hardin.  What I suggest to the court is, I think

17  the severance decisions and the shape of the case will

18  govern the filing of motions.  If we can get some

19  feeling when that might be decided -- I know the

20  government is going to submit their --

21       THE COURT:  I'm going to set a hearing today for

22  the severance motion, and what I was thinking was to

23  set it so that the decision with respect to severance

24  is made before your deadline runs on when you have to

25  file a motion.

1      MR. SUSSMAN:  What I'm just suggesting is, once

2 that decision is made then we can have a reasonable

3 time after that which would probably be appropriate

4 for filing motions, because obviously that decision

5 has some impact on what we might file.

6      THE COURT:  Well, let me -- looking at my

7 calendar on the motions with respect to severance,

8 I've got the 12th for the defense to make their

9 motions, and I'm going to set -- I'll set the 29th of

10 November for the government to respond, and I hope

11 that should be enough paperwork for me to have piled

12 up in front of me to have a hearing.

13      Then in December I could -- let's see.  How about

14 December 6th for a hearing?  I know I'm never going to

15 be able to get 31 attorneys to all tell me they have

16 no problem with the date, but we're going to have to

17 do the best we can, folks.  How about December 6th for

18 a hearing on severance motions?

19      MS. NORMAN:  I have a trial that date.  I

20 represent Mr. Farmer.

21      MR. TICKNOR:  For the record, Gary Ticknor.  I

22 have a continuing trial with Judge Legg from the 15th

23 of November to the 15th of December.  I can do it on a

24 Friday, the 10th or on Friday, the 17th, but Monday

25 through Thursday I will be in trial in front of Judge

31

1  Legg.

2      MR. RUBIN:  This is Jack Rubin.  Your Honor, I

3  would be available on December 3rd, which is a Friday.

4      THE COURT:  I think that's a little bit too close

5  to the response time for me to be able to digest all

6  this paperwork and be ready, so I would rather give it

7  a little bit longer than that.

8      MR. RUBIN:  The following week is a difficult

9  week.

10     MR. ARTHUR:  Your Honor, Allen Arthur on behalf

11 of Mr. Arnold.  I will be on vacation and out of the

12 country that week.

13     THE COURT:  Which week?

14     MR. ARTHUR:  December 6th.  If necessary, I will

15 find somebody to stand in for me.

16     THE COURT:  What about Monday, the 13th?

17     MR. RUBIN:  The 13th works for me, Your Honor.

18 This is Jack Rubin.

19     MR. ARTHUR:  Again, Allen Arthur for Mr. Arnold.

20 I'm returning on Monday, the 13th.

21     THE COURT:  You're returning on Monday, the 13th.

22 I'm trying to get this done before Christmas, folks,

23 so this is not easy.

24     Mr. Montemarano.

25     MR. MONTEMARANO:  Your Honor, I apologize.  I

1  will be beginning a trial on December 13th in

2  Baltimore City Circuit Court.  Our trial date is set,

3  and we're not -- I have a 17 year-old woman charged

4  with murdering her babies.

5      MR. HICKS:  Anthony Hicks.  I will be in trial

6  during that time frame, but it may be that Judge

7  Williams will let me out for the hearing.

8      THE COURT:  Well,

9      MS. AMATO:  Elita Amato on behalf of Lavon Dobie.

10  I wanted the court to be aware, I am not available on

11  the 6th in the morning, but I am available the rest of

12  that week.

13      MR. HALL:  Your Honor, if I may.  Marc Hall

14  representing Reece Whiting.  I also have a problem

15  with the week of the 6th, because I have a murder

16  trial in Upper Marlboro.

17      MS. JOHNSTON:  Your Honor, if the government were

18  to get its response to you on Wednesday, the 24th,

19  would that perhaps give the court -- it will give the

20  court the Thanksgiving weekend, perhaps, to review

21  materials.  We are willing to file our response by

22  November 24th if that will assist the court in

23  accommodating a Friday, December 3rd hearing; and the

24  government would suggest perhaps if we could do it

25  first thing in the morning, that might also help with

1 calendars, or at the end of the day.

