```
 1              UNITED STATES DISTRICT COURT OF MARYLAND
                        SOUTHERN DIVISION
 2
    --------------------------x
 3  UNITED STATES OF AMERICA       :
              Plaintiff            :
 4                                 :
                                   :
 5  vs                             :Criminal Action:RWT-04-0235
                                   :
 6                                 :
    LAVON  DOBIE, et al        :
 7                Defendants.      :
    --------------------------x
 8

 9                            Tuesday , December 19 , 2006
                              Greenbelt, Maryland
10
            The above-entitled action came on for a      Motions
11  Hearing  Proceeding before the HONORABLE ROGER W. TITUS,
    United States District Judge, in courtroom      4C,
12  commencing at   2:52 p .m.

13          THIS TRANSCRIPT REPRESENTS THE PRODUCT
            OF AN OFFICIAL REPORTER, ENGAGED BY
14          THE COURT, WHO HAS PERSONALLY CERTIFIED
            THAT IT REPRESENTS THE PROCEEDINGS    , AS RECORDED
15          AND REQUESTED.

16

17          APPEARANCES:

18          On behalf of the Plaintiff:

19          DEBORAH JOHNSTON, Esquire
            BONNIE GREENBERG, Esquire
20

21          On behalf of the Defendant:

22          PETER WARD, Esquire

23

24
    Tracy Rae Dunlap, RPR, CRR                 (301) 344-3912
25  Official Court Reporter
```

```
 1                         I N D E X

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                                 Page

25  Reporter's Certificate                          59
```

1           MS. GREENBERG:   Your Honor, we are here in the

2    matter of United States versus LaVon Dobie; criminal

3    matter number RWT-04-0235.   Bonnie Greenberg for the

4    United States.   With me at counsel table is  Deborah

5    Johnston and task force officer   Thomas Eveler.   We're

6    here for sentencing, Your Honor.

7           THE COURT:   All right.   Counsel, just let me

8    confirm for the record that both sides have had an

9    opportunity to review the presentence report.   Is that

10   correct?

11          MR. WARD:   Peter Ward representing Ms. Dobie, by

12   appointment.

13          Yes, we have reviewed the presentence report,

14   and I filed some exceptions; a sentencing memorandum.

15          THE COURT:   Yes, I have the benefit of that.

16          Now, I have your memorandum dated December 4,

17   2006, Mr. Ward.   That's the memorandum you're referring

18   to?

19          MR. WARD:   Yes.

20          THE COURT:   Okay.   And I also have a copy of

21   your letter to the probation officer of November 6.

22          MR. WARD:   That's correct, sir.   That's the

23   exceptions, Your Honor.

24          THE COURT:   Correct.   And I also have a letter

25   from you to me dated December 10 to which there is

1  attached a number of documents that I have reviewed.
2  In addition, today in the mail I got a letter from
3  Barbara Ann L. Coleman who has written on her behalf.
4       MR. WARD:  Excuse me, Your Honor?
5       MS. GREENBERG:   Your Honor, I didn't get a copy
6  of that letter.
7       THE COURT:   I can just read it into the record.
8  It's very short.
9       MR. WARD:  It's an individual at the jail, Your
10  Honor.  I haven't seen it.
11       THE COURT:   It says, "It's an honor and
12  privilege to write this letter of reference for Ms.
13  Lavon Dobie. I have known Lavon for one year.  We met
14  while we were incarcerated together in Upper Marlboro
15  Womens Detention Center.  Her characteristics
16  consistently portray a person who is dependable,
17  genuine, honest, a self-starter, and very astute to
18  details.  She is definitely the kind of person you can
19  count on.  Her integrity goes beyond questioning.  I
20  have no doubt that you will find her to be a person who
21  deserves leniency in her case and one who deserves      the
22  opportunity for  rehabilitation  with a lesser
23  sentencing.  Sincerely."  That's the entirety of the
24  letter.
25       MS. GREENBERG:  Thank you, Your Honor.

1          THE COURT:   All right .  Is there any
2 disagreement  between  the parties with  respect  to the
3 factual  matters contained  in  the presentence  report ?   I
4 will  separately  address  the  question  of offense  level
5 and criminal  history  category .
6          MS . GREENBERG :  No , Your  Honor .
7          MR. WARD:  With  respect  to factual  matters , I
8 don't  believe  so , Your  Honor .
9          THE COURT:   All right .  Well , I will  adopt  as my
10 factual  findings  the findings  of fact  contained  in the
11 presentence  report .   In reviewing  the presentence
12 report  and your  sentencing memorandum  Mr. Ward , the
13 issues are whether  or not  your  client 's offense  level
14 should  be enhanced  for  obstruction  of justice , whether
15 it should  be reduced  for mitigating  role , and whether
16 it should  be reduced  for  acceptance  of responsibility .
17 Are those  the three  major  issues?
18          MR. WARD:   That  and the offense  level
19 calculation  with  respect  to heroin , Your  Honor .
20          THE COURT:   Well , let me hear  you first  on the
21 offense  level  calculation .
22          MR. WARD:   All right .  Your  Honor , in short , the
23 government  reported  to Mr. Turner , the probation
24 officer , and he reported  in his -- in the PSI that  the
25 amount  of heroin  attributable  to my client  was at least

1  --

2       COURT REPORTER:  You're going to have to repeat

3  that.  I couldn't hear.

4       MR. WARD:  I beg your pardon.  Mr. Turner --

5  first of all, the government reported to Mr. Turner,

6  and Mr. Turner used in the calculations that he made as

7  to base offense level the amount of heroin attributable

8  to Ms. Dobie as "at least one kilogram."

9       The jury found at Paragraph 29 of the verdict

10  form that the amount of heroin attributable to Ms.

11  Dobie was 100 grams but less than one kilogram.  Now,

12  it is our position, as succinctly as possible, that

13  under Apprendi any fact -- I'm talking about a fact

14  having to do with the amount of heroin -- that

15  increases the penalty for a crime beyond the prescribed

16  statutory maximum must be submitted to a jury and

17  proved beyond a reasonable doubt.

18       THE COURT:  Let me ask you this, Mr. Ward.  You

19  have raised an issue with respect to that matter of a

20  presentence report, but am I not correct that under

21  Section 2(D)(1.1)(c)(7), level 26 is appropriate where

22  there's at least 100 grams but less than 400 grams of

23  heroin?

24       MR. WARD:  I think that's correct, Your Honor,

25  but the amount is significant with respect to the

1 mandatory minimum five years as opposed to ten years.

2           THE COURT:  Okay.

3           MS. GREENBERG:  Your Honor, I will shortcut

4 this.  I believe I objected to that.  I said it should

5 be a five-year mandatory minimum.  I've spoken to Mr.

6 McMann about it and we agree it should be five years,

7 not ten years.

8           MR. WARD:  Fine.  Then if we agree -- of course,

9 as the court always points out, the court is not bound

10 by the presentence report and the court has to make its

11 own objective and independent finding.  That is the

12 reason why I raised that particular issue.

13           THE COURT:  Well, the -- I'm going to get to the

14 place to correct in the presentence report.

15           MS. GREENBERG:  Paragraph 60, Your Honor.

16           THE COURT:  Sixty?  Okay.  Thank you.

17           MS. GREENBERG:  Then it continues.

18           THE COURT:  All right.  In Paragraph 16 then it

19 would be at least 100 grams of heroin.

20           MS. GREENBERG:  Yes, sir.

21           THE COURT:  That's what's required there, 100

22 grams.

23           MS. GREENBERG:  Instead of one kilogram.

24           THE COURT:  Instead of one kilogram.  So I'll

25 change it to at least 100 grams of heroin.

1              MR. WARD:   Thank you, Your Honor.

2              THE COURT:   Now, tell me where you want to also

3    affect this on the mandatory minimum.  Or is that the

4    paragraph I need to find?

5              MS. GREENBERG:   Your Honor, then it goes on to

6    Paragraph 148 where it says the minimum term of

7    imprisonment is ten years.  It should be five years.

8              THE COURT:   Okay.

9              MR. WARD:   That affects the mandatory minimum

10   under count one, of course.

11             THE COURT:   Okay.

12             MR. WARD:   Your Honor, let me address, if I may

13   now, the mitigating role increase.  The sentencing

14   guidelines provide for gradations, if you will, of

15   role.  Minimum role calls for a reduction of or a

16   downward departure of up to four levels for a minor

17   role for a downward departure of up to two levels and

18   anywhere in between for a downward departure of up to

19   three levels.  I think that's 3.3(B)(1.2).

20             Your Honor, simply looking at what we've heard

21   this morning, and with respect to one defendant what

22   you will hear later on today, and that is with respect

23   to Ms. Martin, Mr. Whiting, Mr. Bynum and Mr. Goodwin,

24   and you only have to look to the evidence that was

25   presented during the trial with respect to Mr. Goodwin

1  to see that all four of those individuals are clearly

2  in a separate and distinct category, if you will, from

3  my client.

