1          UNITED STATES DISTRICT COURT OF MARYLAND
                      SOUTHERN DIVISION
2
   --------------------------x
3  UNITED STATES OF AMERICA   :
              Plaintiff       :
4                             :
                              :
5  vs                         :Criminal Action:RWT-04-0235
                              :
6                             :
   PAULETTE MARTIN, et al     :
7              Defendants.    :
   --------------------------x

8

9                        Tuesday, August 8, 2006
                         Greenbelt, Maryland
10
        The above-entitled action came on for a Jury
11 Trial before the HONORABLE ROGER W. TITUS, United
   States District Judge, in courtroom 4C, commencing at
12 9:28 a.m.

13         THIS TRANSCRIPT REPRESENTS THE PRODUCT
           OF AN OFFICIAL REPORTER, ENGAGED BY
14         THE COURT, WHO HAS PERSONALLY CERTIFIED
           THAT IT REPRESENTS **JURY INSTRUCTIONS,** AS
15         Recorded AND REQUESTED.

16         APPEARANCES:

17         On behalf of the Plaintiff:

18         DEBORAH JOHNSTON, Esquire
           BONNIE GREENBERG, Esquire
19
           On behalf of the Defendants:
20
           MICHAEL MONTEMARANO, Esquire
21         ANTHONY MARTIN, Esquire
           MARC HALL, Esquire
22         TIMOTHY MITCHELL, Esquire
           PETER WARD, Esquire
23         EDWARD SUSSMAN, Esquire
           HARRY MCKNETT, Esquire
24
   Tracy Rae Dunlap, RPR, CRR           (301) 344-3912
25 Official Court Reporter

```
 1                       I N D E X

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```

```
                                              Page

24  Reporter's Certificate                     68
```

```
25
```

1          THE COURT:  Ladies and gentlemen, while you're

2 getting settled, I wanted to advise you that we've

3 arrived at one of those watershed moments in the case

4 when I tell you that you have heard all the evidence

5 you are going to hear.  I'm going to try to get this

6 case brought to an appropriate conclusion, at least

7 insofar as the presentation of evidence and arguments

8 is concerned, by the close of business tomorrow.  I

9 recognize that one of you needs to leave between five

10 and a quarter of six today.

11         What my intentions are now is to begin but not

12 finish my instructions, which is probably a godsend,

13 because it takes a long time to read these instructions

14 to you, and my voicebox and my body will probably be

15 happier that we split the instructions in two parts.

16 I don't want to split the arguments up, so I have

17 requested that we begin at 8:30 tomorrow so I can

18 finish my instructions and then go right into the

19 closing arguments of the attorneys and hopefully by the

20 end to have day tomorrow you will have heard everything

21 you need to hear and you can then begin your

22 deliberations.

23         I will be talking to you before you retire to

24 deliberate on some more housekeeping matters.  I am

25 going to be distributing to you a verdict sheet that

1 you can look at as you listen to the closing arguments,

2 and a chart that shows what are the charges against

3 each defendant so you can follow it.

4         I will tell you something I don't usually tell

5 jurors at this stage because I don't want them to not

6 listen to me, but you will be happy to know that, not

7 now but before you retire to deliberate, you will get

8 the instructions I'm going to give you in writing, so

9 that should there be any question about, what did that

10 judge say?, you can actually look it up.  There's no

11 index, but you can find it.

12         You figure out that he said it about an hour

13 into the argument.  Now we're into the close of the

14 instructions, and that would obviate the tendency you

15 might have to ask a question, you go back and look at

16 it.  I usually describe that by saying my older brother

17 was an engineer and he always got great joy in laughing

18 at me when I couldn't assemble a toy and the thing said

19 "some assembly required," and my brother would always

20 say, when all else fails, read the instructions.  Well,

21 you will have the instructions to look at, and they

22 will be in your hands by the time all the closing

23 arguments are delivered.  They are not in presentable

24 form now, but they will be by that time.

25         So with that, let me begin the formal

1 instruction to you.  I'm going to break about half way

2 through these, and we'll finish them up tomorrow

3 morning.

4        Ladies and gentlemen, you are about to begin

5 your final duty of which is to decide the fact issues

6 in this case.  Before you do that, I will give you my

7 instructions on the law.  Please pay close attention to

8 me now.  I will go as slowly as I can and be as clear

9 as possible.

10        I told you at the start of the trial, which was

11 June 6, that your principal function during the taking

12 of testimony would be to listen carefully and observe

13 each witness who testified.  It has been obvious to me

14 and all of the attorneys that you have faithfully

15 discharged this duty, for which I thank you.  Your

16 interest never waned, and it is evident that followed

17 the testimony with close attention.  I would ask that

18 you give the same careful attention now as I give you

19 my instructions on the law.

20        You have now heard all of the evidence in the

21 case, and you will soon hear the final arguments of the

22 lawyers for the parties.  Before you hear their final

23 arguments, I want to explain our respective duties.  My

24 duty at this point is to instruct you as to the law.

25 It is your duty to accept these instructions of law and

1  apply them to the facts as you determine them, just as

2  it has been my duty to preside over the trial and to

3  decide what testimony and evidence is relevant under

4  the law for your consideration.

5          On these legal matters, you are required to

6  follow the law as I give it to you.  If any attorney

7  states a legal principle different from any that I

8  state to you in my instructions, it is my instructions

9  you should follow.  You should not single out any

10  instruction alone as stating the law.  Rather, you

11  should consider my instructions as a whole.

12          When you retire to deliberate in the jury room,

13  you should not be concerned about the wisdom of any

14  rule that I've stated.  Regardless of any opinion that

15  you may have as to what the law may be or ought to be,

16  it would violate your sworn duty to base a verdict upon

17  any view of the law other than that which I have given

18  to you.

19          Your duty is to pass upon the factual issues

20  that are in the case.  You, the members of the jury,

21  are the sole and exclusive judges of the facts.  You

22  pass upon the weight of the evidence.  You determine

23  the credibility of the witnesses, you resolve such

24  conflicts as there may be in the testimony, and you

25  draw reasonable inferences you decide to draw from the

1 facts as you have determined them.  I shall later

2 discuss with you how to pass upon the credibility or

3 the believability of the witnesses.

4        In determining the facts, you must rely upon

5 your own recollection of the evidence.  What the

6 lawyers have said in their opening statements, in their

7 objections, or in their questions, and what they say in

8 their closing arguments tomorrow are not evidence.

9 The evidence before you consists of answers given by

10 witnesses, the testimony they gave as you recall it,

11 and the exhibits that are were received in evidence.

12        In this connection, you should bear in mind that

13 a question put to a witness is never evidence; it is

14 only the answer which is evidence.  But any answer that

15 I directed you to disregard or that I directed struck

16 from the record is not evidence.  Do not consider such

17 answers.  Nor was anything I may have said during the

18 trial or may say during these instructions with respect

19 to a factual matter be taken in substitution for your

20 own independent recollection.  What I say is not

21 evidence.

22        You may also consider the stipulations of the

23 parties as evidence.  A stipulation is an agreement

24 among the parties that a certain fact is true.  You

25 should regard such agreed facts as true.  Since you are

1 the sole and exclusive judges of the facts, I do not

2 mean to indicate any opinion as to the facts or what

3 your verdict should be.

4          The rulings I have made during the trial are not

5 any indication of my views of what your decision should

6 be as to whether or not the guilt of the defendants has

7 been proven beyond a reasonable doubt.  As to the

8 facts, ladies and gentlemen, you are the exclusive

9 judges and you are to perform that duty without bias or

10 prejudice as to any party.

11          In determining the facts, I want to remind you

12 that before you were accepted and sworn to act as

13 jurors, you were asked questions concerning competency,

14 qualifications, fairness and freedom from prejudice and

15 bias.  On the faith of those answers, you were accepted

16 by the parties.  Therefore, those answers are binding

17 on each of you now as they were then and should remain

18 so until the jury is discharged from consideration of

19 this case.

20          This case is important to the government, for

21 the enforcement of criminal laws is a matter of prime

22 concern to the community.  Equally, it is important to

23 the defendants who are charged with serious crimes.

24 The fact that the prosecution is brought in the name of

25 the United States of America entitles the government to

1 no greater consideration than that accorded to any

2 other party to a litigation.  By the same token, the

3 government is entitled to no less consideration.  All

4 parties, whether government or individuals, stand as

5 equals at the bar of justice.

6        It is the duty of the attorney for each side of

7 a case to object when the other side offers testimony

8 or other evidence which the attorney believes is not

9 properly admissible.  The attorneys also have the right

10 and duty to ask the court to make rulings of law and to

11 request conferences at the bench out of the hearing of

12 the jury.  All those questions of law must be decided

13 by me.  You should not show any prejudice against an

14 attorney or his or her client because the attorney

15 objected to the admissibility of evidence or asked for

16 a conference out of the hearing of the jury or asked me

17 for a ruling on the law.

18        As I already indicated, my rulings on the

19 admissibility of evidence do not indicate any opinion

20 about the weight or effect of such evidence.  You are

21 the sole judges of credibility of all witnesses and the

22 weight and effect of all evidence.  As I have said,

23 your verdict must be based solely upon the evidence

24 developed at trial or the lack of evidence.