2      THE COURT:  I'm in a trial myself on the 3rd, but

3 -- how many people had a problem with the 6th?  Show

4 of hands.

5      MR. RUBIN:  The 6th works for me.

6      THE COURT:  Well, you're in the distinct

7 minority.  If you were here, you would not bother.

8      MR. RUBIN:  It does work for us.

9      THE COURT:  The Southern Division tries to do

10 motions on Monday because we like to sit Tuesday

11 through Friday, and I may just have to take a deep

12 breath and set this other than on a Monday.

13      What does the 7th look like?

14      MS. JOHNSTON:  I'll be in trial, Your Honor.

15      THE COURT:  At 9 o'clock in the morning?

16      MS. JOHNSTON:  I have a trial before Judge

17 Chasanow.

18      THE COURT:  At 9 o'clock?

19      MS. JOHNSTON:  She starts at 9:30.  Given the way

20 we're moving this morning --

21      MS. NORMAN:  I'm Mr. Farmer's attorney.  My trial

22 on the 6th will be the whole week.

23      MR. TICKNOR:  Gary Ticknor.  I'm in trial, as I

24 mentioned before, with Judge Legg in Baltimore, but I

25 will designate someone to stand in for me.

1        THE COURT:  I think we're going to have to talk

2   about stand-ins, because I'm never going to be able to

3   get 30 lawyers to agree on this date.

4        MR. BRENNER:  I'm Paul Brenner for Ed Barber,

5   Your Honor.  I am in trial both on the 6th and 7th,

6   but I'll try to get somebody to stand in on the 7th or

7   on the 6th.

8        MS. NORMAN:  Your Honor, if they're going to

9   sever Mr. Farmer from the rest of the case, then I may

10  not have any problem anyway.

11       THE COURT:  Right.

12       MS. NORMAN:  That's not even going to be an issue

13  for me, so I wouldn't have to worry about it.

14       THE COURT:  Who is the counsel that's arriving

15  back out of town on the 6th?

16       MR. ARTHUR:  The 13th.

17       THE COURT:  Oh, on the 13th?  Yeah, okay.  Well,

18  a lot of you had a real problem with the 6th, but I'm

19  inclined to go with the 6th and make it early, because

20  if you've got cases in this courthouse, we'll just

21  shuffle you from one courtroom to another.

22       How about 8:30 a.m. on the 6th?  How many people

23  are going to pass up 8:30 on the 6th?

24       MR. RUBIN:  8:30 on the 6th is fine with me, Your

25  Honor.  This is Mr. Rubin on behalf of Mr. Berry.

1       THE COURT:  That will be the time when we hear

2   motions on severance.  I will, in all likelihood,

3   because this has been my style so far, try to decide

4   it right off the bench right there, rather than write

5   some big opinion about why I'm doing what I'm doing.

6   I'd rather just explain it orally.  So, I will try to

7   hear from you and dispose of the whole question of the

8   trial plan for this case on the 6th at 8:30 a.m.  That

9   will also be a time when I can get an update from you

10  on the status of various things going on in the case.

11      Now, if the 6th is the time when you finally find

12  out and I find out what shape the case is going to

13  have, then let's talk about the deadline for filing of

14  your motions, which I'm assuming that by December 6th

15  you will have whatever access you're going to get to

16  the documents that been described by Ms. Johnston, and

17  that you will know on the 6th how this case is going

18  to proceed with groupings of trials.

19      Being mindful that this is the month of December,

20  how about the 20th of December as a deadline for all

21  other motions?

22      MR. RUBIN:  That's fine with Mr. Berry's counsel,

23  Your Honor.

24      THE COURT:  I will not require a response on the

25  25th or something like that to the motion.