4        My client, I suggest all the evidence shows, was

5  dealing in relatively -- and I say "relatively" because

6  there's been testimony about kilos upon kilos upon

7  kilos in relatively small amounts. I think -- and that

8  was primarily to satisfy her habit. I think even when

9  the amount that was recovered at her house it was

10 something like 11 grams? Something like 11 grams

11 which, as I said, in contrast to the amounts that we

12 have heard is truly an almost insignificant -- not

13 significant but almost insignificant amount.

14       I think if we look to the role of the defendant

15 and my client, Ms. Dobie, and her relationship to Ms.

16 Martin, it appears to me, at least that the crux of the

17 evidence was that my client was considered by Ms.

18 Martin to be somewhat of a nuisance and a pest coming

19 around knocking on the door at all hours of the night

20 looking for drugs and generally creating those kinds of

21 problems.

22       I do recall one specific conversation where Ms.

23 Martin, in a discussion with another individual whose

24 name escapes me at the present time, talked about not

25 letting Becky into your business. In other words, she

1  was , I suggest , and the evidence support s it , outside

2  of the main group of conspirator s in this case .  She

3  was n't a money person ; she was n't arrangi ng kilo

4  quantiti es to be ship ped in from out of state .  If you

5  look at the ledger that was produced that was kept by

6  Ms. Martin , she was pretty much a cash and carry

7  relationship  -- had pretty much a cash and carry

8  relationship , and in really relative ly small amount s

9  consistent  with individual  use .

10        We've had argument s here today and previous ly

11  about  forfeiture s and talk ing about extreme ly

12  substantial  amount s million s upon millions  of dollar s.

13  The government  did not see fit to proceed  against  my

14  client because  as the government  said , she ain't got

15  nothing .  She has no assets  and there is nothing  at all

16  -- there was nothing  at all produced  at trial  and put

17  before  this jury to show that my client  ever benefit ted

18  in any substantial  or financial  way from the activities

19  of which  she was convict ed.

20        The benefit  to her basically  was that she got

21  drug s for herself  out of what she did to satisfy  this

22  long-stand ing habit .  I suggest  therefore , Your Honor ,

23  that she stands  -- that is, my client  stands  a term or

24  of role outside  the circle , the inner  circle  which

25  included  Ms. Martin , Mr. Goodwin , Mr. Whiti ng and Mr.

1  Bynum, and for that reason I would respectfully suggest

2  that she ought to be granted a mitigating decrease to

3  distinguish her role or her participation from the

4  roles and participation of the other people whom I've

5  mentioned.

6          Your Honor, with respect to the assertions of

7  false testimony and acceptance of responsibility. My

8  client took the stand and she testified, I suggest,

9  forthrightly and candidly about the reasons for her

10 involvement in drugs with this group of people and the

11 extent of her involvement in drugs with these people,

12 and she insists and has always insisted, and insisted

13 on the stand, and certainly has insisted to me that her

14 testimony at trial as to her participation was full and

15 forthright and that she accepted responsibility and

16 certainly is willing to accept and always has been

17 willing to accept responsibility for what she did but

18 not for what she did not do and is be a conspirator in

19 this circle involving Martin, Goodwin, Whiting and

20 Bynum and so forth.

21         The government asks for an upward departure

22 based on underrepresentation of criminal history. Your

23 Honor, again I refer to, first of all, the criminal

24 history as it's set out in the PSI and the criminal

25 history to which my client candidly admitted when she

1  was on the stand.  She has never, never had a

2  conviction for any kind of drug trafficking offense in

3  the past.  All of her prior convictions are entirely

4  consistent with her testimony in court, which was that

5  she was a drug abuser and supported herself and her

6  habit by engaging in addict-type crimes: theft, fraud,

7  credit card fraud, that sort of thing.  There's

8  absolutely no drug trafficking background in her past.

9        With respect to the guideline factors, Your

10  Honor, that's all I have at this point.  I would sooner

11  go own on to address 3553 issues.

12        THE COURT:  All right.  Well, let me hear from

13  Ms. Greenberg with regard to the issues you've

14  identified.

15        MS. GREENBERG:  Your Honor, as to the reduction

16  for role, I don't want to repeat what's in my

17  sentencing memorandum.  Quite clearly, the Fourth

18  Circuit has held that someone who sells drugs doesn't

19  have a minor role in the drug conspiracy, and that's

20  been a law of the Fourth Circuit since 1990.  The

21  wiretap transcripts and tapes are very clear that Ms.

22  Dobie distributed drugs to others.  Specifically,

23  there's a series of calls in which she calls Paulette

24  Martin and says she needed drugs for Ms. Martin's

25  nephew, referring to T'avon in a subsequent call.  She

1  -- Ms. Dobie tells Ms. Martin that T'avon had come in

2  and making sure that she got up and out of bed so she

3  would call Paulette Martin to get the tickets. So, she

4  was involved, as the jury found, in distributing drugs

5  and not merely possessing drugs for her personal use.

6  The jury was given that option and they declined to go

7  along with it.

8          In terms of the amount of drugs we're talking

9  about here, 100 grams or more of heroin; five grams or

10 more of cocaine base and a quantity of cocaine. She

11 certainly doesn't have a minor or minimal role in

12 connection with that. When Mr. Ward talks about the

13 overall conspiracy, she's not being tagged with that

14 amount of drugs. She's being tagged with the amount of

15 drugs relating to base offense level 26.

16         Based on her conduct, especially in light of the

17 amount of drugs as a seller and directly obtaining from

18 Ms. Martin a fairly large supplier, I do not believe

19 that she has made out her case for a minor role

20 deduction. As for whether or not a perjury --

21 obstruction of justice enhancement is appropriate for

22 perjury.

23         The court heard Ms. Dobie's testimony, the ever-

24 evolving story continues to evolve as to what Ms. Dobie

25 says about her involvement with Ms. Martin and what she

1 believes is her conduct in this case.  The jury

2 rejected it, clearly, by finding that she possessed the

3 gun -- guns in connection with drug trafficking, that

4 she wasn't taking them away from her son, that she

5 distributed drugs.

6        Even today, Your Honor, I was submitted a letter

7 from Mr. Ward that -- I don't know if it went to the

8 probation officer or not.  I know Ms. Dobie intended it

9 to go to the probation officer.

10       MR. WARD:  Excuse me.  It did not go, and I

11 explained to counsel why, and I'll get to the letter in

12 a minute.

13       THE COURT:  Okay.

14       MS. GREENBERG:  It's directed to him, but now

15 she's saying she talked to Ms. Martin because her

16 husband was trying to get a supplier for Ms. Martin

17 which is, again, another story different from the many

18 stories she's told the jury during the course of her

19 testimony.  I don't think that there's any question

20 here that Ms. Dobie engaged in obstruction of justice

21 through her blatantly false and lengthy testimony about

22 her reasons for these conversations.  What tickets

23 mean; what the cut was for; how she got the guns.  The

24 testimony was replete with false statements that were

25 material to this case.

1          Lastly, Your Honor, as to the under-
2 representation  of criminal history.  The Fourth Circuit
3 has made it quite clear that the court can depart
4 upwards, based on the inadequacy of criminal history to
5 reflect appropriately  the person's background,
6 character  and conduct, to make sure the criminal
7 history category reflects their criminal conduct and
8 the issue of future dangerousness; and I submit to the
9 court that with Ms. Dobie's background, the crimes that
10 she's done, the court should depart upward.
11          I think that her criminal history is reflective
12 of more than a criminal history category six.  I think
13 the court should depart upwards as to offense levels.
14 I think the longer that we -- that Ms. Dobie is away,
15 the safer our society will be.  Her criminal history,
16 detailed in a very thorough probation officer's report
17 by Mr. Mubane, details not only significant offenses
18 but the nature of the offenses.
19          When you read the facts relating to the
20 offenses, it causes one to believe that she should
21 receive an upward departure.  For example, the 1988
22 conviction for possession of a handgun.  Ms. Dobie got
23 zero points for that, and what happened in that case is
24 she was with her husband and an individual named Darryl
25 Evans.  She was with them when they broke down the door

1  of somebody 's house with guns, approached a victim , and

2  with these guns who ran and hid to the basement . When

3  they couldn't find the victim , they approached the

4  victim 's girlfriend about it .  They were pushing and

5  hitting the girlfriend , who was screaming , and finally

6  they got in a silver and gray BMW and left the area .

7          It's when the police officer at 3 a.m. at the --

8  the court may recall that this was a conviction we were

9  trying to introduce as 404(b) that the court excluded .

10 It's when the police officer  at 3 a.m. , approached the

11 car , that he recovered two loaded handguns and

12 cartridges in the car , along with Ms. Dobie , her

13 husband and Mr.  Evans .

14         The second conviction for which Ms. Dobie

15 received zero points for was a 1989 conviction when she

16 was 29 .  She went into a Woodward and Loatrhop store in

17 Annapolis  and was trying to gain entry to a jewelry

18 display case containing approximately $200,000 worth of

19 jewelry , and she was trying to force the lock and an

20 employee came up and she left that particular case and

21 then she tried to jimmy open another case containing a

22 similar amount of jewelry -- of valued jewelry .  The

23 defendant fled the store after she was observed doing

24 that , but that didn't end her criminal conduct .