25        Let me point out to you certain matters that it

1  would be improper for you to consider.  It would be

2  improper for you to consider, in reaching your

3  decision, as to whether the government has sustained

4  its burden of proof any personal feelings you may have

5  about the defendant's race, religion, national origin,

6  sex or age.  All persons are entitled to the

7  presumption of innocence, and the government has the

8  burden of proof, as I will discuss in a moment.

9        It would be equally improper for you to allow

10  any feelings you might have about the crimes charged to

11  enter into your decision making process.  It would also

12  be improper for you to be swayed by sympathy.  You are

13  to be guided solely by the evidence in this case and

14  the crucial, hard core question that you must ask

15  yourselves as you sift through the evidence is, has

16  government proven the guilt of each defendant beyond a

17  reasonable doubt?

18        It is for you alone to decide whether the

19  government has proven the defendant guilty of the

20  crimes charged solely on the basis of the evidence to

21  the law as I instruct you.  If you let fear, prejudice,

22  bias or sympathy interfere with your thinking, there is

23  a risk that you will not arrive at a true and just

24  verdict.  If you have a reasonable doubt as to a

25  defendant's guilt, you should not hesitate for any

1 reason to find the verdict of acquittal.  But on the

2 other hand, if you should find the government has met

3 its burden of proving a defendant's guilt beyond a

4 reasonable doubt, you should not hesitate because of

5 sympathy or any other reason to render a verdict of

6 guilty.

7         You are about to be asked to decide whether or

8 not the government has proven beyond a reasonable doubt

9 the guilt of each defendant.  You are not being asked

10 whether any other person has been proven guilty.  Your

11 verdict should be based solely upon the evidence or

12 lack of evidence as to each defendant before you, in

13 accordance with my instructions and without regard to

14 whether the guilt of other people has or has not been

15 proven.

16         In this regard I want to advise you that the

17 original indictment in this case contained charges

18 against additional defendants.  Because of the

19 difficulties associated with trying a larger number of

20 defendants, I directed that smaller groups of

21 defendants be tried separately.  You should not concern

22 yourselves with the guilt or innocence of any person

23 other than the defendants on trial in this case.

24         Although the defendants have been indicted, you

25 must remember that an indictment is only an accusation.

1  It is not evidence.  Each defendant has pled not guilty

2  to that indictment.  As a result of a defendant's plea

3  of not guilty, the burden is on the prosecution to

4  prove guilt beyond a reasonable doubt.  This burden

5  never shifts to a defendant for the simple reason that

6  the law never imposes upon a defendant in a criminal

7  case the burden or duty of calling any witness or

8  producing any evidence.

9       The law presumes each defendant to be innocent

10  of all the charges against him or her.  I therefore

11  instruct you that the defendants are presumed by you to

12  be innocent throughout your deliberations until such

13  time, if ever, you as a jury are satisfied that the

14  government has proven each defendant guilty beyond a

15  reasonable doubt.

16       The defendants begin the trial here with a clean

17  slate.  This presumption of innocence alone is

18  sufficient to acquit a defendant unless you as jurors

19  are unanimously convinced beyond a reasonable doubt of

20  each defendant's guilt after a careful and impartial

21  consideration of all of the evidence in this case.

22       If the government fails to sustain its burden as

23  to any defendant, you must find that defendant not

24  guilty.  This presumption was with each defendant when

25  the trial began and remains with them even now as I

1 speak to you and will continue with the defendants into

2 your deliberations unless and until you are convinced

3 the government has proven each of the defendants' guilt

4 beyond a reasonable doubt.

5          There are two types of evidence which you may

6 properly use in deciding the factual issues in this

7 case.  One type of evidence is called direct evidence.

8 Direct evidence is where a witness testifies to what he

9 saw, heard or observed.  In other words, when a witness

10 testifies about what is known to him on his own

11 knowledge by virtue of his own senses, what he sees,

12 feels, touches or hears, that is called direct

13 evidence.

14          Circumstantial evidence is evidence which tends

15 to prove a disputed fact by proof of other facts.

16 There is a simple example of circumstantial evidence

17 which is often used in this courthouse.  Assume that

18 when you came into this courthouse this morning the sun

19 was shining and it was a nice day.  Assume that while

20 you were sitting here, someone walked in with an

21 umbrella that was dripping wet.  Someone else walked in

22 with a raincoat that was also dripping wet.

23          You cannot look outside the courtroom to see

24 whether or not it's raining, so you have no direct

25 evidence of that fact.  But on the combination of facts

1 I have asked you to assume, it would be reasonable and

2 logical for you to  conclude that it had been raining.

3 That is all there is to circumstantial evidence.  You

4 infer on the basis of reason and experience and common

5 sense, from an established fact, the existence or

6 nonexistence of some other fact.

7         Circumstantial evidence is of no less value than

8 direct evidence, for it is a general rule the law makes

9 no distinction between direct and circumstantial

10 evidence but simply requires that before convicting a

11 defendant, the jury must be satisfied of the

12 defendant's guilt beyond a reasonable doubt from all of

13 the evidence in the case.

14         In their arguments, the attorneys may ask you to

15 infer on the basis of your reasoning, experience and

16 common sense from one or more established facts the

17 existence of some other fact.  An inference is not a

18 suspicion or a guess.  It is a reasoned, logical

19 decision to conclude that a disputed fact exists on the

20 basis another fact which you know exists.

21         There are times when different inferences may be

22 drawn from facts whether proved by direct or

23 circumstantial evidence.  The government asks you to

24 draw one set of inferences, while the defense asks you

25 to draw another.  It is for you and you alone to decide

1  what inferences you will draw.  The process of drawing

2  inferences from facts in evidence is not a matter of

3  guess work or speculation.  An inference is a deduction

4  or conclusion which you the jury are permitted to draw

5  but not required to draw from the facts which have been

6  established by either direct or circumstantial

7  evidence.

8          In drawing inferences, you should exercise your

9  common sense.  So, while you are considering the

10 evidence presented to you, you are permitted to draw

11 from the facts which you find to be proven such

12 reasonable inferences as would be justified in light of

13 your experience.  Here again let me remind you that

14 whether based upon direct or circumstantial evidence or

15 upon the logical, reasonable inferences drawn from such

16 evidence, you must be satisfied of the guilt of each

17 defendant beyond a reasonable doubt before you may

18 convict that defendant.

19          As I have already instructed you, the evidence

20 in the case consists of the sworn testimony of the

21 witnesses, the exhibits received in evidence, and

22 stipulations.  The exhibits which have been marked for

23 identification but not received may not be considered

24 by you as evidence.  Only those exhibits received may

25 be considered as evidence.  You should consider the

1 evidence in light of your own common sense and

2 experience, and you may draw reasonable inferences from

3 the evidence.

4        Anything you may have seen or heard about this

5 case, outside the courtroom is not evidence and must be

6 entirely disregarded.

7        Let me emphasize again that a lawyer's question

8 is not evidence.  At times, a lawyer on

9 cross-examination may have incorporated into a question

10 a statement which assumed certain facts to be true and

11 asked the witness if the statement was true.  If the

12 witness denies the truth of a statement, and if there

13 is no evidence in the record proving that the assumed

14 fact is true, then you may not consider the fact to be

15 true simply because it was contained  in the lawyer's

16 question.  However, if a witness agrees with the

17 statement contained in the question, you may accept the

18 statement as true.  In short:  Questions are not

19 evidence; answers are.

20        The government has offered evidence in the form

21 of recordings of conversations with various defendants

22 and others not named in the indictment in this case.

23 The conversations played were recorded lawfully, and

24 the government is entitled to use such recordings in

25 this case.  In the course of admitting and playing

1 these recordings, the government has been permitted to

2 hand out a typed document which it prepared containing

3 the government's interpretation of what appears on the

4 recordings which have been received as evidence.

5        The transcripts were given to you as an aid or

6 guide to assist you in listening to the tapes and in

7 following the testimony.  However, they are not in and

8 of themselves evidence.  Therefore, when the tapes were

9 played, I advised you to listen very carefully to the

10 tapes themselves.  The recordings of the conversations

11 are the evidence.

12        You should make your own interpretation of what

13 appears on the recordings based upon what you heard.

14 If you think heard something different from that which

15 appeared on the transcript, then what you heard is

16 controlling.  There is, however, no agreement or

17 stipulation as to the identity of the speakers on any

18 of the recordings, so you will have to determine for

19 yourselves the identity of the parties in each

20 conversation based on the testimony you heard and the

21 evidence produced at trial.

22        In addition to the recordings and transcripts

23 offered by the government during its case in chief, you

24 heard additional recordings and transcripts as well as

25 additional portions of recordings and transcripts that

1 you heard earlier played by the defendants during

2 additional cross-examination of Sergeant Christopher

3 Sakala.

4        As I explained when these additional calls were

5 played, I permitted the defendants to introduce them

6 but for two limited purposes.  First, to provide

7 context for calls that were played only in part

8 earlier, and second to allow the defendants to

9 challenge Sergeant Sakala's opinions about the meaning

10 of the calls that were introduced by the government.

11 Unlike the calls introduced by the government, you may

12 not consider statements made during the additional

13 calls as evidence that what was said during the calls

14 is true.