1       How about a response from the government -- is
2  the 5th of January okay?  I don't want to completely
3  destroy your holidays.
4       MS. JOHNSTON:  Your Honor, I expect that on
5  December 20th, the defendants are going to file
6  multiple motions involving suppressing five different
7  wiretaps in this case, multiple search warrants with
8  issues, and we would ask the court for 30 days to file
9  a response to their motions, which is not an
10 unreasonable amount of time based on my experience in
11 other cases of this magnitude.
12      THE COURT:  All right.  How about January 21st?
13      MS. JOHNSTON:  That's fine, Your Honor.
14      THE COURT:  Okay.  And I will provide for the
15 replies to those motions on February 4.
16      Ms. Johnston, when you put together your motion
17 for severing the cases, make sure you put in it what
18 the government thinks the length of these various
19 combinations would be.
20      MS. JOHNSTON:  Certainly, Your Honor.
21      THE COURT:  Some of you may not know the inside
22 discussion I'm having with Ms. Johnston in front of
23 you about this other case, but she started a case in
24 front of Judge Messitte that was scheduled to go for
25 three weeks, and it began on August 6th?

 1      MS. JOHNSTON:  August 10th, Your Honor.

 2      THE COURT:  And it's still going on this

 3 three-week case and going to go strong until close to

 4 the end of this month.  That destroys a court's

 5 calendar, not to mention counsel's calendars.  So,

 6 when you get this motion from Ms. Johnston with her

 7 estimates of how long she thinks it's going to take

 8 for her to put her cases on, I want a serious estimate

 9 from the defendant as to whether they embrace her

10 estimate or disagree with it, and I want you to know

11 that when we do break this case up which, assuming

12 that we do, and we set trial dates and we set the

13 length of these trials, that we're going to be very

14 deadly serious about those trial estimates and that we

15 don't end up having a case go for twice as long as it

16 should have gone.

17      In my case, it caused me to have to bump off of

18 my calendar a three-week trial because the prosecutor

19 was unavailable because of the other case.  So, that

20 can really wreak havoc when you're trying to have a

21 judge remain busy and suddenly three weeks get knocked

22 off my calendar.  So, we need to, in fairness to all

23 parties, including the court, be very serious when you

24 get the motion.  Even if you like the trial proposal

25 made by the government, make certain you come back and

1   let me know whether you agree or disagree with the

2   estimate for the length of trial.

3        MR. ZWAIG:  Your Honor, if I may, on behalf of

4   Mr. Nunn.  I think one way that might be helpful for

5   us to be able to adequately estimate the amount of

6   time that this case will try is if we have a list of

7   witnesses that are going to testify.  Other than that,

8   I don't see how we could possibly determine whether or

9   not that's an adequate figure or not.

10        THE COURT:  How feasible would it be to do that,

11   Ms. Johnston?

12        MS. JOHNSTON:  Your Honor, there is absolutely no

13   way the government could tell who their witnesses are

14   going to be by the November date.  First of all, there

15   may be plea negotiations with people which may result

16   in the identification of corporators.  Counsel knows

17   basically what the evidence is.  They know the volume

18   of the wiretap calls.  They know what the pin register

19   activity is.  They have the search warrant affidavits

20   that lay out pretty much the government's theory.  The

21   notion that we should be able to do that at this point

22   is simply impossible.

23        THE COURT:  I'm going to revisit this question of

24   identifying that and so forth, because there may --

25   what I may end up doing is as we get closer to these

                                                          39

1    trial dates we're setting, we revisit with you again
2    and again and again your comfort level with the
3    estimate of the trial, because I don't want to have a
4    disaster like what's going on right now.
5         I will, unless somebody has a better idea -- and
6    I'll take this up when we deal with the severance
7    motions -- be entering an order that will provide for,
8    you know, the objections by one counsel standing as an
9    objection by all and try to make it so I don't have to
10   have 31 objections and so forth, and I'll do the same
11   thing with respect to motions so that you don't have
12   to join somebody else's motion.
13        Yes, sir.
14        MR. SEMEL:  Your Honor, Peter Semel on behalf of
15   Mr. Boyd.  Having heard for the first time today that
16   in all probability it's going to be three separate
17   trials in this matter, I have a suggestion, and I was
18   wondering if the government would agree that it would
19   be very helpful to counsel in this case if the
20   government has discovery and could indicate which
21   evidence applies to which trial they plan to proceed.
22   I mean, for instance, my client, Melvin Boyd, I heard
23   today for the first time, is only involved in the
24   cocaine conspiracy which would save me enormous time
25   -- I'm not trying to save myself time, but I wouldn't

1  have to plow through 5,000 pages of insurance fraud

2  documents.