25         She and a codefendant entered and fled in a

1  white Ford Tempo, and the occupant of that particular

2  vehicle indicated that he was carjacked by the

3  individuals who we're talking about here. Ms. Dobie

4  was positively identified by the person whose car was

5  carjacked, and he remained in the car while he was

6  carjacked and he was in fear for his life at the time

7  that his car was taken.

8           So, again, that's two very serious convictions,

9  very serious incidents for which the defendant got zero

10 history points. And then not only does that continue;

11 there was a conviction when she was 31. There's a

12 number of charges later on for which they were nolle

13 prossed or dismissed or the conduct was -- the result

14 was unknown.

15          Based on the serious criminal history, the

16 government asks that you depart upward to a criminal

17 history offense level six and depart upward one base

18 offense level from the final base offense level found

19 by the court. Thank you.

20          THE COURT:  You would increase the offense level

21 by what?

22          MS. GREENBERG:  By one.

23          THE COURT:  To 29?

24          MS. GREENBERG:  In each of those cases, Your

25 Honor, the two most serious offenses that I've

1    detailed, if they hadn't been time-barred through the

2    more recent conduct they would have been three points

3    and that would have been another two levels; and the

4    Fourth Circuit talks about when the court upwardly

5    departs as to criminal history there should be some

6    mechanism, and three points for criminal history gets

7    your next criminal history level.  But then you can

8    also go up under offense level conduct one more level,

9    since you would then be at the top criminal history

10   level range at level six.

11           For example, if the court were in at a base

12   offense level 26 and added two levels for obstruction

13   of justice, which would be 28, and you were 28,

14   criminal history category five, the court could find

15   that the criminal history is under-represented both on

16   the propensity of the person to commit additional

17   crimes and that the criminal history didn't reflect

18   appropriate  -- the criminal conduct appropriately.

19           You could depart upwards to category six by

20   finding there's three additional points, and then also

21   to base offense level 29, for a final base offense

22   level range of 151 to 188, and that would be the

23   government's request at this time.

24           THE COURT:   That would be as to count one.

25           MS. GREENBERG:    That would be as to count one,

1 Your Honor , and only as to that count .

2          MR. WARD:   Can I respond to that argument , Your

3 Honor ?

4          THE COURT:   Wait .  Which one ?  I want to clarify

5 with her .  So , your position is that I should conclude

6 that she's an offense level 29 and criminal history

7 category six is what you're saying .

8          MS. GREENBERG:   Yes , Your Honor .  Under the

9 upward departure for criminal history , you can depart

10 upwards both as to criminal history category and

11 offense level .

12          MR. WARD:   I'm sorry .  How did we get to 29?  I

13 didn't hear that .

14          THE COURT:   Repeat for Mr. Ward what you said

15 how we get to 29.

16          MS. GREENBERG:   Yes , and I will also give him --

17 on Page 7 of my sentenci ng memo when the court depart s

18 upward , the court can consider depart ing upward as to

19 criminal history category as well as offense level s,

20 and that is under United States versus Louthin, L O U T

21 H I N, which is set forth at Page 7 of the government 's

22 sentenci ng memo , and that 's consistent with the other

23 circuit s that have considered the issue , Your Honor .

24          THE COURT:   All right .  And you're suggest ing a

25 sentence at the upper end of that ?

1          MS. GREENBERG:   Yes, Your Honor.

2          THE COURT:   All right.  Now, just make sure

3 we're all on the same page.  Right now, as to count

4 one, with an offense level of 28, criminal history

5 category of five, we're looking at a guideline range of

6 130 to 162; correct?

7          MS. GREENBERG:   Yes, sir.

8          THE COURT:   You're suggesting on the

9 underrepresentation issue that I should go to offense

10 level 29 and criminal history category six and

11 sentencing range of 151-188; is that correct?

12          MS. GREENBERG:   Yes, Your Honor.

13          THE COURT:   What is your recommendation within

14 that range?

15          MS. GREENBERG:   Your Honor, based on Ms. Dobie's

16 overall history, I believe she talked about a lifetime

17 of being a criminal.  I believe she talked about

18 selling stolen jewelry, involved in Percocet and

19 marijuana, involved in -- from the wiretap

20 conversations, distributing to others including her son

21 T'avon.  I believe that the high end of that range is

22 appropriate at 188, and I also remind the court that

23 there's a five year consecutive sentence based on the

24 use of a firearm in connection with drug trafficking,

25 which is at count 61, I am informed, which would be

1 subsequent to the guideline sentence.

2          THE COURT:  Mr. Ward you wanted to respond.

3          MR. WARD:  Well, I think the basic fault for the

4 government's argument is, first of all, the conduct to

5 which Ms. Greenberg has referred is all set out in the

6 presentence report and it has been assigned zero

7 points.  Now, the reason it's assigned zero points is

8 because the sentencing guidelines say that it should

9 not be -- it should not be assigned any points.  It

10 should be assigned zero points.

11          What the government wants to do is now take that

12 conduct, which the guidelines says should not be

13 considered in terms of criminal history, and have the

14 court consider it in terms of criminal history.  To me

15 that's a ridiculous argument, and it seems to me

16 inviting the court to step into not simply a very foggy

17 area but into clear error, which I would be happy to

18 take down to the Fourth Circuit, and I think even with

19 the Fourth Circuit I might stand a shot at prevailing

20 down there.

21          You know, this the guidelines say there should

22 be no points attached to the very conduct which Ms.

23 Greenberg now refers to in attempting to assign a

24 guideline points to it, that's a circular argument that

25 goes nowhere, and to me is not rational at all.  If the

1  government  is going  to point  to other  conduct  and

2  produce  convinci ng  evidence  in  term s  of  docket s  or

3  certifi ed  docket  entri es  and  so  forth  of  other  conduct

4  that  would  be  considered  under  the  guideline s  that  is

5  not  in  the  pre sentence  report ,  that 's  one  thing ,  but

6  they  haven't  done  that .   They 've  simply  asked  you  now

7  to  consider  what  the  guideline s  say  you  ought  not  to

8  consider  or  you  may  not  consider  because  it 's  been

9  assigned  zero  point s.

10        THE  COURT:   All  right .   First  of  all ,  with

11  regard  to  the  base  offense  level ,  I  conclude  that  the

12  appropriate   level  is  26  before  consideration   of  any

13  departure s.   The  pre sentence  report  had  what  appear s  to

14  be  a  typographical   error .   In  any  event ,  the  base

15  offense  level  for  the  amount  of  drug s  reflect ed  by  the

16  verdict  in  the  case ,  at  least  as  to  heroin  is  fully

17  support ed  at  the  100  gram  or  more  level ,  but  less  than

18  400  grams ,  so  that  the  base  offense  level  is  a  26.

19        The  issue  here  is  as  to  some  of  the  enhance ment s

20  and  whether  there  should  be  any  reduction s  on  the

21  question  of  obstruction  of  justice .   The  pre sentence

22  report  provides  for  a  two  level  increase  for

23  obstruction  of  justice ,  a  position  support ed  by  the

24  government  and  opposed  by  the  defendant .   On  this

25  issue ,  Section  3(C)(1.1)  of  the  guideline s  provides  for

1  a two level enhancement and it's called for under

2  Section 3(C)(1.1) under the sentencing guidelines which

3  appear at pages 334 through 337 of the current version

4  of the guidelines.

5         It's quoted in part in the government 's

6  memorandum at Page 3 which authorizes a two level

7  enhancement:  If the defendant willfully obstructed or

8  impeded or attempted to obstruct or impede the

9  administration  of justice during the course of the

10  investigation , prosecution  or sentencing of the

11  incident offense of conviction ; and (b), the

12  obstructive  conduct related to, (1.)  The defendant 's

13  offensive conviction  and any relevant  conduct , or (2.)

14  Two a closely related offense .

15         The Fourth Circuit has addressed this adjustment

16  and has indicated that for a sentencing court to apply

17  it, based upon an allegation  of perjured testimony , I

18  must find by a preponderance of the evidence   that the

19  defendant  testified under oath and gave false testimony

20  concerning a material matter with the intent -- willful

21  intent to deceive rather than as a result of confusion ,

22  mistake or faulty memory .

23         In this case the defendant  took the stand  and

24  gave testimony  that I observed, as did the jury.  The

25  jury listened  to that testimony , obviously found it

1 wanting in a number of respects, and concluded that she

2 was guilty beyond a reasonable doubt of the offenses of

3 which she stands convicted.

4 In this case the defendant testified under oath

5 as to various matters in which she disputed the use of

6 the word "tickets" as a code word for drugs, testified

7 that the scales and baggies were used for personal use

8 and storing jewelry and not for resale, disputed

9 whether cut was used to cut drugs for resale or in her

10 case she claimed to prevent a drug user's nose bleed and

11 also testified concerning the firearms found under her

12 bed and next to the narcotics and scales, denying that

13 they were used in the furtherance of drug trafficking

14 which the jury did find or was simply were taken from

15 her juvenile son as she testified.