15        The defendants, like the government, have been

16 permitted to hand out a typed document which it

17 prepared containing transcriptions of these calls.

18 These transcripts, like those prepared and given to you

19 by the government, are not in and of themselves

20 evidence but, rather, an aid or guide to assist you in

21 listening to the tapes and following the testimony.

22 The recordings themselves are the evidence, and you

23 should make your own interpretation of what appears on

24 the recordings based on what you heard.  Likewise, you

25 should determine for yourselves the identity of the

1 parties in each conversation based on the testimony you

2 heard and the evidence produced at trial.

3        One issue in this case is the voice

4 identification of speakers on the wiretapped

5 conversations and consensual recordings.  You are

6 instructed that it is permissible to base

7 identification of voices heard in telephone

8 conversations on relatively few conversations between a

9 government agent or other witnesses and the speaker,

10 and it is not required that such exchanges occur prior

11 to interception.  They may occur at or after an arrest.

12 In fact, it is not necessary for the government to

13 present direct evidence to identify the intercepted

14 voice.

15        Circumstantial evidence can be employed to

16 identify callers on wiretapped lines.  However, you the

17 jury are the sole judges of the facts and must decide

18 whether the government has proven a particular

19 speaker's voice.  Voice identification testimony is an

20 expression of belief on the part of the witness.  Its

21 value depends on the opportunity the witness had to

22 hear the speaker at the time of the identification and

23 to make a reliable voice identification of the

24 speaker's voice as heard on the wiretapped or

25 consensually recorded conversation.  You may hear the

1 arguments of counsel on this subject.  I will only

2 suggest to you at this time that you should consider

3 the following matters.  What was the witness' ability

4 to hear the speaker?  Has the witness' voice

5 identification of the confident as the speaker been

6 influenced in any way?  You should also consider the

7 credibility of voice identification witnesses just as

8 you would any other witness.

9       You have also heard testimony in this case

10 regarding evidence seized by the government during the

11 execution of search warrants.  You are hereby

12 instructed that it is the responsibility of me and me

13 alone to determine the validity and legality of those

14 search warrants, and the court has determined that the

15 warrants in this case were valid and legal.  It is up

16 to you to decide what significance if any the evidence

17 seized may have in this case.

18       The fact that one party called more witnesses

19 and introduced more evidence than the other does not

20 mean that you should necessarily find the facts in

21 favor of the side offering the most witnesses.  By the

22 same token, you do not have to accept the testimony of

23 any witness who has not been contradicted or impeached

24 if you find that witness not to be credible.

25       You also have to decide which witnesses to

1 believe and which facts are true.  To do this you must

2 look at all the evidence, drawing upon your own common

3 sense and personal experience.  After examining all the

4 evidence, you may decide the party calling the most

5 witnesses has not persuaded you because you do not

6 believe its witnesses or because you do believe the

7 fewer witnesses called by the other side.

8        In a moment I will discuss the criteria for the

9 evaluation of credibility.  For the moment, however,

10 you, should keep in mind that the burden of proof is

11 always on the government, and the defendant is not

12 required to call any witnesses or offer any evidence

13 because he or she is presumed to be innocent.

14        During the trial you have heard testimony of

15 witnesses, and you may have heard -- you may hear

16 argument by counsel that the government did not utilize

17 specific investigative techniques.  For example, some

18 seized items were not submitted for fingerprint

19 analysis, and chemical analysis may not have been done

20 on every item seized.  You may consider these facts in

21 deciding whether the government met its burden of proof

22 because, as I told you, you should look at all the

23 evidence or lack of evidence in deciding whether each

24 defendant is guilty.  However, you were also instructed

25 that there is no legal requirement that the government

1 use any of these specific investigative techniques to

2 prove its case.

3        More over, the law does not require the

4 prosecution to call as witnesses all persons who may

5 have been present at any time or place involved in the

6 case or appear to have some knowledge of the matters in

7 this trial, nor does the law require the prosecution to

8 produce as exhibits all the papers and things mentioned

9 in the evidence.  Your concern, as I have said, is to

10 determine whether or not, on the evidence or lack of

11 evidence, the guilt of the defendants has been proven

12 beyond a reasonable doubt.

13        There are several persons whose names you have

14 heard during the course of the trial but who did not

15 appear here to testify, and one or more of the

16 attorneys may, in closing argument, refer to their

17 absence from the trial.  I instruct you that each party

18 have an equal opportunity or lack of opportunity to

19 call any of these witnesses.  Therefore, you should not

20 draw any inferences or reach any conclusions as to what

21 they would have testified to had they been called.

22 Their absence should not affect your judgment in any

23 way.  You should, however, remember my instruction that

24 the law does not impose on a defendant in a criminal

25 case the burden or duty of calling any witnesses or

1 producing any evidence.

2          Charts have been presented in the form -- excuse
3 me.  Exhibits have been presented in the form of charts
4 and summaries which have been admitted as evidence.
5 These charts and summaries were admitted in place of
6 the underlying documents that they represent in order
7 to save time and avoid unnecessary inconvenience.  You
8 should consider these charts and summaries as you would
9 any other evidence.

10          In addition to the charts and summaries that
11 were admitted as evidence, the parties may present
12 during their closing arguments additional charts and
13 summaries that you have not seen before.  These
14 additional charts and summaries are not evidence.  They
15 are visual aids to the parties' arguments.  They will
16 be shown to you in order to make the evidence more
17 meaningful and to aid you in considering the evidence
18 but they are no better than the arguments of counsel.

19          Like the arguments of counsel, the charts and
20 summaries that you may see for the first time during
21 closing arguments are intended by the parties to assist
22 you in analyzing the evidence and understanding the
23 evidence but they are not themselves evidence.  It is
24 for you to decide whether they correctly present the
25 evidence contained in the testimony and exhibits.  That

1 decision, like all your decisions about the facts in
2 this case and the guilt or innocence of the defendants
3 must be made solely on the basis of the evidence that
4 you have seen and heard.

5       You have had an opportunity to observe all of
6 the witnesses.  It is now your opportunity to decide
7 how believable each witness was in his or her
8 testimony.  You were the sole judges of the credibility
9 of each witness and the importance of his or her
10 testimony.  It must be clearer to you by now that you
11 are being called upon to resolve various factual issues
12 under the indictment.  You will face the very different
13 pictures painted by the government and the defense
14 which cannot with reconciled.

15       You will now have to decide where the truth
16 lies, and an important part of that decision will
17 involve making judgments about the testimony of the
18 witness you have listened to and observed.  In making
19 those judgments, you should carefully scrutinize all
20 the testimony of each witness, the circumstances under
21 each witness testified, and any other matter in
22 evidence which may help you to decide the truth and the
23 importance of each witness's testimony.  Your decision
24 whether not to believe a witness may depend on how that
25 witness impressed you.  Was the witness candid, frank

1  and forthright?  Or did the witness seem as if he or

2  she was hiding something, being evasive or suspect in

3  some way?  How did the way the witness testified on

4  direct examination compare with the way the witness

5  testified on cross-examination?  Was the witness

6  consistent in his or her testimony, or did he or she

7  contradict himself or herself?  Did the witness appear

8  to know what he or she was talking about?  And did the

9  witness strike you as one who was trying to report his

10  or her knowledge accurately?

11        How much you choose to believe a witness may be

12  influenced on the witness's bias.  Does the witness

13  have a relationship with the government or the

14  defendants which may affect how he or she testified.

15  Did the witness have some incentive, loyalty or motive

16  that might cause him or her to shade the truth?  Or

17  does the witness have some bias, prejudice or hostility

18  which may have caused the witness consciously or not to

19  give you something other than a completely accurate

20  account of the facts he or testified to?

21        Even if the witness was impartial, you should

22  consider whether the witness had an opportunity to

23  observe the facts he or she testified about, and you

24  should also ask -- also consider the witness' ability

25  to express himself or herself.  Ask yourselves whether

1  the witness' recollection of the facts stands up in

2  light of all the other evidence.  In other words, what

3  you must try to do in deciding credibility is to size

4  up a person in light of his or her demeanor, the

5  explanations given, and in light of all the other

6  evidence in the case just as you would in any important

7  matter where you are trying to decide if a person is

8  truthful, straightforward and accurate in his or her

9  recollection.

10        In deciding the question of credibility,

11  remember that you should use your common sense, your

12  good judgment, and your experience.  Inconsistencies or

13  discrepancies in the testimony of a witness or between

14  the testimony of different witnesses may or may not

15  cause you to discredit such testimony.  Two or more

16  persons witnessing an incident or transaction may see

17  or hear it differently.

18        An innocent misrecollection, like a failure of

19  recollection, is not an uncommon experience.  In

20  weighing the effect of a discrepancy, ask -- always ask

21  yourselves whether it pertains to a matter of

22  importance or to an unimportant detail and whether the

23  discrepancy results from innocent error or intentional

24  falsehood.  Throughout the trial you have heard

25  witnesses testify to facts they may have failed to

1 mention or omitted in prior statements.  You may

2 consider any such prior omissions as inconsistent

3 statements when deciding the credibility of the

4 witness.