3      THE COURT:  I'm assuming that the nature of the

4  motion being filed by Ms. Johnston will have to

5  disclose somewhat how you intend to proceed.  I don't

6  know if I'm going to require you to identify which

7  document is going to pertain to which trial, but

8  obviously if you're not pursuing insurance fraud

9  allegations at all and the grouping you've selected,

10 then you don't need to be looking at insurance

11 policies the rest of your life; right?

12     MS. JOHNSTON:  Yes, Your Honor.  I don't think

13 the government is in a position to dictate to defense

14 counsel what evidence they should be looking at in

15 terms of their client.  Furthermore, when we sent out

16 the discovery list, we have divided the discovery into

17 item numbers, and each item number has bit of a

18 description.  So, counsel should be able to tell from

19 that description whether it's something he wants to

20 look at for his or her client.  So, we have not just

21 said, here's 50,000 pages of discovery.  We have

22 itemized it by item number, giving a description for

23 those particular documents so that would assist

24 counsel looking at what's relevant to their clients.

25 In fact, my agents, when they first sent it to me,

1  they said, well, Item 25 is from search Location A or

2  B.  I said, I can't send this out with "Location A or

3  B."  I need you to give the address so the parties

4  will be able to say, yes, this is my client's house; I

5  want to look at that.

6      So, we have done some cataloging of the evidence

7  to make it a little bit easier for defense counsel and

8  for the government as well.

9      THE COURT:  All right.  Now, I don't remember

10  which counsel had cases going on in this court on

11  December 6th, but if you will let me know who you are

12  and what the case is, I will try to keep you out of

13  trouble with the other judge so that if you stumble in

14  at 10:05, you won't be in trouble if they're starting

15  at 10:00, and I'll try to accommodate you.

16      MR. MARTIN:  I don't know if you want that now,

17  Your Honor.

18      THE COURT:  Sure.  What's the case?

19      MR. MARTIN:  The case is the John Bryant, et al.

20      THE COURT:  John Bryant, et al?

21      MR. MARTIN:  John Bryant, et al.  My client's

22  name is Torina Collis, and the judge is Alex Williams.

23      THE COURT:  Judge Williams?

24      MR. MARTIN:  Yes, sir.

25      THE COURT:  When is that scheduled to begin?

1       MR. MARTIN:  That is scheduled to begin,

2  actually, Your Honor, on the -- looks like the 30th of

3  November.

4       THE COURT:  The 30th?  Okay.

5       MR. MARTIN:  Yes, sir.

6       THE COURT:  All right.  Well, let me check on

7  that with Judge Williams.

8       All right.  Counsel, I am not going to go through

9  anymore of the items on this little agenda I sent out

10  to you today, but I may take up some of the additional

11  items at our hearing on the 6th of December dealing

12  with deadlines for voir dire and jury instructions and

13  so forth.  Now what I will do is I will set a hearing

14  on all these pretrial motions on December 6th, looking

15  forward.  I'm not going to set it today, because I

16  want to get my arms around how many motions I've got,

17  how much time it's going to take, whether they can all

18  be done in one day or not, and I think it would be

19  premature to set a date now unless somebody has a

20  better idea.  So, I will set the date for the hearing

21  on these motions on December 6th.

22       Are there any other scheduling or procedural

23  matters, etcetera, with regard to these cases?

24       MS. AMATO:  Your Honor, Elita Amato on behalf of

25  Ms. Dobie.  Ms. Dobie had filed, on her own behalf,

1  two motions which have not been responded to yet, and

2  of course she would like the government to respond to

3  them.  One is a motion to dismiss, and one is a motion

4  for a fast and speedy trial.  Again, these were

5  motions that she had filed.