16 I conclude that the adjustment for obstruction

17 of justice is appropriate, because I find from having

18 listened to this testimony by preponderance of the

19 evidence that that testimony was false, that it

20 concerned a material matter, and that she did so with

21 intent to deceive.

22 Therefore, I apply the obstruction of justice

23 enhancement of two levels bringing us to a combined

24 adjusted offense level 28. The defendant also contends

25 that there should be an adjustment for a mitigating

1 role or role in the offense under Section 3(B)(1.2.).

2 3(B)(1.2) authorizes a reduction, and the contention

3 here is that it should be a four level reduction for a

4 person who was a minimal participant in any criminal

5 activity.

6        Under the application notes for Section 3(B)(1.

7 2), it indicates that the minimal participant

8 adjustment applies to a defendant described in

9 application note 3(A) who plays a minimal role in

10 concerted activity.  It's intended to cover defendants

11 who are plainly among the least culpable among those

12 involved in the conduct of a group.

13       Under this provision, the defendant 's lack of

14 knowledge or understanding of the scope and structure

15 of the enterprise and under the activities of others is

16 indicative of the role as a minimal participant,   it's

17 intended that the downward adjustment for a minimal

18 participant will be used infrequently.

19       In this case I conclude that the defendant is

20 not entitled to a reduction or a mitigating role.  The

21 defendant 's argument in support of a four level

22 reduction is not terribly specific, but when one looks

23 at the evidence in this case, as supported by the jury

24 verdict, it is clear that Ms. Dobie obtained drugs from

25 Ms. Martin not merely more for personal use but also

1 for resale, and I conclude that she's not entitled to a

2 reduction for a minimal role in the offense.

3      To the extent that she argues that she's not

4 involved in drug dealing on the level with Ms. Martin

5 that is reflected by the verdict of the jury on drug

6 quantities and is also reflected in the base offense

7 level that's calculated for this case, which is vastly

8 different than that for other defendants such as Ms.

9 Martin.

10      The defendant also argues for a reduction for

11 acceptance of responsibility under guideline Section

12 3(E)(1.1) on Page 1 of the current version of the

13 guidelines. The Fourth Circuit has made it plain that

14 in order to be entitled to such a reduction, the

15 defendant must accept responsibility for all of her

16 criminal conduct and demonstrate by a preponderance of

17 the evidence that she's entitled to the adjustment.

18      It is clear from Ms. Dobie's testimony, as well

19 as from calls that I listened to in this courtroom

20 during the summer, that she appears to be a heroin

21 addict and that she did indeed purchase drugs some of

22 which were purchased for her personal use, and that is

23 good that she admits to being a heroin addict, but that

24 is not to be translated into the same thing as

25 admitting responsibility for her criminal conduct.

1          In this case her admission of possession was
2   reminiscent of that in Gordon in that she does not
3   accept responsibility for being involved in
4   distributing it, and it is a rare case indeed where
5   acceptance of responsibility would be appropriate as a
6   basis for a reduction in the offense level when the
7   government has been put to its proof, as Ms. Dobie did
8   in this case.
9          I find this is not one of those cases where it
10  would be appropriate for a reduction for acceptance of
11  responsibility and I decline to apply that downward
12  adjustment to the offense level. The government has
13  suggested that I depart under the guidelines upward on
14  the basis of the under representation of Ms. Dobie's
15  criminal history, and upward departures are governed by
16  Section 4(A)(1.3) of the guidelines.
17         I have reviewed the presentence report and the
18  criminal history of Ms. Dobie. It is apparent that she
19  has been involved almost continuously in the criminal
20  justice system for an extended period of time. That
21  involvement in the criminal justice system has earned
22  her a criminal history, a category of five, which is an
23  impressive number. It takes a lot of hard work in the
24  criminal justice system to get to five, and the
25  question is whether I ought to conclude that she ought

1  to go upstairs  to a six and go with  the  increase  in  the

2  offense  level .

3        The  prior  convictions  are  laid  out  in  detail  in

4  the presentence  report  beginning  at Paragraph  72  on

5  Page 14 and goes  on for page  after  page  after  page  to

6  conclude  on Page  21 .  Ms.  Dobie 's  criminal  history  is

7  noteworthy  for  the  extent  of  it .  She  has  been

8  consistent ly  involve d  in  the  criminal  justice  system  on

9  a broad  variety  of  grounds  and , as  I said , she's  been

10 hard at work  for  a long  time  committing  crime s  to  get

11 to a level  five , and  some  of  the  crime s  on  this  report

12 don't  count  towards  her  criminal  history  category  in

13 this  case .

14        While  I'm tempt ed  to depart , I think  I have  some

15 discretion  in  this  regard .  I think  it  is  correct  as ,

16 Mr.  Ward  point s  out , that  this  is  not  a long  series  of

17 drug  distribution  convictions  but  an  as sort ment  of

18 convictions  for  a variety  of  thing s , not  all  of  which

19 sound  like  the  type  of  behavior  she 's  engagi ng  in  and

20 has  engage d  in  in  this  case , as  found  by  the  jury .

21        Having  considered  this  history , I conclude  that

22 criminal  history  category  five  is  appropriate , and  I

23 therefore  decline  to depart  upward  as recommend ed  by

24 the  government .  That  mean s  that  for  sentenci ng

25 purpose s  I will  be  sentenci ng  on  the  basis  of  a

1  combine d  offense  level  of  28,  criminal  history  category

2  of  five  and  that  provides  as  to  count  one ,  a  guideline

3  range  of  130-162  month s  and  as  to  count  61,  a

4  sixty-month  term  that 's  required  to  be  consecutive  to

5  all  other  count s.

6          I'll  be  glad  to  hear  from  you ,  Mr.  Ward ,  on

7  sentence .

8          MR.  WARD:   Yes .   Your  Honor ,  let  me  first  refer

9  to  the  letter  I  sent  the  court  on  December  10th  with

10  attachment s.   It's  worth  --  I'm  not  going  to  go  through

11  them  ad  nauseam ,  but  I  think  it's  worth  --

12          THE  COURT:   This  is  your  sentenci ng  memorandum ?

13          MR.  WARD :   No .   I'm  sorry .   This  is  the  letter

14  that  I  sent  on  December  10,  Your  Honor .

15          THE  COURT:   Yes ,  I  have  that .   Okay .

16          MR.  WARD:   We  have  --  this  is  the  numbered

17  paragraph s  I'm  going  to  refer  to.   Paragraph  1  and

18  Paragraph  6,  in  two  instance s  the  defendant ,  Ms.  Dobie ,

19  was  recognize d  for  participation   in  a  program  of

20  speak ing  to  community  member s  who  --  including  young

21  people  who  were  comi ng  into  the  jail  about  the

22  realiti es  of  jail  life  and  the  consequence s  of  illegal

23  activities  and  behavior s.   And  she  --  as  Your  Honor

24  point ed  out ,  Ms.  Dobie  has  an  extensive  and  consistent

25  --  has  had  extensive  and  consistent  contact  with  the

1 criminal  justice  system .   And  certain ly  if  anybody

2 know s  what  it 's  about  and  what  devastation   it  can  cause

3 in  one 's  life , Ms.  Dobie  certain ly  know s  that .   I  think

4 it 's  commendable   that  she  took  it  upon  herself  to  try

5 to  point  out  to  other  young  impressionable   people  what

6 the  kind  of  life  that  she  has  led  can  lead  to  and  in

7 this  case  is  lead ing  to .

8         There  were  a  couple  of  other  letter s , Your

9 Honor .   Number  two  --  item  number  two  and  item  number

10 three , both  letter s  from  former  inmate s  at  the  Prince

11 George's  County  Detention  Center  who  note  the  kindness

12 and  the  advice  and  the  assistance  that  Ms.  Dobie  gave

13 to  them  while  she  was  incarcerate d .

14         THE  COURT:   To  which  you  can  add  the  one  I  read

15 at  the  beginning  of  the  proceed ings  today .

16         MR.  WARD:   I'm  sorry ?

17         THE  COURT:   To  which  you  can  add  the  letter  that

18 I  received  today  and  read  into  the  record  from  Barbara

19 Coleman .

20         MR.  WARD:   Oh , yes .   So  she 's  not  just  sat  back

21 in  her  cell  and  ponder ed  her  like ly  fate  in  this  case .

22 She  has  been  do ing  positive  thing s  by  try ing  to  deter

23 other s  from  the  kind  of  life  that  she  has  --  I  can't

24 say  enjoy ed  --  experience d , let 's  put  it  that  way .   A

25 significant   event , Your  Honor , is  number  five , the

1  document which confirms that she was enrolled in the

2  institution's trustee program as of January 11, 2006.

3  I am told that it is highly unusual for a federal

4  detainee to be accepted and awarded the role of

5  trustee, and I think clearly that shows some

6  exceptionally favorable conduct on her part.