5        In deciding what effect to give to such an

6 omission, you should consider whether the omitted fact

7 is an important or unimportant detail and whether it is

8 the type of matter one would normally expect another to

9 remember when asked about an event.  You should also

10 consider any explanation offered by the witness to

11 explain the omission and consider the explanation the

12 same as you would any other aspect of a witness'

13 testimony.  You should also consider whether the

14 witness had a full and complete opportunity to explain

15 everything on the earlier occasion.

16        An so mission from a statement, like any

17 inconsistency in testimony, may result from an innocent

18 failure of recollection or deliberate falsehood.  If

19 you find that a witness has testified willfully and

20 falsely with regard to any matter of trial, you may

21 refuse to reject any part or all of said witness'

22 testimony.  After making your own judgment, you should

23 give the testimony of each witness such credibility as

24 you think it is entitled -- fairly entitled to receive,

25 if any.

1          In evaluating the credibility of the witnesses,
2  you should take into account any evidence that the
3  witness who testified may benefit in some way from the
4  outcome of this case.  Such an interest in the outcome
5  creates a motive to testify falsely and may sway the
6  witness to testify in a way that advances his or her
7  own interests.  Therefore, if you find that any witness
8  whose testimony you are considering may have an
9  interest in the outcome of this trial then you should
10 bear that factor in mind when evaluating the
11 credibility of his or her testimony and accept it with
12 great care.  This is not to suggest that every witness
13 who has an interest in the outcome of the case will
14 testify falsely.  It is for you to decide what extent
15 if at all the witness' interest has affected or colored
16 his or her testimony.
17         In a criminal case, every defendant has an
18 absolute right not to testify.  You must not draw any
19 adverse inference against any defendant because he or
20 she did not testify.  He or she is of course permitted
21 to take the witness stand on his or her own behalf.  In
22 this case some of the defendants decided to testify.
23 You should examine and evaluate their testimony just as
24 you would the testimony of any witness with an interest
25 in the outcome of this case.  You should not disregard

1 or disbelieve their testimony simply because they are

2 charged as a defendant in this case.

3      In this case there has been testimony from

4 various government witnesses who have pled guilty and

5 who have testified at this trial that they were

6 actually involved in planning and carrying out the

7 crime or crimes charged in the indictment.  That is

8 that they were accomplices.

9      The government may argue, as it is permitted to

10 do, that it must take the witnesses as it finds them,

11 and the government argues that the only people who

12 themselves take part in criminal activity have the

13 knowledge required to show criminal behavior by others.

14 Indeed, certain criminal conduct would never be

15 detected without the use of accomplice testimony.

16      For those very reasons, the law allows the use

17 of so-called "accomplice testimony."  Indeed, it is the

18 law in federal courts that the testimony of accomplices

19 may be enough in itself for conviction, if the jury

20 finds that the testimony establishes guilt beyond a

21 reasonable doubt.

22      I have given you some general considerations on

23 credibility and I will not repeat them all here.

24 However, let me say a few things that you may want to

25 consider during your deliberations on the subject of

1 accomplices and on the subject of witnesses who testify

2 pursuant to plea agreements.  You should bear in mind

3 that a witness who has entered into such an agreement

4 has an interest in the case different than any ordinary

5 witness.

6        The witness who realizes that he or she may be

7 able to obtain his or her own freedom or receive a

8 lighter sentence by giving testimony favorably to the

9 prosecution has a motive to testify falsely.

10 Therefore, you must examine that testimony with

11 caution and weigh it with great care.  If after

12 scrutinizing that testimony you decide to accept it,

13 you may give it whatever weight if any you find it

14 deserves.

15        You should ask yourselves whether these

16 witnesses would benefit more by lying or by telling the

17 truth.  Was their testimony made up in any way because

18 they believed or hoped that they would somehow receive

19 favorable treatment by testifying falsely, or did they

20 believe their interests would be best served by

21 testifying truthfully?  If you believe that the witness

22 was motivated by hopes of personal gain was the

23 motivation one which would cause him or her to lie, or

24 was it one that would cause him or her to tell the

25 truth?  Did this motivation color his or her testimony?

1 In sum, you should look at all of the evidence in

2 deciding what credence and what weight if any you will

3 want to give to the testimony of these witnesses.

4         Additionally, while we are on the subject of

5 witnesses who have testified pursuant to plea

6 agreements, let me instruct you about the following.

7 There is evidence that the government agreed in those

8 plea agreements to bring the witness' cooperation to

9 the attention of the sentencing court, in exchange for

10 the witnesses agreeing to plead guilty and to testify

11 truthfully, completely and fully at this trial.

12        There is no evidence that the government agreed

13 not to prosecute the witness for crimes which he may

14 have admitted in interviews with the government or that

15 information was not previously known to the government.

16 There is also evidence that the government agreed to

17 dismiss certain related charges against a witness in

18 exchange for that witness' guilty plea.

19        The government is permitted to enter into these

20 kinds of plea agreements and to make these kinds of

21 promises, and the government is entitled to call as

22 witnesses people to whom these promises are given.

23 You, in turn, may accept the testimony of such a

24 witness.  You are instructed that you may convict a

25 defendant on the basis of this testimony alone if it

1 convinces you of the defendant's guilt beyond a

2 reasonable doubt.        In considering such testimony,

3 you are instructed that you are to draw in conclusion

4 or inference of any kind about the guilt of any

5 defendant on trial from the mere fact that the

6 government witness pled guilty to the same or similar

7 charge.  That witness' decision to plead guilty was a

8 personal decision about his own guilt and the unique

9 facts and circumstances of his own case.

10       There has also been evidence introduced at trial

11 that the government used an informer.  I instruct you

12 that there is nothing improper in the government's use

13 of informers and, indeed, certain criminal conduct

14 never would be detected without the use of informers.

15 You, therefore, should not concern yourselves with how

16 you personally feel about the use of informers because

17 that is really beside the point.  Put another way:

18 Your concern is to decide whether the government has

19 proved the guilt of the defendant beyond a reasonable

20 doubt, regardless of whether the evidence was obtained

21 by the use of an informer.

22       You have heard the testimony of some witnesses

23 who were previously convicted of crimes punishable by

24 more than one year in jail.  These prior convictions

25 were placed into evidence for you to consider in

1 evaluating the witness' credibility.  You may consider
2 the fact that the witness who testified is a convicted
3 felon in deciding how much of his testimony to accept
4 and what weight if any it should be given.

5       You have heard evidence that a witness made a
6 statement on an earlier occasion which counsel may
7 argue is inconsistent with the witness' trial
8 testimony.  Evidence of a prior inconsistent statement
9 is not to be considered by you as affirmative evidence
10 bearing on the defendant's guilt.  Evidence of the
11 prior inconsistent statement was placed before you for
12 the more limited purpose of helping you to decide
13 whether to believe the trial testimony of the witness
14 who contradicted himself.

15       If you find that the witness made an earlier
16 statement that conflicts with his trial testimony, you
17 may consider that fact in deciding how much of his
18 trial testimony if any to believe.  In making this
19 determination, you may consider whether the witness
20 purposefully made the false statement or whether it was
21 an innocent mistake, whether the inconsistency concerns
22 an important fact or whether it had to do with a small
23 detail, whether the witness had an explanation for the
24 inconsistency and whether that explanation appealed to
25 your common sense.  It is exclusively your duty, based

1  upon all the evidence and your own good judgment to

2  determine whether the prior statement was inconsistent

3  and, if so how much, if any weight to be given to the

4  inconsistent statement in determining whether to

5  believe all or part of the witness' testimony.

6          You have heard testimony from certain persons

7  who were qualified by me as expert witnesses.  An

8  expert is allowed to express his opinion on those

9  matters about which he or she has special knowledge and

10  training.  Expert testimony is presented to you on the

11  theory that someone who is experienced in the field can

12  assist you in understanding the evidence or in reaching

13  an independent decision on the facts.

14          In weighing the expert's testimony, you may

15  consider the expert's qualification, his or her

16  opinions, his or her reasons for testifying, as well as

17  all the other considerations that ordinarily apply when

18  you are deciding whether or not to believe a witness'

19  testimony.  You may give the expert testimony whatever

20  weight if any you find it deserves in light of all the

21  evidence in this case.  You should not, however, accept

22  this witness's testimony merely because he or she is an

23  expert.  Nor should you substitute it for you own

24  reason, judgment and common sense.  The determination

25  of the facts in this case rest solely with you.

1          You have also heard the testimony of law

2  enforcement officials.  The fact that a witness may be

3  employed by a federal or state government as a law

4  enforcement official does not mean that his or her

5  testimony is necessarily deserving of more or less

6  consideration or greater or lesser weight than that of

7  an ordinary witness.  At the same time, it is quite

8  legitimate for defense counsel to try to attack the

9  credibility of a law enforcement witness on the grounds

10 that his or her testimony may be colored by a personal

11 or professional interest in the outcome of the case.

12 It is your decision, after reviewing all the evidence,

13 whether to accept the testimony of a law enforcement

14 witness and to give that testimony whatever weight, if

15 any, you find it deserves.