6        THE COURT:  Which defendant?

7        MS. AMATO:  Excuse me.  Lavon Dobie.  In fact,

8  the court had provided me copies of these motions,

9  because I did not receive them.

10       THE COURT:  Oh, yes.

11       MS. AMATO:  The court remembers.

12       MS. JOHNSTON:  Your Honor, the government would

13 ask that it be allowed to file a response to all the

14 motions at one time as a consolidated response to

15 pretrial motions.  I believe we had asked the court

16 for permission to do that in regard to Mr. Goodwin's

17 motion for a Bill of Particulars and the court granted

18 that request.  So, we'd like to respond to all of the

19 pretrial motions other than a motion for severance at

20 the same time.

21       THE COURT:  In other words, January 21st?

22       MS. JOHNSTON:  Yeah.  If that's agreeable.

23       MS. AMATO:  Ms. Dobie would object to that.

24       THE COURT:  Ms. Johnston, can you file a response

25 to Ms. Dobie?  They're pro se motions.  I mean, they

                                                        44

1 do not require a lot of work.

2     MS. JOHNSTON:  Certainly, Your Honor, we'll file

3 a response.

4     THE COURT:  Can you file a response to those

5 motions by the time you do your motion on severing?

6     MS. JOHNSTON:  Certainly.

7     THE COURT:  Okay.

8     MS. AMATO:  Thank you.

9     THE COURT:  All right.

10     MR. TICKNOR:  Your Honor, you had previously

11 asked about conflicts on the December 6th.  I will try

12 and have someone stand in for me, unless you're going

13 to be setting trial dates on that date.  If you're

14 going to be setting trial dates on that date, then I

15 -- and it just occurred to me that you might.

16     THE COURT:  I might.

17     MR. TICKNOR:  Then I'm going to ask that you

18 intercede on my behalf with Judge Legg.  I'm Gary

19 Ticknor; the case is you United States versus Ernest

20 Reinhart, et al.  It starts on November 15th and is

21 scheduled to run to December 15th.  It has been

22 postponed twice before.

23     THE COURT:  Okay.

24     MR. SULLIVAN:  Judge, Tim Sullivan.  I'm

25 wondering why, as defendant 30, I'm discovery counsel

1  in this case.

2      THE COURT:  Mr. Sullivan, never volunteer.

3      MR. SULLIVAN:  Right, right.  Having said that,

4  Your Honor, I think it's prudent just to put on the

5  record, to alleviate some of my colleagues' concerns

6  about discovery, that immediately after the hearing, I

7  have sets of 32 CDs that have all the Title III

8  telephone calls on them.  So, all the discovery -- all

9  the lawyers who have signed the discovery agreement

10 who are court-appointed will immediately get them.

11 The retained counsel have to negotiate with Ms.

12 Sheerer for the price of those copies.

13     There are 14 boxes in the U. S. Attorney's office

14 of paper discovery.  That will be turned around by

15 October 1st.  So, as of October 1st --

16     THE COURT:  When you say "turned around," you

17 mean what?  Put on CD?

18     MR. SULLIVAN:  Reduced from paper form to CDs.

19 As of October 1st, I am pretty confident that all of

20 the discovery that the government has provided will be

21 made available to all counsel so that I just wanted to

22 let everybody else know that so I don't get 50

23 questions at the end.

24     If all the attorneys could wait when Your Honor

25 adjourns, we can deal with that.

1        THE COURT:  No.  You will all be alone.  The
2   defense bar in this case -- we will lock the door, and
3   you can talk with Ms. Sheerer.
4        MS. NORMAN:  Your Honor, Jane Norman.  I
5   represent Mr. Farmer.  I have a civil trial in
6   District of Columbia starting on the 6th, but I'm
7   going to see if my partner can start without me, and
8   I'll just call chambers if there's going to be some
9   problem.  Other than that, I'll be here.
10       THE COURT:  Yeah.  I hope you understand for
11  counsel it's going to be impossible for me to find the
12  perfect date.  Like the perfect storm, it's not going
13  to happen.
14       MS. NORMAN:  I will just let chambers know and
15  have you call if there's going to be a problem.
16       THE COURT:  Okay.  All right.
17       MR. BRENNER:  Your Honor, Paul Brenner for Ed
18  Barber.  I had filed a notice of appearance with Judge
19  Connelly, and I thought I had signed a discovery
20  notice or letter.  Mr. Sullivan provided me with the
21  affidavits after I sent a check to him, and the
22  government sent a letter indicating that I had not
23  signed a discovery letter which I was not aware of,
24  but I certainly -- you know, whatever I have to do to
25  sign it now, I'll sign it.