7           You will note, Your Honor, in Paragraph 7(A)

8  that my client received an award for successfully

9  completing an eight-week relapse prevention group in

10  moral recantation -- carnation therapy dealing with

11  drug addiction, and then in Paragraph 9 she also

12  received a certificate for completing a 28-day program

13  addressing, number one, the drug addiction that she has

14  experienced and, number two, tied necessarily with it

15  the impact that it has had on her life.

16           In Paragraph 11, while she was at the Montgomery

17  County Detention Facility -- I, of course, remind the

18  court that she's been in custody since the very day she

19  was arrested -- she participated in -- also in a jail

20  addictions program on moral recarnation therapy program

21  and was a volunteer, hard worker and representative on

22  the inmate council, and she was given a favorable

23  institutional report.

24           Furthermore, and finally, in Paragraph 12, she

25  received a certificate of accomplishment in September

1  2004 by the inter denomination al parent ing workshop

2  ministry for having complete d the requirement s for the

3  August Christian parent ing workshop .

4       So , although she has been confine d, Your Honor ,

5  since the date of her arrest , she has not sat idle .

6  She has done construct ive and positive thing s for other

7  people in term s of , as I said , lay ing out the danger s

8  and pitfall s of the kind of drug addict ed life that

9  she 's had , but she 's also tri ed very hard to benefit

10 herself examining in the drug program s the kind of

11 factor s that go into mak ing one an addict and the

12 factor s that go into mak ing one someone who can

13 over come addiction .

14      Now , I have a letter here today that I gave a

15 copy to the government , and it is -- was sent to me ,

16 forward ed to Mr. Mubane, the probation officer .  It was

17 date d October 26 , and before I had the opportunity to

18 send it I spoke to Ms. Dobie after receiving another

19 letter from her and she asked me not to send it because

20 there is -- there are matter s in the letter which are

21 so personal and upsetting to her that she did not want

22 them , if you will , spread on the public record in term s

23 of being included or quoted in a pre sentence report and

24 the like .

25      I've given the government a copy of this letter ,

1 Your Honor.  I would like to give the court a copy.  A
2 lot of what's in this letter has already been referred
3 to by me, but there are certain parts of it that I
4 would like the court to -- my client would like the
5 court to consider in imposing sentence in this case.
6            THE COURT:  You want to give me just a second so
7 I can read it?
8            MR. WARD:  Yes, of course, Your Honor.
9            THE COURT:  Let me take a look at it.
10            MR. WARD:  Let me just say, if I may, the part
11 I'm referring to that she did not want spread on the
12 public record is the paragraph that begins on Page 2 --
13 the second page, "Also I failed to inform you,"
14 etcetera.
15            THE COURT:  All right.
16            MS. GREENBERG:  Your Honor, I would suggest the
17 court read the entire letter.
18            THE COURT:  I'm going to read the entire letter.
19            MS. GREENBERG:  Thank you.  Note
20            THE COURT:  All right.  I've finished the
21 letter.
22            MR. WARD:  Thank you, Your Honor.
23            THE COURT:  Do you want this back?
24            MR. WARD:  Well, I would ask the court perhaps
25 to keep it in the court's file so that it's not in the

1  public  file .

2        THE  COURT:   All right .   I  can  do  that .

3        MR.  WARD:   First  of  all ,  the  part  that  I

4  certain ly  can  mention  and  I  feel  free  to  mention  to  the

5  court  and  with  my  client 's  authorization  is  the  fact  of

6  the  abuse  --  physical  abuse  that  she  suffered  at  the

7  hands  of  her  husband ,  which  was  ongoing  for  some  year s,

8  and  the  fact  that  --  I  believe  she  testifi ed  to  this

9  also  that  it  was  after  meet ing  Mr.  Dobie ,  who

10  subsequent ly  became  her  husband ,  that  she  was

11  introduced  to  cocaine  and  heroin  and  the  general

12  criminal  milieu  in  which  she  was  living  and  operati ng

13  for  so  many  year s.

14        With  respect  to  the  matter  on  Page 2, Your

15  Honor ,  at  the  top .   I  want  to  be  care ful  what  I  say

16  because  I  don't  want  to ,  you  know ,  go  into  details

17  here .   But  I  can  tell  the  court  that  when  I  met  with

18  Ms.  Dobie  after  having  received  this  letter  and

19  discuss ed  it  with  her ,  it  was  a  very  emotional  meet ing ,

20  and  Ms.  Dobie  broke  down  and  cri ed  and  confide d  in  me

21  about  some  of  the  factor s  mention ed  here .

22        I  know  that  the  court  can  appreciate  the  long

23  lasting  sequela  of  the  kind  of  conduct  that  is  talk ed

24  about ,  the  shame  and  the  embarrass ment  accompani es  that

25  kind  of  conduct .   I'm  no  psychologist ,  and  my  client 's

1  no psychologist , but she feels -- and it sounds

2  rational and reasonable to me -- that perhaps those

3  experience s have somewhat colored her life . Not

4  somewhat . I think they have extensively colored her

5  life and perhaps contributed to the self- defeat ing

6  habit of taking drug s that she 's had for so many year s.

7          As I said , that is something that she has --

8  that is , the drug habit is something that she has taken

9  very positive step s to address and to understand and to

10 try to over come , and Ms. Dobie tells me that since this

11 letter of October 26 , she has entered into a

12 therapeutic program at the Prince George's County

13 Detention Center on a regular basis to address the

14 issue s that are discuss ed and that she is on medication

15 which is design ed to decrease her depression . God

16 know s anybody in her position , having been in jail for

17 two year s plus , would be depress ed, but I'm talk ing

18 about the specific kind of depression , Your Honor , that

19 accompani es the kind of the or result s from the kind of

20 circumstance s that are related .

21          Address ing the 3553 factor s. We've talk ed about

22 the nature and circumstance s of the offense . I've just

23 address ed some factor s about my client 's history --

24 personal history .

25          As for the seriousness of the offense .

1 Certainly what she has been convicted of is -- are

2 serious offenses.  But again I ask the court to

3 consider them in the context of the whole scheme, if

4 you will, and her relationship to the whole scheme as

5 compared to Ms. Martin and others so that the court has

6 sentenced and will sentence later on today.

7        The question of deterrence obviously is a factor

8 that always has to be considered by a court in imposing

9 sentence.  That is deterrence not only of my client as

10 far as future criminal conduct is concerned but the

11 deterrence of others, and I would point out with

12 respect to deterrence that again I would point out that

13 she has no criminal history of trafficking in drugs in

14 her past.

15       She's a junkie.  Certainly she's bought drugs

16 and certainly she's used them, but she has no

17 convictions anywhere for that kind of conduct in the

18 past, and I think that that is a fact you can consider

19 with respect to deterrence of her protection of the

20 public from further crimes.

21       Your Honor, looking at the defendant's past

22 criminal history as you have, I know, and studying it,

23 she has never before found herself in a situation,

24 thank God, like this, and she has never been, I don't

25 think even when she's been convicted, served the two

1  years plus that she has served in this case so far.

2          I believe, based on my conversations with her,

3  that what she has experienced so far and what she

4  stands to face today as a consequence of the court's

5  sentence has had and will have a very dramatic effect

6  on her life and the conduct of her life in the future.

7          As far as educational and vocational training.

8  Certainly that's something that my client could benefit

9  from. I might say I've been impressed -- I think she's

10  a very intelligent individual. Obviously, she did

11  stupid things in this case, but I do think she's an

12  intelligent individual, and I do think she can benefit

13  from the kinds of opportunities she will have with

14  educational and vocational training.

15          But I think most significant she will have the

16  opportunity for the kind of medical care or the kind of

17  psychological attention that I think she -- well,

18  number one, that she has already embarked on, and

19  certainly she will need to continue for probably some

20  substantial period of time in order for her to overcome

21  the kinds of sequela that I talked about in the letter.

22  And I expect that while she is in federal prison, she

23  will avail herself of those opportunities and do

24  everything she can to get herself back on track.

25          Your Honor, there's only one further thing I

1 want to bring to the court's attention, and I frankly

2 don't know the answer to this. The government, because

3 of the fact she has been a trustee at the Prince

4 George's County Detention Center, has earned some good

5 time. Certainly if she had been in federal custody

6 serving a sentence of imprisonment all along, she would

7 have earned some good time and she tells me she's aware

8 of other cases where a court has recommended to the

9 Bureau of Prisons that she be given allowance for

10 whatever good time she earned while being held as a

11 federal prisoner in state custody, and I would ask the

12 court to respectfully consider doing that.

13      Now, Ms. Dobie, you have an opportunity to say

14 anything you wish right now to Judge Titus with respect

15 to what sentence he should impose in this case. Do you

16 have anything that you want to say to the judge at this

17 time? And if you do, just stand and tell the judge

18 whatever you want to tell him.

19      THE DEFENDANT:   I would like to first apologize

20 to my family and the courts. I can't change the past,

21 but I know that if given the opportunity to return to

22 society, I would never be involved in nobody else's

23 conspiracy case. I know drugs and alcohol is a direct

24 result of why I stand before you today. Despite the

25 jury's finding, I testified truthfully.