16         If the government has offered evidence tending

17 to show that on different occasions some of the

18 defendants have engaged in conduct similar to the

19 charges in the indictment, this evidence has been

20 admitted as to the defendants Martin, Goodwin, Whiting

21 and Bynum only.  In that connection, let me remind you

22 that the defendants are not on trial for committing

23 acts not alleged in the indictment.  Accordingly, you

24 may not consider this evidence of the similar acts as a

25 substitute for proof that any defendant committed the

1 crime charged.  Nor may you consider this evidence as
2 proof that a defendant has a criminal propensity or bad
3 character.  The evidence of other similar acts were
4 admitted for a much more limited purpose, and you may
5 consider that evidence for that limited purpose.

6       If you determine that a defendant committed the
7 act charged in the indictment and the similar acts as
8 well, then you may, but you need not draw an inference
9 that in doing the act charged in the indictment that
10 time the defendant acted knowingly and intentionally
11 and not because of some mistake, accident or other
12 innocent reason.  Evidence of similar acts may not be
13 considered by you for any other purpose.  Specifically,
14 you may not use this evidence to conclude that because
15 the defendant committed the other acts, he also must
16 have committed the acts charged in the indictment.

17       With these preliminary instructions in mind, let
18 us turn to the charges against the defendants as
19 contained in the indictment.  I remind you that an
20 indictment itself is not evidence.  It merely describes
21 the charges made against the defendants.  It is not --
22 it is an accusation.  It may not be considered by you
23 as any evidence of the guilt of the defendants.

24       The indictment contains a total of 61 counts.
25 Some of the counts charge a defendant or defendants

1  with a different crime.  There are seven defendants on
2  trial before you.  You must, as a matter of law,
3  consider each count of the indictment and each
4  defendant's involvement in that count separately, and
5  you must return a separate verdict on each defendant on
6  each count for which he or she is charged.
7       In reaching your verdict, bear in mind that
8  guilt is personal and individual.  Your verdict of
9  guilty or not guilty must be based solely upon the
10 evidence about each defendant.  The case against each
11 defendant on each count stands or falls upon the proof
12 or lack of proof against that defendant alone, and your
13 verdict as to any other defendants on any count should
14 not control your decision as to any other defendant on
15 any other count.  No other considerations are proper.
16      While we are on the subject of the indictment, I
17 would like to draw your attention to the fact that the
18 indictment charges that specific acts and offenses
19 occurred on or about certain dates.  The proof need not
20 establish with any certainty the exact date of the
21 specific acts or offenses.  It is sufficient if the
22 evidence in this case establishes that the offenses
23 were committed on dates reasonably near the dates
24 alleged in the indictment.  The law only requires a
25 substantial similarity between the dates alleged in the

1 indictment and the dates established by testimony or

2 exhibits.

3        You may not draw any inference, favorable or

4 unfavorable, towards the government or the defendants

5 on trial from the fact that certain persons were not

6 named as defendants in the indictment.  The indictment

7 does not include all of the defendants originally

8 included in the original indictment.  As I previously

9 advised you, I made the decision all the defendants

10 could not be tried together, and the other defendants

11 are being tried separately.  In addition, I directed

12 that the defense attorneys designate a lead attorney to

13 examine each witness and prohibited redundant

14 examination of witnesses.  In order for them to comply

15 with this directive, it has been necessary for defense

16 counsel to cooperate and confer with each other.

17        The circumstances that other persons are not on

18 trial in this case should play no part in your

19 deliberations.  Further, whether a person should be

20 named as a coconspirator or indicted as a defendant is

21 a matter within the sole discretion of the United

22 States attorney and the grand jury.  Therefore, you may

23 not consider it in any way in reaching your verdict as

24 to the defendants on trial.

25        You will next consider the crimes with which the

1 defendants are charged.  It has been said that a crime

2 consists of two principals parts, a criminal intent and

3 a criminal act.  Let me talk for a moment about

4 criminal intent.  Generally, intent to do something

5 means someone knows what he or she is doing and does it

6 on purpose or willfully.  For each of the crimes

7 charged in this case, the government must show beyond a

8 reasonable doubt that with regard to the criminal act

9 charged, the defendants knowingly and willfully

10 specifically sought to do the illegal act charged.

11        I will now provide for you the definitions of

12 the terms "knowingly" and "willfully."  In order to

13 sustain its burden of proof, the government must prove

14 that the defendants acted knowingly.  A person acts

15 knowingly if he or she acts intentionally and

16 voluntarily and not because of ignorance, mistake,

17 accident or carelessness.  Whether a defendant acted

18 knowingly may be proven by the defendant's conduct and

19 by all of the facts and circumstances surrounding the

20 case.

21        You may infer that a defendant acted knowingly

22 from circumstances, evidence, or from proof that a

23 defendant deliberately closed his or her eyes to what

24 would otherwise have been obvious to him or her.

25 Stated another way, a defendant's knowledge of a fact

1 may be inferred from willful blindness to the existence

2 of that fact.

3        Willful blindness exists when a defendant whose

4 suspicion has been aroused deliberately fails to make

5 further inquiries.  If you find that a defendant had a

6 strong suspicion that someone withheld important facts

7 yet shut his or her eyes for fear of what he or she

8 would learn, you may conclude that he or she acted

9 knowingly.  Actual knowledge and deliberate or

10 conscious avoidance of knowledge are the same thing.

11        In order to sustain its burden of proof, the

12 government must also prove that a defendant acted

13 willfully.  Willfully means to act with knowledge that

14 one's conduct is unlawful and with the intent to do

15 something the law forbids.  That is to say, with a bad

16 purpose to disobey or to disregard the law.  A

17 defendant's conduct was not willful if it was due to

18 negligence, inadvertence or mistake.

19        Knowledge, willfulness, and intent involve the

20 state of a person's mind.  It has often been said to

21 juries that the state of one's mind is the fact as much

22 as the state of one's digestion.  Accordingly, this is

23 a fact you are called upon to decide.  Medical science

24 has not yet devised an instrument which can record what

25 was in one's mind in the distant past.

1          Rarely is direct proof available to establish

2     the state of one's mind.  This may be inferred from

3     what he or she says or does by words, actions and

4     conduct as of the time of the occurrence of certain

5     events.  The intent with which an act is done is often

6     more clearly and conclusively shown by the act itself

7     or by a series of acts than by words or explanations of

8     the act uttered long after its occurrence.  Accordingly

9     intent, willfulness and knowledge are usually

10    established by surrounding facts and circumstances as

11    of the time the acts in question occurred or the events

12    took place and the reasonable inferences to be drawn

13    from them.

14          Now, ladies and gentlemen, that is as far as I'm

15    going to go today.  I will begin tomorrow with a

16    discussion with you of the specific crimes charged.

17    And that will be -- I will then conclude my

18    instructions, and we will begin the closing arguments

19    of the attorneys.  So you are discharged.  We will be

20    resuming tomorrow morning, God willing and the creek

21    don't rise, tomorrow morning at 8:30.  Thank you very

22    much.

23               (Jury excused at 5:29 p.m.)

24          MS. JOHNSTON:  Your Honor, I just wanted to

25    bring to the court's attention the fact that the

1 government may move to reopen its case if Mr.

2 Montemarano gets up and starts arguing that she had

3 legitimate sources for all of her income and that it

4 came from Mr. Shannon and it came from her clothing

5 business.  And I will provide the court with cases,

6 because that would be -- our rebuttal case would go

7 directly to refute that kind of argument.  And I just

8 want to put the court on notice that that's where we

9 will be at.

10        THE COURT:  Mr. Montemarano and I are both on

11 notice.

12        MR. MONTEMARANO:  May it please the court.  My

13 argument will be as substantially as it was in my

14 opening.  Ms. Johnston had her opportunity to challenge

15 it.

16        THE COURT:  All right.  Okay.

17        MS. GREENBERG:  Your Honor, question number --

18 jury instruction 32, on Page 41.  I don't think this is

19 a big deal, but I want to let the court know there are

20 60 counts that the jury will be considering, not 61.

21        THE COURT:  All right.  I will clarify 60

22 counts.

23        MS. GREENBERG:  That's because we dismissed a

24 count after we went over the jury instructions.

25        THE COURT:  Okay.

1          MR. MITCHELL:  If we have any corrections, what

2  do you want me to do with them, Your Honor?

3          THE COURT:  Corrections to?

4          MR. MITCHELL:  To the verdict form.

5          THE COURT:  Yes, please.

6          MR. MITCHELL:  E-mail.

7          THE COURT:  No.  Maybe we can do it together

8  quickly.  Do you find major changes, or were there

9  minor ones that we can go over quickly?

10          MR. MITCHELL:  Minor.

11          THE COURT:  Does the government have any

12  corrections to the verdict form?

13          MS. JOHNSTON:  Yes, Your Honor.

14          THE COURT:  Let me get the verdict form in front

15  of me.

16          MS. JOHNSTON:  Let me get that back in front of

17  me, too.

18          THE COURT:  Tell me the page number.

19          MS. JOHNSTON:  Your Honor, on the verdict --

20          THE COURT:  Why don't we do is this?  Why don't

21  we just go through one page at a time real quick here,

22  and chime in when you get to a page that you have a

23  problem with.  Page 1.

24          MS. JOHNSTON:  Your Honor, we only had two

25  corrections.  That's where Lavon Dobie is mentioned

1  instead of LaNora Ali.