1      THE COURT:  Work it out with Ms. Johnston.

2      MR. BRENNER:  Right.  If I have to file another

3 notice of appearance with this court, I will, but I

4 did file one with the magistrate.

5      THE COURT:  t should be of record.  I'll double

6 check.  What's your client's name?

7      MR. BRENNER:  Ed Barber.  I did sign one.  I was

8 here that day.

9      THE COURT:  You're not -- some way, you're not

10 there yet.

11      MR. BRENNER:  Well, I know I was here on the

12 13th.  Personally, I know I signed a notice of

13 appearance.  If you want me to sign another one, I'll

14 sign a discovery letter again.

15      THE COURT:  That's fine.  Do it one more time.

16      MR. BRENNER:  Thank you.

17      MR. SAUNDERS:  Your Honor, very briefly.  Thomas

18 Saunders on behalf of Mr. Martin.  I apologize to the

19 government if I missed this, but in giving estimates

20 of trial time I did not hear an estimate -- and

21 obviously things can change -- for the cocaine

22 conspiracy/insurance fraud case, and as we will be

23 meeting --

24      THE COURT:  You will hear the estimate on October

25 29th?

1      MR. SAUNDERS:   The only thing I was wondering is
2  if the government had a rough idea, because I know
3  we're going to be talked to by Ms. Sheerer about
4  preparing CJA budgets.
5      THE COURT:   Why don't you talk to her off the
6  record?   I don't think we need to do it right now in
7  the proceeding on the record.
8      Anything else?   I'm going to summarize to you
9  what I've done here.
10     MR. MARTIN:   Anthony Martin on behalf of Learley
11  Goodwin.   I want to follow up on what Mr. Sullivan
12  had said earlier about having received discovery.   I
13  have in my possession the first -- the discovery disk
14  and that consists of the affidavits for the search
15  warrants and some of the summaries of the various
16  telephone conversations that took place, and that's
17  all I have, the speculation that supported the
18  affidavits and the summary of the telephone
19  conversations.
20     I understand now that this second disk has more
21  substantive discovery to it -- actually, the audio --
22  if that's what Mr. Sullivan tells me.   If that's in
23  fact true and correct, I'd like my own transcriber to
24  listen to those, and I might have to make a motion to
25  have that transcribed, and I can't do that Your Honor

1 because right now the government is saying, Mr. Martin

2 you can't get that because you haven't signed our

3 discovery letter.  So, again I'm bringing that up.

4 I'm putting that on the record that that may very well

5 delay my responding.

6      THE COURT:  Why can't you sign the discovery

7 letter?

8      MR. MARTIN:  Your Honor, I might want a hearing.

9 My client might want a hearing on discovery.  My

10 client's advised me not to concede to anything, and so

11 I'm doing what he's directed me to do.

12      THE COURT:  All right.

13      MS. JOHNSTON:  Your Honor, that disk that Mr.

14 Sullivan mentioned today are -- I advised Mr.

15 Sullivan, as I did in the first letter when all the

16 discovery went out, that this could be made available

17 to all counsel.  It's only what's in those 14 boxes

18 upstairs that I have reminded him who signed the

19 discovery agreement and who is not entitled to that.

20      Mr. Martin will be getting a full set of the

21 disks for all of the recorded communications.  What he

22 will not be getting at this point in time, or shortly

23 hereafter, are the draft transcripts, because our

24 discovery agreement says that those draft transcripts

25 are draft transcripts and all counsel agree they're

1  not to be used in court to impeach witnesses or

2  anything because they're draft in form.  So, he won't

3  be getting things such as that.  He won't be getting

4  access to some other items at this juncture, clearly,

5  because we're not required to do so.