1          I'm a drug user.  I purchase d cocaine  from  Ms.
2  Martin  for  my  personal  use.   I  testifi ed  in  April  of
3  '05 that  I had  no knowledge  of  that box.   I can  say,
4  Your  Honor , had  it  be  11  grams  of heroin  in  my  home,  I
5  would  have  use d  it.   Had  they  pursue d  Mr.  Dobie , I
6  would  have  testifi ed  that  the  11  grams  was  not  mine.   I
7  had  no  knowledge  of  it.   If  they  decide  to  do  that
8  today  or  tomorrow , my  testimony  would  be  the  same.
9  They  said  they  found  some  cocaine  in  another  bedroom
10  where  James  Parker  and  Anthony  Cart er  was.   If  they
11  pursue  them , I'll  come  in  here  and  testify .   They
12  should  receive  the  time  if  this  is  what  they  found.
13          Ms.  Martin.   I  wish  I would n't  have  never  met
14  her.   It's  too  late  for  that  now.   Never  would  I  have
15  set  at  this  defense  table  with  those  six  other  people.
16          I  would  have  taken  responsibility  for  those
17  gun s.   Whether  they  believe  it  or  not , I  gave  you  the
18  truth.
19          Mr.  Dobie , the  wiretap s  state s, nephew  asked  him
20  did  he  find  out  anything  during  his  12  year s of  being
21  incarcerate d  in  the  federal  system.   He  be friend ed  some
22  people  that  could  get  some  drug s.   And  Ms.  Martin
23  inquired , yes.   I  knew  that  she  had  inquired ; I  re lay ed
24  the  message , Paula  want  to  know  did  you  find  somebody.
25  But  know ing  somebody  that  Ms.  Martin  could  purchase

1 some cocaine from, some kilos, I had no knowledge of

2 that. I know that they know this today. It was rough

3 in the beginning when I first got locked up on this

4 case because it wasn't my charge.

5       As far as me using, as far as some of those

6 scales and stuff being in my home. Yes, my husband

7 having a connection that he could possibly do something

8 for Ms. Martin? I was aware of that. I even relayed

9 the message to him. It never jumped off. The person

10 never got out the halfway house.

11      Most importantly, if I could take back not only

12 this case, I would go further. I've made some mistakes

13 in parenting. I never gave my son any drugs. My son

14 did not catch a charge until after my arrest. The same

15 person that was in that BMW in 1988 or '89 that the

16 paperwork says Darryl Evans is the same Danny Evans I

17 met on that stand.

18      I've done a lot that I'm ashamed of that and I

19 regret whole heartedly. I know this. Whether I go

20 home five years from now, ten years, or die in the

21 penitentiary, I die a different woman than I came into

22 custody. For that I say, thank you to the same people

23 that prosecuted me.

24      I now have addressed some other issues that I've

25 had bottled up for so long. I've been told that it had

1 something to do with it. I'm not going to blame it and
2 say that this is why I did that. Maybe it contributed,
3 I don't know. I'm not a psychiatrist but I know today
4 it feels different. It's like I'm not holding on to it
5 anymore.

6         As far as my marriage. I don't blame all of my
7 negativity on Mr. Dobie, because I had a choice.
8 However, out of love, whatever, I made some poor
9 choices to. Today I'm in the process of getting a
10 divorce. I started filing for it last year. I want no
11 part of this lifestyle. If there's such a thing of
12 retiring from an illegal lifestyle, I'm retired.

13         I've explained to my codefendants, call it what
14 you want, snitching, whatever. We go back on appeal, I
15 don't want to sit at that table. I don't want all
16 those kilos of cocaine that I've been convicted of
17 today to belong to me when they really didn't.

18         God knows Ms. Ali's family has to feel
19 something. I know what I've done to my mother. My
20 mother asks me every time she comes to see me, you
21 chose Paula over your family. It wasn't a matter of
22 choosing Paula. I embraced the illegal lifestyle. The
23 people get killed for telling. The only thing I could
24 have told the government was I purchased. I wasn't
25 involved, so I didn't know her connects or anything

1  like  that ;  however ,  I  felt  the  same  lifestyle  that  I

2  embrace d  that  didn't  allow  me  to  meet  with  the

3  government ,  I  felt  that  Ms.  Martin  should  have  taken

4  responsibility   and  not  been  on  this  defense  table  with

5  us.  I  can't  change  that .

6          I  know  for  certainty  you  all  --  I  don't  pose  a

7  threat .  Whenever  this  is  over ,  I  get  to  know  today  who

8  LaVon r eally  is.  I  can  do  something  different  than  use

9  drug s.  This  last  two  year s  has  been  a  rude  awake ning .

10  I  may  not  never  see  my  mother  again  alive .  My

11  grandmother ,  who's  93,  that  I  spoke  of ,  I've  accept ed

12  the  fact  I  probably  won't  ever  get  to  put  my  arm s

13  around  her  because  of  my  poor  choice s.

14          I  mean ,  one  would  never  understand   or  could

15  imagine  the  magnitude  of  my  sincerity .  Yes ,  I've  made

16  some  mistake s.  I've  never  carjack ed  anyone .  The

17  charge s  were  dropped  because  the  guy  was  paid  $200 .

18  When  they  search ed  him ,  everything  I  told  them  about

19  the  ring  and  all  that  was  there .  I'm  not  deny ing  my

20  past  criminal  history  at  all .  It's  probably  some

21  thing s  listed  that  I  didn't  do  or  that  I  pled  guilty

22  to.

23          Most  important ly,  I'm  willing  to  say  it's  some

24  crime s  I've  committed  and  gotten  away  with.  I  know

25  today  that  the  government  is  justifi ed  for  the  picture

1 they've painted.   However, God knows if we could do

2 this all over again, I wouldn't be on this side.   I

3 don't ever want to stand in front of you or another

4 judge for something I've done or didn't do, and I ask

5 that you at this time be as lenient as possible not

6 because I'm saying I didn't do this or I didn't do

7 that.

8        I think I'm worthy of a second chance at life,

9 and that's what I'm asking for.   I don't want to miss

10 no more funerals, and I know that I'm going to have to

11 because of my poor choices.   It's been hard.   The

12 marshals can verify I've been -- literally, me and Ms.

13 Martin have literally went at it.   This is not the

14 lifestyle I want to be in anymore.   This same lifestyle

15 makes me stand here today, I may walk out of this

16 courtroom with 20 or 30 years not because I was guilty

17 but because I did some poor things.

18        I made some poor choices.   I blame it strictly

19 on my drug habit.   I nodded my way -- when I stood up

20 on that stand, I nodded my way into an investigation; I

21 literally mean that.   Drugs have caused me to be a part

22 of this investigation.   I've caught many drugs in

23 society.   I didn't become a part of somebody's

24 investigation, even down to the part about the

25 insurance case.   Today I know a whole lot of things

1 more about the lady I got connected to by the hip that
2 I really did not know, and it's a blessing that I'm not
3 standing here on murder charges or conspiracy charges,
4 and I believe that wholeheartedly.
5         Ms. Johnston stated when she came over there, I
6 know you've become bitter. You can't imagine how
7 bitter I really am, but I still have to accept
8 responsibility. If I wasn't using, it wouldn't have
9 been a connection, because I didn't know her business.
10 It was Ms. Levi's name that Mr. Ward failed to remember
11 that stated, I don't want Becky in your business or
12 something to that extent.
13         I'm not going to sit here and go back over each
14 telephone call. What I will ask you is to allow me to
15 have my time that I've already done. I ask that you
16 apply it to both sentences, the consecutive five for
17 the handguns. I ask that you order me to participate
18 into another drug program if I'm going to be locked up.
19 I can't get more than I'll need, because I don't want
20 -- ever want to use again, and I've never said that.
21 I've never even -- even the certificate I was sincere
22 about it while I was there, but I've never made up my
23 mind that I never want to use again.
24         I know that I won't stand before you or any
25 other court again, if given the chance to return to

1  society , and I accept  full  responsibility   for  those

2  gun s .  The jury didn't believe  where they came from .

3  To be honest  with you , if  the  same  situation  happened

4  tomorrow  and  I was  home , I  would  take  them  not  only

5  from  mine , but  any  youth s .  I put  the  gun s  under  that

6  bed not  know ing a white  box  was  under  the bed with 11

7  grams  of heroin .

8        Today  I think  Mr. Dobie  should  have  been  here ,

9  not  as a spectator  but  as a defendant , because  if those

10  were  actual ly 11  grams , they weren't  mine .  Those  eight

11  grams  of cocaine , my  brother  and  Mr.  Dobie 's nephew , my

12  nephew  through  marriage , they  should  have  stay ed --

13  they  should  have  been  here  as a defendant  for  those

14  item s .  I was  bitter  at  those  people , but  I had  to take

15  a look  at my  behavior  and  what  contributed   to me being

16  in  this  lifestyle .