2       THE COURT:  What page number is that?

3       MS. JOHNSTON:  Let me find those.  One is on

4  Page 23 of the verdict form.

5       THE COURT:  Upper right corner?  Okay.

6       MS. JOHNSTON:  Up on the top of the Page it says

7  Lavon Dobie.  It should say LaNora Ali.

8       THE COURT:  Okay.

9       MS. JOHNSTON:  The other one was on page 19.

10      THE COURT:  Wait a minute.

11      MS. JOHNSTON:  We are of course objecting to the

12 court giving a lesser included instruction as to Count

13 56.  We would ask the court to remove question 130, and

14 we have renumbered those.

15      THE COURT:  Wait a minute.  On what page?

16      MS. JOHNSTON:  Page 23, Your Honor.  Count 56 is

17 the May 16.

18      THE COURT:  You're objecting to Number 130?

19      MS. JOHNSTON:  I think there -- I don't think

20 there's a factual basis for it, so that would affect

21 renumbering the questions and renumbering the court's

22 summary chart.

23      THE COURT:  Okay.  I'll take a look at that

24 issue and resolve it before this gets handed to the

25 jury.

1          MR. MITCHELL:  Very minor change on Page 10.

2          THE COURT:  Wait a minute.  Let me get there.

3 Okay.

4          MR. MITCHELL:  Middle of the page between 48 and

5 49, just an extra space between the two questions.  It

6 appears that it's one whole question.

7          THE COURT:  Okay.  That's what happens when your

8 law clerk types something rather than your secretary.

9          MR. MITCHELL:  Because your secretary wouldn't

10 make that mistake.

11          THE COURT:  Mr. Krinsky is not here to defend

12 himself.

13          Anything else from the government?

14          MS. JOHNSTON:  No, Your Honor.

15          MR. WARD:  I haven't had an opportunity to look

16 at the sentencing guidelines.  But with respect to the

17 lesser included offense of simple possession, I'm

18 wondering why it's necessary to put in amounts like 1

19 kilogram or more; 100 grams, but less than 1 kilogram;

20 less than 100 grams.

21          THE COURT:  What page are you on?  Mr. Ward,

22 what page are you on?

23          MR. WARD:  Pardon?

24          THE COURT:  What page are you on?

25          MR. WARD:  Well, I'm talking about Ms. Dobie,

1  and I started with page -- I'm sorry, number -- let me

2  say with respect to number 28.

3          THE COURT:   Number 28, or Page 28?

4          MR. WARD:   No.  I'm sorry, Number 28, Page 6.

5          THE COURT:   Let me get there.

6          MR. WARD:   The way I read the simple possession

7  statute, the only distinction is -- cocaine base

8  distinction.  There is no other distinction between --

9  and something like "florizapiem" [ph.] or something

10  like that.  There is no distinction between heroin and

11  cocaine.  And then on 29 we go into amounts of

12  particular drugs of heroin.  I don't think there's any

13  -- in fact, I know there's no distinction made in the

14  statute which deals with the simple possession.

15          Likewise, with respect to cocaine and in

16  Question 30 and on Question 31, there is a distinction

17  made with respect to crack cocaine under the simple

18  possession statute.  But with respect to the others, 28

19  -- I'm sorry, 29 and 30, I don't understand why the

20  government has chosen to put in different amounts for

21  the jury to find.

22          With respect to 31, I think the only question in

23  the statute is 3 grams or more, 3 grams or less under

24  the sentencing statute -- the sentence provided for

25  simple possession, rather.  If it was cocaine base and

1    then there's a first conviction under this subsection

2    and the amount exceeds 5 grams, that's one thing.  If

3    after a prior conviction it exceeds 3 grams, and if

4    after two or more prior convictions it exceeds 1 gram.

5    I don't think -- I know Ms. Dobie doesn't have any

6    prior convictions for -- under this simple possession

7    statute.  And frankly, I don't think there's any

8    evidence as to her being involved with crack.  I don't

9    know how the jury can possibly make a finding on that

10   basis that there was so much crack or whatever.

11        THE COURT:  What's the government's position?

12        MR. WARD:  Let me finish.

13        THE COURT:  I thought you were finished.

14        MR. WARD:  On 28 it seems to me the only

15   distinction there is between crack and heroin and

16   cocaine.  Heroin and cocaine I think should be lumped

17   together.

18        MR. MCKNETT:  Your Honor, I would echo Mr.

19   Ward's comments with regard to Ms. Ali.  I think that

20   once the jury determines it's a substance other than

21   cocaine base, then the quantities of the substance

22   become irrelevant as far as the verdict is concerned.

23        THE COURT:  Let me hear from the government.

24        MS. GREENBERG:  Your Honor, we did the initial

25   verdict form based on Apprendi and stating that what

1 the court -- what the jury would have to find in terms

2 of the mandatory minimum for possession with intent to

3 distribute.  Mr. Ward pointed out that he couldn't

4 understand why the government changed it this way.  I

5 think it was the court that was so kind after the late

6 request to include possession as a lesser included

7 offense that did it this way.  It's just a logistical

8 matter in terms of possession with intent to distribute

9 versus possession is for the jury to follow along.  And

10 we have to keep these amounts in there, because under

11 Apprendi they're the mandatory minimums under, you

12 know, 841 and 846.

13          So, I don't know any way we could change it.

14 You've incorporated his request.  You've incorporated

15 it as to Ms. Ali, even though Mr. McKnett didn't

16 request it.  That's what the Fourth Circuit requires,

17 and I think the court has done a good job of

18 incorporating their lesser included offense while not,

19 you know, well, not destroying the requirement that the

20 jury finds what it has to find for the mandatory

21 minimums.  I think it makes sense the way the court did

22 it.

23          THE COURT:  All right.  Anything further on this

24 issue?

25          MR. MARTIN:  I'm just wondering, Your Honor -- I

1 haven't looked at the case law regarding this -- why

2 specific amounts have to be placed there.  Why can't

3 the jurors just elect as to how much based on the

4 evidence that's before them.  You may say, well, 500

5 grams or 700 grams or 800 grams.  Why does it have to

6 be broken into different categories?  I know what the

7 statute says.

8        THE COURT:  The ranges are under the statute.

9        MR. MARTIN:  Well, you know, there are 12 people

10 there who are going to make a determination as to what

11 the quantity is.  And again --

12        THE COURT:  I think the ranges are appropriate.

13 And based on the statutes, I'm not going to revisit

14 that question.

15        MR. WARD:  Well, they are.

16        MR. MARTIN:  I want an objection noted as to the

17 way it's written now.

18        THE COURT:  All right.

19        MR. WARD:  Under 844 they are not based on the

20 statutes.  As the court has pointed out, we've got 60

21 counts, seven people, pardon me, one hell of a lot of

22 decisions to make.  I mean, there's no necessity for

23 them to make certain decisions to reach the questions

24 that I'm pointing out, because under 844 if it's a

25 controlled, dangerous substance and you possess it,

1 that's one thing.  If it happens to be crack, then you

2 might get into certain amounts, but other than that you

3 don't.

4          THE COURT:  Anything from the government on

5 that?

6          MS. GREENBERG:  Your Honor?

7          THE COURT:  Anything further?

8          MS. GREENBERG:  No.

9          THE COURT:  I'm going to leave it the way it is.

10 All right.  Any other corrections to the verdict form?

11          MS. GREENBERG:  Your Honor, one thing with the

12 jury instructions.  Mr. Mitchell and I were --

13          THE COURT:  No.  The verdict form.

14          MS. GREENBERG:  No.

15          THE COURT:  I want to close the verdict form out

16 if I can.  All right.  Well, I have noted the

17 objections made to the drug quantity specifications and

18 I conclude that these are proper for the jury to make

19 findings on these issues and I think it's appropriate

20 to doing the ranges.

21          On Page 10 I will correct the spacing problems

22 between number 48 and 49.  And on Page 23 I will

23 correct where it says "Lavon Dobie" instead of "LaNora

24 Ali."  And I will consider overnight the question

25 raised by the prosecution as to whether Ms. Ali is

1 entitled to a lesser included offense instruction as to

2 count 56 and resolve that before I proceed tomorrow.

3        MR. MARTIN:  One other thing, Your Honor.  I

4 don't know if it's already been mentioned, but at the

5 bottom of Page 8, the count is sort of orphaned.  It

6 might be --

7        THE COURT:  Bottom of Page 8?

8        MR. MARTIN:  The bottom of Page 8.

9        THE COURT:  Let me get there.  All right.

10        MR. MARTIN:  Count Three is orphaned.  It might

11 be moved up to the top of Page 9.  I don't know if I

12 can fit --

13        THE COURT:  Oh, I see.  Yes, I'll put a page

14 break there.  That's what you meant?

15        MR. MARTIN:  Yes, sir.

16        THE COURT:  That's our miserable typing skills.

17        MR. WARD:  We still have the -- do we have the

18 843?

19        THE COURT:  Well, my conclusion after looking at

20 the case law is the government's position is correct,

21 but if you want to talk me out of it.