6       Just so the record is clear, he is getting all of

7  those recorded conversations, and he can use them and

8  make his own transcripts if he chooses to.

9       THE COURT:  Okay.

10      MR. MARTIN:  Just to weigh in on the last comment

11  by the government.  We will be asking for money, then,

12  to have our own transcripts made.

13      THE COURT:  You can talk to Ms. Sheerer about

14  that when I leave.

15      Yes, sir.

16      MR. MONTEMARANO:  So the court is clear.  I'd

17  like to join Mr. Martin's comment.  This has happened

18  before in large cases when the government's view of no

19  use of the transcripts includes those transcripts of

20  calls the government is not choosing to introduce into

21  evidence that we cannot use their drafts, even as a

22  point of departure or to introduce that draft as a

23  transcript without, in essence, creating our own.  If

24  that's where we're going to be, that's going to blow

25  the budget up.  With all due respect, Your Honor, I

1 think you may need to address that come our hearing in

2 December, as well.

3      THE COURT:  All right.  We will take that up --

4 we will have quite a hearing.

5      All right.  Let me summarize for you, counsel,

6 what dates I've got down, and I will enter an order

7 that will go out to this effect.  On or before October

8 29th, the government will file its motion with its

9 proposal how to sever this case into groupings for

10 trial.

11      On or before November 12th, the defendants will

12 respond to the government's motion and file any motion

13 of their own with regard to severance and any other

14 issues pertaining to severance, including *Bruton*

15 issues.

16      On or before November 24th, the government can

17 respond.

18      There will be a hearing on the motions to sever

19 at 8:30 a.m. on December 6th.

20      The deadline for filing by the defense of all --

21 well, both parties, including the government, all

22 other motions deadline will be December 20.

23      The response to those motions will be on or

24 before January 21st, 2005.

25      Reply in support of those motions on or before

1  February 4.

2       I will not set a hearing on those motions now,

3  but I intend to set a hearing on those dates -- on

4  those motions on the 6th of December, when we next

5  meet.

6       I think that covers everything that I need to

7  cover with you.

8       MS. JOHNSTON:  Your Honor, I think the only other

9  thing was that the government will file a response to

10  Ms. Dobie's pro se motions.

11      THE COURT:  Yes.  That will be the same thing, on

12  the 29th.

13      MS. JOHNSTON:  I believe there are only two

14  motions filed by Ms. Dobie, a motion to dismiss and a

15  motion for speedy trial.

16      THE COURT:  Correct.  Right.  If you file a

17  response to those motions, and I will dispose of those

18  motions also on the 6th.

19      All right.  Counsel, I will ask Ms. Johnston to

20  excuse herself from the courtroom so that the defense

21  attorneys can have their own private meeting behind

22  her back and discuss things with Ms. Sheerer, who will

23  take care of important matters, strategic, financial

24  and otherwise.  See you on the 6th.

25              (Off the record at 10:11 a.m.)

1                        **<u>CERTIFICATE</u>**

2

3       I, Tracy Rae Dunlap, RPR, CRR, an Official Court

4  Reporter for the United States District Court of

5  Maryland, do hereby certify that I reported, by

6  machine shorthand, in my official capacity, the

7  proceedings had and testimony adduced upon the Jury

8  Trial Proceedings in the case of UNITED STATES OF

9  AMERICA versus PAULETTE MARTIN, et al, criminal Action

10  Number RWT-04-0235 on September 13, 2004.

11

12       I further certify that the foregoing 53 pages

13  constitute the official transcript of said

14  proceedings, as taken from my machine shorthand notes,

15  of said proceedings.

16

17       In witness whereof, I have hereto subscribed my

18  name, this 18th day of April 2008.

19

20

21                        _____

                          TRACY RAE DUNLAP, RPR, CRR
22                        OFFICIAL COURT REPORTER

23

24

25