17        My  apologi es  not  only  to my  family  but  to the

18  court , because  initial ly when  I came  into  custody  my

19  attitude  stunk .  I wasn't  trustee  material  two  year s

20  ago .  The  court  will  remember  I had  difficulty  at

21  different  place ment s because  of that .  My  letter s -- in

22  every  letter  I begged  Ms. Martin  to  cut  me  loose  or

23  anybody  else  that  was  truly  innocent .  I could  never  do

24  what  Ms. Martin  allow ed  to anybody  if -- I could  never

25  allow  somebody  else  to  take  my  weight .

1          I have gained so much knowledge  about  the  law
2  being  on  this  conspiracy  case .  Mr.  Ward  stated  it
3  best .   My  past  criminal  behavior ,  Judge  Titus ,  didn't
4  consist  of  anything  like  this .   I  didn't  carjack
5  anybody .   I  stole  jewelry  and  I  stole  fur  coats;  I've
6  participate d  in  credit  card  fraud .   I  could n't  have
7  been  a  dope  seller .   I  use  dope .   I  could n't  have  made
8  a  good  hustler  as  far  as   drugs .   I  don't  want  to  be  a
9  thief  anymore .   I  can't  change  what  I  did ,  but  I  know
10  that  your  wife ,  the  next  door  neighbor  would n't  be  in
11  harm 's  way  whenever   I  return ed  to  society .
12          I  ask  that  you  send  me  somewhere  my  mother  would
13  be  at .   If  you  have  any  authorization ,  allow  me  to
14  remain  somewhere  on  the  east  coast .   My  mother  is
15  single ,  my  grandmother 's  93,  and  they  can  get  in  the
16  car  and  come  see  me.   I  accept  whatever  sentence  you
17  render  and  I  hope  I  would  be  able  to  deter  just  one  of
18  those  kids  that  I  talk  to  to  prevent  them  from  going
19  through  this ,  it  was  worth  the  experience .   Because  if
20  I  could  do  it  all  over  again ,  I  would n't  be  a  defendant
21  in  nobody 's  case  and  I  would n't  have  a  criminal  history
22  like  this ,  because  I've  had  the  potential  all  my  life
23  to  do  something  different ,  and  it's  sad  and  I  accept
24  that .   Today  is  not  about  just  possess ing  the
25  potential ,  it's  about  doing  something  with  it ,  and  I

1 ask for another chance in life.

2          THE COURT:   All right.   Thank you.   Ms.

3 Greenberg.

4          MS. GREENBERG:   Your Honor, I'll be brief.

5 What this case has shown us with respect to Ms. Dobie

6 is that she's a liar and she's a manipulator.   The

7 court already went through the lies supporting the

8 perjury enhancement.   She continues to lie through

9 these letters, the letter that the court read about now

10 saying what involvement Mr. Dobie had in trying to be a

11 supplier to Ms. Martin when she thinks it will benefit

12 her.

13          She lied to the jury and to the probation

14 officer when she said she was a drug counselor at the

15 Charter Behavioral Center in Rockville, Maryland.

16 Well, probation located the only place which has a

17 close name, Center for Behavioral Health, and Ms. Dobie

18 was not employed there.   She's a liar and manipulator.

19          MR. WARD:   Your Honor, I'm sorry.   I don't like

20 to interrupt counsel, but that's not appropriate

21 behavior.   She has no proof of that.   My client was a

22 drug counselor, and I ask the court to simply ignore

23 the remarks of counsel.

24          MS. GREENBERG:   Your Honor, it's at Paragraph

25 184 of the presentence report, probation officer's note

1  says as follows:  From 1998 to 2001, the defendant

2  stated she was employed as a drug counselor at the

3  Charter Behavior Center located in Rockville, Maryland.

4  Reportedly, she resigned from this position after she

5  relapsed on cocaine and was arrested for a new offense.

6  We were unable to locate a treatment program operating

7  under the name provided by Ms. Dobie, however, the

8  Center for Behavioral Health located in Rockville,

9  Maryland and an employment verification request was

10  submitted.  The program reported Mr. Dobie was not a

11  prior employee.

12        Your Honor, that just adds to the wealth of lies

13  that we've seen in this case.  Ms. Dobie has an

14  incredible criminal background.  As the court noted, it

15  involves violence, it involves fraud, it involves guns.

16  She's not a junkie, Your Honor, she's been found to be

17  a drug dealer.  I seriously don't think that the

18  factors set forth in 3553 are addressed by the high end

19  of the sentence, which is 13 years, six months, and

20  then you add on that the five years consecutive

21  sentence, but it's a good amount of time.

22        I do think the defendant deserves more, and it

23  is within the court's discretion, but I ask the court

24  to exercise its discretion now and sentence Mrs. Dobie

25  to the high end of the guideline range and in adding

1 the five years consecutive for the  gun offense .  As for

2 whether  or not  she should  get  credit  for her

3 involvement  in activities  at a state  facility , that

4 will  be up to the Bureau  of Prisons to determine .  As

5 the supreme  court  has found , the Bureau  of Prisons is

6 to determine  any credit  for time  served, and I believe

7 she can consult  with  them about  whether  they  can

8 address  that .

9         Nothing  further , Your  Honor .   Thank  you .

10        THE  COURT:   Mr. Ward , do you want  to add

11 something ?

12        MR. WARD:   Your  Honor , they  were  unable  -- the

13 probation  officer  was  unable  to find  a program

14 operating  under  the  name  of  the program  she was  in.

15 That 's entirely different  than  saying  she never  was  a

16 drug  counselor .

17        THE  COURT:   Well , can you clear  up the question

18 that  she 's raised?

19        MR. WARD:   Yes , she worked at Charter  Behavior,

20 which  is what  she said , behavioral  center .  That  is a

21 business  that  changed  its  name  to Potomac  Ridge .   Now ,

22 I don't know  where  the  --

23        THE  COURT:   Tell  me the name  changes.  Tell  me

24 the names again .   It started as what ?

25        MR. WARD:   It was  Charter  Behavior  Center  --

1  Behavioral  Center.

2          THE  COURT:   All right.

3          MR.  WARD:   The  name  changed  to  Potomac  Ridge,

4  and  she  worked  there  for  a  Lynn  Smith,  L Y N N  Smith,

5  who  was  her  immediate  supervisor.   The  fact  that  they

6  could  not  locate  that  institution  doesn't  mean  to  say

7  that  it  didn't  exist.   These  places  go  out  of  business

8  all  the  time  for  whatever  reason,  or  are  absorbed  into

9  other  places  for  whatever  reason.

10          THE  DEFENDANT:   Your  Honor,  the  place  isn't  out

11  of  business.   It's  a  very  reputable  place  in  Rockville,

12  Maryland.   I  can't  remember  the  exact  address  but  it

13  was  Charter  Behavioral  Center  when  I  worked  there.

14  They  treat  the  duly  diagnosed  --  I  worked  as  a  drug

15  counselor  for  the  juveniles  as  well  as  the  adults.

16          After  reading  the  PSI  report,  I  learned  that  the

17  place  is  now  called  Potomac  Ridge.   It's  still  in

18  existence  today.   My  immediate  supervisor  when  I  was

19  there  was  Lynn  Smith,  who  resigned  and  became  a

20  director  at  Crownsville  in  Second  Genesis,  and  this

21  information  can  be  verified.   If  you  was  to  call  a

22  recess  right  now,  your  clerk  or  somebody  could  retain

23  that  information.

24          When  I  met  with  the  PSI  reporter,  I  couldn't  --

25  I  didn't  have  knowledge  that  the  place  had  changed  its

1  name , but it's still in existence now .  I've seen a

2  Shannon Yarborough who I was her counselor at the time

3  come through Prince George's County as a detainee since

4  I've been there , and I've learned since October meeting

5  with Mr. Mubane that that is the name now , Potomac

6  Ridge .

7         As a matter of fact  , Your Honor , I'm more than

8  sure that an abundance of paperwork that was seized

9  from my home and it had some W-2 forms in it and it

10  stated there Potomac Ridge .  I know for a fact that the

11  government knows that LaVon Dobie did have a job at one

12  time or another .  I'm not talking about any falsified

13  W-2 forms .  The Internal Revenue can run that Social

14  Security number and confirm that I worked at that

15  place .  I got that job in '98 after leaving the prison

16  system , and they hired me due to my drug experience ,

17  and I came out of prison .  I was truthful , and that's

18  how I got the job .  I was even asked to go with my

19  supervisor , Lynn .  She would have hired me at

20  Crownsville Second Genesis , and I declined to go and

21  stayed on with Charter Behavioral .