22        MR. WARD:  I wish I could, but I think Mr.

23 Sussman is better suited.

24        MR. SUSSMAN:  I think that I -- I've spent a lot

25 of time looking at this.  I think that the government

1  -- I think it's surplusage, because I think that's half
2  of it.  But what the government's asking for is the way
3  it's charged in the indictment.  It's charged,
4  facilitation in furtherance of the conspiracy.  The
5  government's language really goes to an individual
6  distribution and whether you are facilitating the
7  distribution.  Whatever position I might have on that,
8  I think it's clearly surplusage  and confusing, because
9  it's not charged as a distribution and they're not
10  charged -- none of these people are charged with
11  facilitating distributions.
12      They're charged with facilitating conspiracy.
13  That requires the knowledge, requisite intent, and the
14  intentions to aid the conspiracy along.  I think that
15  by putting in the language of concerning what someone
16  might do with acquired drugs is irrelevant and is
17  potentially very confusing and prejudicial.  The real
18  issue here is the facilitation of a conspiracy, and
19  that's accomplished without the language on Page 78
20  which concerns a person may facilitate the distribution
21  of drugs without regard to what a person does.
22      Well, that may well be true although I might
23  disagree with that, but it's not the situation we're
24  confronted here because here we're confronted with an
25  indicted count concerning the facilitation of the

1   conspiracy.  What this does is it threatens to be a

2   constructive amendment of the indictment by providing

3   surplusage.  In my opinion that provides another theory

4   which isn't the theory that the government charged in

5   its indictment.

6          MS. GREENBERG:  Your Honor, I think that we

7   would agree.  I think -- to address Mr. Sussman's

8   personal concern, I think it's a very easy solution

9   where it says --

10          THE COURT:  Wait a minute.  Wait a minute.

11   Don't do that.  Give me a page number.

12          MS. GREENBERG:  I have Page 74.  I don't know if

13   I'm on the version that the court has.

14          THE COURT:  Page 74?  All right.

15          MS. GREENBERG:  Mr. Sussman said a person may

16   facilitate the distribution of drugs without regard.

17   Do you see that sentence?  It's about halfway down the

18   page.

19          THE COURT:  The page begins with the line that

20   says, indictment.  Is that the page you're on?

21          MS. GREENBERG:  Yes.

22          THE COURT:  Tell me where the language is you're

23   talking about.

24          MS. GREENBERG:  The end of the line where it

25   says, committed the offense only that he or she

1 facilitated.

2        THE COURT:  Wait a minute.  In what paragraph?

3        MS. GREENBERG:  In the middle of the first -- of

4 the full paragraph.

5        THE COURT:  Okay.  And where do you want to

6 change it?

7        MS. GREENBERG:  He's concerned where it said, a

8 person may facilitate the distribution of drugs without

9 regard to what the person does or intends to do.

10        THE COURT:  Right.

11        MS. GREENBERG:  I mean, if we change that, a

12 person may facilitate the conspiracy to distribute

13 drugs without regard.  If we just knock out

14 distribution of drugs and say they may facilitate the

15 conspiracy to distribute drugs, that would solve the

16 problem.

17        MR. MONTEMARANO:  Actually, that makes it worse.

18        MR. SUSSMAN:  I think it's surplusage.  Why  do

19 we need more words?  I mean --

20        MS. GREENBERG:  I'm just trying to correct what

21 he --

22        THE COURT:  The crime that they're allegedly

23 using the telephone to facilitate, is it not?

24        MR. SUSSMAN:  The conspiracy to technically

25 speaking.  Right.  It's already been said.

1        MR. MONTEMARANO:  Your Honor, if you go back to
2  the --
3        THE COURT:  Literally, this is a conspiracy to
4  possess with intent to distribute.
5        MR. SUSSMAN:  And distribute.
6        THE COURT:  Okay.  Distribute and possess.
7        MR. MONTEMARANO:  Your Honor, if you take Ms.
8  Greenberg's -- this goes back to the very beginning of
9  the discussions concerning this instruction and why,
10  with all due respect, the court's intention to instruct
11  as the government requests is inappropriate.  If you go
12  back to the preceding sentence, adding Ms. Greenberg's
13  clarification, then the preceding sentence would read,
14  the government is not required to prove that the
15  defendant committed the conspiracy, only that he or she
16  facilitated its commission.  It can't be facilitate a
17  conspiracy without being part of a conspiracy.  That's
18  the logical problem with the --
19        THE COURT:  The problem I have, Mr. Montemarano,
20  is that may be a good argument that's accepted in other
21  places.  But I have looked at the cases that have been
22  provided me by both sides on this, and it certainly
23  seems to me that in the analysis by my colleague, Judge
24  Freidman, in U. S. versus Lewis, in which he addressed
25  this question in detail in the context of a conspiracy

1  is a correct one.

2         MR. SUSSMAN:  Can I make a distinction on Lewis?

3         THE COURT:  Certainly.

4         MR. SUSSMAN:  First of all, it was done in a

5  somewhat screwy context.  It was kind of done as a

6  Motion to Dismiss, which is fairly unusual.  In Lewis,

7  there was a charge in the -- I don't know if it was in

8  the conspiracy or a separate conspiracy.  It was a

9  conspiracy to facilitate to use telephones to

10 facilitate the conspiracy, so there was a separate

11 charge in there.

12        What I wanted to point out to the court that

13 most of the authority for that kind of content comes

14 from Seventh Circuit.  I pulled the Seventh Circuit's

15 pattern instruction, and they don't even include that

16 in their instruction, if the court wants to look at it.

17 They don't put in the distinction that the government's

18 asking for.  If the Seventh Circuit, which is probably

19 the leading circuit in terms of promoting that mode of

20 thought doesn't see fit to do it -- I think there's a

21 difference between a sufficiency of the evidence

22 argument in which most of these cases are decided and a

23 question of what's an appropriate instruction.

24        In almost all of these cases, there's a

25 conviction of conspiracy, I think, to the last case

1 that I saw there is a conviction for the conspiracy as

2 well as the communications count.  But to the extent

3 that the court would like to look at the Seventh

4 Circuit they don't use that kind of language.

5        THE COURT:  I'll look at it.

6        MR. SUSSMAN:  I think my point is facilitation

7 goes to the conspiracy.  It doesn't go to an individual

8 act within the conspiracy.  The intent to have the user

9 of the phone is to aid and abet, if you will, the

10 conspiracy and not to aid and abet any individual act.

11        THE COURT:  How is what you gave me inconsistent

12 with what Ms. Greenberg suggested that I do to the

13 instruction?  Both the way it's written here in the

14 instruction as she has suggested, I modified it, and

15 here basically asks as part of that second element that

16 the use of the telephone in this case, it's the

17 telephone was accomplished as part of the committing of

18 or cause to facilitate the committing of in this case

19 the conspiracy, the charged conspiracy.

20        MR. SUSSMAN:  I have no problem with that.

21 Obviously, the telephone is -- the use of the phone is

22 intended to facilitate a conspiracy.  They don't get

23 into the buyer, seller; you bought drugs, you used

24 them, you redistributed.  That's not the crime that

25 they're talking about.  They're talking about the

1 actual use of the phone facilitating.

2          THE COURT:  Ms. Greenberg, is there any other

3 authority you want to bring to my attention?  I've got,

4 I believe, all the cases.

5          MS. GREENBERG:  Your Honor, the only other thing

6 is to address something that Mr. Sussman said.  He

7 talked about he hasn't seen a case where they're

8 convicted of the telephone count and not the

9 conspiracy, but the Supreme Court in Powell had exactly

10 that situation where they convicted of one and not the

11 other.  And as the Lewis court analyzed that, the

12 Supreme Court said that it's not inconsistent to have

13 somebody convicted of one offense, say a telephone, and

14 not be convicted of the conspiracy.  That wouldn't be

15 an inconsistent verdict under the Supreme Court

16 authority.  And I forget which one was which, but

17 that's what the Powell case said.

18          THE COURT:  Anything further on this issue?

19          MR. MCKNETT:  Your Honor, I have a problem with

20 the same instruction, same case, but the last sentence

21 I think is a misstatement.  It says, for example, a

22 person who uses the telephone to facilitate the

23 distribution of drugs and then consumes the drugs is as

24 culpable as the one who uses the telephone to the

25 facilitate a distribution and then sells the drugs.

1        The first use of the word distribution, it makes

2   the word distribution equal to the word purchase,

3   because the person who is purchasing to use to consume

4   the drugs in this instruction is guilty of a conspiracy

5   to distribute, and that contradicts both the law and

6   the other instruction about a buyer and seller

7   relationship.

8        MR. SUSSMAN:  Your Honor, a similar question was

9   dealt with in a Ninth Circuit case, Martin.   In Martin

10  it was a Supreme Court case which talked about

11  facilitation of gambling, and it said that the betters

12  who are facilitating were not facilitating the gambling

13  operation.  I can give you the Supreme Court cite, and

14  it's probably going come up again with the Internet

15  kind of issues that are going on.  But they are that

16  they are not facilitators as such, which is similar

17  like the buyer is not the facilitator of the

18  conspiracy.  But in this case what we really have is

19  the specific intent to facilitate the conspiracy, and I

20  think that's the dispositive question that the jury

21  should be answering.

22       THE COURT:  Anything further on this issue?

23  All right.  Any other issues on the instructions?

24       There was a question you were going to ponder

25  and that you're going to resolve tomorrow morning, Mr.

1 McKnett?

2          MR. MCKNETT:  Yes, Your Honor.

3          THE COURT:  First thing, at 8:01 a.m., we have

4 to talk about that because I have to resume the

5 instructions at 8:30.