22         THE COURT:  All right .  Anything further ?

23         MR. WARD:  No , Your Honor .

24         THE COURT:  Counsel, what I was waiting for was

25  the speedy computers of the State Department of

1  Assessment s and Taxation  online  to tell  me  about

2  Charter  Behavior  Health  System  at Potomac  Ridge , Inc.,

3  which  is an entity  incorporated  in Maryland , and that 's

4  the full name . It has -- it was -- there  was a merger

5  of Charter  Fairbridge  Behavioral  Health  System s into

6  Charter  Behavior  Health  System  at Potomac  Ridge, Inc.,

7  the entity  was create d in 1994.  Certain ly sounds  like

8  they there  may very  well  have  been  a Charter  Behavioral

9  System  that is using  Potomac  Ridge  as a name .

10        I do not consider  this to be particular ly

11  material  to the disposition  of this case , but it

12  certain ly sounds  entire ly possible  that that is the

13  case with regard  to this entity .  If I had more  time

14  with the State  Department  of Assessment  and Taxation  I

15  could  get more  information , but it does  look  like there

16  is a relationship between the name    Charter  Behavioral

17  Center and  Potomac  Ridge .  I'm not going  to give too

18  much weight  to the question  of whether  she did or

19  didn't  work  as a counselor  there .

20        Let me proceed , then , to the question  of

21  sentence .  I'm required  to consider , under  Section  3553

22  of Title  18 of the United  States  Code , a number  of

23  factor s, and I will do that .  One of the factor s I'm

24  required  to consider  and will  consider  is the range  of

25  sentence  under  the sentenci ng guideline s, which  in this

1    case with respect to count one is a range at the level

2    that I have found of 28 and criminal history category

3    five of 130 to 162 months.  The range on the guidelines

4    for counts 34, 47, 50, 53, and 57 is 48 months per

5    count; and on count 61, that has a mandatory minimum

6    which translates into a recommended guideline of 60

7    months consecutive to all other counts.

8           The nature and circumstances of this case are

9    that the defendant stands convicted in the conspiracy

10   which is significantly broader than her participation

11   in it, and that lesser involvement in the conspiracy is

12   reflected by the drug quantities attributed -- as being

13   reasonably foreseeable to her participation in the

14   conspiracy.  So, she certainly does not stand before me

15   with the same circumstances as Paulette Martin did

16   earlier today, but that does not minimize the fact that

17   she was associated with Paulette Martin, an association

18   that she understandably now regrets, but that

19   association led to involvement with multiple types of

20   drugs, and she stands convicted of participation in

21   that conspiracy.

22          The history and characteristics of the defendant

23   are sad, to put it mildly.  She's had a troubled

24   childhood, as has been communicated to me today by her

25   very capable counsel, Mr. Ward, and she's had a very

1 extensive  involve ment  in  the  criminal  law  system

2 earning  her  a  criminal  history  category  five .   It's

3 significant  that  she  could  manage  to  get  that  high  a

4 criminal  history  category  over  a  relative ly  short

5 lifetime , because  as  she  come s  before  me  today , she  is

6 only  46   year s  old .

7         I'm  required  to  consider  the  need  for  the

8 sentence  imposed  to  reflect  the  seriousness  of  the

9 offense .  I'm  satisfi ed  that  a  sentence  under  the

10 guideline s  system , especially  with  the  consecutive  time

11 required  by  count  61 , will  accomplish  that .   I'm

12 required  to  consider  the  need  to  promote  respect  for

13 the  law , and  I  believe  that  a  significant  sentence  is

14 required  to  do  that  and  to  provide  just  punish ment  for

15 the  offense .

16         I'm  also  required  to  consider  the  need  to  afford

17 adequate  deter rence  to  criminal  conduct , and  those  who

18 participate  in  activities  of  this  nature  and  stand

19 con victed  of  it  need  to  understand  that  there  must  be

20 consequence s  to  this  form  of  conduct .

21         I'm  required  to  consider  the  need  to  protect  the

22 public  from  further  crime s  of  the  defendant , and  I

23 believe  a  period  of  incarceration  that  is  significant

24 is  required  to  do  that .

25         I'm  required  to  provide  --  to  fashion  a  sentence

1  that will provide the defendant with needed educational

2  or vocational training, medical care, or other

3  correctional treatment in the most effective manner.  I

4  believe that there is great hope that Ms. Dobie's

5  participation in the programs of the Bureau of Prisons

6  will be precisely what is needed to help her, and in

7  light of her very troubled background.

8         I have been to a federal woman's prison and I

9  have seen the facilities and programs that are

10  available.  I know that Ms. Dobie professes to be

11  serious about wanting to address her past and to

12  receive counseling.  There are psychologists in every

13  federal prison who can help people in addressing

14  things.

15         It is obvious that Ms. Dobie has become addicted

16  to drugs.  It was rather dramatic listening to some of

17  her telephone recordings and the way her speech sounded

18  that she obviously was under the influence of drugs --

19  could hardly stay awake during one phone call, and

20  therefore I conclude that, as unpleasant as it may be

21  to be in prison, that it's going to provide an

22  environment in which it's going to be possible for Ms.

23  Dobie to receive the kinds of help that I think she

24  deserves.

25         I'm required to consider the need to avoid

1  unwarranted sentence disparities, and I believe the
2  guideline sentence will obviously facilitate that, and
3  the need to provide restitution to any victims.  In
4  this case there is no identifiable victims but, once
5  again, others to whom drugs are distributed, and those
6  who may be on the receiving end of criminal conduct
7  that is engaged in to feed drug habits are victims and
8  while I can't order restitution.
9        I have to consider the need to protect these
10 people.  Accordingly, I will impose a sentence on count
11 one of 146 months; on counts 34, 47, 50, 53, 57 of 48
12 months on each count to run concurrent to each other
13 and to count one; and on count 61 I will impose the
14 required sentence of 60 months, which will be
15 consecutive to all other counts.
16       I'm going to make a recommendation to the Bureau
17 of Prisons, which I don't think really is necessary,
18 but that Ms. Dobie receive such psychological
19 counseling as may be available to her, and that as she
20 nears the end of her sentence that she -- if she's
21 otherwise eligible, to participate in any residential
22 drug abuse program for which she may be eligible,
23 because she obviously has a drug abuse problem.
24       I will impose a period of supervised release on
25 count one of five years; on counts 34, 37, 50, 53, 57

1  of one year of each count to run concurrent  to all
2  other count s; and on count  61, a period  of supervised
3  release  of five year s to run concurrent ly to all other
4  count s.

5          I will  impose  the mandatory  and standard
6  condition s of supervision  adopt ed by the court , with
7  the following  additional  condition s:  That she
8  satisfactory  already  participate  in a treatment  program
9  relat ing to  substance  and /or alcohol  abuse ; that she
10  provide  the probation  officer  with access  to any
11  request ed financial  information ; that she not incur  new
12  credit  charge s or open  additional  line s of credit
13  without  approval  of the probation  officer ; and that
14  she , to the extent  that she has n't already  paid it , pay
15  the special  assessment  of $100 per count , for a total
16  of $700 .

17          I will  not impose  any fine  on any count  as a
18  result  of the financial  circumstance s of the defendant ,
19  and I will  impose  an assessment  under  Title 18, United
20  States  Code Section  3013, of $100 per count , for a
21  total  of $700 .

22          Ms. Dobie , I first  I want  to commend  your
23  attorney , Mr. Ward .  I know  you had some difficulti es
24  with prior  attorney s.  Mr. Ward  is an extraordinarily
25  talent ed attorney .  He 's represent ed you well .  I know

1  you may be disappointed with this sentence, but it is

2  -- Mr. Ward has done a fine job for you.

3        I will tell you that if you really take

4  seriously the programs of the Bureau of Prisons, you

5  will still have a good bit of life ahead of you when

6  you come out.  This is not a life sentence, and I don't

7  want to ever see you again except under pleasant

8  circumstances.  I think you have every reasonable

9  prospect, if you really take this seriously, of turning

10  things around, and I hope -- I really sincerely hope

11  you do.

12        Ms. Dobie, you have a right to appeal the

13  sentence that I've just imposed to the United States

14  Court of Appeals to the Fourth Circuit.  You must do

15  so, if at all, within ten days.  If you're unable to

16  pay the filing fee, there's procedures to have the

17  filing fee waived.  The clerk of the court or Mr. Ward

18  can explain that to you.  Mr. Ward can also assist you

19  in initiating the appeal.  All right.  Anything further

20  from the government?

21        MS. GREENBERG:   Your Honor, at this time I will

22  move to dismiss the earlier indictments pending against

23  Ms. Dobie.  She was convicted in the Fifth Superseding

24  Indictment, and that one should remain.

25                    (Off the record at 4:31 p.m.)

1                      **CERTIFICATE**

2

3          I, Tracy Rae Dunlap, RPR, CRR, an Official Court

4    Reporter for the United States District Court of

5    Maryland, do hereby certify that I reported, by machine

6    shorthand, in my official capacity, the proceedings had

7    and testimony adduced upon the      Sentencing  Proceedings

8    in the case of UNITED STATES OF AMERICA versus        LAVON

9    DOBIE, et al, Criminal Action Number RWT-04-0235 on

10   December 19 , 2006.

11

12         I further certify that the foregoing     58 pages

13   constitute the official transcript of said proceedings,

14   as taken from my machine shorthand notes, of said

15   proceedings.

16

17         In witness whereof, I have hereto subscribed my

18   name, this 2nd day of    January 2009.

19

20

21                       _____

                         TRACY RAE DUNLAP, RPR, CRR
22                       OFFICIAL COURT REPORTER

23

24

25