6          MR. MCKNETT:  That's fine, Your Honor.

7          THE COURT:  If there is to be any agreed upon

8 change, hopefully, let me know and I'll do it.  But I

9 need to know if there's going to be a disagreement,

10 what is the disagreement that I have to resolve.

11          MR. MITCHELL:  And we also have a disagreement

12 on -- at least the government is creating a

13 disagreement.

14          MS. GREENBERG:  Your Honor, I don't want to keep

15 the court any longer.  I've given to Mr. Mitchell the

16 unpublished case of U. S. versus Osborne.  I can give

17 up to the court the cites to that case.  That basically

18 talks about since the Fourth Circuit's decision, U. S.

19 versus Reedy, they have determined that lack of

20 restoration of civil rights is not an element of

21 922(g).  This would mean modifying jury  instruction 62

22 to remove element two and to leave jury instruction 64.

23 We did cite Reedy in our draft jury instructions.  The

24 court has that cite.  Mr. Mitchell is relying on Reedy,

25 and we are relying on the subsequent cases which I have

1 given to Mr. Mitchell and I can provide up to the

2 court.

3          THE COURT:  Are you suggesting I should change

4 the instruction?

5          MS. GREENBERG:  Yes.  And I'm comfortable with

6 the court reviewing this overnight.

7          THE COURT:  Tell me which instruction you want

8 to change.

9          MS. GREENBERG:  Modified jury instruction 62.

10          THE COURT:  On what page?

11          MS. GREENBERG:  It's one of the gun counts, Your

12 Honor.  Court's indulgence.

13          MS. GREENBERG:  It would be on Page 83.

14          THE COURT:  All right.

15          MS. GREENBERG:  Second, that the defendant's

16 civil rights have not been restored by the state of

17 Maryland at the time of the charged offense.  The

18 Fourth Circuit in Clark, subsequent to Reedy, said that

19 that is not an element of the offense.  Reedy is cited

20 here because that is the authority upon which they

21 relied on initially --

22          THE COURT:  Do you want to give me the citations

23 of the case?

24          MS. GREENBERG:  Reedy is cited at 990 F 2d, 167.

25          THE COURT:  Wait a minute.  167, you said?

1           MS. GREENBERG:  Yes, a Fourth Circuit case.  And

2 if I can provide to the court my excerpts from U. S.

3 versus Osborne that I gave to Mr. Mitchell and your

4 clerk earlier that day, as well as the cases decided by

5 the Osborne court for the change to the Reedy decision.

6           THE COURT:  All right.

7           MS. GREENBERG:  We actually don't have that

8 practice here in Maryland, so I didn't think it was a

9 huge issue.  We do have evidence that Mr. Bynum's

10 conviction is still valid, but if we're trying to get

11 the jury instructions right it would be right to remove

12 that.

13          MR. MITCHELL:  Your Honor, this is another

14 attempt to misconstrue a case, reinterpret the language

15 and then use that reinterpretation, their own

16 reinterpretation of a case to convince you that

17 something isn't what it really is.

18          THE COURT:  I will have to read and see what it

19 said.

20          MR. MITCHELL:  Osborne says that if Osborne

21 wanted in the indictment the issue of whether or not

22 his civil rights had been restored and the court said

23 you're not going to get it in the indictment, period.

24          MR. MITCHELL:  Osborne does not say that the

25 jury instructions are inappropriate to discuss the

1 issue of restoring the civil rights.  In fact, in

2 Reedy, which is cited in the jury instructions by the

3 government provided at the very instance, and we

4 reviewed it and didn't have any objection.

5         THE COURT:  Let me see if I understand you

6 correctly.  What you're saying is that all Osborne

7 stands for is the proposition that the indictment was

8 not defective for failing to allege restoration of

9 civil rights?

10        MR. MITCHELL:  That's it.

11        THE COURT:  It also says in pretty crisp, clear

12 English that lack of restoration of civil rights is not

13 an element of the offense.

14        MR. MITCHELL:  And element.  Exactly.  In the

15 indictment.

16        THE COURT:  How is that different?  Are you

17 telling me that it says it's not an element of the

18 offense and doesn't have to be indicted, but I have to

19 put it in the jury instructions?

20        MR. MITCHELL:  See, if you take Osborne, like

21 the government wants, out of context without looking at

22 the actual --

23        THE COURT:  I'm going to read it.

24        MR. MITCHELL:  What the actual court is saying,

25 and it is saying you can't have it in the indictment

1 yet.  Reedy says --

2          THE COURT:  Can't have it in the indictment.

3          MR. MITCHELL:  Reedy also says the same thing,

4 but it goes on to say that on Page 168 of Reedy to 169

5 it says, a violation of 922(g)(1), however, cannot be

6 predicated on a felony conviction for which a person's

7 civil right haves been restored.  Therefore, you must

8 have an instruction that explains to the jury that not

9 only have they proven a conviction, but also that

10 conviction has not been overturned and his civil rights

11 have not been restored.

12          What Osborne was saying is, if you're going to

13 tell that to the jury, then it should have been in the

14 indictment.  And the court said no, you're not going to

15 give the indictment.  But Reedy says you've got to

16 explain to the jury as a part of the instructions to

17 fully -- to fully explain to them what it is the

18 government needs to prove.  Let me address what the

19 government did in their case.  They brought evidence to

20 of all people a non-expert, a police officer.

21          THE COURT:  Who walked in with a certified copy

22 of the docket entries.

23          MR. MITCHELL:  They brought in a police officer

24 who had absolutely no experience, and who admitted he

25 had no experience, no training or knowledge about a

1 conviction a certified conviction.

2       THE COURT:  What he brought in was a certified
3 copy of the docket entries from the clerk of the
4 Circuit Court for Montgomery County who certified it a
5 date after the time of the conviction alleged in this
6 case showing absolutely nothing after the time of the
7 conviction.

8       MR. MITCHELL:  Up to that point.

9       THE COURT:  As a matter of law.  Because I did a
10 property lot of practice in that courthouse.  If it's
11 reversed, it's going to be sitting in that court
12 docket.

13      MR. MITCHELL:  And I had issue with the court
14 not forcing the government to bring that evidence in,
15 rather than just explain that to the jury.

16      THE COURT:  That's a question of law.

17      MR. MITCHELL:  But they went one step further.
18 They had this police officer testifying about what an
19 expungment is and what getting a pardon is and what
20 effect that has on a conviction, and that officer had
21 absolutely no business doing that.  They raised that
22 issue about whether the case had been overturned or
23 expunged, and he testified about what it meant and what
24 he could get in the records.  Certainly they raised the
25 issue, and the jury should be instructed about what

1  happens if a case is overturned, and I think that.

2        THE COURT:  If I -- Mr. Mitchell, if I gave an

3  instruction on that, it would not help you.  I would

4  instruct the jury that if a conviction of a state

5  circuit court jury and the sentence imposed pursuant to

6  the judgment of conviction is overturned on appeal,

7  that fact will appear on the docket.

8        MR. MITCHELL:  No, that's not what the

9  instruction is going to say.  The instruction is as

10 it's read, that the government must also show that the

11 defendants' rights were not restored.  They introduced

12 evidence on that.

13       THE COURT:  Aren't you saying the same thing,

14 that a prosecutor has to come in with records of every

15 single court clerk in the entire United States saying

16 that the person has not been --

17       MR. MITCHELL:  Your Honor, I'm reading from

18 Reedy, the very case they cited and suggested in the

19 first place.  Now, in the -- in not even the Eleventh

20 Hour, the last hour, the last minutes of this trial,

21 all of a sudden now they want to change it all.

22       THE COURT:  Well, you know, what moment is it if

23 the government --

24       MR. MITCHELL:  The same thing they've said all

25 along.  Your Honor, they've had these instructions for

1 months, and now at the last minute --

2          THE COURT:  Mr. Mitchell, you've just had --

3          MR. MITCHELL:  -- didn't get a chance to do

4 that.

5          THE COURT:  You have just had the last word,

6 because my court reporter is about to turn into a

7 pumpkin and we're not going to let that happen.  It's 6

8 o'clock.  Enough is enough.  I will see you all

9 tomorrow morning at 8 o'clock and we will sort these

10 issues out.  Thank you.

11                  (Off the record at 6:02 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          **<u>CERTIFICATE</u>**

2

3          I, Tracy Rae Dunlap, RPR, CRR, an Official Court

4  Reporter for the United States District Court of

5  Maryland, do hereby certify that I reported, by machine

6  shorthand, in my official capacity, the proceedings had

7  and testimony adduced upon the Jury Trial Proceedings

8  in the case of UNITED STATES OF AMERICA versus PAULETTE

9  MARTIN, et al, Criminal Action Number RWT-04-0235 on

10  August 8, 2006.

11

12          I further certify that the foregoing 67 pages

13  constitute the official transcript of said proceedings,

14  as taken from my machine shorthand notes, of said

15  proceedings.

16

17          In witness whereof, I have hereto subscribed my

18  name, this 2nd day of January 2009.

19

20

21                          _____
                            TRACY RAE DUNLAP, RPR, CRR
22                          OFFICIAL COURT REPORTER

23

24

25