```
          UNITED STATES DISTRICT COURT OF MARYLAND
                      SOUTHERN DIVISION

---------------------------x
UNITED STATES OF AMERICA   :
          Plaintiff        :
                           :
                           :
vs                         :Criminal Action:RWT-04-0235
                           :
                           :
PAULETTE MARTIN, et al     :
          Defendants.      :
---------------------------x


                          Monday, July 31, 2006
                          Greenbelt, Maryland

     The above-entitled action came on for a Charge
Conference Proceeding before the HONORABLE ROGER W.
TITUS, United States District Judge, in courtroom 4C,
commencing at 2:00 p.m.

     THIS TRANSCRIPT REPRESENTS THE PRODUCT
     OF AN OFFICIAL REPORTER, ENGAGED BY
     THE COURT, WHO HAS PERSONALLY CERTIFIED
     THAT IT REPRESENTS THE PROCEEDINGS AS RECORDED AND
     REQUESTED.

     APPEARANCES:

     On behalf of the Plaintiff:

     DEBORAH JOHNSTON, Esquire
     BONNIE GREENBERG, Esquire

     On behalf of the Defendants:

     MICHAEL MONTEMARANO, Esquire
     ANTHONY MARTIN, Esquire
     MARC HALL, Esquire
     TIMOTHY MITCHELL, Esquire
     PETER WARD, Esquire
     EDWARD SUSSMAN, Esquire
     HARRY MCKNETT, Esquire

Tracy Rae Dunlap, RPR, CRR          (301) 344-3912
Official Court Reporter
```

I N D E X

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|                          | Page |
|--------------------------|------|
| Reporter's Certificate   | 216  |

1    THE COURT:  Because I'm only able to use one arm,
2  I've asked my law clerk to come up here and help shuffle
3  books around this afternoon.
4    MS. JOHNSTON:  Your Honor, I'm not sure how the
5  court wants to proceed; however, I do want to advise the
6  court of one thing.  I was unable to reschedule grand
7  jury that I have at 4 o'clock.  It cannot be moved for
8  reasons that I really can't discuss in court.
9  Fortunately, Ms. Greenberg is covering most, if not all,
10 of the jury instruction issues.
11   But in terms of the defense calls the defense
12 wants to play in their case in chief or during
13 cross-examination --
14   THE COURT:  Why don't we work things around and
15 get things so your 4 o'clock matter, you go to grand
16 jury?
17   MS. JOHNSTON:  I wanted to let the court know that
18 in terms of the calls they're proposing, I'm much more
19 familiar with those than Ms. Greenberg.  So, I would --
20   THE COURT:  Can you come back?
21   MS. GREENBERG:  Excuse me?
22   THE COURT:  Can you come back?
23   MS. JOHNSTON:  I can absolutely come back.  I
24 expect to be done by 4:45, five by the latest.
25   THE COURT:  We, hopefully, will be done by then.

But if not, you will be back.

MS. GREENBERG:  Judge, there's another reason to cover this.  We've been attempting to find out the witnesses for tomorrow, and we've been told so far that Mr. Montemarano has available Mr. Shannon, Ms. West, and potentially Mr. Williams.  That probably won't take up the rest of the day after Ms. Dobie is finished.

THE COURT:  Well, I have a news bulletin for you from the marshal.  This is Mr. Martin's client. According to P. G. Medical, Mr. Goodwin's crown has been repaired and, I think, reglued or new adhesive or whatever the case may be.  He's fixed.  Mr. Martin, you should plan on your client being, at the earliest possible time, the next witness.  Okay?

MR. MARTIN:  I'm ready.

THE COURT:  Good.  He's ready, too.  He's fixed.

MS. GREENBERG:  Your Honor, my only suggestion is that I understand that Mr. Goodwin might testify, but he might not.  And Ms. Martin might testify, and she might not.  And if we resolve the call issue, Sergeant Sakala is here.  So if they run out of witnesses, they can then proceed to what they want to do with Sergeant Sakala, and we won't waste any time.

THE COURT:  Okay.

MS. GREENBERG:  I also, Your Honor, took the

liberty of passing out to defense counsel a cleaned up

verdict form with whatever minor things people have

pointed out during the trial.

THE COURT:  You have one for me, I hope.

MS. GREENBERG:  I have two copies for the court;

one for your clerk, and also a disk.  And counsel has got

one.

THE COURT:  Let me just note for the record that

all defense counsel are here except for Mr. Sussman, who

indidated he was waiving his right to be present.  He

submitted information about the jury instructions in

writing.  And of course, the actions I take today about

the jury instructions are not absolutely chiseled in

granite final.  We will confer about them obviously

before I give them, we will hear about them after I have

given them.  There will be plenty of opportunity to

participate in that.  And I will revisit any rulings

before I make them final with regard to Mr. Sussman's

client, but he has waived his right to be present.

I also note that no defendant is here, other than

Mr. Bynum, who wishes to be here, and he's welcome to be

here today.

MR. HALL:  Your Honor, I will also point out in

reference to Mr. Sussman that had E-mailed me this

weekend a number of points that he wanted made, so I will

--

1

2          THE COURT:  I will think Mr. Sussman -- when I

3   look at you -- I will think "Sussman" when I look at you.

4          MR. HALL:  Do you want me to walk over there?

5          THE COURT:  No, it's okay.

6          Let me ask counsel this.  Just in terms of

7   planning purposes, we're going to be going this week, in

8   the absence of some problem, from 9:00 to 5:00, except

9   for Thursday when we're going to go from 9:30 to 5:00.

10  And what I'm trying to ascertain is whether it is a

11  collective wisdom of the defense that that is going to be

12  enough to get time to get the defense case done or not.

13         MR. MONTEMARANO:  I can speak to some of that.

14  Much of this, of course, depends on Mr. Goodwin and his

15  final determination on testifying, because --

16         THE COURT:  I believe as of the last time we spoke

17  he was going to testify; is that right, Mr. Martin?

18         MR. MARTIN:  That was my understanding Your Honor,

19  despite my many admonitions to the contrary.

20         THE COURT:  All right.

21         MR. MONTEMARANO:  Your Honor let's just say I have

22  not spoken to Mr. Goodwin about testifying, but I have

23  enough information to speak to the balance of this.  We

24  would begin tomorrow morning with Ms. Dobie and complete

25  her; that would take the better part of the morning.  Mr.

Ward is suggesting he may have another witness.  Is that correct, Peter?

MR. WARD:  Well, finding one, I will be glad to put him on.  But I don't have another issue, but we do have an issue that, of course, I have raised.

THE COURT:  I will address that.  But, your witness would be Ms. Dobie.

MR. WARD:  Ms. Dobie.

THE COURT:  Continue, Mr. Montemarano.

MR. WARD:  Of course, I do want to have the opportunity to question Sergeant Sakala.

THE COURT:  Right.  Monday.

MR. MONTEMARANO:  That's separate and apart.

THE COURT:  That's a separate issue.

MR. MITCHELL:  The only thing I anticipate, Your Honor, is the cross-examination of Sergeant Sakala and perhaps a rebuttal witness, depending on the answer to one of my questions.

THE COURT:  Rebuttal to Sergeant Sakala?

MR. MITCHELL:  Yes.

MR. MONTEMARANO:  So I would ask the court to establish to its satisfaction a final answer from Mr. Goodwin tomorrow morning first thing.

THE COURT:  Oh, I intend to.

MR. MONTEMARANO:  My witnesses are on call.  I did

not ask them to come in.

1

      THE COURT:  I will, first thing in the morning,

2

say, how are your teeth doing.  And I understand is

3

they've been fixed.

4

      MR. MONTEMARANO:  Your Honor, so you understand,

5

I'm not trying to tell you how to do your job.  I'm

6

trying to tell you where I stand.

7

      THE COURT:  You make all the suggestions you want.

8

      MR. MONTEMARANO:  Assuming Mr. Goodwin testifies,

9

it's safe to assume I won't need my witnesses by

10

Wednesday.

11

      THE COURT:  You will finish with your witnesses --

12

      MR. MONTEMARANO:  I will not need them until

13

Wednesday.

14

      THE COURT:  I think we will be full right now with

15

Ms. Dobie with Mr. Goodwin.

16

      MR. MONTEMARANO:  I, therefore, would tell them at

17

lunch on Tuesday, see you Wednesday morning.  If,

18

however, Mr. Goodwin bails on his option to testify

19

tomorrow morning first thing, I will request a brief

20

moment before the jury is brought in so I can call my

21

witnesses and inform them they need to be here.

22

      THE COURT:  All right.  Well, just tell the

23

government so they are ready to go.

24

      MR. MONTEMARANO:  That would be Matthew Shannon,

25

1  he's an attorney in D. C.  He and I spoke this morning

2  and I told him I would give him a heads-up when he would

3  be needed.  All he wants to know is when.

4          THE COURT:  Okay.

5          MR. MONTEMARANO:  And Martha Jean West.  She is

6  staying in southern Prince George's County with friends.

7  I'm going to go check with the clerk when we take a break

8  this afternoon on compensation to her for -- she's from

9  Florida, and I think the government's obligated to put

10 her up.  I'm not sure how that works, and I need to find

11 out about that if she just needs to submit receipts or

12 whatever, because she's thinking it's an hour and a half

13 trip.

14         I went down there this morning.  I know -- she

15 might stay closer so she would be available the night

16 before and then could begin whenever we need her.  So, to

17 that extent I would tell her to get up here tomorrow

18 first thing in the morning, and I'll give her a heads-up

19 about that potential today.  Otherwise, I would ask her

20 to be here on Wednesday.

21         THE COURT:  As we all know the closest hotel is

22 the green belt Marriott and I don't sell hotel rooms.

23         MS. JOHNSTON:  Your Honor, in terms of Martha Jean

24 West.  It is my understanding she had counsel at one

25 point in time in relation to this matter and that she

1  does have a Fifth Amendment right because, in fact, she

2  was selling stolen clothes to Ms. Martin.  So, those are

3  issues that I thought I should mention to the court.

4      THE COURT:  Mr. Montemarano, are you aware of who

5  her counsel is, or do I need to contemplate the provision

6  of appointment of counsel for her?

7      MR. MONTEMARANO:  When I first spoke with Ms.

8  West, I spoke, as well, to her attorney in Florida, about

9  whom she informed me perhaps halfway through our

10  conversation, at which point of course I pulled up on the

11  reins and I said let me have a name and number; let me

12  talk to him.  Obviously, that's what I'm supposed to do.

13      THE COURT:  Right.

14      MR. MONTEMARANO:  When I served the subpoena on

15  her it was, you know, a year plus later.  She informed me

16  she was going to speak with a friend of hers who is a

17  friend of hers up here when she got up here, but she

18  wanted to talk to me.  We did so.  I have no knowledge

19  from the government as to what material they may have

20  that they think is impeachable, and perhaps that's

21  something we should sort out before I even bring her to

22  the court because that might solve this --

23      THE COURT:  Why don't I do this?  Why don't I

24  contact Ms. Shearer and ask her to have identified

25  standby counsel ready in the event that we need one.

MR. MONTEMARANO:  That would be a good idea.  I
don't think Donna's in.  I just left a phone message for
her.

MR. WARD:  Ms. Shearer is not here today.  I
called her on the way down.  She was out ill today.

MR. MONTEMARANO:  She sounded like death warmed
over on her phone message.

THE COURT:  We've already assaulted the judge and
beat up one defense attorney, so I guess it wouldn't be
poetic if we didn't mess up the CJA coordinator as well.

MR. MONTEMARANO:  I would caution Ms. Johnston and
Ms. Greenberg that their turn is next.  In any event, we
would then go to Ms. West.  Once Ms. West was complete,
and that would take a substantial portion of Wednesday if
not all of it.  Mr. McKnett would then move to the
recross or continued cross, or however you want to call
it, on Sergeant Sakala.

And after Sergeant Sakala, who Mr. McKnett and I
have a number of calls to discuss, Mr. McKnett would move
to his witnesses, and the defense will be done.  I'm not
sure how long it will take.  I think Sergeant Sakalla
would take a day, day and a half.  I'm not sure how long
Harry's witnesses would take.

THE COURT:  Mr. McKnett, you're standing.  As I
recall, when we left last week you had a question about a

probation department employee, in terms of when to call that person.

MR. MCKNETT:  That's correct, Your Honor.  Because I'm coming in last in the presentation here, my estimates of when my client will get on has been kind of a moving target.  I think Mr. Montemarano has accurately laid out to sequence of witnesses which would indicate that my client's case might not get in until Friday.

MR. MONTEMARANO:  Friday or Monday.  Friday or Tuesday.

MR. MCKNETT:  What I would do, with the court's approval, is to have -- I think I indicated last week that the first witness I intend to call is my client's husband, so I'm going to have him on standby for Thursday if we should somehow get there.  And then if not, I'll just keep him on standby until it's time for him to come in.  The two Pretrial people are very flexible.  They just need the day before.  Give them call, and they can be here when we need them.

THE COURT:  All right.

MS. GREENBERG:  Are there two or three?  I thought there were three down there.

MR. MCKNETT:  There's only two.  Lisa and Nikki.

THE COURT:  Okay.

MR. MONTEMARANO:  Your Honor, I'm sorry.  There's

only one other hitch in that.  One of my witnesses has apparently vanished, and I haven't tracked him down yet, but I'm continuing to try.  So, I'm not promising that he'll be here.

THE COURT:  Has your client made a decision on testifying?

MR. MONTEMARANO:  I think it's very unlikely.  I don't know if the final decision has been made, but I'm not planning on it at this point.

MR. MCKNETT:  Your Honor, with regard to my witnesses.  There will be the five.  And I think it's fair to say, depending on the length of cross-examination that they could take the better part of a day, if not a full day.

THE COURT:  That's assuming your client is one of the five; right?

MR. MCKNETT:  Yes, Your Honor.

THE COURT:  What about the other four -- the four remaining?  Are they short witnesses?

MR. MCKNETT:  If she were to testify, she would take up, I think, the longest period of time; and, her husband would be the next longest.  The other three would be very short, perhaps 15 minutes each.

THE COURT:  All right.  And refresh my recollection.  What is this current status of a possible

stipulation on the forfeiture issue being deferred to the court?  Is that ready now?

MS. GREENBERG:  We did.

MR. MONTEMARANO:  We put that on the record.

THE COURT:  So there will not be a second deliberation by the jury, and that issue will be remitted to the court for its decision?  All right.  Now, if that does become --

MR. MONTEMARANO:  Your Honor has indicated that would be deferred until probably post-vacation.

THE COURT:  I would defer it.  Whether I deferred it to a separate proceeding where I have additional argument and witness or defer it to sentencing, I haven't looked at it yet.  I haven't looked at it yet.  But certainly, when we're finished this month or next month, we are finished for a while.

MR. MONTEMARANO:  Not to paraphrase Bogart, but there's always September 5th.

THE COURT:  Yes.  Well, we'll see.  Now, let me -- with regard to the additional calls.  Correct me if I'm wrong.  Are those calls substantially transcribed in the transcript attached to the letter to me dated July 21 from Mr. McKnett, or are there more transcripts?

MR. MONTEMARANO:  I'm not familiar with that letter.  I can tell Your Honor where it stands from my

point of view.

THE COURT:  What's attached to that letter is a transcription that starts with call B-26.

MS. JOHNSTON:  That's what I have too, Your Honor.

MR. MONTEMARANO:  That's correct.  But we have reorganized it in terms of making sure they were in the right order.  We have removed a few calls that we decided we were not going to argue about, and we have -- I think that's pretty substantially where it stands.  I can provide the court -- we gave one of these to Mr. Krinsky last week.  Here's another one so you both will have a copy.

THE COURT:  All right.

MR. MONTEMARANO:  When I gave Ms. Merez the material for Mr. Krinsky earlier today, what it was was a couple of transcripts that had not been reproduced as part of the book they need to be added there's a note as to one to have calls.

THE COURT:  I'm going put the thing that's attached to Mr.  Mac let net mac net's letter ton floor {doynt} need that now.  Whey need to look at is the white notebook {nont} {mont} the white notebook the which one {gai} you today.

MR. MCKNETT:  Your Honor the book that Mr. Montemarano has {juts} {t} handed up is in to the best of

my ability in proper chronological sequence as I was
reviewing the books over the weekend I found a couple
that were out of {ord} {ner} time sequence and I think
book that Mr. Montemarano may still have those
misplacements in some of the transcripts I would be happy
to fix it.  It's a couple of them and I can just pull
{ket} out and put them in the right place.

        THE COURT:  I understand there's a couple you want
{o} add to that book {mont}n't no the {poobing} I just
gave {yu} is up to date and that has addition it is one I
{dwaif} Mr.  {cins} {ki} last week needs to have the
pages {proy} {vid} ed this afternoon added {sglfrjts}
{sglchbling} whether he work off this book then.

        MR. MONTEMARANO:  Yes, that book right there is
fine.

        THE COURT:  Let me go through tall various papers
I have that relate to {thish} shoe.  I have just gotten
from Mr.  Mitchell a motion to have one phone call
played, number B 2429; is that in this book or not Mitch
yes it is Your Honor.

        THE COURT:  It is in the book.

        MS. JOHNSTON:  Your Honor that's a call that we've
already -- that's the per I've {yan} chicken style call
that was played.  Mr.  Mitchell played it twice for agent
Sakala on cross-examination.  There is no basis to {purt}

cross examine agent Sakala about that call since he's

already had an opportunity to cross father and mother

inhim.  He already cross examined him about {ket} was

ticket or chicken and there's no authority to allow him

to again cross examine him just to emphasize that point.

That's purely argumentative.  I understand that they have

a transcript prepared that says {pur} per {oouf} {yan}

chicken.  However the court's instructed the jury that

the transcript that's present --

        THE COURT:  So the bottom line is if I present

this in the jury would have two competing transcripts one

that says chicken and one that says.

        MR. MONTEMARANO:  Tickets {sglfrjs} {sglfrjts}

tickets okay.

        MR. MONTEMARANO:  I would just reserve to the

considerate that we contested the admission to have

transcripts in advance because that's was their version

{sglfrjts} {sglj} I'm incline today let the jury have

both transcripts and tell them if they want to hear the

recording again the different sides have heard it

differently.

        MS. JOHNSTON:  Your Honor,

        THE COURT:  I don't see any reason to necessarily

replay it with Sakala again because it was {ri} played is

{sa} with Sakala twice.

1          MR. MONTEMARANO:  Fair enough.

2          MS. JOHNSTON:  That is my objection is to is to

3   put agent Sakala up there and to re{kosz} him {op} what

4   he's already been crossed on {sglfrjts} {12K3R50EU7B8G9S}

5   put {thit} way I'm incline today agree with you but I

6   that {kuz}n't mean I'm not note the {thaer} recording.

7          MS. JOHNSTON:  And closing argument is a different

8   {dfrnt} story {sdifrnt} different story if somebody WAN

9   toss play nit closing argument that's fine.  My objection

10  is to cross recross agent Sakala {sglfrjts} {sglfrjt} he

11  has already been crossed and re{coz} ed about this call.

12  {vi} no problem with the defense transcript being placed

13  in front of this jury with the same instruction that I

14  will give them about the government's version.  This is

15  the government's version of what they think they heard

16  this is what the defense thinks they heard.  It's you

17  make the decision {whait} is.  The evidence is the

18  recording.

19         MR. MONTEMARANO:  {soyt}'s clear we transcribed it

20  at Mr. Mitchell's request -- Mr. McKnett and I are

21  responsible for most of the calls.

22         THE COURT:  Understood {mant}.

23         MR. MONTEMARANO:  We {dit} at Mr. Mitchell's

24  quit's not our intention to go into it again identity

25  {es} purely Mr. Mitchell's I issue.

THE COURT:  I will permit the transcript to be in the book and this book will go to the jury just {tliing} government's is going to the jury.

MS. JOHNSTON:  Your Honor we're objecting toing for it unless somebody lays a foundation {fo} that transcript they're going to need call somebody who transcribed it note {ta} hear recording.

THE COURT:  Did the somebody call somebody who said they transcribed it.

MS. JOHNSTON:  Yes agent Sakala {sglfrjts} {sglfrjt} he didn't transcribe it.

MS. JOHNSTON:  He {tooes} one -- he prepare it had transcripts he absolutely did.  He authenticated those tapes as being valid tran scrips of the call.

THE COURT:  What authority do you have Ms. {squlons} ton for the proposition that in a case involving government wiretaps where the government offers transcripts of it that the government has to have somebody to come in and say, I transcribed it.  This is a good transcript as opposed to the government making a proffer to that effect and it coming to the jury win struck shuns so limiting it?

MS. JOHNSTON:  Your Honor, if the court needs authority, defense counsel would have objected if I hadn't had about Sakala lay the foundation that he

reviewed all of those calls, he prepared the transcripts

and they say what they say and they associate what's said

with that person.  It's particularly important in this

call because I don't know who transcribed it.  That maw

person may or may not have {235UBGS} {perns} listen

{toing} wiretap calls {apd} preparing transcripts.

THE COURT:  Let me ask the defense do you have a

witness who ising {g} to say I transcribed this.

MR. MONTEMARANO:  Yes Your Honor we think it's did

{mrusz} {saj} in all candor.

THE COURT:  Who did you have.

MR. MONTEMARANO:  Mr. McKnett can tell you he had

the personal dealings with.  It was arm's length for me

Beth {maps} perhaps {im} better speaking with it.  It was

a professional transcriber who was DUI give ten CKs and a

list of the call note {witz} C Ds E a list of the {kawls}

and explained how the C Ds and note the {thaer} recording

even if we're only going to play a a portion we had the

entire call transcribed so there would be no question

about that.  Is.

MR. MCKNETT:  Your Honor, what happen happened is

I took -- there is a court certified reporting service in

Columbia called cop {po} {fa} lease reporting services.

I took the disks to their office, I talked to Mrs. Cop

{po} {fa} lease, {trooes} {sa} cop {po} {na} lease I told

1  her what we wanted done and presented her with the disks

2  and with a list of the conversations we wanted tran {5B}

3  ed.  {di} not tell her anything about what we thought was

4  -- should be in the transcripts.  I said here they R.

5  listen to them.  Transcribe them as best you hear them.

6  She did.  I have here the original in her binding with

7  her certification and her original signature on the last

8  page and I would be happy to submit that to the court.

9       THE COURT:  How did she identify the speakers?

10  Met.

11      MR. MCKNETT:  We identify it had speakers from the

12  logs.

13      THE COURT:  From the logs.

14      MR. MONTEMARANO:  Yes.

15      THE COURT:  Does the dispute, Ms. Johnston duoto

16  the question of the transcriber's identification of

17  speakers {r} or to {taut} en{tis} ty of what she wrote

18  down.

19      MS. JOHNSTON:  It goes to both Your Honor.  One is

20  they may have relied on the logs.  As agent Sakala said

21  sometimes they would have to go back and change the logs

22  sometimes they were able to identify someone later so it

23  goes to the identity of the speakers.  Two it goes to the

24  fact that the person who did these transcripts it's my

25  understanding doesn't have experience transcribing

wiretap conversations and generally this is a.

THE COURT:  I'll permit you to require them to
bring in this person who can testify in five minutes that
they transcribed it with those directions and but I'm
going to permit the transcripts and go to the weight of
the transcript the weight that you give to it {fwu}
bottom loin is it is the recording not the transcript
that is before the jury.  These are an aid {t} it's an
aid {gi} ento them by both sides how good or bad the aid
is I will let you develop with witnesses {mont} {mnt} in
light of Ms. -- well the {firs} wet never arrange {wd}
her to be available.  Would the court be -- I would
proffer as an officer of the court.

THE COURT:  Can you {sxwooez} her in.

MR. MONTEMARANO:  She will testify to a certain --
to an adequate foundation for them.

THE COURT:  Squeeze her in whenever you can.

MR. MONTEMARANO:  After the calls are played?  Or
do you -- we will the court require them in advance?  We
just want to know {sglfrjts} {sglfrjt} I'm not going
require them in advance I'll take take the calls subject
to the proffer that you're going to connect the dots and
if you don't have her that's an issue we have to address.

MR. MONTEMARANO:  If the court please.  I have a
subpoena in my office the frank form from the court.  I

will prepare it tonight, {git} get it to Mr. McKnett he

can serf it on Ms. {ka} bo {mroo} {fa} lease we don't

have to bring it here down here to the mar shalls or

anything else note the {har} the {ro} hear the recording

{sglfrjts} {sgljts} {tand} jury can take into account if

that's the case.

MR. MONTEMARANO:  Mr. McKnett live ass few might

be minutes from her.  It would be easier than have the

mar shalls come audiotape tall the way {toup} Columbia.

MR. MCKNETT:ly Would be happy to do that, Your

Honor.  She will testify that these were transcribed by

her or by someone under her direct supervision by someone

in her office {mont} {nont} note the hear the recording

there are mistakes that I believe R. {kel} ly who is the

performer who goes by the initial R. period it's art as

short for Arthur {kel} ly these things happen we're not

suggesting there's anything nefarious she {dit} one ty

time she came up with this our {mursz} examination about

detective {sa} sergeant {ka} {la} is {sa} {ka} {la} is

for specific content than it is for specific words.

THE COURT:  Mr.  Mitchell.

MR. WARD:  Of course we are the point that

detective Sakala testified that he went through the logs

one by one.

MR. MONTEMARANO:  Repeatedly.

1          MR. WARD:  And identified all the parties and
2   where had there was a misidentification corrected it so
3   that shouldn't be an issue.
4          THE COURT:  I think those are all fact that is the
5   jury can consider.  Mr. Mitchell.
6          MR. MITCHELL:  I just want to be clear on the call
7   they referenced in my request.  Do I understand the court
8   to say that I cannot ask the -- Sergeant Sakala anything
9   about that call at all?
10         THE COURT:  I think you can ask him about the call
11  because I'm certain who what you're going to do is to
12  bring out some other call; is that right?
13         MR. MITCHELL:  No.  I intend to have him view the
14  new transcript and question him on why his opinion is
15  different on {hrz} words.
16         THE COURT:  You can do that.
17         MR. MITCHELL:  I didn't have this transcript
18  initially when I cross examine inned him and I wasn't ex%
19  {pebingt} ing his answer.
20         THE COURT:  I you can do that.  I don't want to
21  have to go through playing the record egging again.  The
22  recording has been played if I recall correctly twice
23  when Ms. Johnston played ate and once on {coz}
24  examination when you said detective I think they aren't
25  they playing chicken Mitch I played it twice I think.

1   {sglfrjts}.

2   Q.     Note the {thaer} recording.

3         MS. JOHNSTON:  Your Honor, I don't understand how

4   or what authority there is for a defendant Mr. {pwin}

5   {um} to recall an officer to cross examine him about the

6   same subject matter he's just finished cross examining

7   him about {sglfrjts} {ghfrjts} the only thing he's going

8   to be able to cross examine him about is we have a

9   transcript that transcribes it differently.

10        MS. JOHNSTON:  He didn't prepare that transcript

11  {glfrjts} {sglfrjts} that's all he has to say {si} didn't

12  prepare it.  It's not my transcript.  I don't agree with

13  it.

14        MS. JOHNSTON:  There is no legal authority

15  {sglfrjts} {12K3R50EU7B8G9S} I understand.  I'm going to

16  permit it.  It's going to {po} to be very {btion} very

17  brief.  As I said {doynt} want {dwrou} flay recording

18  again you can play it in clothing closing you {ooe}

19  played it twice to the jury and ewe can ask him, gee,

20  whiz we had somebody {stran} scribe it and they got it

21  differently and he can say well they got it differently,

22  period.

23        MR. MITCHELL:  I want to go in a little bit

24  further and let me explain the purpose of that.  I didn't

25  intend to share with the government all of the reasons

why I intend to cross examine him because I certainly
don't want that communicated to Sergeant Sakala, but the
critical issue is not that he's going to look at another
transcript and say I disagree with their transcript and
end of story, but it goes more to the reasoning behind
him altering the tran script to make it tickets instead
of chicken questioning him {r57b} why that is different
than the logs which indicate the word chickenen instead
of tickets, while he changed that and why if there are
two -- now two versions of this call and the one that he
testified is different why is that?
Without going into details about the purpose.  I don't
want to -- I would hope the court would not limit me so
much that I can't go into that and question his -- his
own interpretation of that word and perhaps his bias or
motive for putting the word tickets as opposed to chicken
which is not a drug code word.

        MS. JOHNSTON:  That is all matters that he covered
in his original cross-examination.  To let him come back
just and revisit the whole thing just because it's been
three weeks since the jury heard that cross examination
is improper.

        MR. MITCHELL:  But I didn't have a transcript at
the time and we had that done and I think it's entire
appropriate now that I have something different.

THE COURT:  I will permit very limited additional inquiry but I won't shut it off completely.  Because you can cross examine him with -- I mean if I understand what you're proffering to me is that his transcript and his log said chicken originally he changed it to tickets, you now have a transcript that's been prepared by somebody who allegedly is independent that said chicken.

MR. MITCHELL:  Correct.

THE COURT:  You want to confront him with that.

MR. MITCHELL:  Correct {sglfrjts} {glfrjts} that's about it.

MR. MITCHELL:  I don't intend for {toyt} be much longer than that but I just didn't want to be limited to just saying, do you agree with this transcript or not and him saying no and {thep} sitting down.

THE COURT:  All right.  Understood.  Now, anything further on the preliminaries as to the transcripts?  I think that disposes of your document that I {ooef} just had handed to me called request to enter deuce wiretap evidence.  To the extent that it's asking me to let you play the phone {tab} {r57b} tap evidence again the answer is no.  To the extent that you wish to inquire as to the subject matter of the chicken versus tickets call, you may conduct limited inquiry based upon the new transcript.  All right?  Now,

1       MR. MARTIN:  Are you still with the tell flown
2   calls Your Honor?  Because.

3       THE COURT:  Yes.

4       MR. MARTIN:  I have some as well.

5       MS. JOHNSTON:  Perhaps we could start with what's
6   in the book and go through them call by call.

7       THE COURT:  I want to make sure I have all the
8   {xhoon} communications about nit front of me.  Tell let
9   me tell you what {vi} and you can tell me whether or not
10  I'm right or wrong about what I have in front of me.  I
11  {ooef} got in front of me.

12      MR. MARTIN:  My recommendation Your Honor is you
13  go by the in{git} indict {wment} each defendant pointing
14  out what calls he or she wants.

15      MR. MONTEMARANO:  My calls are {grupd} grouped
16  together Your Honor.  Note {thaer} recording how I try
17  today laid them out in my list.

18      THE COURT:  Okay.  Let me just get through piles
19  of stuff here.

20      MR. MONTEMARANO:  Sure.  Take your time, Your
21  Honor.

22      THE COURT:  Okay.  I have {dshing} let me make
23  sure I have all of the paperwork on this issue in front
24  of me.  Let me tell you what I have remaining in front of
25  me.  I have two letters dated July 30, one from Mr.

Montemarano one from Mr. McKnett.  You guys are working
on Sundays.  {im} very impressed.

MR. MONTEMARANO:  Not the first one either Your
Honor.

THE COURT:  Life to have trial lawyer.  The letter
from Mr. McKnett which came in by fax on the theth At 11
p.m. or ten p.m. it looks like is a chart {le}
delineateing the reasons for certain intercepted calls
offered on behalf of LaNora a lee.  I have that.  I {sls}
from Mr.  {mont} ma no will a letter dated the same date
which {sa} list of calls that Ms. Martin will introduce
and you indicated that Mr. McKnett is including a list
from Ms. Ali and you indicate your reasons for all of
these calls.  Do I have everything in front of me now
that's in writing about this issue.

MR. MONTEMARANO:  There's a call list append today
my letter {sglchblingts} {sglfrjts} right.  {vi} a call
list and then {vi} {haiment} ed transcript is that
transcript now incorporated in the book.

MR. MONTEMARANO:  It's in the book I handed you
it's not in David's copy that I gave him last week.

THE COURT:  It's in the book that I have now
{mopt} {mont} yes.  That book in front of {sglfrjt} note
{ta} hear the recording.

MR. MONTEMARANO:  Yes that cop book is the one we

1    would want sent back to the jury.  {sglfrjts} {glfrjt}

2    let me have the book.

3         MS. JOHNSTON:  Your Honor it does have our

4    original motion and our reply to their response which

5    sets forth the basis why many of these calls are not

6    admissible.

7         THE COURT:  What has it in it.

8         MS. JOHNSTON:  Our original motion in limb nee and

9    a our rely to {nair} opposition {sglfrjts} {sglchblingts}

10   yes.

11        MS. JOHNSTON:  Which sets forth our reasons for

12   {k5eb9} ing to many of these calls separate and apart

13   from the court's limited admissibility here.

14        THE COURT:  I have all this on this issue.  {vi}

15   the government's motion, the responses and of the defense

16   and the government's reply.  So, all the papersen on this

17   I have in front of me.

18        Let's -- now, as I indicated before I thought that

19   the -- in order for these calls to be matters that could

20   be looked into on re{rp} ed cross-examination of Sergeant

21   Sakala, they needed to fall into one of two categories

22   one was the rule of completeness and the other was that

23   it was appropriate to challenge his opinions that he had

24   given in his interpretation of the calls.  So, let's take

25   it from the top.  Call B 26.

1      MR. MONTEMARANO:  May it please the court I would

2 speak to call B 26 and and the 17  other calls that are

3 noted on my list as p.m. that's Paulette Martin call with

4 mar {sha} Jean West.  They are virtually identical in

5 that they are lengthy calls for the most part.  {sefl}

6 are shorter.  They are discussions of clothing types,

7 styles, colors and sizes and the sizes range from size

8 two to size 16.  I don't pretend to be any sort of

9 fashion {maif} enbut basically size two is someone who is

10 built like a {swiz} {l} stick {wr567bd} size 16  is

11 someone who is built perhaps more like me.

12      THE COURT:  No more like me or Mr.  Ward.

13      MR. MONTEMARANO:  No I think Peter's every bit of

14 an 18.  But b that as it may.

15      MR. WARD:  I think I have you beat on this.

16      MR. MONTEMARANO:  Be that as we may Your Honor it

17 is {wooeb} ear not talk about clothing for {wub} person.

18 {om} {sochl} of the language in the clothing discussion

19 reiterate it is language the government has already

20 sought to as adduce as drug code words sup dresses and

21 sow so on and so forth fort.  A few cause calls reference

22 other people there {es} call B 22 note the {thaer}

23 recording.  I'm going the refer to pages it might be

24 easier.

25      MS. JOHNSTON:  Yes, your Honor if we could go

through these calls one by {wun} one {sglfrjts} {glchbling} the first three cals, calls if I'm reading it correctly {mont} {mopt} first fife.

THE COURT:  Refer to page numbers.  I'm look ago your call list, {35U8} s B 26, {240RBGS} 24 {1-RBGS} 249 and 322 all three are calls between Paulette Martin and mar {sha} Jean West and in one case J. {ter} {rel}.

MR. MONTEMARANO:  That's jack {ki} {trer} {ter} {rel} who live ins Ms. Martin's house she gets on the phone and speaks {sglchblingts} {sglfrjts} {fl} are call that is you are tendering to me that are calls in fact about clothing.

MR. MONTEMARANO:itis Painfully clear cover it is waterfront sizes, colors manufacturers, them people who are familiar with women's {kloetz} ing may listen to and go identify heard of that line and I {ooef} heard of this, etcetera and would know in terms of personal experience that thing that is perhaps you and I would not know about them and substantially speaking my other calls regarding Ms. West are pretty much all the same thing. Two other others do include a third party one {sa} Gwen LN {UBGS} and one is a {tam} my LN {UBGS}.

THE COURT:  Let me hear from Ms. Johnston about the five calls that I just mention {wfd}.

MS. JOHNSTON:  The first five call that is the

court mentioned?  First of all, the government objects on

their add miss -- it's my understanding {kouns} {e}

doesn't want {the} these just to impeach agent Sakala but

he wants to use these calls as substantive evidence in

his case is n chief and that would be why {hooes} calling

mar {sha} Jean West we object to these calls coming in

except as sub {stan} {ti} evidence {thawz} they are

hearsay.  Even if the party is here to testify they are

hearsay statements about what they were doing At another

time that is not admissible under any hearsay exception.

The court allowed the government to play some calls and I

cited for the court an unrelated opinion in the {pwif}

ens case which I think having been on the opposite side

where we introduced calls that contained subject matter

that wasn't directly related {fo} the conspiracy although

the court found it harmless error the court made it clear

the statement haves to be admissible for some {r57b}

under the hearsay rules.

        THE COURT:  Let me ask you this Ms. Johnston {t}

my contemplation is that these calls -- Mr. Montemarano

{yu} better listen to this.  My contemplation {sa} this

these calls let's take the specific specifics We're

talking about now would be played and could be considered

by the jury but they would be told with a limiting

instruction that they are not being admitted for the

truth of what's contained in these calls because the
speaker in here is not before the court, not available
for cross-examination, it's not {pwling} offered for the
truth of what's being said in these calls.  It is however
being permit today be played so as to test the
sufficiency of the opinion given by the expert, detective
Sakala -- Sergeant Sakala in which he opine that had
references made to clothing where are {ket} to clothing.

        MS. JOHNSTON:  On some of occasions.

        THE COURT:  On some occasions note this is one B.

        MS. JOHNSTON:  {sgl}.

        THE COURT:  This is testimony of an expert about
the meaning of certain phone calls note hear the
recording because he said in {gi} ing his opinion that he
relied on all of these calls and that he's reaching an
opinion about what was meant in some of these calls he
had reach it had conclusion when they said clothing they
didn't really mean clothing so he is {terment} permit
today be inquired into or cross examined ton fact that
isn't it a fact and I'm going play this that here's a
call that you would not {dpis} {put} is about clothing
isn't that right Sergeant Sakala and then jury can
consider that in decide {whaing} weight to give to the
opinions he's {prooef} {yous} ly given as to the meaning
of the calls play bid the government.

MS. JOHNSTON:  Your Honor the court {tand}
government are on the same page I understand understood
that's what the court's ruling was {t}. However that's
not my understanding of what defense counsel want toss do
they want to now call that Jean West {antd} get these
call ins as substantive evidence {dfrjts}.

THE COURT:  {e} we're not crossing the bridge of
Ms. West testifying unless and -- we're talk about the
recordings in the rubric of further cross-examination of
Sergeant Sakala.

MS. JOHNSTON:  He can tall call {whofr} whoever he
want {fos} testify but my objection is for those calls
coming in through mar {sha} Jean West or fall et Martin
as substantive evidence {sglfrjts} {glfrjts} these call
also be coming in through cross-examination of sergeant
{sa} {kla} a a Sakala as I indicate before to add note
the hear the recording {jonts} {yons} {thep} I would
suggest to the court there are far too many mar {sha}
Jean West call ins here {sglfrjt} {sglfrjt} I haven't
gotten to tissue of whether there's too much m.

MS. JOHNSTON:  Very, very Qume {ta} lative.

THE COURT:  I will to work {orn} -- my work {ser}
right here an appropriately {tliment} ing instruct
{shawn} shun that I know instruct it is jury that these
-- this additional cross-examination of sergeant {sa}

{kha} has been admitted by permitted by me in order to

permit the defense to make further inquire {spwroy} the

grounds for the opinions he has {prooef} {yus} ly given.

I mean {hooes} given his opinions in his direct

examination as to the meaning of various call that is

have been played by the government, transcribe {fwid}

government and placed before the jury.  These additional

calls are not being offer {fwid} government, may not be

considered for the truth of what's contained in them but

they may be considered {fwi} jury in reaching its

conclusion of what weight if any to give to the opinions

of Sergeant Sakala.

          MS. JOHNSTON:  Your Honor, if {pi} -- we've

submitted to the court a limiting instruction consistent

with what the court's opinion was.

          THE COURT:  Sit in these papers?  {jons} I hand

{td} it up {pri} Friday.

          THE COURT:  I've got it on my jury pile.  It pus

here somewhere.

          MS. JOHNSTON:  If we look for example at B 26  if

the court is allowing these call ins so that the jury can

assess Sergeant Sakala's testimony that item {ofs}

clothing used in certain conversations related to drugs,

in this call for example, there is a whole discussion on

page -- the very first call, Page two concerning somebody

named {glor} {ya} and.

     THE COURT:  Page two.

     MS. JOHNSTON:  Not looking well and her father's at home.

     MR. MONTEMARANO:  I don't plan to play the entirety of these calls.

     THE COURT:  He just said he's not going play the entirety of the call.

     MR. MONTEMARANO:  We transcribed the calls it {es} wouldn't make sense for me to play all this personal part of the conversation.  In that is part to have defense argument that the government by playing excerpt {ss} limit {whaing} the government is being provided access to where we transcribed a call we transcribed it all.  There are instance {wes} played for paid for 15 minutes of transcription and we will use 30 seconds {3R5U7BS} {jns} we object to that.  The government is under the law are not permitted note the hear recording we are limit inside terms after after of what we can play to statements that of coconspirator statements in {furment} {rans} of the conspiracy we can't play {tres} {t} of this {koul} {dawl} call so this notion that the government how only played parts to have call {ss} an improper one because we were limited under the rules ofest What we could present to this jury we couldn't present conversations about mar

{har} {vi} Washington having sex which is in one to have calls they provide us transcripts of that would be improper they objected indeed on occasion where we had some of that in there and we took it out.

So this notion that they're presenting a whole transcript to say look we present it had whole transcript we're not trying to trick you T government is tricking you because they provided excerpt {ss} improper and these transcripts should be edited to the pertinent portion of those calls and that should be all they're allow today play and all they're allowed to {gif} --

THE COURT:  First of all it's a lodgeistic {kal} matter how are we going be playing only portions of the call during this cross-examination Mr. Montemarano.

MR. MONTEMARANO:  We will before we presume to play the call {pros} {vid} the government with the calls we're going to play a time break from 131 through 2:14 kind of thing {sglfrjts} {sglchblingts} {whri} can't you cut the {trab} transcript down to the same thing.

MR. MONTEMARANO:  We {prr} were provided transcripts if their in their entirety they were certified by Ms. Come {po} fell's in their entirety {sglfrjts} {sglfrjt} I'm sure the government would not note the {thaer} recording.

MS. JOHNSTON:  {b} ab{vut} absolutely but Your

Honor we re{pir} prepared our excerpted calls and many things it took us many {wing} week toss get them ready I assume defense counsel is going to have their own disk to play {sglfrjts} {gfrjts} if you are going to play less than the entirety of these which I encourage {dwrou} do why can't you simply note on these transcripts where it begin and where it ends and somebody can just take the {stran} script transcript and do the chopping and cutting?  Request.

MR. MONTEMARANO:  If that's the court is going to order us to do then we will certainly do that.

THE COURT:  Won't it reduce the length of this document substantially?

MR. MONTEMARANO:  Certainly.  But in as much as the calls themselves are the evidence, we thought that the calls going an a back.

THE COURT:  The jury will have as it has with regard to the government's recordings the whole {sha} bang, right?

MS. JOHNSTON:  New York City Your Honor we {pwhrai} played excerpts of the {kawls} and that's what we introduced was just the excerpts of the calls because the rest of the recording would not have been admissible evidence in large part.

THE COURT:  In other words the jury {o} will only

be able to play what you played.

MS. JOHNSTON:  Exactly Your Honor and quite frankly that's what should be done here because the jury shouldn't be getting access to information that's not otherwise admissible.

THE COURT:  I would tend to agree with that.  I think what you need to do is to {dut} cut these transcripts down.  I recognize we're try {toing} get this trial over with and whatever resources we can make available to the defense to do that, {looets} {25BG} them available.

MR. MONTEMARANO:  So the court understand this is is not being done by the defense in house where we have our own transcriber.

THE COURT:  I understand {mont} {mo} which have our own editors an we have our own cutters and pace terse we had to get this done and {sert} {fid} externally the only way do this was in to to {sglfrjts} {sglchbling} what I don't want to hear from the government is that the government doesn't {libling} the cutting of the transcripts.  I ass {stum} government if I require as you're asking me do that the defense bring in somebody who says hi I'm a certified court reporter that transcribed these, I don't want to have her examined about the fact that it's been chopped at everybody's

request.

1
2          MS. JOHNSTON:  Your Honor that would not be the
   government's intention.
3
4          THE COURT:  Good {mons}.
5          MS. JOHNSTON:  My intention is to limit whatever
6  they're going the play for agent Sakala and present to
   the jury by means of recordings and transcript toss this
7
8  which goes to his testimony {sglfrjts} {glfrjts} if the
   government -- if the defense knows now what portions of
9
10 these recordings they want to play let's note it on these
   transcripts right now then you can proceed forward to
11
12 produce abridged transcripts and question have sergeant
   {sa} {la} in and out of here.
13
14         MS. JOHNSTON:  In addition to that they must
15 provide the recordings the abridged recordings they don't
   have the capability of doing That Your Honor.  They have
16
17 copies of these transcripts it took us week toss prepare
   the calls that we played here in court.  When I say weeks
18
19 I mean weeks and some of those were {mez} ed up --
20 {sglfrjts} {glfrjts} I don't know Ms. Johnston {thait}'s
   {fooez} {fobl} the defense to produce abridged
21
22 recordings.  That may be a large order.  What may be more
   logical is that the jury is apprised of the fact that the
23
24 -- if they -- during their deliberations need to hear
25 again the portion that was played to them, we can make

1   ark arrangements for it to be played to them again.  If

2   you can get the redacted recordings, fine but something

3   tells me that I'm going be told that the world will come

4   to an end if I make you do that.

5       MR. MONTEMARANO:  Well the problem is Mr. McKnett

6   and {doy} not have the audio equipment to redact the

7   recordings.  I don't know if we can {rp} think copy {nem}

8   {tr} them from C Ds to C D that the government gives us.

9   I don't know.  Note the {thaer} recording.  I'm prepare

10  today sit here with my laptop plug {spwod} the system

11  playing call B 2121 starting at 2:30 going to 3:20 at mar

12  harry {oos} {qui} eel be his paralegal and I'm sure he'll

13  do the same thing for me.

14      MR. MCKNETT:  I would like to Your Honor but I

15  don't have a LAN top {sglfshingts} {sglfrjts} {sglfrjt} I

16  am {soosz} {um} assume {thaing} the learned defense

17  counsel in front of me here have got a cop point of view

18  this transcript where it indicates {wh} where you want to

19  play and where you don't want to play.

20      MR. MONTEMARANO:  I started narrowing that part

21  but the first thing I want today do was get nit

22  everybody's hands {sglfrjts} {xwhrfrjts} you now have it

23  in everybody's hands including mine.

24      MR. MONTEMARANO:ly Have it tomorrow morning judge

25  that's not a problem.

THE COURT:  I'm assume {thaing} you're going to
eventually have for me a transcript thats a beginning and
ending point of these call that is you within the to play
{thand} with regard to the first {fooi} calls we just
discussed it's going to be enough of a call to show
{whro}'s talk {toing} whom and they're talking about
clothing and {fabing} {sfshtion} that right?

MR. MONTEMARANO:  Yes Your Honor.  {sglfrjts}
{sglchblingt} all right.  I see no reason why with a
limiting instruction for the limited purposes I just
{gai} sergeant casa {kla} cannot be questioned about
those limited portions of the first five calls.  We got
five calls down and a long {lis} tot go so let's keep
going.  The next call {vi} is call number B 323 beginning
on Page 30.  {swhi} that proper?

MS. JOHNSTON:  Just so the court is clear because
the dates aren't reflected on Mr. Montemarano {ooets}
list.  The first call was on March eight.  The next four
calls were on March 10, and a this call is {sglfrjts}
{sglfrjt} March 11.

MS. JOHNSTON:  March 11.

THE COURT:  Okay.

MS. JOHNSTON:  It looks there are two soles on
March 11.

THE COURT:  Note the hear the recording.

1    MR. MONTEMARANO:  323 is -- which {wub} are we on?

2    I thought we were on 323.

3    THE COURT:  323, Monday {mont} that's Mr.

4    McKnett's.

5    MR. MCKNETT:  No it's not {mopt} {mopt} my mistake

6    Your Honor {sglfrjts} {sgljts} I'm look at your list.

7    MR. MONTEMARANO:  My mistake.  I did not have a

8    star next to it note the {ae} it I to hear the recording

9    {sglfrjs} {glchbling} my question is why {mont} {moynt}'s

10    same thing {btion} {dichbt} day it doesn't include Ms.

1    {ter} {rel}.  {sglfrnlt} {sglfrnlts} it's {mo} clothing.

2    MR. MONTEMARANO:  Yes, sir {sglfrjts} {sglrjts} on

3    this one you want do the same thing so it's limit today

4    the question of clothing purchases or sales; is that

5    correct?  All right.  You may do that in redacted form.

6    All right the next one I have is at Page 35 which

7    is another call with mar {sha} Jean West about clothing;

8    right?

9    MR. MONTEMARANO:  Same thing.

10    THE COURT:  Same thing.

2    MS. JOHNSTON:  That is on the same day that would

2    be in the government's {r57b} cumulative.

3    THE COURT:  I will make the same ruling I expect

4    substantial redacting {fwi} defense to produce jus {tt}

5    relevant portions.

MR. MONTEMARANO:  I may dumb {m} some of the calls {sglfrjs} {sglnl} dumb ping is en{dur} courageed.

MR. MONTEMARANO:  I may ask Sergeant Sakala there were three recordings regarding clothing and he'll have to say yes or we'll {g} {tlawl} of them {sglfrjts} {sglfrjt} that's fine the next one {vi} is on page 38 which is a call number B 46two again about clothing.

MR. MONTEMARANO:  It's aboutgoing call Ms. Martin leaving a voice mail {mejsz} {saj} for a customer saying I've been holding this suit for a month I owe you $50 back for the {sout} sold.

MS. JOHNSTON:  I would object to that call.  If the court will call, agent {sa} {ra} {ka} {la} said that there were calls about clothing that she sold {kloit} ing and particular men's clothing {sglfrjts} {sglfrj} I'll permit this to be played.  All right the next one {vi} with no explan {fution} -- is this the -- does the star mean it's a a mac net call.

MR. MONTEMARANO:  Yes, sir and the number signs are Mr. Martin.

THE COURT:  {e} we're just going the {dwrind} grind through these in order so the next one is your call {btion} Mr. McKnett.

MR. MCKNETT:  Your Honor call B 46three is a short conversation {fwooen} Ms. Ali and Ms. Martin in which it

establishes two things.  One is that these are people who
were friends and did favors for each other which would be
relevant later on as I {kebtion} plain to the court and
secondly it's an arrangement with where Ms. Ali is
agreeing to buy airline tickets for Ms. Martin.

MS. JOHNSTON:  Your Honor we would object to that
call because it's not being introduce today attack agent
{sa} {kla}'s testimony it's introduced as counsel
mentioned {tho} to show they were friends {ap} they had
other social {thij} thing it is word ticket is not use
inside this call moment.

MR. MCKNETT:  It isn't but they're arrangesing for
Ms. Ali to use Ms. Martin's credit card to make travel
{afrng} mentes which was inherent note {ket} was
inherently require a tick tote fly to Kansas City.

MS. JOHNSTON:  Agent Sakala didn't testify about
conversations {queb} generally he testified about tickets
being a code word this conversation doesn't have anything
in it about tickets it is to {shoy} the relationship
between Ms. Mart {ain} Ms. Ali which similar proper.
Note the {thaer} recording.

MR. MCKNETT:  Your Honor the government put on
seven weeks of testimony to show an improper relationship
between these two people.  I think it's fair for me to
show a proper relationship between these {ooem} two

people {sglfrjts} {sglchblingt} it seems to me that

remember this.  The opinion testimony of Sergeant Sakala

was {gi} enin two areas.  One the drug trafficking

business in general and secondly his ability to interpret

the words used by those in the drug trafficking business

when they communicate with each other.  One of his

opinions was that various references to tickets were not

in fact bona fide tickets but rather to drug

transactions.  This is a phone call involving a tick

society I will permit this recording.

          MS. JOHNSTON:  Your Honor if I may call the {toyt}

the court's attention there are no calls on that day that

the government introduced between Ms. {mairnt} and Ms.

Ali {sglfrjts} {sglfrj} I understand {fwhu} is the on

{gobtion} {mibing} -- it goes to the strength or {pn}

weakness of his opinion that when they use it had term

tickets with each other they were using that not {o} no

the bona fide sense of tickets but drug trafficking.  All

right the next call.

          MR. MONTEMARANO:  Call by Ms. Martin requesting

catalog {frs} a clothing company.  She {proo} sides a

name and address where to send how about how she was

having trouble getting cat {ta} {lotion} s she asked for

ten catalogs not one which is consistent with her being

in the business of {tand} handing catalogs out to clients

to client toss sell to {vom}.

MS. JOHNSTON:  I don't think there's anything in this call {toynd} {kait} it {wawz} clothing catalog it could be a catalog from pottery barn {sglfrjts} {sglfrjt} where are you refer {toing} that Ms. Mr. Montemarano.

MR. MONTEMARANO:  I belief that was based upon the understanding of the logs of who the number is registered to I. I don't have my log {ws} me if I could speak with Mr. McKnett for a moment he may be able to Claire clarify this.  Mr.  Ward is going to assist me.

MS. JOHNSTON:  Your Honor again the logs don't do anything in terms of what's in the calls.  This call doesn't {machbing} in anywhere I could see and I could be wrong because I looked at it very quickly.  There is nothing in here about clothing it could be catalog {frs} the pottery barn and they don't sell clothes.

MR. WARD:  Excuse me Your Honor since I don't {z} awe as we say have a dog in this night fight may by excused for a moment {sglfrjts} {glfrjts} yes we may I will not do anything sub {stan} {ti} with regard to Ms. Dobie in your absence or anything {ket} all about Ms. Dobie.

MR. WARD:  Thank you sir {sglfrjts} ward.

MR. MONTEMARANO:  I don't know where that -- it says D issues it does not say what I cannot in good faith

1  explain why my understanding was that this was about

2  clothing.  I cannot {ksh}.

3          THE COURT:  Well it does talk about that she asked

4  for ten books and she only got one book and no retail

5  price lists or wholesale rice {proo} price lists and

6  she's complaining about that bag poor way of doing

7  Business.  And she's talking about the fall catalog and

8  it does say catalogs Page 42.

9          MR. MONTEMARANO:  Yes.  It says catalog also on

10 Page 44.

11         MS. JOHNSTON:  It doesn't talk about clothing.

12         MR. MONTEMARANO:  No it does not.

13         THE COURT:  I'll permit this sol.  The next note

14 {witz} I'll permit this call the next one is call B 634

15 and and is this again about clothing?

16         MR. MONTEMARANO:  Well they're talking about

17 sizes, small size {tlibing} like a two to 4 and and sizes

18 12 to 14.  This is obviouslytize Sizes for different

19 people.  A {soo} person who wear ass size two could can't

20 wear a 12 -- well they could they could swim nit note the

21 hear the recording in various size toss various people

22 it's not just buying for {hes}.

23         THE COURT:  All rightly permit that call the next

24 call {vi} is on Page 52 which is a mac net call.  {jobs}

25 {yons}.

MS. JOHNSTON:  We object to this call.  It has nothing do with --

THE COURT:  This one Mr. McKnett is for what purpose?

MR. MCKNETT:  Your Honor, this call.

MS. JOHNSTON:  Your Honor I think court skipped page 47  according to Ms. Green berg.

MS. GREENBERG:  Oh, I'm sorry.  I did {chl} I did. Excuse me {jons} {xwhront} {c5e7b9} it's another mar {sha} Jean West call Your Honor talking about styling of clothing item, etcetera, etcetera and talk about sizes does a 23 fit her on note {witz} two fit her for {xwam} approximately.  This is one I would probably play in its entirety.

THE COURT:  B 638.

MR. MONTEMARANO:  Yes {sglfrjts} {sglchblingt} all right I will permit that.  Now we're at Page 52, call B 835; correct?

MR. MCKNETT:  Your Honor, this goes {sglfrjts} {sglchblingt} by the way {vi} in this book something that's already been transcribed.

MR. MCKNETT:  Excuse me Your Honor.

THE COURT:  Many my in my copy to have book I have several pages of government recordings.

MR. MCKNETT:  Owe Your Honor.  Mr. Montemarano and

I put in where we thought appropriate to put things in full context some of the government pus transcripts so that the jury will have them in front of them.  At the same time they read -- hear our excerpts and read along with our transcripts.  It's part of the completeness.

THE COURT:  Well, I think -- I don't think they should be in your book.

MR. MCKNETT:  We can take them out Your Honor.

MR. MONTEMARANO:  We can certainly take imit out.  This is loose leaf Your Honor to facilitate this {pwb} problem.  We did not discuss it with the government.  They're in evidence.  We figured more --

THE COURT:  You mean they're in the right time sequence.

MR. MCKNETT:  Yes they're in proper time sequence Your Honor that's why we put them in there {sglfrjts} {glfrj} calls you're putting in are in the defense book {jons} ens I do.  {doy}.

THE COURT:  Take them out.  This does not mean you can't explain to the ladies and gentlemen of the jury in closing argument remember when you heard call B note the {thaer} recording between Ms. Martin and Ms. Ali?  Well, they didn't play this and then you know.

MR. MCKNETT:  It just seemed simpler looking at mechanic mechanically from being in the jury box rather

than having to have two books to go back and forth --
{sglfrjts} {glchbling} the problem is this is your book
your document your version of what these recordings mean
and I think it ought to be limited to that.  You're
perfectly free to argue to the jury {wais} based upon the
government's transcript as well as a replaying to have
government's recordings what is said in these other calls
and indicate that your {dez} {iing} {thaition} s an the
matter {yous} played show that the {prorp} con Tex is the
X {veshtion} us the Y that Sergeant Sakala testified to.
You do that.  All right let's move on.  Next call is B
835 on Page 52.  That's a mac {nel} mac net call a what's
the reason for that one.

MR. MCKNETT:  Your Honor there's a couple of
reasons for this.  {wub} one is to ref {fut} the
government's opinion that there was no to use the words
to have witnesses no {le} {jit} Pratt {z} legitimate
{pwhriz} relationship going on here this starts out
talking about Ms. Ali and {hrz} Martin putting on a
fashion show with {kef} inScott it then turn toss another
issue on Page 55 the court may recall that later in the
-- later in time the government {prept} ed a transcript
in which Ms. Ali and Ms. Martin are talking about Ms. Ali
coming over to her house the conversation was about pig's
feet {chl} Ms. Ali said she told jack {ki} {ter} {rel}

who was Ms. Martin's landlord that she was coming {oef}

for pig's feet.  Detective Sakala implied -- testified

that that was a lie to cover Ms. Ali coming over there to

get drugs.  In this conversation they complain -- Ms.

Martin complain toss Ms. Ali about Ms. {ter} {rel}

constantly wantsing Ms. Martin to go to the store for

her.  And even though Ms. Martin was already home, Ms.

{ter} {rel} wanted her to go back out an get her

cigarettes or something.  In the later conversation Ms.

Ali says a that lied to Ms. -- didn't lie {m} she told

Ms. {ter} {rel} she was coming for pig's feet but she

didn't want to have to stop tat store for her like Ms.

{ter} {rel} always asked her to do.  It undercuts the

detective's {pb} about the purpose of this later

conversation.

          MS. JOHNSTON:  Again Your Honor that's sub {stan}

{ti} evidence.  It's not going to attack the agent's

testimony.  This is -- I mean we're talking about

somebody wanting bubble bath and it doesn't show that Ms.

Ali was involved in doing shows.  They're discussing

somebody else who was thinking about doing a fashion

show.  Again what we're doing here is introducing sub

{stan} {ti} evidence that's not admissible {ub} {der} the

hearsay rule under the ruse that somehow it goes against

agent Sakala's testimony about the calls that he

interpreted when he has already said there were many

calls that were not drug related {sglfrjts}

{sglchblingts} well if I recall correctly, Sergeant

Sakala testified not only as to interpretation of the

words used in these calls but the relation {rp} between

the parties and that relationship testimony was based

upon his review of all the {kawls} as well as the

evidence that was seized and he -- and he {ipd} {kait} ed

that there was not a legitimate business relationship and

assuming that this is going to test that opinion that he

gave.

          MS. JOHNSTON:  He testified that Ms. Ali and Ms.

Martin were friends that they had a social relationship

with each other.  He didn't testify that they exclusively

a {kluing} drug relationship.  So it doesn't impeach him.

          THE COURT:  I thought Mr. McKnett you were saying

and I don't have per {fbingt} recall in a trial this

{len} that Sergeant Sakala had testified as to the abceps

of any business relationship between them.  Is that what

you're saying or not.

          MR. MCKNETT:  That's -- yes, Your Honor that was

the clear import of his testimony considering the

relationship between the parties on trial.  {fa} that

there was no legitimate business going on.

          MS. JOHNSTON:  There is -- no one has proffered

any proof of legitimate business record between Ms. --
{sglfrjts} {sglfrjt} I'll permit this recording.  The
{kebing} {t} {wup} is on Page 58, B 857.  That's one of
yours Mr. Mac.

     MR. MCKNETT.  Net et net is that Page 58
{sglfrjts} {sglfrj} Page 58 note the get the call number
again.

     MR. MCKNETT:  Your Honor this is a call between
Ms. Martin and {and} an unidentified male in which the
conversation is about tickets for $50 each.  It's a
nondrug conversation.  The {tbingt} {tjt} detective's
testimony was clear that this was a conversation about
drugs.  This is $50 was for drugs and this is clearly --
{sglfrjts} {glfrjts} did he apply that testimony to Ms.
Ali net excuse me Your Honor.

     THE COURT:  That {tp} was also given specific
{tloy} Ms. Ali {sfshtion} that correct?

     MR. MCKNETT:  Yes.  They're talking -- yule {is}
seize if the court may not know this, {yul} yule yule
{iz} ease is my client's husband {ae} a and he is not
charge {wd} any crime in this case but his conversation
is about $50 tickets.  {jons} {3R5U7BS} I don't -- I
thought we were talking about call B 847  with an
ununidentified male {sglfrjts} {glfrj} yeah it's an
unidentified male but there's a reference to it in the

second statement by Ms. Mart {toyn} yule {iz} ease.

MS. JOHNSTON:  I don't understand why this would be admissible.

THE COURT:  Mr. McKnett.  {nebingt}.

MR. MCKNETT:  The detective testified that his opinions were based on a review of all the conversations. He chose to ignore or discard this conversation when my client's husband is talking about tickets for $50, yet when my client talks about tickets for $50 he testified it had to do with drugs.

THE COURT:  All right I will permit this call.

Next call I have is number B as in boy 851 at Page 60 that's one of your calls Mr. McKnett.

MR. MCKNETT:  Yes Your Honor.  Two purposes here. They're related.  The first purpose is to show that Ms. Martin, client LaNora and her husband yule it {iz} ease were at Ms. Martin's house talking about a legitimate business enterprise having do with the Aretha Franklin show.  Later Mr. Goodwin and my client talk on the {fob} phone about show business.  It show ass legitimate business being discussed and also show ass {le} {jit} Mt. Business relationship being between my client, and her husband -- I'm repeating myself the detective testified {tla} were no legitimate businesses going on.

THE COURT:  Are you going to excerpt this call net

1  {ki} do that if the court chooses.

2       THE COURT:  Codo the best you because it's a long
call.

3       MS. JOHNSTON:  21 minutes long Your Honor but

4  there has been no evidence that there was a legitimate

5  {pwaiz} s going on between any of these par {tis} we were

6  suppose today get any kind of documents that were going

7  to {pwro} be used by from the defense by June six.  It's

8  now tend of July we haven't gotten any legitimate

9  documents {rern} ing concerning an Aretha Franklin show

10 and {ron} heys.  So if the bases of this argument is a

11 legitimate business then they're introducing improper

12 hearsayment a though the court is saying note the hear

13 the recording {sglfrjts} {sglfrjt} let me ask you a

14 question Mr. McKnett the transcription of this call is

15 seven {painl} s long.  Sit real will a21 minute call or

16 is that the time of day.

17      MR. MCKNETT:  It's not 21 minute call {sglfrjts}

18 {sglchblingts} that's a call meaning it's at nine {o}

19 {klosh} o'clock -- 9:06?  I don't think it's 21 mints.

20      MR. MCKNETT:  The next call {swi} 12 numbers

21 later is eight minutes later {sglfrjts} {sglnlts} it's

22 not a 21 minute call note.

23      MR. MCKNETT:  No it's not it {oo} {es} a couple of

24 minutes.

THE COURT:  Whey would unencourage yaw the to do on all call {ss} {dabingt} them down to to what you really need to play because you don't want to put this jury to sleep which I don't think anybody want toss do. You want this to be an exciting pungent {coz} examination so if you would do that and cut this transcript book in after half which I'm sure you can do, they will all be {e} tern alley grateful and you will probably make a better point too if you do it that way.  The next call {vi} is on page 68 Number  B 853.  That's your call Mr. McKnett.  {thet}.

MR. MCKNETT:  This is similar to the previous call Your Honor I believe it's the same day about eight minutes later Ms. Martin is talking to {ron} {hood} about the same attempt to get into show business.  There are discussions with my {klibt} -- this is a long call {ki} certainly {ed} it it down.

THE COURT:  Yeah, it S.

MR. MCKNETT:  It's sort of the same purpose with the {prooef} {yus} call to establish -- to undercut to establish the detective's opinion about the relationship between my client, her husband ands Ms. Mart {r57b} and perhaps others in.  I can cut that down Your Honor.  It also talks Your Honor if I may on Page 71 it talks about how much does goody get and that's my client talking

there.  This again shows it raises an issue concerning detective's opinion about the relationship between the parties.

THE COURT:  You say your client is talking on Page 71?

MR. MCKNETT:  On Page 71 at some point prior to that my client gets on the phone.  I think it's on Page 69.  Yeah, Page 69 Ms. Mart {hin} been talk {toing} {ron} {hood} she then hands the phone {mo} to my client's husband and he gets on the phone and talk toss Ron hood about show business, goody's cut {glfrjts} {sglfrjts} where does Ms. Ali get on this phone call {ket} net excuse me {sglfrjts} {sglchblingts} is Ms. Ali on this phone call.

MR. MCKNETT:  If I said Ms. Ali I misstated.  She snot on the phone call.

MS. JOHNSTON:  Your Honor here is the problem with this.  This talks about a future business they're try {toing} get into.  There is noest that they ever did get into this future business.

MR. MCKNETT:  That's {ir} are {el} {le} {vant}.

THE COURT:  That's not the purpose for which I'm considering it.  It's simply to test Sergeant Sakala's opinions where he indicates that the only business going on is drug business and that the people are not

discussing legitimate business.

MS. JOHNSTON:  Your Honor he did not testify that the only business they were discussing was drug business. He clearly testified that they --

THE COURT:  On a number or of occasions Ms. Johnston he gave the opinion that there was no evidence of any legitimate business in certain specific areas such as if I recall correctly clothing business.  And that was an opinion he gave.  If he gave that opinion, that opinion can be tested.

MS. JOHNSTON:  Your Honor {btion} he gave the opinion that there was clothing -- that they were clothe involve inside the clothing business he absolutely testify that had they were involved in clothing business there were calls about tickets that were actually tickets to events he testified to that.  He testified that he didn't find any evidence of any legitimate concert business because in his opinion they were using drug proceeds for that.  That's what he meant by not a legitimate concert business.

MR. MONTEMARANO:  Your Honor, if I could be heard I know it {ooets} not my call with but with regard to the whole thing about what detective Sakala said about my client being involve inside business.  What he said was there were calls re{vol} {ving} around or discussing

clothing.  He never conceded that there was a business
and I think that is belied statement to the contrary is
belied to the the search of my client's home where they
studiously avoided all of that.

THE COURT:  I remember your questioning and I know
what you're saying.

MR. MONTEMARANO:  Thank {quu} you Your Honor.

THE COURT:  I believe when he was examined by you
on that or the whoever it was that was being examined was
they didn't find evidence of legitimate clothing business
if.  Am I remembering incorrectly?

MR. MONTEMARANO:  Found paper wok irrelevant.

MS. JOHNSTON:  He went through the notebook that
had suits and other things listed as purchases of
clothing by Ms. Ali and this the drug purchases were in a
separate column {sglfrjts} {sglfrjt} his testimony was
that it was ann't a legitimate business I think is what
he said.  Something to that effect.  All right.

MS. JOHNSTON:  He acknowledge it had clothing
transactions {sglfrjts} {sglchbling} Mr. McKnett.

MR. MCKNETT:  Hi nothing further on that call,
Your Honor.

THE COURT:  All right.  Netiquette Your Honor, I
don't have my log with me but I'm looking at the next
call, 854.  And if I recall this correctly, 854 similar

is simply a continuation of 853.

THE COURT:  Well, {vi} a page number issue.

MR. MCKNETT:  I think it picked back up under a separate call number and if that's the case I can get rid of 854 completely.

THE COURT:  All right.  Yeah, okay.  I'll permit you to do that.  Now, the next call {st} is a call with a number symbol in front of it and that means it is Mr. Martin.  That's B.

MR. MARTIN:  886.

THE COURT:  886 okay.

MR. MARTIN:  Which appears on Page 80 in this book and page 127  in the government's phone logs.  May {vi} the court's permission to sit so I can look at my notes.

THE COURT:  Certainly.  {ket} mart Your Honor will recall that this was the first of the several 106 objections that I made back on Thursday, June 22, 2006.  This is a call that references an entertainment attorney.  Ms. Martin is on the phone and she's talking to I think -- hold on just a second here.

THE COURT:  She's talking to your client {mont}.

MR. MARTIN:  She's talk {toing} my client exactly and the conversation send {e} centers around the need for a good attorney -- entertainment attorney it talks about the O. J. s and Gerald {le} {vert} it talks about the

contracting with Aretha Franklin and the {o} jays and my

argument is based more on the completeness theory.  Of

course I also.

THE COURT:  Is this a call that a a part of which

was introduced {fwi} government.

MR. MARTIN:  That's right only a {partion} part of

this call was introduced it was the first time they came

{um} up to the bench I think {dur} ing this trial.  Mr.

Ward was the one who brought the completeness rule to my

attention because I couldn't remember that it was rule

106 and and this is the call it was either Your Honor or

government trial counsel said well Mr.  Martin you can

always play that in your case in chief.  Well that's

where we are now {awrn} Your Honor and I'm not look

{toing} question Sergeant Sakala {rartd} regarding

{thchlt} I just want this call to be made available to

the jury so that we don't have a situation where the law

prevails --

THE COURT:  I don't have perfect recall and I

don't recall who said what about this but I do know that

when you were examining the witness this transcript

didn't exist; is that correct?

MR. MARTIN:  This transcript did not exist.

THE COURT:  It does now.

MR. MARTIN:  Yeah.

        THE COURT:  So, within the rubric of my ruling on
allowing further cross-examination of Sergeant Sakala you
may use this.

        MR. MARTIN:  Thank you sir.

        THE COURT:  All right.  Okay.  With whatever
cutting and editing you want to do to it.  You know, if
you can make it less lengthy, I think all would be
appreciated.

        MR. MARTIN:  I understand and Your Honor {ooem}
not looking to question the good officer.  What I would
like to do do though in the interest of complete seasons
have both the disk and the transcript available to the
jury when they are ready to starlight a start
deliberations.

        MS. JOHNSTON:  Your Honor I think if he wants to
introduce it through agent Sakala then he has to do it in
proper fashion by cross examining hip about it
{sglchblingts} {sglfrjts} you can cross examine him about
it.

        MR. MARTIN:  That's fine {ki} do that.

        THE COURT:  He's capable of playing the whole
thing; correct.

        MR. MARTIN:  Not a problem.

        MS. JOHNSTON:  We haven't pulled any of these
calls Your Honor to play {sglfrjts} {sglfrj} I assume you

have a CD ROM with this call on it.

MR. MARTIN:  We do that's how {witz} transcribed {sglfrjts} you can key it up and I play I play it.

MR. MARTIN:  Right.

THE COURT:  If you within the to excerpt it.

MR. MONTEMARANO:  The only thing we would is ask the court in respond response so that is the {e} court's staff the electronic wizard whizzes note the hear the recording allow me to hook up my laptop or Ms. Mr. Martin hook up his laptop --

MS. JOHNSTON:  We didn't hook our toss introthe into the court system we put {ket} in front to have speakers.

THE COURT:  They did a pretty low tech way.

MR. MONTEMARANO:  My gosh.  I'm not quite as much in ah of the government as I was for so long.

THE COURT:  It's really rather low tech but it does work.  You can two can put --

MR. MONTEMARANO:  {tapd} government puts its pants on one leg at a time as well.

THE COURT:  That's right.

MR. MONTEMARANO:  Your Honor while I'm standing {ki} speak to the next call {swi} mine?

A.     {nfrjt}.

THE COURT:  Sit call A 301.

1    MR. MONTEMARANO:  Yes it {oo} {tes} same call you

2    were discussing with Mr. Martin.  Mr. Martin's note the

     {thaer} recording voice mail {metsz} {saj} left on Ms.

3    Martin's home phone -- cell phone, rather and it is the

4    if you {wabt} to build a billion dollar industry voice

5    mail message of Ms. Martin Your Honor will recall,

6    followed by a woman named {wa} neat that live leave

7    {aling} message about Spencer boyar he's a professor from

8    Howard universe {fi} hety he is {oo} en aer {spw} {tain}

9    {m} attorney he talked taught all the black note the

10   {thaer} recording.

1
     THE COURT:  You can play this call.  {c5e7b9}

2    {mont} thank you.

3    THE COURT:  All right.  Number 97 -- Page 97,

4    number B 1078 and and that is a a Mr. McKnett call.

5    MR. MCKNETT:  Which call is that Your Honor

6    {sglfrjts} {sglchblingt} Page 97 of the book.  Call B

7    1078.

8    MR. MCKNETT:  Your Honor, if I could address this

9    one and and the next one together.  It would help and

10   explain better why I think these should come in.  1078

2    and 1139.  The government {taz} court may recall at one

2    point played a transcript in which Ms. Martin said to my

3    client I fixed your thing.  I have it with me.  It was

4    Sergeant Sakala's testimony that that meant that Ms.

Martin had took cooked crack cocaine for my client.  In these two calls, call 1078, the unidentified male says to my client's husband yule {is}'s garner, Paula cooking dinner, huh?  And garner says yeah, yeah so I'm here.  That establishes that first of all there was a social relationship between the two which I think at this point is not really at issue {sglfrjt} {sglfrjts} where are you in this call?

MR. MCKNETT:  1078 the very first line {sglfrjts} {sglchblingts} all right.

MR. MCKNETT:  Unidentified male says Paulette cooking dinner.  The next call Ms. Martin is talking to her son in which she says {t} at around the middle of the page I fix a sweet potato pie last night T. government's interpretation of the word fix is to cook crack cocaine.  It's my argument that the word fix at least in this context clearly shows that she was cooking -- fixing food not drugs.

MS. JOHNSTON:  If we could have the call that the government play that had counsel says this is refuting it would be helpful to know.

THE COURT:  What {tooes} call number?  I've got it in my notes somewhere.

MR. MCKNETT:  Your Honor I'm in the same {poing} it would take me a couple of minutes.  I could find it.

1          MS.  JOHNSTON:   In vacuum this call doesn't say
2     anything.

3          MR.  MCKNETT:   Excuse me Ms. Johnston.

4          MS.  JOHNSTON:   I said this call doesn't tell us
5     anything if it's not in time and place in relation to the
6     call that agent Sakala interprets {mons}.

7          MR.  MONTEMARANO:   With respect Your Honor there is
8     no disagreement that there was a call that Sergeant
9     Sakala define inside that way.   We can't identify which
10    one out of their hundred or so but there's in question
11    that we all heard a {quawl} call that {witz} clearly
12    {mings} fixings we hit a pie.

13         THE  COURT:   You will momentarily see why I take my
14    note ins a trial like this on a computer.

15         MS.  JOHNSTON:   I don't think {witz} fixing sweet
16    to potato pie.

17         THE  COURT:   I'ming {g} to look for the words sweet
18    potato tie pie and I'll tell you who said it on what
19    date.

20         MR.  MCKNETT:   Your Honor I think the betterer word
21    search would be for the word fixed.

22         THE  COURT:   I don't think I put fix inside there.

23         MS.  JOHNSTON:   I don't believe agent Sakala -- I
24    think conversation {mrz} mac net is referring to did not
25    reference sweet potato pie.

MR. MCKNETT:  No it didn't I it said I if I canned your thing I visit with me it's what Ms. Martin told Ms. Ali.  Detective Sakala said in his opinion that was code word for I fixed your crack cocaine.  These two transcripts these pro{two} messages first there is an identification that Ms. Martin is cooking dinner and then in the next conversation she use it is word fix to refer to cooking sweet potato pie.

THE COURT:  All right.  Sergeant Sakala talked about sweet potato pie meaning cocaine in call B 1378 note wit {uz} 137five.

MS. JOHNSTON:  Your Honor {vi} the call that he's referring to.

THE COURT:  Is that the one?

MS. JOHNSTON:  No.  The call he's referring to is call B 1233 on Page 140 of the government's exhibit and that call happened on March 21 of 2004.  So the calls he wants to introduce on March 19  which refers to Mr.  Yule {is} cease garner being at Ms. Martin's house when {hrz} Martin's fixing dinner and then the next call where {hz} Martin tells her son that she fixed a sweet potato pie the night before referring to March 19 and March 20.  The call in question happens in the afternoon of March 21 where Ms. Martin says I fixed your thing.  I have it with me so just call me.  And so those two earlier calls are

not at all related to this later call and this call
doesn't mention sweet potato pie.

MR. MCKNETT:  Your Honor if the call {rs} that
close together in time and Ms. Martin is using the word
fix in one of them, clearly in the context of cooking
dinner, then I think I legitimately should be able to
argue the next day when she says I fixed your thing she's
using the word fixed the same way.  Unlike detective
Sakala's opinion that when Ms. Martin said, I fixed your
thing she was talking about cooking crack cocaine.  Then
it goes to the weight of the detective pus opinion the
basis for his opinion.  He selectively chooses to use the
word fix as a code for cooking crack when Ms. Martin
herself is using the word fixed with relation to food.
{jons} {yns} that's because of the whole phrase and the
nature of the conversation.  He didn't interpret this
conversation.
{sglfrjts} {sglfrj} all right.  I'll permit this to be
played.

The next one I believe is a next two calls are
requested by Paulette Martin relating to clothing
transactions; correct.

MR. HALL:  Your Honor before Mr. {mnt} ma {ra} no
starts.  Since I'm not involved in any of the calls may
by excused for just one moment the make an important

phone call {sgls} {sglfrjs} {sglfrjts} yes you may since {wooer} not dealing with any of your issues and Mr.  Ward has long ago been back.  I have yet rule on any calls involving Lavon Dobie.

MR. WARD:  They did not involve a telephone call Your Honor.

THE COURT:  So far I haven't kept any calls out.

MR. WARD:  I'm sorry.

THE COURT:  So far I {ooef} not kept any calls out.

MR. WARD:  I've noticed which by that Your Honor and I'm encourageed by that.

MR. MONTEMARANO:  There's a brief tell flown call of mar a {sha} Jean West discussing sizes and styles.  And another brief call with {kef} inScott.  The court will remember {kef} incot Scott is a {wern} person whose calls with Ms. Mar inwere played by the government claiming they were discussions about crack, etcetera the allegations that Mr.  Scott is the other son of Ms. Levi. This is another call and it is entirely the opposite direction.  It's clearly talking about sizes and clothing, etcetera and there are other can he have inScott calls of similar nature and this is one they put in more than anything else as a form of introduction to the other {def} inScott.

MS. JOHNSTON:  Your Honor, detective Sakala very specifically testify {wfd} that {kef} inScott was involved in selling clothing and that there were numerous calls between Ms. Martin and Ms. Mr.  Scott concerning clothe {thaing} were not drug related calls that was his testimony this doesn't do anything to cross examine him there may be issues about women's clothing and mar {sha} gene {wes} and whether that's a legitimate business {nort} but agent Sakala never said anything in terms of {kef} inScott that he was involved in something other than selling clothes and that he had a shop in Baltimore.

THE COURT:  If that's the testimony of Sergeant Sakala and I recall ate the same way why would you describe would bit appropriate to play this recording? It {oos} con {sus} tent with his opinion.

MR. MONTEMARANO:  I understand that except for one small problem.  Why were there any {kef} inScott -- if that's true and I {ooep} not calling Johnston a liar.  My recollection is different.  If Ms. Johnston was right {whoo} why would she play any {kef} inScott calls I E sought to and why would Your Honor let my of them in because they would be pate {ent} ly irrelevant to the government's burden of proof wouldn't they.

MS. JOHNSTON:  Your Honor the soles we allow inside concerning Mr.  Scott I believe concerned the

arrest of Gwendolyn Levi {sglfrjts} {sglfrjt} yes, they

did.  That's my memory of it.  I don't see how this call

is fair as further cross-examination of Sergeant Sakala

so you need to help me out.

        MR. MONTEMARANO:  I would ask then Your Honor

reserve a final decision on this because there are like

three or four {kef} inScott call ins the entire list I

think they will all either fall or rise together

{sglfrnlt} {sglfrjts} at least my preliminary feeling is

that this one falls.

        MR. MONTEMARANO:  Very well.

        THE COURT:  It's not inconsistent and {woul} not

be fair game for {xrosz} examination of Sergeant Sakala.

        MR. MONTEMARANO:  Fair enough Your Honor.

        THE COURT:  B 1441 is subject to its being

redacted somewhat is all right because it shows the

clothing question.

        MR. MONTEMARANO:  Thank you.  All right the

{sdwhrfrjts} {sglfrjts} all right the next call {vi} is B

1567 {r57b} Page 107.

        MR. MCKNETT:  Your Honor, this call and the next

one,

        THE COURT:  First of all we {ooef} {gt} a problem

with government transcripts in the middle of this book.

        MR. MCKNETT:  Your Honor we will pull tout

government transcripts.

1

        THE COURT:  I'm assuming you're going to pull

2

these government transcripts out that appear in this next

3

few pages here {mont} yes, sir.  You already order that

4

had.  We will do it.

5

        THE COURT:  And so the next one {vi} is 107, B

6

1567.

7

        MR. MCKNETT:  15671568 go together Your Honor.

8

They're two very short calls in which Ms. Ali is talking

9

to Ms. Martin about having two tickets to get rid of.

10

        THE COURT:  Having what?  I couldn't hear you.

11

        MR. MCKNETT:  Excuse me.

12

        THE COURT:  I couldn't hear you.

13

        MR. MCKNETT:  Ms. Ali is talking the to Ms. Martin

14

about having two dick tickets to get rid of and she's

15

going the call {trooes} {ta} {sa} to see if {trooes} {sa}

16

{wabt} s them because she and ewe {lil} cease can't use

17

them and so {fot}.  They show again the use of the word

18

tickets in a nondrug context.

19

        THE COURT:  That's next two -- this one {tand}

20

next call.

21

        MR. MCKNETT:  1568 as well Your Honor {sglfrjts}.

22

        MR. MCKNETT:  Second one, 1568 Ms. Ali calls back

23

and tells Ms. Martin that she in fact had been able to

24

get rid of the tickets to {trooes} {sa} because {trooes}

25

{sa} jumped on them.

        THE COURT:  I will permit these calls.  All right.
Next call then is on Page 113, number B 1996.  What's the
purpose of this one?

        MR. MCKNETT:  Your Honor this is a fairly lengthy
call and if the court allows me to bring it in, I'll be
happy to {ed} it it down.  If I remember this call
correctly this is a call in which Ms. Martin and Ms. Ali
again are talking about the problems Ms. Martin has with
Ms. {ter} {rel} who lives upstairs Ms. {ter} {rel} trying
to get in her business, trying to {of} hear what's going
on, trying to in effect be a busy body, a nosey person
the reason this is important is it shows Ms. Ali and Ms.
Martin are trying to minimize their involvements with Ms.
{ter} {rel} as much as they possibly can.  There's a
later conversation presented by the government which
detective Sakala interpreted the conversation as one in
which Ms. Martin wasing {g} to leaf a quantity of drugs
with Ms.
{ter} {rel} for Ms. Ali to come over later and pick up
and this conversation clearly shows that that simply was
not the nature of the relationship between Ms. {ter}
{rel} and Ms. Martin and Ms. Ali.

        MS. JOHNSTON:  That's a problem because he's going
intoest of what the relationship was not in terms of what

agent Sakala said that they had a drug dealing

relationship in addition to their friendship that some of

the calls he interpreted had to do with drugs.  This is

being offered as sun {stan} tive proof of what their

relationship was {chl} {hrz} a lee can testify to a as to

it, Ms. Martin can testify.  This talks about plastic

surgery it talks about wigs that Ms. Martin got and Ms.

Ali.  It talks about, you know, all sorts of things.

          THE COURT:  How is this --

          THE COURT:  How is this relevant.

          MR. MCKNETT:  I will be happy to {ed} it out those

portions {sglfrjts} {sgchblingts} what's going to be

left.

          MR. MCKNETT:  What's going to be left is.

          MS. JOHNSTON:  Ms. {ter} {rel} is sick upstairs.

          MR. MCKNETT:  If I could re{ser} it have right to

Ted {ed} it it a little bit further but I would start

from the beginning of the conversation and note the

{thaer} recording and continue through the portion on --

through Page 115 about middle of the page and then pick

{pwawng} later on and I don't have a precise spot here

Your Honor but they talk about how Ms. {ter} {rel} was

trying to get into Ms. Martin's things and be nosey and

those are the aspects that I want to bring in because I

{swofld} argue that the agent note {witz} in forming his

opinion intentionally discarded this conversation.

THE COURT:  Which opinion do you mean?

MR. MCKNETT:  The opinion that in a rather nonspecific conversation Ms. Martin said to Ms. Ali if I'm in the here when I come by I'll leave it with Ms. {ter} {rel} I'll leave it with jack {ki}.  That was a -- there was no reference the tickets or drugs or sweet potato pie or anything else in that conversation.  It was just a lee with jack {ki}.  The detective interpreted that to mean mean that Ms. Martin was going to leave a quantity of drugs with Ms. {ter} {rel} for my client to pick up.  This conversation at least the relevant portions of it indicates that that relationship, that kind of a relationship simply didn't exist between those three people that there was no possibility that Ms. Martin would ever leave drug {ws} Ms. {ter} {rel} for anybody to pick up.  Or anything else for {hrz} Martin for somebody else to pick up {sxwrons} {jons} if {maz} Martin and Ms. Ali want to testify about their {ri} lation ship with Ms. {ter} {rel} they certainly can. {sglfrjts} {sglfrjt} what I don't have perfect recall on is what {tabt} relation with Ms. {ter} {rel} whether he gave an opinion of on that.

MR. MCKNETT:  I'm not sure he ever got into that in any great detail.  He talked about Ms. {ter} {rel}

being -- if the woman who lived up stair that is Ms.
{ter} {rel}.

        THE COURT:  Let me just say this Mr. McKnett.  I
don't recall him saying giving an opinion about the
relationship between Ms. Martin and Ms. {ter} {rel} or
Ms. Ali and Ms. {ter} {rel}.  But, if you can find
something where he gave that opinion and present it to
me, I'll consider this as being something that would be
usable on cross examination if there is such a thing, but
I don't recall any such thing and if there wasn't any
such {12R507B8G} I don't think it's proper to put this
into further cross examination.

        MR. MCKNETT:  Your Honor I don't know that he -- I
can't recall offhand any specific time that he testified
that there was any specific relationship between Ms.
Martin and Ms. {fer} {ter} {rel} or Ms. Ali and Ms. {ter}
{rel} or any combination of those three, but imimplicit
in the opinion that Ms. Martin would leave drugs with Ms.
{ter} {rel} for Ms. Ali to pick up implicit in that
opinion is his opinion that the relationship was such
that they would do that.  And this conversation undercuts
that portion of that implicit preponderance.

        THE COURT:  As I said you're going to have to
convince me of this one.  As of right now my on collusion
is that this is not fair game for cross-examination on

opinions because I don't think you he gave an opinion on
this subject.

MR. WARD:  Your Honor, I do -- I don't have all my
notes with me but I do specifically call {tla} was a
conversation about how Ms. Mart {r57b} could not go up
into the kitchen because the woman was there and she
department want her to know about her business and so
forth and so so on and about how she was a drunkard and
that she {wawz} big time boozer or you know basically an
unreliable type person.  {jons} {jns} and then this call
would just corroborate if that's {tha} that {tes} opinion
agent Sakala {gai} -- {sglfrjts} {sglfrj} my ruling now
is that this cannot be used.  Be glad to reconsider it
Mr. McKnett if you can give me something further that
would {juts} ty {fi} using it but as of now, no.  Let's
go to the next one it's A 681 on page 124 and and I
believe the asterisk means it is mac net?

MS. JOHNSTON:  This is again about {kef} inScott
leaving suits.  Which is not inconsistent with what the
detective detective's testimony was.

THE COURT:  Net in the Your Honor again
corroborate support it is testimony's opinion note there
was no legitimate business.  This supports the fact that
my client -- at least my client's husband inI {ip} police
Italy and that my client were interest inside buying

clothes this had to {o} do with {lin} ensuit that is

apparently Mr.  Scott had left at Ms. Martin's house for

sale.

        MS. JOHNSTON:  Agent Sakala testified can she have

inScott had a clothing store and he would bring clothes

down to Ms. Martin to sell and first of all it's not

relevant whether yule {is}'s bought {kloe} s or not the

detective didn't {gef} give any opinion about {yul} {is}

{ooesz} garner engaged drug activities.

        THE COURT:  I will not permit this call.  Page

130, call number B 2436.

        MR. MARTIN:  I'm pulling that Your Honor {sglfrjt}

{sglfrjt} you're not going to offer that {mrt}.

        MR. MARTIN:  I don't know why I listed that.

{jons} have {yu} all pulled then call B 2220 on page 126?

{mont} {c5e7b9} that's the one I in advance of our

hearing -- in advance of the hearing I informed Ms.

Johnston that was a call I was not able to establish a

rationale that convinced me and I therefore submitted

that I probably couldn't establish one that would

convince the court.

        MS. JOHNSTON:  That's all I needed to know.  Thank

you.

        THE COURT:  All right we're now I a{t} think at

the per {UF} {yan} chicken call.

Page  80

1    MR. MCKNETT:  Your Honor {ki} back up a second?  I

2  think I'm confused on B 2436.

3    THE COURT:  Correct.

4    MR. MCKNETT:  Is that.

5    MR. MARTIN:  It was listed as mine.  I looked at

6  it.

7    MR. MCKNETT:  I don't think that is.  I think

8  that's my call.

9    THE COURT:  Oh, it S.

10    MR. MCKNETT:  I think -- yes, it is.  And it is

11  the complete conversation with regard to an excerpt that

12  the government played.  {sglchbility} {sglfrjt} how long

13  is the --

14    MR. MCKNETT:  Only the portion on Page 132

15  {sglfrjts} {sglfrjt} all right.  It's just three pages.

16    MR. MCKNETT:  It's just three pages.

17    THE COURT:  All right.  I'll permit that.

18    MR. MARTIN:  So it's in.

19    THE COURT:  That's from {hrz} a lee.  Okay.  Not

20  good win.  Okay.  Now {wooer} at per you have {yan}

21  chicken page 136, call 2429.  Is this the defense

22  {veshtion} of the {got}'s version of the same call.

23    MR. MONTEMARANO:  Yes U.  Your Honor has said we

24  can send our transcript back we're not going to play the

25  call unless Mr.  Mitchell is able to -- my understanding

is Your Honor's ruling is that you weren't going to --

{sglchblingts} {sglfrjts} you can have your transcript in

this book.  That's fine.

MR. MONTEMARANO:  Right.

THE COURT:  All right.

MS. GREENBERG:  Your Honor, I'm sorry if we could

get back to B 2436.  I'm just looking at page 26five of

the transcript book and I'm not seeing our transcribed

portion in Mr. McKnett's transcribed portion {sglfrjts}

{glfrjts} this is on Page 130?

MS. GREENBERG:  Okay.  I got it.  Okay, thank you.

I poll lo {jiz} for the interruption.

THE COURT:  All right.  Now we're at B 2790 on

page 138.

MR. MARTIN:  That occurs on page 138  in our book

and page 29one in the government's.  This is a telephone

conversation between Paulette Martin and Tiffany vessels.

You may recall this is when Ms. Martin is supposedly {gi}

ing directions to Ms. Vessels on how the get to the

house.  Again I made a rule 106 objection and the thrust

of this request, Your Honor,

THE COURT:  So this is the complete call.

MR. MARTIN:  It's completeness and also they

discus tickets to Aretha Franklin and Gerald {le} {vit}

{le} {vert} {sglfrjts} {sglfrjt} all right I will permit

that.   Next call page 143 Number  B 3201.

          MR. MONTEMARANO:  This is the first of the calls
of Gilbert Williams who is the concert promoter the court
may recall in North Carolina to whom Ms. Martin sent
$131,000 on or about the 25th 26  th of May.  Shortly
after the forfeiture order was signed by this court but
before it was formally executed.  As a result the
government sought the return of this money from Mr.
Williams and he had already spent this money in promoting
the Gerald {le} {vert} father and son tour for that
summer and I think it goes to establish that Ms. Martin
was indeed involved in legitimate businesses that
spending $131,000 for camouflage is shall we say
excessive.

          MS. JOHNSTON:  Your Honor, our position would be
that was drug proceeds but how is he going to get any of
this sub {stan} {ti} ly in the {nerm} terms of what the
money was for?

          MR. MONTEMARANO:  Well, {jons} {yns} the whole bit
{tabt} forfeiture is irrelevant here.  I understand
{koul} counsel has a letter that they wrote to the
government about the money getting the money back which
we don't think is admissible.

          THE COURT:  How does this one come out.

          MS. JOHNSTON:  I don't know huh how any of this is

coming in.

MR. MONTEMARANO:  May it please the court.  So we're on same page T. government sought the gone Monday gnu and wrote the more Williams {vi} a copy of this letter Mr. Williams {pwro} wrote to the {got} and said basically with an excess of testosterone told the government to go fly a kite.  Your Honor is smiling like I am they are {mez} ing with the big dog doesn't always strike me as being a smart thing when he {dez} doesn't have the money an he says {u} I don't have it, I ain't giving it back.  It's been spent the government {EFP} propose add possible settlement -- {sglfrjts} {glfrjt} how does this have {smiing} anything to do with opinion that is Sergeant Sakala gave?

MR. MONTEMARANO:  Ms. Martin is not engaged in any legitimate businesses.  His words.  He blew off entire {tli} notion that she was involved in concert promotion. In huge numbers of calls about shows and tickets and acts that many of the people in the jury will be familiar with and this is one example of it and this sort of set it is stage one of the earliest call {ws} Gilbert will {quams} {apd} I think sit soluble to demonstrate tremendouslation ship they have because it was my {pwengs} so intention to put on Mr. Williams and ask him what he intent the money on {whand} this was for the fact that the government in

two years hasen done anything about this money hasn't sue

Master's degree Williams.

THE COURT:  {u} don't want to hear {tabt}

forfeiture whey want to hear about is how this is

something that can reasonably be look today as calling

into question the {pb} s given {gi} Sergeant Sakala.  And

on what specific opinion.  Now the specific opinion I

hear you telling me is he found no evidence of any

legitimate business by Ms. Mart sin that right.

MR. MONTEMARANO:  No one engaged the entertainment

business.  This is a -- almost a precondition to

establishing the transfer of money to Mr. Williams.

MS. JOHNSTON:  What agent Sakala said was yes I'm

familiar with the fact that she paid guilty produck shuns

a hundred and and {sm} $1,000 but in my opinion it wasn't

legitimate business because that was money -- that was

drug proceeds.  So what agent Sakala has admitted that

she transferred that money to him {hrz} an investment in

the concert business {sglfrjts} {sglfrnlts} meaning it

was drug proceeds in the sense of where she got the money

from but the transaction may very well have been to

purchase tickets.  Not.

MS. JOHNSTON:  Not the purchase tickets to purr

in{ves} in the a concert {sglfrjts} {jons} {yns} there is

nothing to cross examine him about.  He has admit that

had's what happened she sent the money to him to {ip}

{ves} in the a concert promotion --

THE COURT:ly Not permit call B 23 note the {thaer} recording.

MR. MONTEMARANO:  Thank you Your Honor.

THE COURT:  A 1015 on Page 152 has a star {oynt}. Who is if star?

THE COURT:  A 1015.  Page 152.  Net I didn't have it on my list.

MS. JOHNSTON:  That's a a call between Ms. Martin and Mr. Goodwin.  Mart {ket} oh, is it?

THE COURT:  Does the star mean Mr.  Mart {snin} mar mar New York City numbers do.  Let me take a quick look here and see.

MS. JOHNSTON:  It's about concerts.  Different people.  Monday.

MR. MONTEMARANO:  Your Honor I prepared that list you can't really hold Mr. McKnett and Mr.  Martin accountable.

MS. JOHNSTON:  It's 22 {painl} s long {sglchblingts} {sglchblingts} what is your translation of what this means?  It's {gt} a star on it.

MS. JOHNSTON:  It's 22 pages long.  {mornt} {mont} oh I know why Your Honor there's a long discussion in the middle of the call by the parties relative to {ron} hood,

who is involve inside the interstainment business and
about Aretha Franklin and the use -- utility of certain
acts {ver} us others.  They discuss {kha} {ka} can at
page 157 and and I think that Mr. McKnett had sought to
bring it in because of its relationship to the
entertainment business but this is one he {apd} I would
have have pus cuss ed would have to be seriously redacted
because sit quite long but as I indicated before we
transcribed them all -- the entirety of them.

        THE COURT:  In the absence of substantial
redaction that {ki} approve I won't permit this call so
come back to me with {whaef} you may have and if there's
a redaction but it's too long and I {ooep} not sure how
it comes in.  All right.  The next one {vi} is B 3391 at
page 16five.

        MR. MONTEMARANO:  Yes Your Honor it's Ms. Martin
calls the mid LAN {thooe} {t} attar in I {pwhrooe} Kansas
City Missouri checking on arrangements for a show there
if the amount of money had been paid had been deposited.
If the show had been cancelled and this relates to
earlier calls which Ms. Martin discusses try {toing} get
her money back from {ron} hood.  I believe they're in
some of the -- some of the discussions with the calls Mr.
McKnett has already ought sought to introduce about money
that she is due and it's being held it {swofld} have been

escrowed by {ron} hood and how he's not trust {wor} think
and {shooes} try {toing} find out if this show is gone
that she's in essence put up money for has been cancelled
or is still going forward.  It's a very brief call and
the government's log indicates that the phone numbers
register today the mid land theater in Kansas City which
is how I know that and {vi} put that on my list and
provide {wd} name of the person.

MS. JOHNSTON:  Your Honor, here is the
government's problem with this.  Again, this is about
concert business.  Agent Sakala said that they had
in{ves} it had money at a had attempted to invest money
in some concerts.  He testify today that.  He never said
that they didn't investigate the invest the {druling}
proceeds into concert {sos} he is not in any way, shape
or form being cross {xaip} inned or impeached by this he
admitted {tai} sought {toyn} vest Mr.  mart note {thaer}
recording.

THE COURT:ly Permit this call ton basis that it is
fair for cross-examination on opinions {gi} enabout
tickets.  As {ket} being for real shows.

MS. JOHNSTON:  Your Honor just so the court is
clear there is no reference in here to tickets it's not
tickets ha she wants back.

THE COURT:  I understand but he can has {gi} enan

{p} en that various conversations that dealt with tickets

and shows were not about tickets and shows but was about

drugs.  They can test that opinion with these recordings.

The {nebingts} one I have is on page 168, new recording

note the {thaer} recording.

MR. MONTEMARANO:  Yes Your Honor it's another

lengthy call with Gilbert Williams and my basis would be

the same as the one that you already said wouldn't come

N. they're discussing calls they're discussing details.

This is an in depth discussion.

THE COURT:ly Be glad to revisit this one fit's a

substantially cut one but as of now I won't permit

{thoym} be {xroopsz} I inned about this win think I {ooe}

give inyou all {mrep} ty of ammunition about plenty of

other calls I'm no not sure you really need with this

one.  Note the hear the recording.

MR. MONTEMARANO:  It's be with {r57b} unidentify

fed male just where Ms. Martin says she's getting red

{doy} {fwi} father and son tour which is Gerald {le}

{vert} and the {le} {vert} the {le} {vert} for the fall

now this is in mid April of 04 and and this is the --

this is the show or the tour for which she pop it had 131

K.

MS. JOHNSTON:  Again it's not relevant because

agent Sakala admitted she in{ves} {tid} that money with

Gilbert I Williams that $131,000 {sos} there is nothing to cross examine him about in reference in to that transaction.

THE COURT:  I won't permit that call.

MR. MONTEMARANO:  The next one I intend to redact significantly but there's is long discussion of sizes about hao LaNora is a ten on page 16two {ou} the cost on some of these items {sglfrjts} {glfrjts} you can play this recording but you're going have to re{dablingt} it.

MS. JOHNSTON:  Is this call B 3946.

MR. MONTEMARANO:  Yes.

MS. JOHNSTON:  The government may object to the redactions depending {o} with on what they are.

THE COURT:  You may.  I'm saying it pus too long if you want to redact note the play it you're going have to redact it note the hear the recording {mont} {nont} 201 the call 19  {1KW} is much the same kind of thing.  I think they may well be one call continuing the other where it gets cut off.

MS. JOHNSTON:  Is this on page 19six.

MR. MONTEMARANO:  Yes.

THE COURT:

MS. JOHNSTON:  Again Your Honor we'reing {g} to object on the Qume {la} {ti} nature of these calls.

THE COURT:  That's whey {ooem} saying.  I think

we're getting cumulative and I'm in{stings} if you're

going the {yitz} at all it has to be redacted otherwise

we will be forever playing --

MR. MONTEMARANO:  Your Honor I wouldn't suggest to

note the {thaer} recording I think there is an argument

that while maybe two points do define a line, it's maybe

more hell helpful if you define more than just two

points.  I have a stretch of about 12 weeks when the wire

is up.  If I can show conversations about calls from the

beginning B 26  the {firs} {ket} day the wire is up

through, you know T 30th of May, my {afring} ment is all

the more plausible and that's why I try today do it's 18

calls but that barely works out to one a week.

THE COURT:  What I am saying {si} recognize that

you are on the receiving end of opinion testimony that

gives opinions about your client as well as others that

they are not engaged in legitimate business {z} when

they're dog these {pwis} s concerning tickets and shows

and note the {thaer} recording totality of all of the

recordings and that this is part or of that universe.

All I'm saying is that {doy} want to exercise some gate

{kip} er function to not have unnecessarily repetitious

or redundant testimony or when it's a very long call

dealing with a multitude offish Shoo issues other than

that then I insist that it be redacted.

MR. MONTEMARANO:  I understand that Your Honor.
Just so the court knows write {ooem} coming back from
with the redactions I'm much more likely to {e} note the
{thaer} recording {sglfrjts} {12K3R50EU7B8G9S} {vi} an
open mind on that all I'm saying is some of these have
been so overwhelmingly long {im} not sure we really need
nit any event so call B 3948  about clothing can come in
but I'm requesting redaction {sos} that it's not
excessively long.  Call B 3956 at Page 201 has a star on
it.  Does that mean it's Ms. Ali?

MR. MCKNETT:  That's me Your Honor.

THE COURT:  What's tissue on this call?

MR. MCKNETT:  Your Honor this is a very short
call.  Ms. Ali leaves a message on Ms. Martin's answering
machine in which she's talking about fat people clothes
like a 16 and and I wanted to get that in because it show
ass different legitimate reason for the use to have
number 16  which they t detective testified was a drug
reference in other contexts {sglfrjts} {sglfrjt} all
right I will permit that call.

Next call is numb {kher} A 1219  at Page 202.

MR. MARTIN:  Yes, Your Honor.  I would like to
preface my remarks by noting that there were over 850
contact contacts noted {fwi} government involving leerily
reed good win over several phone numbers, that of those

43 calls were actually discussed or put into the

government's log and at this time I'm seeking to have

introduced four calls note the hear the recording I make

that statement Your Honor because I think the last

comment about evidence being cumulative was one that

struck me right here.  I'm not asking for a lot but I am

asking for these four phone calls to show that there was

some discussion about investments and Aretha Franklin

getting sick and them wanting their money back and if the

court -- this is an excerpted call F.

the court think this is is cumulative then would note my

objection in not being able to get this in.  It is a

lengthy call if the court wants me to redact portions of

it; I would understand that.  It does repeat pretty much

what was --

        THE COURT:  Tell me what the purpose of putting

this call in is.

        MR. MARTIN:  Again to show that there was

legitimacy.  It's not an excerpted call so I can't make

the rule 106 argument with respect to this one and and

I'm just pre{em} ting the -- {sglfrjt} {glfrjt} what

opinion of Sergeant Sakala is this testing?

        MR. MARTIN:  Sorry {sglfrjt} {sglfrjt} what

opinion that Sergeant Sakala gave is this testing.

        MR. MARTIN:  The argument regarding legitimacy and

there being no legitimate business inendeavors on the part of Mr. Goodwin.  In fact it wasn't jus sat {ka} {la}.  Also Eveler testified or suggested that there was an absence of legitimate business on the part of Mr. Goodwin and I questioned him as to whether he was an accountant or an auditor and whether or not he had looked at the stream of {kbing} shore the different businesses Mr. Goodwin had and he said no.

MS. JOHNSTON:  That is a classic hearsay objection he's offering it {fo} the truth of the matter that's asserted therein that {ap} participantly Mr. Goodwin had a legitimate business.  It's not add {miz} {bl} for that purpose it's not add {miz} {bl} photo {e} cross examine agent is {ka} {la}.  He said note the {thaer} recording he said there were calls we played a part of a call in which there that was the first portion to have call.  He edited it then to a drug conspiracy though arguably a note the {thaer} recording as money of their investment of drug proceeds.  This call does not refute any of agent Sakala's testimony when it comes to the concert business and that they have invested in it as opposed to selling tickets.

THE COURT:  All right.

MR. MARTIN:  I'm not going repeat myself Your Honor.

THE COURT:  All right.  ly Not permit this call {scoment} the next call is page B -- call B 4108 on Page 211.

MR. MARTIN:  We withdraw that one.

THE COURT:  You're withdrawing that.

MR. MARTIN:  Yes, sir.

THE COURT:  Okay.  Green Your Honor we're at halfway point on these calls if Ms. Johnston is going to leave can we take a break from the calls.

THE COURT:  What I wanted to ask you is are you able capable of operating on the phone calls without her here.

MS. GREENBERG:  {sinz} since Sergeant Sakala was her witness I would rather her be here.  If the court doesn't want to proceed {o} that way I can do my best.

THE COURT:  {ki} grind into the jury instructions in her absence and resume.

MS. GREENBERG:  We can do the jury instruction and Mr.  Ward filed a memo relate {toing} testimony tomorrow and if we can take up that time and if we're done by the time she gets back then maybe we can go back to the phone calls.

THE COURT:  I need a break too.  If -- {vom} I finish third-degree phone call?  Let me see.  The next call is on Page 213, call numb we are number B 3134.

1    MS. GREENBERG:  Your Honor {wooer} about halfway

2    through I thought that would be a good buoyant to break.

3    THE COURT:  Why don't we just break for ten

4    minutes maybeless if you want and Ms. Johnston could be

5    excused we'll continue.  I will then start the jury

6    instructions.

7    MS. GREENBERG:  If we finish with those other

8    matters Your Honor I'm fine with proceeding with the book

9    but if we could try deal with those {ut} other matters.

10   THE COURT:  I really don't want to be here until

11   midnight tonight.

12   MS. JOHNSTON:  Your Honor I think you were

13   {refrps} ago list that defense counsel gave you with

14   {stars} and numbers on it relating to different

15   attorneys.  {sglfrnlt} {sglfrjts} you don't have that

16   {squlons} {jons} mine didn't have any stars on it never

17   mind {vi} stars okay and the numbers {sglfrjts} {glfrjts}

18   don't want to leave you without any stars.

19                (Off the record at 3:52 p.m.)

20                (On the record at 4:05 p.m.)

21   MS. GREENBERG:  Jury instructions, Your Honor?

22   THE COURT:  I want you to know that I have

23   scheduled a 5:30 conference call in a case that may go up

24   in smoke.  If it doesn't go up in smoke I will have to go

25   off the bench for a few minutes and come back on it's a

very brief conference call on a criminal case.
{sglfrjts} {1K3R50EU7B89S} counsel what I was looking
for.  I my deputy is not here but I believe I asked her
to docket as court draft jury {ip} struck shun what was
handed out to you.  If it hasn't been done, I will do so
so that the record of this proceeding will make some
sense, but what I have requested be done is to provide to
you my current version of the transcript.  Now, -- of the
instructions.  Now, what I did was to take the
government's draft instructions that it gave which was
what they proposed to do which was in a not unsubstantial
part based upon what I did in the earlier trial of the
first group of defendants in this case so there was
something familiar to what I was {25BG} ing at.
I then went through it one page at a time and made my
{suing} suggested {ed} its {toyt}.  There are some open
items that I need to discuss with you, but this is the
document that I'm proceeding with and will be giving to
my secretary to put into final form before being given to
the jury.  There are some instruct {shub} s that are not
in this set.  Among themly be {gi} ing them the jury form
and explaining it to them orally.  Other than
housekeeping matters of, you know, where they're supposed
to be {dur} ing the day and the night, this is complete.
So, what I want you to know is that I have not included

in here the form instruction 9-10 a {lez} er included

offense which I will be grad glad to hear from.  I have

in front of me some notes of addition {l} things I want

to {wfd} to them to the instructions in the appropriate

place.

One is something indicating to them that they should not

be -- they should not expect to press a butt button and

have a transcript of witnesses.  We don't do that.  And

secondly I have a note to make a possible limiting

instruction about the summary charts.  Now {vi} also in

front of me a letter from the government dated July 24

asking me they not delete something I deleted and we'll

get to that when we get to that page.  I also have in

front of me from Mr.  {sus} {sus} man a proposal for

several change toss the instructions and I will take them

up as I get to them as I go through tin struck shuns.

Now are there any other documents pertaining to the

question of the instructions that I have not mentioned in

t?  I obviously have all of the documents that led up to

the earlier submission but I do not have any additional

materials from anyone else; am I correct?

        MR. HALL:  Your Honor, there had been -- Mr.

{susz} man I {pwhrooe} in believe in his request to the

court had sent the court a multiple conspiracy

instruction and I had also sent.

1      THE COURT:  I have that.

2      MR. HALL:  Okay.  I just wanted to make sure
because hi also sent a multiple cob spear {si}

3

4  instruction I actually like Mr.  {susz} man's better.

5      THE COURT:  You have as well.

6      MR. HALL:  Yes.  I sent it to your clerk about a
week ago.

7

8      THE COURT:  I'll have to look for it.  We'll
locate it.

9

10     MS. GREENBERG:  Your Honor Mr.  Hall's just
basically recite it is sand.

11

12     MR. HALL:  Yes mine was taken directly from sand,
Your Honor.

13

14     THE COURT:  All right.  Mr.  Martin.

15     MR. MARTIN:  Sir, I did not work on this case this
16  weekend like my brother did I was working on something
17  else but something did occur to me that I should have
18  submitted to the court.  Fourth circuit is now
19  considering the argument of what exactly constitutes
20  crack which is the Brisbane case in the District of
21  Columbia.  I would expect that any day now they will
22  render a decision on that.

23     THE COURT:  The fourth circuit?

24     MR. MARTIN:  The fourth circuit, yeah.  I happen
25  to know that case was argued in March and I've made much

a do during the course of this trial regarding the

absence of testing of sodium bicar {pwont} ate or the

absence of testimony alleging that the absence of the

crack was smoke {bl} note the {thaer} recording in

deciding whether or not Mr. Goodwin distributed crack

cocaine on November 25, 2 thousand 3 and and anybody else

who wants to join in on this that they have to first

{dperm} that it was in fact crack and not some other form

cocaine base.

THE COURT:  That's the Brisbane case that's under

advisement.

MR. MARTIN:  United States versus Brisbane is the

D. C. case.

THE COURT:  What's the counter part in the fourth

circuit.

MR. MARTIN:  The {fout} circuit case is C A S T I

L L O-R A M O S note {witz} United States versus {ka}

still {ro} yo ram os and no decision yet has been base

made on {ka} still yo ROM ram os.

THE COURT:  I was making take ago look to see if

this was decide today day note the hear recording {graen}

green groan Your Honor I'ming {g} to object tote note to

that are hear the recording {fwi} case law {fwi}

standpoint and through numerous draft {ofs} jury din you

can in{stlung} s.

1        THE COURT:  I'm incline today agree with you and
2   take a look at these cases whey intend to do is go
3   through these in{stlung} {sos} let's start with -- I
4   don't know why it start {ws} Page two but it start {ws}
5   Page two.  All right.  {doy} not to have a conference
6   call at note {witz} 5:30 so I'm a free man.  The
7   in{stlung} s begin on Page two so I'm going to go through
8   each Page one at a time, if you have a problem with
9   anything on that page you need to let me know.  Becausely
10  be making {ed} its manual oily on the {painl} s as we go.
11  Page two.  What I intend to do when I put these in final
12  form is to delete the instruction numbers as well as the
13  instruction headings so lit read like a novel.  No.
14       MR. MONTEMARANO:  {apd} citations {sglfrjts}
15  {sglnt} and citations.  All of those will be removed.
16       MR. WARD:  I'm sorry that will be just for the
17  jury's benefit the one that goes into the jury.
18       THE COURT:  The that the one that goes in to the
19  jury will have no cry {taiing} s no headings headings no
20  nothing {ar}.
21       MR. WARD:  {Ta} one we have will have the jury
22  numbers.
23       THE COURT:  The one you have in {nnt} {frnt} of
24  you.
25       MR. WARD:  So we can {k5eb9} {sglfrjts} {sglfrn}

1   yes I am not going make a further version.  What you have

2   in front of you is what the version I will work off you

3   have of to make my final {ed} its and I will grind it

4   through in a pristine, clean, form.  So.

5          MR. WARD:  Okay sir thank you.

6          THE COURT:  {snou} the time to tell me shotgun was

7   something was wrong with it {moort} mart I don't know

8   that something is wrong but it says I was looking at the

9   last line it says I ask you to care give me that same

10  careful {u} attention now as give you my instructions on

11  the law I would have left it as I ask you to give me that

12  same careful attention now, as I instruct you full stop.

13         THE COURT:  That's just the way I'm going to do

14  it.  That's {oo} a style thing and that's the way I'm

15  going to do it.

16         All right.  Page four.  These are all style

17  {khaij} changes to sand {wr567bd} {sif} {fert} that I jus

18  {t} made for style purposes.

19         MR. HALL:  No objections Your Honor.

20         THE COURT:  Page five.  If I don't hear an

21  objection I'm moving on.  Page five?  I had a request on

22  it's -- I {gez} it's in a later instruction to put in if

23  a witness agree {ws} a the assertion made in the note the

24  hear the recording I guess we will get to that later.

25         MR. HALL:  Your Honor yeah that was one of Mr.

{susz} man's and I believe that doesn't come into play until in{stribing} shun 14.

THE COURT:ly Come back to that when we get to it. Page six.

MR. WARD:  Yes Your Honor.  I oh I'm sorry you do count stipulations {sglfrjts} {sglfrjt} yeah I cleaned this up and made it clear.

MR. WARD:  I was looking at the part that you had circled at the top the evidence consists of the answers, the testimony, the exhibits and I had written in and the stipulation pus but I see you covered that you {ko} that below {sglfrjts} {sglfrjt} yes, yes I do.

MR. WARD:  Thank you {sglchblingts} {sglfrjts} that's why I didn't like the way it was written soy fixed it so it covers everything.

All right.  Page seven.  Page eight.  The first paragraph was redun {dant}.  Page nine.  Page ten.  Page 11.  Page 12.

MR. HALL:  No changes on 12.

THE COURT:  None.  No.  Page 13.  Page.  Page 15. {ard}.

MR. WARD:  Excuse me judge.  I'm sorry.  In relation to Number ten, I think a numb we are number of us asked for.

THE COURT:  What page number.

MR. WARD:  1314.  A number of us had asked for the definition of reasonable doubt and I think Your Honor had denied that.

THE COURT:  Yes.

MR. HALL:  He declined to do that.

THE COURT:  I think it would be an {hooe} heroic matter for me in the fourth circuit to define reasonable doubt in tab sense of a request from the jury and I think they've repeatedly.

MR. WARD:  I {whawns} the 40 circuit has said.

THE COURT:  They have rerepeatedly and author {tai} tively instructed the judges in this circuit not the give a aen instrung in{stlung} of reasonable doubt unless the jury asks for it.

MR. MARTIN:  That doesn't preclude us from arguing reasonable doubt.

THE COURT:  {yu} may argue to jury reasonable doubt.

MR. MARTIN:  Can we give us examples {sglfrjts} {sglchblingt} I am not going to rule on that question now.  I think you certainly can say the judge's in{stlung} says reasonable doubt.  I don't think you can try to define it.  Beyond {whooif} done.  Consistent with the {fout} circuit law.  All right.  Anything on Page 13? 14?  15.  By the way, this one I have -- this is a

modified sand and {sif} {fert} instruction that assumes that you're in a courtroom with the curtains being drawn and I rewrote it because I'm usualfully two A which has no windows but there really are windows in this courtroom.  Can you from where {yu} ear sitting see if it's raining?

MS. GREENBERG:  No.

MR. HALL:  You can only tell maybe {ket}'s cloudy or not.

THE COURT:  Well, I will then change this instruction a little bit the say as you know, this courtroom has few windows and ewe you cannot look outside to see whether it's raining.  Okay?  Unless you've got better vision than I do.  I have to adjust this instruction depending on the courtroom.  All right so that's what I'm going to do to this instruction is the last line on this page on Page 15 will say, windows and you cannot look outside to see whether or not sit raining {tand} {prooe} {yous} line I'm going change no to few. I'll say only a few.

MR. MCKNETT:down I don't want to interrupt.  On page 16.  That statement is already in there the top of the second paragraph.  {sglfrjts} {sglfrj} oh, yeah. Green {r57b} Your Honor why don't you say you notice this courtroom has no windows sort of like a skylight above me

and you can't look outside to see if it's raining.

THE COURT:  I think the easiest thing to do is just delete the last sentence on Page 15 then I think it works.

MS. GREENBERG:  Yep.

THE COURT:  I'm just going to delete it.  Anything to make these instructions shorter.

MR. MARTIN:  {quha} are.

MR. MONTEMARANO:  What are you deleting Your Honor.

THE COURT:  I'm deleting the last sentence on Page 15 that talks about us not having no windows in this courtroom then the standard sent innocence the second paragraph -- first sentence of the second paragraph of page 16  works.  You can't tell whether it's raining. Mitch {r57b} shouldn't it be courtroom instead of courthouse?  {sfwhrchblingts} {sglfrjts} it says courtroom.  Mitch at the bottom of Page 15.

THE COURT:  No, that's deleted.  Mitch you said the last sentence.

MR. MARTIN:  The last sent sense deleted.

THE COURT:  The last sentence Mitch the second to the last sentence.

THE COURT:  Excuse me.

MR. MITCHELL:  The second to the lass s sent a

last sentence assume that you came into the courthouse.

        THE COURT:  That's fine.  That's correct.  Mitch there are windows in the courthouse but there is none in the courtroom {sglfshtion} {sglfshtion} {whren} you came into the courthouse I E when {yu} you were outside the courthouse it was a sunny day.  That {oo} make that assumption {moych}.

        MR. MITCHELL:  Never mind.

        THE COURT:  Page 16  no changes.  Page 17.

        MR. HALL:  No {sglfrjts} {sglfrjt} page 18?

        MR. HALL:  No {sglfrjts} {sglfrj} page 19?

        THE COURT:  All right now Page 20 where I have a request to change in{25BG} shun 14 received from Mr. {susz} man.

        MR. HALL:  Yes, Your Honor.  What Mr. {susz} man was requesting is that the court insert prior to the last sentence the following language.  However if a witness agrees with the assertion contained in the question you may accept the statement as true, and I suspect probably there were instance where is questions were placed that way to a witness, particularly possibly some of the individuals who testified as a an expert but probably also in other instances and certainly if you postulate something to the witness and he says, yes, in -- by meaning that yes he agrees with that proposition then I

would suggest that that does make it true and that would

be an appropriate addition for that.  {12K3R50EU7B8G9S}

{sglfrjts} all right.  And a slightly in a slightly

modified version I will put in the following language at

the end to have first full paragraph of jury instruction

Number 14 appearing on Page 20.

And you will hear as you hear me read it to you they've

made some nonsubstantive changes but these changes are to

make it more consistent with the sentence structure I've

used in the {staim} same in{stlung}.  However if a

witness agrees with a statement contain inside a question

you may accept the statement as true.  Okay?

          MR. HALL:  That's fine {sglfrjts} {sglfrjt}

anything else on Page 20?  21?  Two.

          MR. WARD:  I'm sorry {sglfrjts} {glfrjts} these

are page numbers.

          MR. MARTIN:  21 Your Honor I'm sorry.  I was still

writing.  I thought it should -- let me read this to make

sure I don't make a fuel of myself.  The parties have

offered evidence in the form of recording -- presently it

says the government and I suspect that we will be

offering recordings later on.  So perhaps writ says

government that should be changed throughout to parties

and then of course a verb would have {to} the verb {woul}

have to agree.

THE COURT:

MS. GREENBERG:  Your Honor the only issue with that is if they are not introduced as sub {stan} {ti} evidence.

THE COURT:  I think what I need to do is to leave this instruct {shub} the way it is but put a strike that separate instruction that deals with the recordings played by the defense.

MR. WARD:  Your Honor with all due respect I don't see {whri} you can't simply say what Mr.  Martin {sez} said.  I don't think it needs to be a distinction between one or the other.  Simply the parties have offered evidence and.

THE COURT:  Well, because there's very, very different purposes for which the recordings have been admitted depending on which side is doing it.  The recordings as offered by the government are viewed by them and were admitted as being statements made by coconspirators during and in furtherance of the conspiracy.

MR. WARD:  I see what the court means.

THE COURT:  And the portions that {vi} permitted the government -- the defense to require that government's expert witness to play for cross-examination have been admitted for very different purpose with the

1  limiting instruction that I will give and essentially

2  repeat at this point so whey {ooem} going to do is make a

3  note here to have this provision on recordings and

4  transcripts followed by a new instruction that will

5  embody whatly put in in a limiting instruction that will

6  be given during the further cross-examination of Sergeant

7  Sakala.

8      MS. GREENBERG:  Your Honor will the court allow us

9  to review that final instruction.

10     THE COURT:  Certainly.  What I intend to do is

11 after this session today is I will do these {ed} {ed} its

12 it will probably take me another day to get some of the

13 new materials down done and into it and give it to you

14 again and when I give it to you againly probably not take

15 the headings out until it's right before it goes to the

16 jury.  The last deletion of all the headings and

17 citations will be at the last part but {u} what I will do

18 will bally add a new instruction here with the combine

19 {wd} the limiting instruction that I give that explains

20 these additional recordings.

21     MR. MARTIN:  Very well Your Honor.

22     MS. GREENBERG:  Your Honor, does the court want to

23 hear anymore ton government's request that that language

24 come back in or has the court --

25     THE COURT:  Yes, I do.  This is where you.

MS. GREENBERG:  Yes Your Honor there were two types.

THE COURT:  The reason {vi} taken that out and maybe I was premature in taking it out.  I just put in lawful lawfully because I {thut} that note {witz} because I thought that there were some circumstances that that did not encompass,

MS. GREENBERG:  Your Honor there were two types of calls introduced in this case.  One where r were the Nathan king transcripts were which were consensual based on him calling from the jail and there's a sign up next to the phone saying that, you know, by you know being here and using this phone you're consent {toing} the interception of these calls and the second part was that wiretap order by this court -- by a {2K5EBG9} judge authorizing the wiretap.  So there with are two different types and I think standard instruction highlights that both types of procedures were lawful {soyt}'s not one or the other.

MR. WARD:  Your Honor I don't recall any testimony about there {gsh} by anyone qualified to make such a statement that beside each telephone in the jail is a plaque which says such and such and such and such about the calls be being consensual.
I think that's just unnecessary to get into I think if

you say lawfully obtained that's sufficient.

MR. MARTIN:  Your Honor I still think it would be ease {yur} easier just to change government to parties and make sure the verb follows.

THE COURT:  No I'm not going to do that.  It would be way too complicated to do it that way and as I said these calls are in as direct evidence of statements made by coconspirators during and in furtherance of the conspiracy and the other matters are coming in to {tes} {tt} opinion of the expert.  All right.

MS. GREENBERG:  Your Honor whether {ket} there was any specific testimony by Nathan king simply doesn't matter the court had admitted those calls based upon {em} {o} en them being note the {thaer} recording the party getting authorization from the court.  I'd like to fin {ib} Mr.  Ward before you can interrupt me again and that's why the form instruction submitted to the court makes sense because it differentiates between the two types of calls the court has rued them admissible they were may played before the court jury and this in{stlung} merely inform it is jury of that fact.  Thank you.

THE COURT:  Mr.  Ward.

MR. WARD:  Why does the jury need to know there is basis for one.

THE COURT:  Mr.  Ward don't snatch defeat from the

jaws of victory.

MR. WARD:  Huh.

THE COURT:  I'm not going change it.

MR. WARD:  Good {sglfrjts} {sglfrjt} I thought lawfully did the job quite nicely it didn't have the to make {shem} figure out whether it was consent or that a judge ordered it.  That's whey {ooem} going do.  ly Not go the do the government requested change on that one. Anything further on Page 22?  This is wherely be adding an instruction about the recordings that came in on cross-examination.  {ting} on 23?  24?  I took instruction 18 on Page 24 out because I believed it was redun {tant} {dant} and it was covered by the earlier instructions that said this was done lawfully.  Page 25? And this is where I added the instruction from stand sand and {sif} {fert} Number 4-3 about who calls more witnesses and so forth.

That was a request from the defense that I ass seeded to and that's where it will appear lit be appear in right in front of jury instruction 20 on Page 25.  All right? Anything further on page 26?

MR. HALL:  Yes, Your Honor.  Reference to page 26, jury instruction Number 21, there is an issue about one particular chart that the court has indicated that the government may use in closing but has never been

admitted.  It's the one that involves the manage wall

drug transactions and my suggestion is that there should

be something in this instruction that differentiates

between charts which have actually been admitted.

MR. WARD:  Well, there is.

MR. HALL:  And charts that are used in the -- that

will be used in closing argument.  Ward war Your Honor,

there is.

THE COURT:  What I will codo isly add on page 27

where this instruction ends add about argument charts are

not evidence.

MR. WARD:  Your Honor, there are -- there is a

separate instruction in sand and {sif} {fert} 513 which

talks about charts are not admitted in addition to 5-12.

THE COURT:  Let me take a look at 5-13.

MS. GREENBERG:  Your Honor it doesn't make sense

in light of the objection.  I'm looking at 5-13 and and

it really -- what the court is suggesting putting a

sentence in there makes much more sense in light of the

objection.

MR. MONTEMARANO:  Perhaps an easier way for

members of the jury {quho} are not lawyer {ss} to point

tout touts that are in {efs} they will be able to take

back to the jury room and the other others are just {dem}

{ons} {tra} tive.

THE COURT:  No.  I think the what I propose to do is more appropriate because this is dealing with the charts and summaries that were admitted as evidence and I'm going to tell them if it's there and it's {gt} an exhibit tag on it it's evidence like any other but if it's done in the form of a summary and so forth {awnd} then {ki} tell them you may also have people during {coz} closing argument put occupy their own charts they may have a a power point they may put up liar, cheat and so forth on these charts I'm not going it that way but -- and these are {ooring} ment argument an these are not evidence and you should not consider them as evidence. {mont} {mnt} Page 25 before the reference Mr.  Hall made instruction 6-7 {sglfrjt} {sglfrjt} wait a minute Page 25.

MR. MONTEMARANO:  26, rather.  I'm sorry.

THE COURT:  Page 26.  What's your question?

MR. MONTEMARANO:  The instruction 6-7 that you're inserting there {sglfrjt} {sglfrjt} right.

MR. MONTEMARANO:  I'd like to sick discus that I would respectfully submit we did not have an equal opportunity had or lack of opportunity to call witness. In particular I had considered calling George Harris and/or mill burn walker.  I was told by their counsel that they would not waive their self--- rights against

1    self-incrimination which still attach until such time as

2    hay they are September {ens} ed.   The government could

3    have required these people to waive such as part of plea

4    agreements they could have undertaken cooperation

5    agreements we could not have offer {themd} plea

6    agreements with they were not cooperation or did not

7    subsume some sort of waiver of whatever privilege may or

8    may still attach after they took a plea of guilty {fon}

9    eve of trial.   I submit that the discussion of these with

10   suggesting an equal opportunity on the part or the of the

11   parties is simply not accurate does not reflect the state

12   of the law.

13          MS. GREENBERG:   Your Honor I also had an argument

14   on that instruction.

15          THE COURT:   Please.

16          MS. GREENBERG:   I think this instruction is

17   necessary especially in light of Mr.  {mont} ma {ra} {mo}

18   no's opening argue {rment} and his statements {dur} ing

19   the course of the trial but most specifically his open

20   argument when he said where is John Martin?   I didn't

21   notice inunill {te} were going but through this in their

22   closing arguments because {the} he specifically said

23   where is John mart {snin} John Martin as the court knows

24   was a coconspirator in the this case live {wd} Paulette

25   Martin and is serving a sentence based on his partition

{paition} in this con {xooer} to suggest that the

government had access to Mr. Martin and somehow would

could have you know called Mr. Martin at trial in light

of his.

MR. MONTEMARANO: I didn't {sthaichlt}.

MS. GREENBERG: Current appeal appeal make this is

instruction incredibly important, incredibly relevant and

I think it should say and one or more of the attorneys

has referred instead of in their closing arguments

because Mr. Martin has already been referred to.

MR. MONTEMARANO: With all due respect I did not

suggest the government failed to call him. Pointed the

finger at him as the more important and more prominent

drug dealer. He was after all in the gentleman with the

50 odd pounds of wrappers or wrappers or 50 odd pounds of

cocaine in his backseat back in 2004. I'm more than

happy to confront the government on what I did say I

prefer not on what I didn't say.

THE COURT: Mr. {mont} ma are no it seems to me

that this is an appropriate instruction based upon what's

taken place in your opening statement and it's I given it

before. I don't see any problem with this instruction.

MR. MONTEMARANO: Thank you Your Honor.

THE COURT: Okay?

MS. GREENBERG: Your Honor are you {dwoing} to

keep it in may in closing argument refer or has referred?
Has refer or may refer?

        MR. MONTEMARANO:  Are you instructing before
closing.

        THE COURT:  I'm in{strublingt} ing before closing.

        MS. GREENBERG:  Yes but Your Honor whey {ooem}
referring to here is that one or more of the attorneys if
you say may {p} in closing {ring} ing argument remay
refer to the absence from the trial certainly a lot of
these people have already been referred to.

        THE COURT:  No I'm going leave tit way it is.  I
don't want to do this on a manual on how the interpret
opening statement this is is about closing argument andly
leave it that way.  All right.  Note {witz} page 27.

        MR. HALL:  Yes Your Honor in reference to jury
instruction number 22 and and I think this is contain
inside Mr.  {suz} man {smusz} man's {susz} man's request
of jury instructions that hi sent to court I think what
he's looking for there is something a little more deaf
intive in that the proposal for the first sentence that
he sent indicates that every defendant has an absolute
right not to testify which of course is the correct
statement of the law.  Of course everyone also has a
absolute right to testify if they want and I believe the
feeling was that the first sentence of jury instruction

Number 22 is maybe not quite as deaf intive that it's an
absolute right not the testify or to testify.

MS. GREENBERG:  No objection Your Honor.

THE COURT:  Wait a minute.  Neat {net}.

MR. MCKNETT:  Your Honor, {fi} I may I just follow
up.

THE COURT:  Shouldn't we I there's another
instruction that deals with this too.  If I'm going to
change that first sentence.

MR. HALL:  Your Honor may I make a suggestion.

THE COURT:  Yeah.

MR. HALL:  Looking at {quha} Mr.  {susz} man put
in his motion and put in the inputting the in{stlung}
next to it, you could say this.  In a criminal case every
defendant has an absolute right not to testify.  You must
not draw any inference of guilt against any defendant
because he or she did not testify and then go to every
defendant has an absolute {deingt} -- {sglfrjts} {glfrjt}
I think this's better.

MR. HALL:  To testify.

THE COURT:  Let's go back through a again in a
criminal case -- go back to what you just said.

MR. HALL:  Your Honor, you could begin with
{thchlt} every defendant has an absolute right not to
testify {yooen}.

1       MS. GREENBERG:  Starting with in a criminal case?

2       MR. HALL:  Yeah.

3       THE COURT:  In a criminal case,

4       MR. HALL:  Every defendant has an absolute right
not the testify.

5

6       THE COURT:  Wait a minute.  Let me -- okay.

7       MR. HALL:  You must not draw any inference of
guilt against any defendant because he or she chose not

8

9    the testify.  And {12K3R50EU7B8G9S} {sglfrjts} and then
you just pick up if he or she does testify.

10

11      MR. HALL:  Yes or you could add also conversely
every defendant has an absolute right to testify if they

12

13    choose to and then continue with that sentence.

14      MS. GREENBERG:  Your Honor I think it makes more
sense just to go with if he or she testifies.

15

16      MR. HALL:  That's fine too green {groon} and knock
out a defendant cannot be require today testify.

17

18      MR. HALL:  {vi} no problem with that Your Honor.

19      THE COURT:  The way I've got it now is {EF} in a
criminal case, every defendant has an absolute right not

20

the testify.  You may not draw any adverse inference

21

22    against any defendant because he or she did not testify.

23    If he or she testifies, he or she is of course permitted

24    to take the witness stand and testify on her own behalf

25    in this case -- I should say if -- why don't I just say

{hr} {o} is permitted to take the witness {tand} stand and testify just go right straight into it like that.

MR. HALL:  Yes.  Yes, I think you should cut out the couple of words there {sglfrjts} {glfrjts} the whole thing will now read until I stop the part that's edited edited will be as follows.  {ef} in every criminal case -- in a criminal case, every defendant has an absolute right not the testify.  You may not draw any adverse inference against any defendant because he or she did not testify.  He or she is of course permitted to take the witness stand on his or Hen note wit {uz} his or her own behalf and the {res} is the unchanged ha {l} hall go on from there.

THE COURT:  Everybody agree with that.

MS. GREENBERG:  Your Honor I'm fine with that just {o} to because Mr. {susz} man is not here I know Mr. Hall is covering for him.  He said you must not draw any inference the court change that had to you may not draw any inference and he h had of guilt after inference and the court took that out.  I {juts} {t}.

THE COURT:  I said any adverse inference would be broader than guilt.

MR. HALL:  I think the word muss is the probably more important {sglfrjt} {sglchblingt} {ki} put must too. I kind of like aided.  You must not.  All right.  Mr.

{susz} man's presence is being felt as we speak.

All right.  I will put in must.

Anything else?  By the way this language is being moved to Page 33 as you see.  Mall hall I understand that.

THE COURT:  Page 23 note wit {u} page 28.  29.  30.  31.  32.  33 I have a comment from Mr. {susz} man on this one.  First of all let me -- this is where the language on the testify {ting} defendant comes in being moved here from page 27.  On to Page two note {witz} Page 33.  Then on this page Mr. {susz} man would like to add at the end of the instruction which appears on page.

MR. HALL:  It would be on page 37, very end.

THE COURT:  Page 37  at the end any objection from the government to add that language?  Mr. {susz} man proposes to add at the end of the last sentence of that instruction appearing on page 37  the language and the unique facts and circumstances of his or her own case.

MS. GREENBERG:  Your Honor I really don't think it's necessary the court has modify it had sand version to make it complete as to these elements, but this is not language from sand and I think that just saying it's a personal decision is -- covers the ball field.  Mart {ket} which instruction is this Your Honor?  27  note wit {uz} is it 26.

1        MS. GREENBERG:  The end of 25.

2        THE COURT:  End of 25.

3        MR. MITCHELL:  Page 37.

4        THE COURT:  I can add this.  {doynt} mind this.
Mr.  {susz} man is doing pretty well not being here.

5        MR. HALL:  Yes he is.

6        MS. GREENBERG:  Your Honor, maybe I should leave.

7        THE COURT:  Did we have any female people
testifying?

9        MS. GREENBERG:  Ms. Dobie.

0        MR. MARTIN:  Yeah.  Cynthia wine stock {sglfrjt}

1  {sglfrjt} no.  This is discussing though a sol hall

2  you're talking about a coconspirator {sglfrjts} {sglfrjt}

3  this is coconspirators.  I don't know if being gender

4  neutral on this one is right.  This is talking about how

5  to deal with people who have made plea agreements.  Green

6  I don't think we had any female cooperators {sglfrjts}

7  {sglfrjt} I don't think you had any female people plead

8  so I will jus {t} say of his case -- his own case.  All

9  right the language I'm adding is on the top of page 37

0  at the end of instruction 25 is and the unique facts and

2  circumstances of his own case, period.  All right?  As

3  you see I'm inserting instruction 7-14 on government

4  informers here as modified by me.

9  Anything else on page 37?  All right.  Page sol?

MR. MCKNETT:  Your Honor can we come back to 7-14?

THE COURT:  What page?

MR. MCKNETT:  The insert.

THE COURT:  What page?  Oh, okay.  All right.

MR. MCKNETT:  I feel very strongly that the portion the court has left out at the end should be kept in.

MR. MONTEMARANO:  Excised.  That's the whole {graif} man to tin struck shun Your Honor.

THE COURT:  Which informer testified?

MR. MONTEMARANO:  Etch char {tai}, Encarnacion, Nathan king,

MS. GREENBERG:  Yes, your Honor they were cooperating individuals they weren't informants {sglfrjts} {glfrjts} this is dealing basically what's his name the guy with leerily good win's arrest?

MR. MARTIN:  Rain {ard} {dor} {si}.

THE COURT:  This is really addressing rain {ard} {dor} {si}.

MR. WARD:  On insert of 7-14 {sglfrjt} {sglfrnl} yeah it follows immediately after page 37  in your copy Mr.  Ward.

MR. WARD:  Yes, sir.

THE COURT:  I believe that the language deleted was appropriate because no informer testified.  Well who

did testify were people who were cocon spear {ter} s or in this conspiracy who pled guilty medical report medical report Court.

MR. MONTEMARANO:  Court's indulgence.  Is there an instruction dealing with cooperators.

THE COURT:  Yeah the {prooef} {yous} one green {graen} the one that we had with {lang} language put {ap} a a {t} a the end.  Instruction Number 25.

THE COURT:  It's the lengthy instruction that begins on Page 33, Mr. Montemarano.

MS. GREENBERG:  Goes for like four or fife pages.

MR. MONTEMARANO:  Oh, okay.  Well, then I think the redaction is correct, Your Honor.  I withdraw my objection met net thenly too Your Honor.

THE COURT:  I {hrz} thinking the only one that met that deaf {niing} definition was ray {nard} {dor} {si}.

MR. MONTEMARANO:  We tend to lump those all names all together infather or mother ant and cooperator and all those other names that wouldn't be permitted in court.

THE COURT:  All right.  Page 39.  Page 40.

MR. MONTEMARANO:  Defense counsel like it is idea that it's quite {le} {jit} gnat for us to try to attack the credibility of law enforcement.

THE COURT:  I took it out.

1          MR. WARD:  Quite is the language of the sand.

2          MR. MONTEMARANO:  Quite is probably not strong

3    enough, but we will settle for quite.

4          THE COURT:  The government object to me putting it

5    back in.

6          MS. GREENBERG:  I don't care judge.

7          THE COURT:  All right.  We'll leave it in.

8          MR. MONTEMARANO:  Thank you Your Honor {sglfrjts}

9    {sglfrjt} anything on Page 41?

10         MR. HALL:  Your Honor, Mr. {susz} {r57b} had a

11   request on this jury instruction.  I'm not sure where it

12   goes on here but anywhere you would put it on here but

13   his request was in reference to the 404 B. evidence that

14   since there is 404 B. in reference to some defendants and

15   not others that those defendants to whom the 404

16   in{sfrubing} 404 B. instruction applies --

17         THE COURT:  Who {wuld} be the defendants -- put it

18   this way.  In the first paragraph of this instruction it

19   says some of the defendants.  How would you propose that

20   {doy} so that I stay defendant {sos} and so have engaged

21   in?

22         MR. HALL:  Well, since tin struck shun was given

23   when evidence came out related to those specific

24   defendants and you could name at that point defendants to

25   whom for whom 404 B. evidence applied.  {sglfrjts}

{12K3R50EU7B8G9S} Mr.  {susz} man is on the phone and we're going to hook him up by speaker.

MR. HALL:  Well, there you go.  Note {susz} man by speakerphone.

THE COURT:  Counsel, now that Mr.  {susz} man has joined us I would ask that when you speak you speak directly into a microphone because he will not hear you unless you do.  Law law you hear the other people?

THE COURT:  Can you hear me {ed} {sus} {sus} I think I heard the judge.

MR. MONTEMARANO:  Can you hear me {ed}?  {susz} {sus} yes I can {sglfrjts} {sglfrnlts} {kouns} fill you speak into the Mike he will be able to hear you.

THE COURT:  You have been dog quite well with your requests requested suggested revisions {susz} {sus} maybe I should stay out of here {sglfrjts} {glfrjts} don't interfere with sung {sesz}.  No, Mr.  {susz} man {vi} made the change you requested in bum Number 14 which was about agreeing with an ass {sertion} in a question.  {vi} {wfd} ed with nonsubstantive modifications what you wanted to add to instruction Number 22, {vi} added to Number 25 the lack {wang} you wanted except I took out her own case because there weren't any persons of the feminine gender to which that would apply.  And now we're up to the question on instruction 30 on my draft Page 41

dealing with similar acts and your suggestion was to put
in here to whom that instruction would apply.

My question is you got as you got ton the phone
was how would {susz} {susz} I'm sorry I'm having a little
trouble hearing you sir.

THE COURT:  I had just gotten when you {gt} on the
phone to your request for revision toss instruction 30
appearing on Page 41.  Can you hear me?

MR. MONTEMARANO:  {ed}, did you hear that?

MR. MONTEMARANO:  I don't think Mr.  {suz} man can
hear us.

THE COURT:  Excuse me {mont} Monday I don't think
Mr.  {susz} man can hear us.

THE COURT:  We haven't said anything.

MR. MONTEMARANO:  He hasn't react today anything
I've said or you said.

THE COURT:  I'll ask him.  Mr.  Mitchell Mitch
that would be me.

THE COURT:  That's you.  The mar shall is here
with a transportation issue.  Wanted to know whether your
client really wanted stay here for the rest of this
session or not.  Mitch you will have to ask him.

THE COURT:  There's an issue of transporting him
back to the jail this day.  This session may go on for
another hour and a half or two hours before I'm finished

if he wants to stay here, I'll let him {staw} stay but
it's up to you if you want to discuss it with him.

MR. MITCHELL:  Do you {whawns} the judge is
asking?  Mitch what time does the mar shall do we know
what time the mar shalls -- Mitch {quha} time do you need
to leave mar mar they are ready for {yur} client to go
now.  Depending on what we think the hearing is going be
if he choose toss may we may -- everybody else is
finished except for him.  Defendant defendant how about
minutes?  {sglfrjts} {sglchblingts} Mr.  {pwin} {um} if
you want to stay the whole time you can stay the whole
time if you would like to waive your right to be present
after five more minutes defendant defendant I just need
five minutes {sglfrjts} {sglchblingts} all right you let
us know when you're ready Mr.  {pwin} {um} this is pretty
boring stuff we're doing Mr.  {pwin} {um} but you have a
-- if you want to be presently let you be present.

MR. MITCHELL:  I think disagree with that Your
Honor.  Note to take out whatever the mar shall said that
was a conversation between the mar shall and Mr.
Mitchell.

THE COURT:  I'll be {quach} ing how many of you
are awatching how many of you are awake when {im} reading
these instructions.  Mr.  Ward did you want to say
something or are you just standing up.

1          MR. WARD:  I'm just stretching.

2          THE COURT:  Okay.  All right.

3          MR. WARD:  My back is a little bit stiff.

4          THE COURT:  Mr. {susz} man can you hear me?

5     {susz} {sus} I really can't hear very well could you

6     folks hear me.

7          THE COURT:  Yeah {ki} hear you very well {waipt}

8     to {jou} a question.  {sus} {sus} {im} having trouble

9     hearing you although this {sa} dream come true everyone

10    has to listen to me and I can't hear anyone else.

11    {12K3R50EU7B8G9S} {sglfrjts} is there a speaker when we

12    can put near to that phone?  Maybe if you move it near

13    tore the speaker.  Mitch can you put the phone up here

14    you, Your Honor.

15         THE COURT:  Can the phone reach up here?

16    {sglfrjts} {sglfrjts} Mr. {suz} man, can you hear my

17    better now {susz} {susz} a bit better now yes judge

18    {sglfrjts} {12K3R50EU7B8G9S} okay.  We're right at the

19    point of addressing your concern about instruction 30

20    which is the instruction that deals with how to deal with

21    prior bad acts.  You suggested that the instruction

22    should be modified to name the defendants as to whom the

23    instruction applies.  My question is how would you

24    propose to do that?  {susz} {susz} well, the first thing

25    is I know that that suggestion does not {u} necessarily

inendeer me to my colleagues but just take a quick listen
to see -- I guess just with a preamble that this
instruction applies only to the named defendants would be
my suggestion, nothing too exextravagant just to mention
that and then move on.

THE COURT:  Well, green {r57b} Your Honor we could
{ju} {squus} {t} take out some of the defendants abdomen
put the names in there.  {jons} {yns} that the
defendants, Ms. Paulette Martin, leerily good win, Reece
whiting and {der} reck {pwin} {um}.

THE COURT:  Is that the thes?

MR. MONTEMARANO:  Lavon Dobie.

THE COURT:  So there would with be Martin, good
win,

MS. GREENBERG:  Mr. {pwin} {um}.

THE COURT:  Whiting and {pwin} {um} only; is that
right?  Art.

MR. HALL:  Right.  Four.

THE COURT:  So what I would do is add at the end
of the first full paragraph of instruction Number 30
appearing on Page 41 this language has within been
admitted as to the defendants Martin note the hear the
recording does that cover the waterfront?  I'm try
{toing} look and see if there is anything else I need to
change in that instruction.

MR. MONTEMARANO:  Your Honor I would be more
comfortable with criminal propensity instead of
personality three line {frs} the {wot} bottom -- four
line {frs} the bottom.  That's the language used in all
the statutes -- I mine all the case law construing 404 B.
{sglfrjts} {sglfrjt} I think that may be a type {po}.  I
think you're right.  I think it should be propensity.

MR. MITCHELL:  Your Honor if I could interrupt
just briefly.  Mr. {pwin} {um} is has now agreed the
waive his presence for the remainder of this hearing.

THE COURT:  All right Mr. {pwooind} {pwin} {um}
as I said before you have a right to be here and it's all
right if you're hungry and want to go home anded of
listen to this {dr} -- or to go where you stay {d}
defendant defendant I want to go home that's for sure
{sglfrjts} {sglfrjt} you may not go home now.  You may go
home to your usual home.  Defendant defendant okay Mitch
can we go too Your Honor.

THE COURT:  No, you {ooef} got stay {e}.

MS. GREENBERG:  {jufrn} Your Honor just so the
court say ware sit correct under 525 it says personality
but we don't aobject to the court.

THE COURT:  I think this instruction is loud lousy
that it says --

MS. GREENBERG:  It's fine with the government Your

Honor.

1

        THE COURT:ly Put propensity.  All right so that --

2

I've made that instruction change -- two {haing} changes

3

then I've made on Page 41.

4

        Page 42.  43?

5

        MS. GREENBERG:  Your Honor under jury instruction

6

32 and and I'm sorry I should is have put this in my

7

letter there is only 61 counts because we're dismissing a

8

count that just involved mill burn walker.  It was count

9

six.  We won't dismiss it but {c5e7b9} six just {vf}

10

involved Mr. Walker.

11

        THE COURT:  Tin instruction now reads 61 green

12

Your Honor if you want to tag that.  I know Ms. Johnston

13

at some point was going to talk to Mr. Montemarano about

14

one of {thiz} concerns so if you want to tag that we

15

should be able to let you know in the next few days.

16

        THE COURT:  About what.

17

        MS. GREENBERG:  If there's another count that we

18

might reach an agreement with Mr. Montemarano word.

19

        MR. WARD:  We still have motions of acquittal

20

which means there may be less or fewer counts.

21

        MS. GREENBERG:  I just wanted the court to be

22

aware of that.

23

        THE COURT:  All right we're going be here all

24

night.  Let's not do that.  Page 43 I've got modify today

25

change {toyt} 61 count {ws} a flag that there may be other counts coming out too.  Page 44.  Mitch on 43 Your Honor.

THE COURT:  Back on 43?  Yes.

MR. MITCHELL:  At the top of the page you listed redundant in the last paragraph.  I think what part of that is not redundant is the issue of guilty beyond a reasonable doubt.  I think it pus important to remind the jury that that's the standard and by taking that out withdraws that reminder.  I would ask that it be included even though it is somewhat redundant.

THE COURT:  I still think it's redundant it's in here probably five other times that they must find proof beyond a reasonable doubt and that they must base it on the evidence introduced or lack of evidence.  It's -- I mean you don't have to the mis{ri} that I do of having to read this and saying to myself as {doy} it over and over and over again this is getting redundant beyond recognition.  I think I'm entitled to remove some unnecessary redundancies and I think this is one of them so I'm going Lee that out.  Mr. {sus} man are you hearing this okay {susz} {sus} yes I do {sglfrjts} {sglchblingts} all right.  Page 44.

Page 45.  46  {scoment}.

MR. WARD:  Excuse me Your Honor.  On 45 the

indictment is not going to the jury.

THE COURT:  It is not going to the jury.

MR. WARD:  Fine because I was concerned about the language that there -- there had been other defendants originally and for whatever reason they're not now before the court so if the indictment is not going back.

THE COURT:  No it's not going back and on page 46 that language is language that if I remember correctly I created for the first time in the Martin one case where I took responsibility for the decision of breaking this case up into {spwrat} trials so that is nonstandard sand and {sif} {fert} language there.

Anything on page 46  other than that.

MR. HALL:  Your Honor I think this would be the point where Mr.  {susz} man wanted to {wfd} his proposed jury instruction Number 35 A.

THE COURT:  All right let me see.

MR. HALL:  Are you paying attention {ed}?  {susz} {susz} yes.

MR. HALL:  Mr.  {susz} man do you have a copy of what you wrote to the court in {frnt} of you {susz} {susz} I do.

MR. HALL:  Okay.

THE COURT:  Mr.  {susz} man tell me why we need to do that.  I have already tole the jury at the beginning

of the case that I have made directions to the parties to
designate a lead cross examiner to confer with each other
there would not be any redundant testimony and that the
court has directed counsel to do that {susz} {sus} well,
I had forgot ten that so I guess I would suggest that
that may be something that might be forgot ten which by
the jury but it didn't seem like we ask for thatment
there comes a point where we do need to separate ourself
{sos} that's my request.

        THE COURT:  What is if government's position
{r57b} green Your Honor I think it's not standard it's
not necessary in this case and especially when the court
has given the opening instruction we really don't need to
highlight the differences between counsels and the fact
that it's okay {fo} the court -- for them to cooperate
with each other.

        THE COURT:  I'm not going give this instruction.
I think {whif} done already --.

        MR. WARD:  Your Honor, opening instructions were
about I don't know 29  days ago or maybe a little less
than that.  I mean, that {ooen} that's an ageened and I'm
sure the jury forgot.  I have no doubt your words made an
impression on them but it's been such a long time that's
passed they probably for gotten what you said about it
{sglchblingts} {sglfrjts} what I'm saying is what I said

was probably better that be this.  It said I told you to

talk to each other and cooperate and to -- for the sake

of fish en{si} to designate a lead exam and to confer

with each other to do that.  This sort of makes like I'm

apologizing for the fact that {te} fence lawyers talk to

each other.  I thought whey gave you before was better.

If I were going to give something like this, I would tell

them I want to remind them they have required that the

defense attorneys designate designated a lead examiner of

each witness and eliminate redundancies and in order to

do so they obviously of necessary {es} ty must consult

with each other {fi} were to do it {al} all I would

{doyt} as a rep repetition of whey {ooef} done before it

{thit} think this sounds like gee whiz folks don't take

it against them that they're take you can to each other.

{susz} {sus} my {woynt} was that in a con {spwooer} {si}

case I'd sort of like to you know have it hit home that

because lawyers cooperate doesn't mean the conspiracy is

continuing into the courtroom.  That pus kind of my fear.

        THE COURT:  Well, if we're to add anything at all

it would not be where you would want it.  It would be on

the top of page 46  at the end of the first sentence

where it says are being tried separately.  {susz} {susz}

oh, I didn't have any particular in it as to where it

went.  I just thought that looking at something at the

end would be the convenient way to do it.  The point of
place {pt} of it is not a particular issue to me.

THE COURT:  Well {235UBGS} I could put something
in right {f} of after the place where I said I made the
decisions that tall defendants could not be tried
together and the other defendants are being tried
separately and put in to say that I also directed that
the attorneys designate a lead examiner and prohibited
redundant examination of witnesses and in order to do so
this would require consultation among the defense
attorneys.  Something like that.  {susz} {susz} sure.

THE COURT:  Let me write something down here.

MS. GREENBERG:  Would Your Honor read that
language again.

THE COURT:  Wait until I write it down.
{sglfrjts} {whrfrnlts} counsel I was going to add
something like this because {oof} of this insert I will
probably are to make some other modifications on this
page but I was going to put in, in addition I directed
that the defense attorneys designate a lead attorney to
examine each witness and prohibited redundant examination
of witnesses.  In order for them to comply with this
directive it has been necessary for counsel to cooperate
and confer with each other.  I think that's better than
what I was asked to do, because it blames me for you

talking to each other.

Now, if I put that in where I indicated which would be after the special sentence that's on the top of page 46  that hi already drafted to deal with the fact that we've {probing} broken this case up into parts, I think that I will need to change the way the next sentence reads.  Think I would instead of saying these persons I would change it to other persons and have a paragraph break so I obviously am shifting gears when I go to the next subject.  Anybody have any problem with that?

MS. GREENBERG:  No, sir.

MR. HALL:  No.

THE COURT:  I will have a paragraph break after I've the insert I just broke to {yu} and thenly say paragraph T. circumstance that is other person {rs} not in this trial must play no part in your deliberations and so forth.  All right anything else on page 46?  47?  48?  Now, Mr.  {susz} man had a question as to whether the willful blindness part of this instruction should be included.  Ms. Johnston?  Ms. Green berg?

MS. GREENBERG:  Your Honor I think we have a classic case of willful blindness especially certain defendants and one example I will use is Ms. Ali.  Mr. McKnett went through the carrying of the bags from the

house to the school, whether or not they were locked or

unlocked, whether or not the bags were closed or not

closed, whether the suit {quais} in her house was locked

or unlock it had book safes whether they were open or not

open and I think that's a classic example of willful

blindness and this instruction is appropriate.

MR. MCKNETT:  Your Honor, I disagree with that.

The first part of a the willful blindness instruction

requires that the defendant's suspicion as {han} I

aroused and there's been no evidence of that.  What Ms.

Johnston has referred to is the -- so to is a suitcase I

{pwhrooe} which was locked and there's nothing suspicious

about one friend asking another friend to hold on to a

suitcase for her.  There is nothing there to arouse

suspicion and there's -- without arousing {sus} {pish}

{r57b}, there is no need to make further inquiries.  So I

don't think that instruction applies at all {sglfrjts}

{sglfrj} well first of all I don't think that the example

that the government gave is necessarily the only one to

which a willful blindness instruction would apply in this

case, but even if it were I don't believe that the

question of suspicion being aroused is not something that

could be fairly supported by this record.

And therefore I believe that the evidence would support

giving that instruction because as the government argues,

a reasonable person's suspicion would be aroused under these circumstances so I will give this instruction. Anything else on page 48?  49?  50?  Five?  52?  53?  54? 55?  56?  57?  58?  59?

MR. MCKNETT:  Your Honor I have anish a problem with Page 59 {sglfrjts} {sglchblingt}.

MR. MCKNETT:  Yes in the second paragraph, the sec second sentence reads a buyer seller relationship may be sufficient if it is coupled with other evidence indicating a kind of purpose such as an on going or continuing relationship.  I have a problem with an on going or continuing relationship.  That implies that guilt be found from association without anything else. We do have evidence of a continuing relationship between Ms. Martin and several other defendants and to say that -- to tell the jury they can find guilt from that alone is inappropriate and I think violates.

THE COURT:  It doesn't say alone.

MR. MCKNETT:  Well it says if coupled with evidence I understand {kait} ed a common purpose and that follows such as an on going continuing relationship. That implies that an on going continuing relationship by itself is evidence of a common purpose and I don't think that's appropriate.

MS. GREENBERG:  Your Honor.

1       MR. MCKNETT:  I think if we take out an on going

2  continuing relationship the instruction is accurate but

3  if with that in it there it applies implies that simple

4  association indicates a common purpose to commit a crime.

5       MS. GREENBERG:  Yes, your Honor if we agrow so put

6  in buyer seller there I think it would {sglfrjt} {glfrjt}

7  tell me where you want to put nit.

8       MS. GREENBERG:  On going buyer seller

9  relationship.

10      MR. MCKNETT:  That also Your Honor is wrong,

11 because that instruct it is jury that they can find {ap}

12 intent to be part of a conspiracy to distribute drugs

13 simply because you you're involve inside a long term

14 buyer seller relationship.

15      MR. WARD:  I have problems also with the word

16 multiple sales, if one is buying for one's own personal

17 use multiple times that certainly doesn't give rise to

18 any reasonable rational inference that the person is part

19 of a conspiracy {shing} nor does the fact that they might

20 have gotten drugs on credit or it might have been fronted

21 to them.

22      MR. MCKNETT:  I think to follow that I think the

23 first sent {aens} simple buyer seller relationship at

24 alone {kuz} not make out conspiracy snuff and it could

25 stop {tli} think the {res} {ot} {f} that paragraph is

dangerous in that it can allow the jury to infer

membership in a conspiracy to distribute drugs simply

because someone bought drugs on multiple times has a long

term association bought sales on credit -- made sales on

credit or were fronted drugs.  All of those apply to my

client but they should not in themselves allow the jury

to infer that my client was part of a conspiracy to sell

drugs.

MS. GREENBERG:  Your Honor this paragraph

correctly states the law.  If you just have put in

furthermore simple buyer seller relationship alone does

not make out a conspiracy that does not adequately state

the law.  The rest of that paragraph is adequately state

it is law set forth by the fourth circuit cases {quin}

{ta},tous on and best of your knowledge {esz} cite inside

this jury instruct {r57b}.  So I don't object if Mr.

McKnett wants to clarify a relationship by putting an on

going or continuing buyer seller relationship, but this

is the law and I don't think the rest of the paragraph

should come out.

MR. MCKNETT:  Your Honor, frankly I don't think it

{st} if law and I want to be.

THE COURT:  Tell me why it's not supported by the

authority that the government gave me.

MR. MCKNETT:  Well Your Honor I can't stand here

and cite to the specific cases but I think that my
argument is based on what this instructional {lou} s the
jury to infer improperly.  It states tat last part of the
sentence knowledge of a broader illegal venture simple
knowledge of a broader illegal venture would be
sufficient according to this instruction for the jury to
infer membership in a conspiracy.  To distribute drugs.
Simple knowledge of its -- its own right is not enough to
find someone guilty of participating in a conspiracy and
this instructional {lou} s the jury to do that.

          MR. HALL:  Your Honor if I can make a suggestion
which I think one of the problems with this instruction
the way it's worded {st} that it seems to imply that
someone who is a purchaser for personal use of drugs can
be a coconspirator and I think that if t it were worded
{EPB} with the language that is there and at the next if
at the an ex tot the last line of that sentence and if
the wording was after the word fronted and an awar
awareness that the drugs purchase beside I the buy tore
be resold were knowledge of a barter illegal venture that
would make it -- that would cure the problem and I think
that's what Mr. McKnett is saying is missing in {e} -- is
missing there, because the way it's worded now it sounds
as if if I'm a simple purchaser for personal use that I
can be a coconspirator and I don't think that's what the

law is.

1

2       THE COURT:  Ms. Green berg what would be the

matter the what he said with putting in an awareness.

3       MR. MCKNETT:  If I {scould} a second to read that

4

through Your Honor.

5       MS. GREENBERG:  It {stouingt} the jury we would

6

need to prove all of these things in order to prove that

7

a buyer seller is part of the conspiracy.  What this

8

does, this list gives exam {pm} s and it's from the

9

fourth circuit case law.  {sglfrjts} {sglfrjt} I'm

0

looking tat fourth circuit case law you gave me and I

1

don't see it.  Neither one of the cases you gave me.

2

        MS. GREENBERG:  Your Honor do you have in front of

3

you -- {ki} go pull it from my office I was ain't ware

4

this {wu} {awz} was an objection because it wasn't listed

5

by counsel do you have burg {es} {pwshing} U R G O S note

6

the hear the recording.

7

        THE COURT:  Wait a minute.

8

        MS. GREENBERG:

9

        THE COURT:  94 what {pwering}.

0

        MS. GREENBERG:  N. third 839  again I didn't bring

2

the case law with me because {u} didn't see it as an

2

objection.

3

        THE COURT:  I can call it up on the computer.

4

        MS. GREENBERG:  That is cited at the end of the

5

instruction I believe that's where we got that specific language.

THE COURT:  Let me take a look.  It's burg os, right.

MS. GREENBERG:  B U R G O S 94 F third at 94.

MR. MCKNETT:  Your Honor, I don't have that case either but I would submit that if burg os said {sez} that mere knowledge that a conspiracy exists is sufficient to make someone a member of the conspiracy I submit that burg os is wrong.

MR. HALL:  Your Honor, can I make a suggestion?  I don't know if the law library is still open but if counsel wants to get a copy of the case maybe one of -- someone from our side could also cop get a copy from the library and we will take a look at it real quick {scoment} ward {wa} Your Honor can we do this Your Honor? With can we defer on this and each get -- each pull the case and look at them and then come back and discus it {sglchblingts} {sglchblingts} why don't we do this so I don't keep you here until midnight.

MR. WARD:  I mean defer it {to} until --

THE COURT:  Understood.  Understood.  My suggestion is that I'm going flag this page.  I'm going take a look at these case it is government can give me cases you give me cases we can talk about this on a break

1  tomorrow and I'm I'll put this down as to further

2  consideration.

3      MS. GREENBERG:  Your Honor we did research tissues

4  defense counsel raised but they didn't raise this.

5      THE COURT:  I understand.  I want to give good

6  in{stlung} ifs you will give {the} the inauthority you

7  think note the hear recording we will pass on this for

8  now so this I'm flagging to come back for further

9  consideration.

10      MR. MCKNETT:  Your Honor could I get that burg

11  burg os cite again {dwrooen} green it is on Page 61 right

12  under{ket} 19-6 modified soitis Right underneath

13  {thachlt} 94 F. third {bs}, 849  I believe that's writ

14  came from.

15      THE COURT:  We have {ut} it on the {o} up ton

16  computer I will {soo} take a look at it.

17      {sglfrjts} {sglfrjt} counsel let's move off of

18  that issue now.  Page 60.  61?  62.

19      MS. JOHNSTON:  Your Honor on Page 62 the court

20  says all of {xwhrous} s a {lt} agree that the defendants

21  conspired to possess and distribute cocaine.  It sounds

22  as though if one defendant didn't agree to distribute

23  cocaine then you continue convict all of the defendants.

24  In other words, you must agree that one or more

25  defendants conspired to distribute and possess with

distribute cocaine.  Some of the defendants are involve
inside cocaine some are involved in {abing} crab and some
are involved in heroin.

THE COURT:  What changes would {qulibing} to make?
It looks like I {swrould} to make like four of them on
this page to make it look right.

MS. JOHNSTON:  I think that's correct Your Honor.

THE COURT:  Let me take a look John.

MS. JOHNSTON:  On the specific object that each
defendant agreed to try {o} accomplish that might be a
way to do it.  {sglfrjt} {sglfrjts} so, I would have to
put in one or more of the defendants conspired right?

MS. JOHNSTON:  However {nort} in order to convict
a defendant on this count all 12 of you must agree on
specific object a defendant agreed to try to accomplish.

THE COURT:  The objective a defendant agreed to
try to accomplish.

MS. JOHNSTON:  Specific object a defendant agreed
to --

THE COURT:  Right.

MS. JOHNSTON:  In order to convict each defendant
on this count as opposed to using the multi{noyt} wet
{uz} {milt} multiple {sglfrjts} {sglfrjt} wait a minute.

MS. JOHNSTON:  The paragraph that starts, however.

THE COURT:  I understand.

MS. JOHNSTON:  In order to convict a defendant on this count, all 12 of {xwhrous} {t} agree on the specific object a defendant agreed to try to {abing} come accomplish.  All {xwhroufs} {t} agree that.

MR. WARD:  Your Honor.

THE COURT:  Wait a minute let me hear Ms. Johnston's full --

MS. JOHNSTON:  All of you must agree that the defendant -- you note tit was the defendant you're considering conspire today distribute or distributed cocaine or {ul} a I don't have you must agree to distribute or possess with intent to can note the {thaer} recording the defendant you're considering con fired to distribute and possess with intent to distribute cocaine base.  In other words the way it's read it sounds like all seven of them have have participated for one to be guilty of the heroin conspiracy when that's not what the governmental ledges.

MR. MARTIN:  That {tooes} way they drafted the indictment.

THE COURT:  Wait a minute {kounts} {el}.  Wait a minute let me make sure I get everything correct here. What I would I also need to make a change Ms. Johnston on the top of Page 62 it says one or {mo} defendants conspired {jons} John yes Your Honor I think it at it's

sufficient if you find beyond a reasonable doubt that a defendant conspire today commit at least one object {EU} in order to convict a defendant on the conspiracy count. So it should just be singular in terms of.

THE COURT:  A defendant conspired.

MS. JOHNSTON:  A defendant conspired.

THE COURT:  In order to don convict that defendant {jons} {3R5U7BS} to convict that defendant on a conspiracy count because {taz} court well knows we can allege multiple Octobers of a drug conspiracy and an individual doesn't have to be con incompetent {vibingt} ed of all objects or be involved in all objects.

THE COURT:  I think {vi} all of your proposed changes now let me hear from the defense warden ward I want to say on Page 62 T however.  I think if we change the first V to an A and make everything else singular that's all we need to do {chl} in other words it would read however nor in order to convict a defendant on this count all 12 of you must agree on the specific object, the defendant agreed to try to accomplish.  All of you must agree that the defendant conspired, to distribute and {pos} {swes} with bent to distribute and possess cocaine or all of you must agree that the distribute note the {thaer} record organize finally all {youf} must agree that the defendant conspire today defendant {mra}

1  {pwhra}, {pwhra}, {pwhra}, {pwhra}, {pwhra} and I think
2  that changing that one word and making everything else
3  singular {abing} {vom} accomplishes what we need note
4  {witz} changinging it to T not note {witz} the not V.
5          MR. MARTIN:  I agree with Mr. Ward.
6          MR. WARD:  It seems to me this fits in with what
7  we want to accomplish is to tell the jury that each
8  person is entitled to distinct and separate --
9          THE COURT:  I agree with that.  Let me tell you a
10  a a how I'ming {g} the take care of it.  I think this get
11  it is {ses} {ens} of what you both want although identity
12  {es} bit more redundant than {whan} the defense wants.
13  No change on 61.
14          MS. JOHNSTON:  Your Honor perhaps the bottom of
15  Page 61 I'm sorry I didn't notice this but again it says
16  that it talks about the defendants as {sglfrjs} {sglj}
17  I'm going the {khaibing} {toyt} a defendant.
18          MS. JOHNSTON:  Okay {sglfrjts} {sglchblingts} now,
19  going on on 62 through the end what I would do the make
20  it Chris {kal} clear is it is it would read as follows it
21  is sufficient if you find beyond a reasonable doubt that
22  defendant conspired to commit at least one objective in
23  order to convict that defendant on the conspiracy count.
24  However, in order to convict a defendant on this count,
25  all 12 of you must agree on the specific object the

defendant you are considering agreed to try to

accomplish.  All of you must agree that the defendant you

are considering conspire today distribute and possess

with intent to distribute and {pos} says cocaine or all I

don't have you must agree that the defendant you are

considering conspire today distribute or {kots} note the

hear recording {o} finally all of you must a{gre} that

the defendant you are considering conspired to distribute

and possess with intent to possess to distribute cocaine

base.

        MR. WARD:  I think it makes it clearer than

{whooif} said.

        THE COURT:  I think it makes it clear that one at

a time you consider them and one at a time you reach your

verdict.  Anything else on Page 62.

        MR. HALL:  Your Honor I wanted to bring up since I

had proposed a multiple conspiracy instruction and Mr.

{suz} man did that this would probably be a logical place

in the instructions to consider issue.  {sglfrjts}

{sglfrjt} first of all let me -- the government has had

this now I assume you can give me your position on this.

        MS. JOHNSTON:  Your Honor the government opposes

any multiple conspiracy instruction in this case.  The

defendant -- in order for such an instruction to be

require it had proof at trial must demonstrate the {ap}

{pel} peer answer that the defendants were involved only

in separate conspiracy in the {of} all conspiracy charge

in Tennessee coin incharged in the indictment.  It I'm

quoting from United States versus sill coat at 221 F

third 542 on page.

THE COURT:  Wait.  Go slower give {ne} cite again.

MS. JOHNSTON:  221 F third 542 at Page 574 it's a

decision of the fourth circuit a 2000 decision the

defendant's name is S Q U I L L A C O T E and I'm quoting

that from an {r57b} reported opinion out {f} of this

district United States versus Jackson that was a 2006

opinion where judge mess etty refuse today give a

multiple conspiracy instruction where Ms. Jackson had

obtained prescriptions and forged them and had no contact

with the pharmacist who actually filled those

prescriptions.  So unless the defendants can show that

they were involved only in separate conspiracies

unrelated {fo} the overall conspiracy, they are not

entitled to a multiple conspiracy instruct {shn} and I

can cite additional cases for the court the United States

Kennedy case {swi} a 1994 decision of the {fout} circuit

at atened F third 876 in particular on Page 883884 again

the court said that you've got to be able to show that

the defendants were -- there must be evidence to show

they were involved in unrelated conspiracies and in this

instance there is no evidence and in den Kennedy they looked at cases in that case it involved eight defendants that at most had three related conspiracies and there were some severances done in that case much like this one and and the court found that a multiple instruction was not required.

Again requiring it would be proof that the defendants were involved only in an -- in a separate conspiracy unrelated to the overall conspiracy.  In this case we have a overall conspiracy that centers on Ms. Martin and Mr. Goodwin obtaining drugs from different sources and then distributing them in this area through the individuals that are charged here with them {flt} there is nothing separate {tlchlt} is no separate conspiracy that's unrelated to that overall conspiracy.  There's simply no evidence of it.  I know counsel may argue that well, because she had a separate course source that makes it a separate conspiracy.  It duds not.  Is no case law to support that.  In fact, these cases demonstrate if {quou} you look at the ken {ne} day case that there were multiple groups getting drugs from different individuals. That does not support a separate conspiracy and I don't believe they're entitled to it undider the case law.

        MR. HALL:  Well {yo} well Your Honor Mr.  {suz} man may have some other points on this, but the point

they wanted to make on tissue of multiple conspiracies is
this.  You had the testimony of Mr.  Etch char {tai}.
Mr.  Etch charity testified that he had separate and
apart from Ms. Martin he had a separate heroin operation
that the heroin came {um} on the bus from Miami and that
he picked it up, he testified that on several occasions
my client Mr.  Whiting drove him to pick up the heroin
from that bus.  He testified that he didn't share that
heroin -- proceeds from that operation or was involved in
the sale of that with anyone else that that was solely
his operation and I would suggest to the court that even
under the case law.

        THE COURT:  Why would it -- in terms of his
operation quote unquote make it note the hear the
recording if he act today further Mr.  Etch char {tai} in
the receipt of the heroin?

        MR. HALL:  Well because that.

        THE COURT:  Even if he didn't profit by it or get
didn't get anything {o} {wu} hi but he helped him go get
it up pick it up hall a hall the government may very well
argue that that was part of this overall conspiracy and
that that was an act that my client didn't {d} in
furtherance of the conspiracy.  I would suggest to the
court that that is a separate conspiracy, that whatever
that if you belief Mr.  Etch charity whatever Mr.  Etch

charity did and however he involved my client Mr.
Whiting in that I would suggest that evidence that {vom}
came out through Mr.  Etch charity on the witness stand
had nothing do with Mr.  Martin or any of the other
defendant ass {tt} table except my client Mr.  Whiting.

        MS. JOHNSTON:  Counsel misstate it is fact this.
Mr.  Etch charity testified Mr.  Whiting {goef} drove him
to pick up cocaine and heroin and of that cocaine he gave
some of it to Ms. Martin and her daughter {kim} {pwer} ly
rice it wasn't just Mr.  Etch charity using Mr.  Whiting
to pick up cocaine, and heroin, he brought that back and
some of it was distribute today Ms. Mar inso factually
the evidence is -- does not support his position note the
hear the recording and this is now tape two side B.

        MR. HALL:  While I disa{grae} with counsel as to
what Mr.  Etch charity said but since we're not in front
of the jury at this moment the court's recollection
controls but my recollection of the fact {ss} he testify
that had Mr.  Whiting assisted him on a number of {obing}
{kaiing} s picking up the heroin and that he testified
specifically there was a transaction in which an amount
of heroin I believe {ket} was around $10,000 worth was
give tone Mr.  Whiting, Mr.  Whiting was going to sell
that presumably in Baltimore but I don't know if he was
that specific about it and that Mr.  Whiting ended up

returning the bulk of that.  That had nothing to do with
the involve {m} of Ms. Martin or anyone else {sglfrnlts}
{sgljts} Mr.  Hall, I've listened to arguments of counsel
in that and this and I have take {aen} look at the
Kennedy case and a {sunlt} to you try {toing} talk me out
of it at a later time, I do not believe that a multiple
conspiracy instruction is required on this case.
The fourth circuit has held that a court node need only
instruct in multiple conspiracy ifs such a in{stlung} is
note the hear the recording appellants were involved only
in separate conspiracies unrelate today the overall
conspiracy charged in the indictment.  And I do not
believe there's been an adequate showing here that the
defendants were slough involved in conspiracy pus
unrelated to the sing conspiracy charge inside the
indictment and while it's -- {wroo} while {ilt}'s
conceivable some of these other matters might have
constituted other conspiracies there was am note to
{thaer} recording.  Therefore, I decline to provide a
multimultiple conspiracy instruction.  If you have other
authority you want to bring to my attentionly be glad to
look ate but that's my {se} {di} {sition} decision for
now so we can hopefully get {tli} {tlez} instructions
anything else on Page 62.

        6364?  Note {witz} 63?  64?

MR. MCKNETT:  Your Honor on 64 just the terminology maybe to be consistent I think the {firs} sentence should be in order to prove the {kharnl} of possession with intent to distribute against a defendant.

THE COURT:  Any objection {fwi} government?  Or I or I should could say the defendant you are considering.  Counsel?  For the government?

MS. JOHNSTON:  We're fine, Your Honor that's not a problem changing that.  My concern was that it says he possessed and I was asking Ms. Green berg if you addressed whether that should say he or she in terms of the rest of the instruction.  She advised me that you're going with the.

THE COURT:  Why don't I just stay defendant you are considering?  {jons} {yns} that's fine.

THE COURT:  And I'll put in the he or shes.  It's only one place, right?  {jons} {yns} yes Your Honor.

THE COURT:ly Change this to say, in order to prove a charge of {pos} {swetion} intent to distribute {gens} {tt} defendant you are considering, the government must prove -- must establish and so forth and on paragraph or part two I will add in that the defendant knew that he or she possessed, etcetera.  Anything on Page 65?  Ward {wfd} would the court want to use the language the defendant you are considering?

THE COURT:ly Take out each and just say, the defendant you are considering.  Anything on Page 66?  67? 68?  69?  70?  71?  72?  73?  74?  Seven?  Note it would you describe 75?  76?  And I belief on this one Mr. {susz} man had a -- want {td} wanted to have the instruction 55.

MR. WARD:  Your Honor, I think with respect to this count since my client is charged I think in three.

THE COURT:  Where are you now?  What page.

MR. WARD:  I'm on 76, elements of the offense.

THE COURT:  All right.

MR. WARD:  This has to do with telephone counts, I believe.

THE COURT:  Yes.

MR. WARD:  My client is charged in three of those and my {fution} is note it was my position is as it is with respect to the gun count but I will.

MR. CONRAD:  Fine myself for the court moment with the telephone {koun} s and I think court needs to say this that if you find as to a particular defendant, a defendant is not guilty on count one, I E the conspiracy, the person cannot be convicted of the telephone count because the telephone count alleges that it was in furtherance of the crime under count one so if they're found not guilty under count one, they would have

to be found not guilty under -- in my case it would be
counts 47, 50, 5357.

         MS. JOHNSTON:  Your Honor I think we had this
discussion before the court gave its opening in{stlung} s
when the court summarized.

         MR. WARD:  I can't hear I'm sorry.

         MS. JOHNSTON:  I said I believe we had this
discussion when we discussed the court's opening
instructions in {terp} s {o} {f} the almosts of the
offense the statute does not {25BG} about whether
somebody commit it had underlying offense it talks about
knowingly using the telephone to facilitate the
commission of a drug offense.  It does in the require
that the person himself commit the underlying offense
only that he facilitated through the use of the
telephone.  So it has to be a knowing facilitation.  If
one were to -- and I would call the court's attention to
a number of fourth circuit cases United States versus
{la} son no at 839  F second, 1020, ten note wit {uz}
1020-1023 if we look at the statute {tand} language of
the statute itself if you were to require that the person
commit the underlying offense {thaen} there would be no
necessity to have the language in the statute that
{sglfrjts} {sglfrj} let me {jou} this, Ms.
Johnston.  I'm looking a {t} the actual indictment and

for example count 21 and and {ket} tracks the almosts of the crime and when it talks about the offense that it would you describe used in furtherance of the indict {m} itself says in committing causing and facilitating the commission of a felony to wit the narcotics conspiracy offense {sfoert} in count one.  {jons} I don't know exactly Your Honor.

THE COURT:  Why if the {yur} did not conclude -- if the jury in this case as to a particular defendant concluded that they have had not been involve inside the narcotics conspiracy in any way alleged in count one how would could they be convicted of this crime.

MS. JOHNSTON:  If I know that Paulette mart sin involved in a conspiracy to distribute drugs and I facilitate that, her involvement in the conspiracy by calling her and ordering drugs from her, I could be convicted of the telephone count because my call and asking her {fo} {25BG} ets facilitates Ms. Martin's participation in the conspiracy.  I may not be involve inside the conspiracy.  I may through my own for example if I'm a simple buyer on one occasion of drugs from Ms. Martin and I'm going to buy drugs for my personal use from Ms. Martin so I haven't joined the conspiracy to distribute drugs but I know based upon my conversations with Ms. Martin that Ms. Martin is involved in a drug

business a drug conspiracy, I through my actions in calling her and getting drugs from her could facilitate that conspiracy through the use of the telephone.

THE COURT:  In other words if I'm at Ms. Martin's house one night and her cell phone breaks dun and she says I'd like to use your cell phone so I can call Mr. {yur} {ar} {tai} or Mr.  Etch charity to make an order and I give her my cell phone.

MS. JOHNSTON:  She has facility at a timed {sglfrjts} {sglrjts} I'm in the member of the conspiracy but I have facilitated her commission of a {kuing} drug conspiracy.

MS. JOHNSTON:  Because you know her involvement.

THE COURT:  Mr.  {mont} mama {ra} no.

MR. MONTEMARANO:  It seems the way Ms. Johnston is explaining it one could facilitate a conspire by using a telephone if all one did was call to make one single purr {dhas} {khas}.

THE COURT:  No I don't think that's what she said I this I what she said based under that hypothetical I just gave if I loaned to Ms. Martin my cell phone so that she could arrange for a delivery of cocaine from Mr. Manage wall for example and I knew that's what she was doing {EPB} though I wasn't buying anything any, she wasn't selling any to me then I'm guilty.

1    MR. MONTEMARANO:  How about if Mr. {cins} {ki}

2  called Ms. Mar infor the purpose of arranging a purchase

3  no more?  I need to get an eight?

4    THE COURT:  Well, I don't necessarily think that a

5  street purr puser purchaser's phone call to Ms. Mar

6  insaying can you sell me an eight ball means that that

7  person necessarily has facilitated Ms. Martin's

8  conspiracy.  Medical report.

9    MR. MONTEMARANO:  I think in{stlung} needs to

10  clarify those two things.  It has to be more than just

11  facilitating one's own purchase.

12    MS. JOHNSTON:  You get that element in {fl} if the

13  person ewe what Ms. Martin was involved in if they have

14  knowledge if there are circumstances from which you could

15  infer that Ms. Martin -- that the caller Ms. Ali knew all

16  about Ms. Martin's drug business, then her call whatever

17  it is for could be done to facilitate.

18    MR. MONTEMARANO:  No.  {susz} {susz} no.  {jonts}.

19    MS. JOHNSTON:  Excuse me to facilitate Ms.

20  Martin's commission of the conspiracy.

21    MR. WARD:  Your Honor the problem with that

22  argument is that assuming Ms. Ali is calling Ms. Martin

23  to buy drugs, she necessarily knows that Ms. Martin is

24  involved in distributing drugs.

25    MR. MONTEMARANO:  Or wouldn't {vu} called her.

MR. MCKNETT:  Or she wouldn't have all {kawld} ed
her to ask about drugs {sglfrjts} {sgljt} Mr. McKnett if
you take a look at personal injury 78 at the instruction
that goes through this element and it define ins the
second paragraph it says to is facilitate the commission
of a crime mean toss {yuz} a telephone in a way that aids
assists or makes easier the commission of that crime.
This element is satisfied if you find that a defendant's
use of the legal {e} telephone facilitated each either
his or her own or another person's commission to have
offense.

MR. MCKNETT:  Your Honor, if that is read to mean
that a buyer of drugs when a buyer of drugs uses the
phone to call a supplier of drugs, that simple act of
buying for your own con {vum} sum shun makes you
facilitator of the entire conspiracy and I don't think
it's the intent of the law.  I think the intent of the
law is do something more than just buy for your own use.

MR. WARD:  I mean I think the bent of the law --

MR. MCKNETT:  Otherwise every buyer for personal
use is a facilitator of the conspiracy.

THE COURT:  Why don't you all see if you can find
some case law on this other than just telling me that
that's what you would like to do because I don't think
that what you ire telling me needs to be done on this

one.

1

MS. JOHNSTON:  Your Honor I don't know if we

2

provided the court with it but there is a fourth circuit

3

case and it's a district court case from the eastern

4

district of Virginia united state versus Louis at 38seven

5

F sup second page -- starts on 573.

6

MR. MCKNETT:  Ms. Johnston I can't hear you.

7

MR. WARD:  We can't hear over here green Your

8

Honor we had propreviously provided the court a numb ore

9

{f} bum number of cases prosupporting element two of note

10

the {thaer} recording.

11

MS. JOHNSTON:  United States versus Louis 38seven

12

F sup note the hear recording the relevant {lang} {wang}

13

at pages sol one to 584 there is also a 7th circuit case

14

United States versus binically at 903 F second 1130 at

15

pages 1135 and 1136.  And as specific.

16

THE COURT:  Give he me the lass s {t} citation.

17

MS. JOHNSTON:  The last citation was 903 fed

18

second 1130 at pages 1135 and 1136  but more importantly

19

here is a United States versus live {is} L I V A S it's a

20

fourth circuit albeit unreported opinion at 867, F second

21

609 the west law cite is 1989 west law 5578 at page 3 and

22

and that in the that case the court held that the second.

23

MR. WARD:  I'm sorry it's 862.

24

MS. JOHNSTON:  867 F second 609, 1989 west law

25

5578 at Page three of the west law opinion.  It concluded
that under 843 B there is no requirement that the
defendant commit the underlying drug felony.  That is
that the defendant -- that he commit the underlying
felony that the telephone call is in furtherance of.  I
have some additional cases.  An eleventh circuit case
United States versus {rusz} so which is quoted in the
opinion -- in the case I just gave the court.  That's at
796 F second 1443, particularly at Page 1467 note {witz}
1464 and and I quote a prime ma fascia case need not
include proof that the defendant committed the underlying
offense only that he facilitated its commission.

THE COURT:  All right.  Counsel I will look at
those cases.  I hear what the defense is caying I think I
understand the issue.  I need to take a look at it F. the
defense has any cases they would like to give me I would
be glad to look at them please them to me promptly.

MR. MONTEMARANO:  Thank you Your Honor.

MR. WARD:  {Oot} issue that comes to mind.

THE COURT:  Mr. Ward, let Mr. Montemarano finish.

MR. WARD:  Oh, I'm sorry.

MR. MONTEMARANO:  Just so it's clear.  What the
government is suggesting to the court is that one cannot
participate in a conspiracy by simply buying drugs for
personal use but can facilitate the conspiracy and the

last time I looked facilitating the conspiracy means
joining by using the {el} the {le} phone and there is a
large coin inconsistency.

     MR. MCKNETT:  Your Honor I would point out on the
government's chart Number one my client is {laib} label
add as a facilitator and therefore a member of the
conspiracy.  I don't think the government can have it
both ways.

     MR. MONTEMARANO:  Which goes back to that chart.

     THE COURT:  Counsel I think I hear your
a{graement} and your disagreements and I'm {g} {toing}
look at this one and and any authority you want to give
mely glad to look at.

     MS. GREENBERG:  Your Honor for everybody's
edification there is a June 15, 2006 letter including
charts that I sent to the court and all counsel and there
is an attachment A which had the proposed jury
instruction that we're talking about here and all of the
authority for the government for this instruction some of
which Ms. Johnston read into the record was attachment A
to that June 15, 2006 letter so that everybody has those
cases.

     THE COURT:  If anybody has any additional
authoritly be glad to look at it.  I will look at the
authorities that you have jus cited in the letter and

that has just been cited by Ms. Johnston.  Anything else on page -- we were on Page 76 I think when we got into this issue.  Anything on 76?  77?  On 77 I took out one piece of the instruction because the only one allege inside this case is a telephone.  And I made that clear by what I did on the previous page that it used a communication facility this case a telephone.  All right? Anything on 78?  That's the page I will be addressing speckly the matter we just discussed.  79?  80?  81?  82.

MR. WARD:  I'm sorry.

THE COURT:  We're on Page 82, Mr.  Ward.  Mr. {susz} man you still with us {susz} {susz} yeah I'm with you.

THE COURT:  Okay {susz} {sus} I'm not disagreeing please don't think I've abandoned you.

THE COURT:  All right.  Page 83.

MR. WARD:  Well Your Honor now we come to the possession of a firearm in furtherance of drug trafficking crime I E conspiracy.  I raised the same issue.  If the person is found not to be guilty of the conspiracy, {ket} seems to me they cannot be found guilty of possession of a fire am in if you remember furtherance of the conspiracy of which they have been found not guilty.

THE COURT:  Which instruction are you referring to

now?

MR. MARTIN:  It's on Page 83 {sglfrjts} {sglfrjt} 83.

MR. WARD:  I thought it was Page 83.  Yeah the elements of the possession of a gun -- it should be a weapon I think think in furtherance of a drug trafficking crime.  Now, my position is that if a person is found not guilty of the drug trafficking crime, I E the conspiracy charged in count one, how can they be found guilty of possession of a firearm in furtherance of that of which they have been found not guilty?

THE COURT:  Well, let me ask you this, Mr.  Bard. Note {witz} Mr.  Ward.  In {5B} on the bottom of Page 81, top of Page 82, I've indicated in these instructions if you're -- during your {dlib} lations you've determined the government has fail today prove beyond a reasonable doubt that either {pwin} {um} or Dobie is guilty of the crime charged in count one they think so you may proceed no further as to that defendant.

MR. WARD:  I'm sorry.  Your Honor was going a little faster than my mind goes.

THE COURT:  While you were doing That though {vi} a question for the government.  Ms. Johnston and Ms. Green berg I don't know that the description tat bottom of Page 81 is correct.  Isn't the charge in count one

conspiracy.

MS. GREENBERG:  Yes, sir.

THE COURT:  This says possession green {sglfrjts} {sglfrjt} {shoud}n't this be conspiracy to possess.

MS. GREENBERG:  Yes, sir.

THE COURT:  So it's conspiracy to.

MS. JOHNSTON:  To distribute an possess with intent to distribute {12K3R50EU7B8G9S} {sglfrjts} to distribute and.

MS. JOHNSTON:  Possess with intent to distribute.

THE COURT:  Possess with intent to distribute Joan green and then the intent to distribute at at the end would come out Your Honor.

THE COURT:  All right.  So, what that sentence will now say this shall -- this is the last full paragraph on Page 81 the first sentence will now read the defendants are charged in count one with conspiracy to distribute and {pos} possess with intent to distribute heroin, cocaine and crack cocaine.  Then for the benefit of Mr.  Ward and Mr.  Mitchell, there is a specific provision indicating that if either defendant is not found guilty on count one that brings the consideration of this counts on possession of a firearm a in {ket} {rans} of a drug trafficking crime a dead letter.

MR. WARD:  My mind wasen going that fast Your

Honor.

1

THE COURT:   Page 83.   Page 84?   85?   86?   87?   88?

2

89?   90?   91?   92?   Netiquette Your Honor, at the bottom

3

of 92 and and the top of 93 that I'm not sure.

4

THE COURT:   All of this stuff in the fat footnote?

5

That's not going to go in.

6

MR. MCKNETT:   Okay.

7

THE COURT:   No that will not be the in the final

8

note.

9

MR. MCKNETT:   Thank you Your Honor.

10

THE COURT:   No, this is just citations.   That will

11

not be in.

12

MR. WARD:   Your Honor I notice in earlier

13

instructions you have referred to the defendant {pwin}

14

{um}.   Since this applies only to him these apply only to

15

him, I assume you will say that in each of these felon in

16

possession I think he's the only one charged with felon

17

in possession {sglfrjts} {sglfrjt} I think that's the

18

only place I {ooef} done that isn't it.

19

MR. WARD:   That's what I'm saying.   You had made

20

the -- you put that in some of the -- {dpor} example on

21

Page 87 the defendant {pwin} {um} was and I just wanted

22

to make sure --

23

THE COURT:   I think {klirts} but I can put nit a

24

couple of other places.   I mean on Page 91 I can put it

25

1   if find the defendant {pwin} {um} either had actual or --

2   you know actual possession {ki} put that in.  I don't

3   think I need to do it every single time.  I thinkitis

4   pretty apparent I'm speaking about Mr.  {pwin} {um}.

5   {ki} put nit another time on 92.  I see I can put it at

6   the end of the line that begin toss satisfy this element.

7   I can put it in there.  All right.  The next, Page 93.  I

8   can change it to the defendant {pwin} {um}'s possession

9   if you want.  Page 94.  Are these the correct counts,

10  government?  Ward I'm {voyr} what 94.

1           THE COURT:  {fl} was one you indicated less.  Have

2   we got the right counts here?

3           MS. GREENBERG:  Court's indulgence the count that

4   should not be in anywhere anymore.

5           MR. WARD:  Your Honor.

6           MS. GREENBERG:  Is count six.

7           MR. WARD:  I'm sorry we're on 94 now?  Page 94.

8           MS. GREENBERG:  Count six should be removed.

9           MR. WARD:  May {ski} this {fe} this question Your

0   Honor how can one be an aider and abet {ter} of a

2   conspiracy it {sooement} s to me you ire either a con

2   spear {tr} {tor} or you're not.

3           THE COURT:  That's why I put in introductory

4   {dang} language here because I thought it made no sense

2   if I don't didn't do this.

By the way, will.

MR. WARD:  I see the court's insertion there, but I still don't think that that clarifies that with respect to count one ear either a con spear {ter} or you're not. The you the rule of ate aiding and abetting it seems to me applies to the other counts!  {sglfrjts} what {aes} the government's {fotion} on that?

MS. JOHNSTON:  Your Honor I don't know if counsel has any authority white wouldn't apply to con peer conspiracy {koun}.

THE COURT:  {im} not sure why it wouldn't.

MR. WARD:  Bade aiding and abetting {sglfrjts} {glfrjts} yes.

MR. WARD:  If you wade aid and abet a conspiracy you ire a coon spear {tor}.

MR. MONTEMARANO:  Cob spear {si} requires no acts.

THE COURT:  Give me some authority that says that.

MR. WARD:  All right sir.

THE COURT:ly Be glad to consider it.  As of right now I will leave it in.  I will Lee that {anz} open question andly see if you have any authority for it and that is note the {thaer} recording.  Anything on 95 I put in a redundancy warning here because hi already done this once before but I decided I would tell them in case they thought I was falling asleep and reading the same thing

that I'm doing It again on purpose.  96?  97?  98?

MS. GREENBERG:  Your Honor count six should come out here and I also noted while the court was going through it count six {o} is on Page 6263.

THE COURT:  Wait a minute let met {ge} me get that out right now.

MS. GREENBERG:  That was as to Mr.  Walker.

THE COURT:  Count six Page 62 is gone and 63 {ilt} it's {xwon} in both places it's on that page twice.

MS. GREENBERG:  Yes, sir.

THE COURT:  All right?  If you pick it up anywhere else let me go.

MS. GREENBERG:  Then on Page nine where we just were.

THE COURT:  Nine sol it's one once on that page Greece.

MS. GREENBERG:  Yes, sir {sglfrjts} {sglfrj} anything else on Page 98?  99.  100.  101.

MS. GREENBERG:  Your Honor perhaps on Page 100 to make it consistent with the prior change it says the second paragraph towards the bottom says with regard to count one if you find that the defendant has proven a defendant guilty of count one and and then go through quantity.  Cocaine, heroin or cocaine base.

MR. MITCHELL:  Or a defendant you are considering.

1    THE COURT:  To the defendant you are considering.
2  Okay.  All right.  That's on the top of Page 101, right?
3  {xwrooen}.
4    MS. GREENBERG:  The bottom of Page 100 with regard
5  to count one {fw} {u} if you find that the government has
6  proven a defendant you are considering guilty of {koun}
7  one {sglfrjts} {12KR50E7B8G9} right.  I've {gt} that
8  covered.
9    MS. GREENBERG:  Then it should say con {sper} {si}
10  with intent to distribute cocaine, heroin or cocaine base
11  instead of and.  Thank you sir note to {thaer} it.
12    THE COURT:  In{stid} of what.
13    MS. GREENBERG:  Instead of and.
14    MR. MITCHELL:  That's what the count one says.
15    MS. GREENBERG:  It's charge inside the conjunctive
16  it's prove inside the a terntive {l} {aern} {ti}
17  alternative dun {ter} case law {sglfrjts} {sglchblingts}
18  all right I've got that {kof} ed so identify made those
19  two that I think changes on page 1 hundred and and
20  identify made a change on Page 101 to change {toyt} the
21  defendant you are considering.  Anything else on?  Page
22  102.  103.  104.  105.  106.  17 note {witz} 107.  108.
23  109.  All right counsel just to recap, I've got the
24  following notes I've made to myself one is I'ming {g} to
25  do a word search of this document to see if the word six

appears any place else that we haven't picked up today to take out the reference to count six.

MS. GREENBERG:  The last graft draft we gave Your Honor had Mr. Walker and Mr. Harris in there so that's why that was in there.  Sorry about that.

THE COURT:  So that's done.  I'ming {g} to add some language on Page 22 to deal with the defense recordings which I haven't draft drafted {aet} yet and I will share it with you when I get it done.  On page 27 I will add some language about charts or power {poyn} s or whatever the {kounts} counsel use in the closing argument is not {EF} {ET} evidence even though it looks nice and it's on chart.  Anybody by the way intend to use pow point in closing argument?

MS. GREENBERG:  Your Honor, I was thinking of it if we could get it set up but I'm not sure we can get it set up.

THE COURT:  When it works it's fine when it doesn't it's awful but I was look {maingt} {r} mar Mr. Martin specifically.  He's {can} king away and --

MR. MARTIN:  Identify tried using power point before.  It was a disaster.

THE COURT:  I didn't like it when I was practicing either.  It never seemed to be something you could fix to move -- to change with the -- you know with the moment.

1  It just wouldn't work and if I got up and made some

2  {wond} erful -- prepared to make some closing argue {pt}

3  and someone else had said one word before it and {ut} pit

4  put my chart in a shamble I was blubbering.

5      MR. MARTIN:  My problem has always been the

6  technology T screens either you don't see it well

7  {sghfrjts} {sghfrjts} you don't trust I.  I trust paper.

8      All right the next thing I have flagged to look at

9  is on I have flagged on Page 43 where note the hear the

10  recording.

11      THE COURT:  What I had flagged on Page 43 I had

12  government told me {fl} were note the hear recording I

13  just flagged that for a possible change.  The other

14  places I have flagged are the counsel were to {gif} me

15  add {daiing} a did additional authority on this question

16  of use of a communications device to facilitate another

17  drug offense as to whether being acquitted of the

18  conspiracy would preclude that and the final thing I got

19  open to discuss is the reference count Number one in the

20  aiding and abetting statute is as to whether that's a

21  proper use of the aiding and abetting statute so you

22  saided and abetted a conspiracy the position to have

23  defense being if you aid {apd} abetted one you are one if

24  I understand what they're saying.

25      MS. GREENBERG:  Your Honor one other thing I know

1    court was going to give an in{stlung} as to the {df} s

2    use of the transcripts.

3           THE COURT:  I mentioned that.

4           MS. GREENBERG:  That were provide today us before

5    it goes in the draft jury in{stlung} s.

6           THE COURT:  I mentioned that.  I have the

7    government's {vi} the government's draft limiting

8    instruction I'm going to work on that and work on

9    something to go into the draft jury in{stlung} s tat same

10   time.

11          MS. JOHNSTON:  Your Honor the count that the

12   government out of an abundance of caution had some

13   concern about that Mr. Montemarano argued it during his

14   rule 29  motion is I think it more has to do {wus} taking

15   defendants out but I had government will out of an

16   abundance of caution drop count 41 because it's a {ket}

17   that is also encompassed in the charge in count 40.

18          THE COURT:  What count is that.

19          MS. JOHNSTON:  Count 41.  I just need to look at

20   it for a moment, but it {kharnl} s an offense on or about

21   April 7 and and charges Ms. Martin alone with possession

22   with intent to distribute 50 grams or more of cocaine

23   base and on that date she was involved in a transaction I

24   think it Claude Arnold {thand} {aes} how that {koun} was

25   in there originally but count 40 charges her with

1    possession with intent to distribute 50 grams or more of

2    cocaine base between April first and on or about April 7.

3            THE COURT:  You're going to make a decision

4    {thabt} later you neither making it right now with are

5    you {mont}.

6            MS. JOHNSTON:  The court was {wond} erring What

7    the counts were it was count 41 {sglfrjts} {sglfrjt}

8    before I butt these in{stlung} s to bedly check for the

9    word 41 and and if you tell me you want to drop 41, we

10   will take it out.  You will also need to address the

11   verdict form appropriately.

12           All right.  By the by the way counsel I heard

13   nothing today and I'm unconvince that had alesser

14   included offense instruction is appropriate.  If somebody

15   has a specific proposal on how they want to do this one,

16   they need to tell me in specific language where they want

17   it, how they want it and why because I do not have it

18   now.

19           MR. MONTEMARANO:  An instruction for what Your

20   Honor.

21           THE COURT:  Less {e} er included offense.  So if

22   there is any desire for me to do that, you need to tell

23   me and I mean in very specific -- don't just tell me sand

24   and {sif} {fert} X I need to know as to what charges

25   against what defendants you really want to have a lesser

included offense.

MR. MONTEMARANO:  Your Honor make sure Mr.  {susz} man heard that {sglfrjts} {glfrjt} Mr.  {susz} man did you hear that {susz} {sus} yes I did sir.

THE COURT:  The ball is in your court, because I have nothing that convinces me now that that's an appropriate instruction in this case and if you have authority for it please be sure to give it to me because I would {tlbing} to these instructions correctly.  Note et with {witd} {uz} {woy}.

Counsel, back to the telephone calls.

MR. MONTEMARANO:  Your Honor, can we have five minutes?

THE COURT:  Five minutes.  I don't want to have the court reporter get another charley horse.  Five minutes.

                    (Off the record at 6:15 p.m.)

                    (On the record at 6:24 p.m.)

THE COURT:  Counsel, we were last on call 3134 at Page 213 of the defense transcripts.

MR. MARTIN:  That's Mr. Montemarano's.  That's Martha Jean West.

MR. MONTEMARANO:  4134, Your Honor?  4134.

THE COURT:  4134, Page 213.

MR. MONTEMARANO:  Same stuff.  Different day.

This is a call with Gwen LNU, as well as Martha Jean
West.

          THE COURT:  How long is this call?

          MR. MONTEMARANO:  It's rather lengthy.  It will
have to be redacted.  It goes to like Page 225, I
believe.

          THE COURT:  I will permit it, but I want you to
redact it.

          MR. MONTEMARANO:  Consider it done, Your Honor.

          THE COURT:  Okay.  All right.  The next phone call
is 4480 at Page 231.  Now, wait a minute, there's some
government stuff in here.

          MR. MCKNETT:  We will pull all the government
stuff out, Your Honor.

          THE COURT:  All right.

          MR. MCKNETT:  4480 is --

          THE COURT:  Wait a minute.  Let me get my notebook
straightened out here.  Okay.  The next one is 4480 at
Page 231.  This has a star on it.  What does the star
mean?

          MR. MCKNETT:  That's one of mine, Your Honor.
This is a call about -- there's three things in this call
that I think are relevant and would go to challenge the
opinion of Sergeant Sakala.  There is a series of
numbers.  Size ten -- excuse me, size 12 -- ten or 12.

These are numbers that are used in the non drug-related context.  They refer to clothes.  There is a section of this where Ms. Ali and Ms. Martin are talking about investments.  There's a reference to Merrill Lynch at the bottom.

THE COURT:  All right.  I will permit this call.  It's short enough, and it is germane to the issue.

MS. JOHNSTON:  Your Honor, just so the record is clear, Agent Sakala didn't testify about sizes 12 or ten.

THE COURT:  No.  But he did testify when they were referring to sizes they were referring to drug quantities; I will permit that.

MS. JOHNSTON:  The rest of the call, the next two two pages don't have anything to do with clothes.

THE COURT:  Mr. McKnett, will you redact the other than size materials out of this call?

MR. MCKNETT:  Yes.  I can do that, Your Honor.  But just for the record, they talk about -- the third issue I was going to mention to you is there was a reference to Gil, and a conference, and Gil introducing Ms. Martin as someone the next day.  There's a reference to the entertainment business.

MS. JOHNSTON:  Again, the reference to Gil.  Gil was a person who on cross-examination Agent Sakala identified as being the person to whom Ms. Martin --

1      THE COURT:  I agree.  Your request to redact is

2   noted, and I'm requesting that this be redacted.

3      MR. MCKNETT:  I will redact all but the first

4   section Your Honor.

5      THE COURT:  B-4508 at Page 234.

6      MR. MONTEMARANO:  We can discuss that with the

7   next one, 4662 at 254.  The two consume about 30 pages.

8   They are calls with Gilbert Williams about shows.  Your

9   Honor has already ruled about the other Gilbert Williams

10  call.  There is nothing especially different about these.

11     THE COURT:  Okay.  I'll make the same ruling on

12  this as I have before.

13     MR. MONTEMARANO:  I can't tell you anything new,

14  Your Honor.  I'd love to but --

15     THE COURT:  All right.  The next one is B-4663 at

16  Page 265.

17     MR. MCKNETT:  Your Honor, there should be one

18  prior to that.  I left it off of my list, I apologize.

19  It's B-4662 at Page 254.  I think Mr. Montemarano talked

20  about that, but I would also like to talk about that.

21     THE COURT:  That's in here?

22     MR. MONTEMARANO:  It's one of the ones I just

23  mentioned, Your Honor.

24     MS. JOHNSTON:  That's a Gilbert Williams call

25  beginning on Page 252, call B-4662 between Ms. Martin and

Mr. Williams.

MR. MCKNETT:  Yes, Your Honor.  This call -- there are actually ten calls that I would like to address all at the same time.

THE COURT:  Wait a minute.  I'm trying to find this phone call.  Oh, it begins on Page 254.  You're saying you want to talk about it on what page?

MR. MCKNETT:  On Page 259.

THE COURT:  What is it that you want to have played?

MR. MCKNETT:  There is a portion that starts in bold.  It says "break in recording," and then it picks up again toward the top of the page.  Ms. Martin is talking to Mr. Williams about PTK Associates.  They're discussing the name of her business.  He's telling her that he needs this information for advertising for the shows.  And at the end at the bottom of that page Mr. Williams says to her, you're going to send me a letterhead.

Then the top of the next page, Page 260, he says, you're going to fax me a letterhead with your stuff on it so I can, you know, move it on, you know, so the advertising person from the radio can show can, you know, say whatever it is that you want them to say.  And they talk about the letterhead.  The significance of this Your Honor relates to a call that the government played

concerning conversations between Ms. Martin and Larry
Nunn.  And the court may recall that call related to a
time sheet that the government put up on the screen.  At
the bottom of the time sheet it had, I think it had PTK
Associates at the bottom of it.

The government, through Sergeant Sakala, argued
that that time sheet was fraudulent, and the purpose of
it was somehow to throw investigators off the trail
concerning, I think, the murder of Steven B.  Detective
Sakala stated his opinion was that my client was involved
in preparation of that fraudulent worksheet -- time sheet
that had to do with -- I'm not sure which person it
related to, but it was a time sheet supposedly from
Paula's School of Performing Arts.

THE COURT:  In which call did he opine as such?

MR. MCKNETT:  Excuse me Your Honor?

THE COURT:  In which call did he give that
opinion, if you recall?

MR. MCKNETT:  One call was B-4758 in which this
Ms. Martin and Mr. Nunn are talking about Office Depot or
Staples have time sheets.  This was one in which Mr. Nunn
and Ms. Martin were apparently putting together a time
sheet to show that Mr. Nunn would recollect worked for
the school and it was a fraudulent purpose that the
detective described as being related to hiding criminal

1  activity on the part of Ms. Martin and Mr. Nunn and that

2  my client was involved in the preparation of this

3  document or similar documents.  There are ten calls, Your

4  Honor, starting with 4662 that clearly put the lie to

5  that opinion.  And the reason is, as I pointed out on

6  Page 269 was --

7          THE COURT:  If you ask about letterhead

8  preparation?

9          MR. MCKNETT:  The conversation I just described to

10  you in which Mr. Williams -- Gil Williams was asking Ms.

11  Martin for her letterhead.  The very next call, which is

12  B-4663, it is minutes after that call.  Ms. Martin calls

13  Ms. Ali and says, when you're on the computer at the

14  school I want you to do me some type of letterhead with

15  PTK Associates on it.  Because Gil says, I need it -- he

16  needs me to fax him a letter.  And then there's a series

17  of calls, 4670, 4671, 4722, 4739-A, 1389-B, 4740, B-4741,

18  and B-4766, all of which contain conversations between

19  Ms. Ali and Ms. Martin concerning the preparation of the

20  letterhead.  Ms. Ali faxing the letterhead to Ms.

21  Martin for her review.  Ms. Martin calling back to Ms.

22  Ali asking for changes in the letterhead.  They have

23  nothing to do with the time sheet, and it cuts to the

24  very heart of the detective's opinion that Ms. Ali was

25  involved in an attempt to produce fraudulent time records

for Larry Nunn to use with regard to a murder investigation.

THE COURT:  So you want to use part of call B 46two that deals with this stationer station air issue; correct.

MR. MCKNETT:  Yes Your Honor just that portion of it {sglfrjts} {sglfrj} redacted portion John John.

MS. JOHNSTON:  Your Honor you know if the government could be heard on this.

THE COURT:  I'm try {toing} get what his request is down.  {im} not ruling yet.  You want to get it redacted {fwou} only cover cover the letterhead.

MR. MCKNETT:  Yes.  Specifically the portion from the sixth line -- 7th line down on Page 259 through the second line {fl} from the bottom on page 260.

THE COURT:  And then the -- in the same vein you want to have calls B 4663, 4670, 4671, 4724, 4739, A 1389, B 4740, B 4741 {235UBGS} B 4766 and and B 4789 all on the same subject?

MR. MCKNETT:  B 4766 is the last.

THE COURT:  Stop.  Okay.

MR. MCKNETT:  {ki} very quickly point out why each of them is relevant.

THE COURT:  No I want to make sure what your position is and then I want to hear from the government.

1    Your position is then you would like to be able to cross

2    examine Sergeant Sakala's opinion concerning her

3    participation in the preparation of a bogus document by

4    showing that contemporaneously with the call in which he

5    opined that she was helping Ms. Mart anyone the

6    preparation of a bogus document she was in fact helping

7    prerare letterhead for was it PTK associates.

8        MR. MCKNETT:  PTK associates unrelate today the

9    fraudulent documents {sglfrjts} {sglfrjt} okay let me

10   hear from the government.

11       MS. JOHNSTON:  Your Honor the fraud {ent} document

12   we introduced was not on PTK associates letterhead what

13   agent Sakala testified to in regards to the particular

14   call was that she was having her reproduce business

15   letterhead.  The call with Mr. Nunn where there was a

16   reference of where whether {nort} he needed her to fill

17   out agent Sakala specifically said that the her he was

18   referring to was not Ms. Ali.  So, the call with Ms. Ali

19   had to do with preparing fraudulent letterhead and that

20   the call with -- the calls concerning the facts had to do

21   with the note wit {uz} fax that was sent {swi} inest

22   which shows it {wawz} time sheet and I believe it was

23   sent from a hotel and is a time sheet that references P

24   net {witz} note {uz} PTK associates ton {pwot} toll of

25   the time sheet it snot letterhead so this whole notion of

what {sthez} calls goes to is not going to impeach

anything agent Sakala said he said that she called

getting her to prepare some letterhead with a fax number

on it and {ta} the call {ws} Mr. Nunn had to do with

doing up a time sheet and the time sheet is in evidence

it is not faxed letterhead it is a time sheet that

references PTK associates along the bottom of the

letterhead.  So -- and Mr. Nunn {25BG} ly said that when

asked that Ms. Ali wasn't the woman referenced to when he

asked the question if he needed her to fill it out.  So,

I don't see how this is at all relevant in terms of a

attacking agent Sakala's opinion in terms of the call.

{kouns} {e} in fact has conceded that the call with that

-- that we introduced was about faxes or creating

letterhead for her business.  We {donlt} dispute that and

agent is {sa} {kla} didn't offer a separate opinion

concerning that.

        MR. MCKNETT:  Your Honor, the agent plaid did {sh}

the {dwt} played and the agent testified concerning call

A 136three which took place on April 28, 04 at 9:53 in

the morning in which Ms. Ali and Ms. Martin are talking

about Ms. Ali suggested she buy an answering service just

buy a fax machine so everything will look official and so

forth and then the {got} played call {235UBGS} 4753 which

took place late {ner} the day in which Mr.  Ms. Martin

1   and Mr. Nunn are talk about getting time sheets from

2   office depot or staples and I specifically asked the

3   agent if it was his opinion that those two calls were

4   related to each other and {the} said yes.  These other

5   calls.

6        THE COURT:  I will permit limited with redaction

7   use of the phone calls just enumerated which begin with

8   the redacted version of B 4662 and and include redact as

9   necessary B 4663, 4670, 4671,

10       MS. JOHNSTON:  Your Honor 4671 I {sthi} nothing

11  but them saying good-bye on the known phone.

12       MR. MCKNETT:  4671 Your Honor there was an

13  interinterruption in the call.  4671 is the second part

14  of 4670.

15       MS. JOHNSTON:  Okay look at page 270 it's all

16  right, bye.

17       MR. MCKNETT:  If you look at the previous page you

18  will see where they were saying good-bye to each other

19  and there was an interruption and the government's own

20  recorder recorded that as two separate calls Your Honor.

21  It's nothing that we've done.

22       MS. JOHNSTON:  {whri} do we need it?

23       MR. MCKNETT:  Because it finishes the call.

24       THE COURT:  I {thit} would explain they didn't

25  hang up on each other.  Two lines of print {ki} tolerate

{thachlt} let me finish whey was saying the calls you {wuld} be permit today use for cross-examination on his opinions in add {doytion} the thes I just mentioned would be B 4671, B 4722, B 4739, A 1389, B 147  note {witdz} 4740, B 4741 and and B 4766.  Now, in the midst of that sequence of calls is B 4687 at page 27one which I believe {st} a Paulette Martin call that you want to use for purposes of Martha Jean West.

MR. MONTEMARANO:  Yes Your Honor it's a -- not a an specially lengthy call about ten {painl} s butt it's all dealing with clothes, styles, sizes, sizes -- different kinds of sizes for different people.

THE COURT:  Subject to the notion that at some point we're going get into redundancy territory you may use this call.

MR. MONTEMARANO:  Thank you Your Honor.

MS. JOHNSTON:  We would object on that basis at this point in time it's a ten page call which will take a long {toym} to play.  {EUT} advertisen't add anything new {sglfrjts} {sxwhrfrjt} {sxwhrfrjts}.

THE COURT:  If you can react it, redact it.  Note {witz} redact not react.  {f}.

Now, after page 290 there's a government recording which I will disregard.  And then the next page is 29one which is call B 4789 and and that has a star on it that

means it's your baby Mr. McKnett.

MR. MCKNETT:  4789  Your Honor?

MS. JOHNSTON:  Your Honor, if I could.  This is another call with Gilbert Williams again talking about that same concert that he was {hrz} ing Ms. Martin's money for that we previously addressed.

MR. MCKNETT:  To be honest I still haven't heard the call number.

MR. MONTEMARANO:  4789, page 29one.

THE COURT:

THE COURT:  This is another Gilbert Williams call, isn't it?

MR. MCKNETT:  Your Honor I continue see this.

THE COURT:  Mr. McKnett think this is another Gilbert Williams call.

MR. MONTEMARANO:  I think Mr. McKnett is withdrawing the asterisk and making it mine I have nothing to add.

THE COURT:  I will be perhaps consistently wrong but I will rule that that can't be used.

MR. MONTEMARANO:  Thank you Your Honor.

THE COURT:  4861 which I believe.

MR. MARTIN:  The next two calls supposedly involve Mr. Goodwin {scoment} I withdraw them to the extent that somebody thinks that they do.  I don't think that they

do.

1

         THE COURT:  These are which calls?

2

         MR. MARTIN:  They appear on page 299 300 for the

3

record it's B 4861 and and B 4888 {sglfrjts} {sglfrj}

4

these are withdrawn?

5

         MR. MARTIN:  These are withdrawn.

6

         THE COURT:  Okay.

7

         MR. MARTIN:  Unless somebody else wants them in.

8

I don't want them in.

9

         THE COURT:  That brings us to 303 and and call B

10

4906.

11

         MR. MCKNETT:  Your Honor, calls B 4906 and and the

12

next one, B 4907 are very short calls and they actually I

13

cut my {lis} my {lis} {ut} off earlier they relate also

14

to the letterhead that my client prepared for Ms. Martin.

15

{sglfrnlts} {sglfrjts}.

16

         MR. MCKNETT:  Is this is the end of that sequence

17

of calls in which Ms. Ali has sent -- has faxed over the

18

proposed letterhead to Ms. Martin.

19

         THE COURT:  I note {es} one of your calls you want

20

me to play is a fax tone.  Does that show you faxed it?

21

         MR. MCKNETT:  That was client fax toss Ms. Martin

22

the letterhead that she prepared then the calm also be to

23

the effect of did you get {snit} yes, I got it.

24

         THE COURT:  All right.

25

1    MR. MCKNETT:  These two calls are of the same

2    nature.

3        THE COURT:  All rightly permit these calls too.

4    All right.  B 4911.

5        MR. MONTEMARANO:  Withdrawn.

6        THE COURT:  Withdrawn?

7        MR. MONTEMARANO:  It's semimy redundant.  I've got

8    the one the day {wfr}.  There's really no need for this

9    one so we can just dispense with it entirely {sglfrjts}

10   {sglfrjt} that brings us to -- which is withdrawn?  Note

11   wit {uz} 4911.

12       MR. MONTEMARANO:  Yes Your Honor.

13       THE COURT:  How ant 4913.

14       MR. MONTEMARANO:  I think same thing.

15       THE COURT:  Withdrawn?

16       MR. MONTEMARANO:  Yes, sir.

17       THE COURT:  4911 on 311.

18       MR. MONTEMARANO:  Court's indulgence just for a

19   second.

20       THE COURT:  I'm sorry B 4999 and and -- {mont} yes

21   I'm {ting} I was going to {kep} that one because there's

22   {meng} s of one that Gwen bought.  By her ostensibly her

23   daughter, {kim}.

24       THE COURT:  All rightly leave that in.  B 5070 on

25   Page 314.  It has a star on it.

MR. MCKNETT:  Your Honor that's one of mine and I have to look at having looked at this again I can withdraw that one.  Mr. {mont} ma {ra} no might want to address it but I don't need that one.

THE COURT:  Okay.  Page 322 is the next {u} call.  B 5372.

MS. JOHNSTON:  Your Honor this is another one with Mr. Bill Williams the neck {t} two call {rs} with Mr. Will {yals} {sglfrjs} {sglfrjs} I will not permit that then Monday.

MR. MONTEMARANO:  Yes they are Your Honor.

THE COURT:  Those an ex {twot} calls are out.  Then we have B 5375 on 327 {fwooen} Paulette mart un{awn} yule {is}'s garner netiquette can I have just a second Your Honor.

THE COURT:  Certainly.

MR. MCKNETT:  This is a call in which my client's husband, yule {is}'s {garn} {ser} talk {toing} Paulette Martin about their -- about Ms. Mar in's attempts to enter into a contract of court sorts for -- an interDanement -- show business contract and I don't necessarily need that one either {sglfrjts} {sglfrjt} all right.  Withdrawn.  {sglfrjts} {sglfrjt} the neck {t} one {vi} is Page 333, call B 5378 {ft}.  That one has a a star on it that's yours Mr. McKnett.

MR. MCKNETT:  Your Honor this is the same kind of a call Ms. Martin and Mr. Garner caulk talking about her business relationship with Mr. Gilly Williams and again I don't see that as necessary.  I can withdraw that one.

THE COURT:  All right.  That's withdrawn.  {prf} page 339, Number 5383.

MR. MCKNETT:  Your Honor this is my client and Ms. Martin talking about Ms. Martin talking to her business lawyer whose name is in there I think it's Spencer {hoy} er but I think in here it says Spencer note {witz} Spencer boyar {tand} rest Spencer is not letting me go along long I don't think he and gill are going to get a{whrachbing} along and then talking about the relationship and again the efforts to get him to show business and note wit {uz} get into show business and this is a short call and I would like to keep this one in jus tot show the continuity of these conversations {jonts} {yons} Your Honor we would object to this cause cause bawl call because sit about gill and their relationship with gill which about agent Sakala as already an acknowledged.

THE COURT:  I don't believe that this is appropriate for cross-examination of the witness to test his opinion, soly not permit Number three note wit {uz} B 5383 on page -- beginning on page 339.  All right?  That

brings us to 342 {kawlt} number B 5385 {fwooen} Paulette

Martin and yule {is}'s garner.  Mr.  Mac.

MR. MCKNETT:  Net Your Honor this is the same

thing.  It talks about the Ms. Martin try {toing} put

together a contract and my client's husband ass {tis}

assisting her in terminology and giving her some advice.

THE COURT:  I won't permit that either for the Sam

insame reason I just gave to the prior recording.  All

right.  On Page 345, number 538seven.  Between Paulette

Martin and LaNora a lee.  Is this more about the same

contract?

MR. MCKNETT:  If I can have a sec {sglfrjts}

{sglfrjt} I {thoy} be consistent I will preclude that as

well.  I don't think that's fair for {coz} examining the

expert and the opinions he's {gif} en.  It didn't cover

this.  It brings us to call B 5471 on page 349  which is

a --

MR. MONTEMARANO:  Withdrawn.

THE COURT:  Withdrawn?  Okay.  And then brings us

to Page 351, call B 5475.

MR. MCKNETT:  This is another in a series of calls

between my client, Miss {mard} inand her husband

concerning the business contract.

THE COURT:  I will not permit that either.  This

is what {ksh} where -- where does the series begin and

end?

1

MR. MCKNETT:  Basically started at B 5070.

2

{sglfrjt} {sglfrjts} it began with what.

3

MR. MCKNETT:  B 5070.

4

THE COURT:  Okay oh, okay.

5

MR. MCKNETT:  Tall one that is have been.

6

THE COURT:  Tell me which whichs are on the same

7

subject matter they should.

8

MR. MCKNETT:  5070, 5375, 5378, 5385, 5385, 5385

9

{apd} perhaps the next one.

10

THE COURT:  Next one I think for you would be B

11

5726.  Go back and tray to listen to the numbers {jons}

12

{jns} we would object to that call.  I think we've

13

skipped two calls.

14

MR. MCKNETT:  Your Honor the reason I put this one

15

in is to put in context the government played call B

16

5728.  B 5728  is an excerpt it's LaNora a lee says {al}

17

hello Paulette Martin says uh-huh did you want tickets

18

{wheb} when you came out here.  Call 5726  is Ms. Ali

19

calling Ms. Mar intelling her where she is and saying

20

that she -- I'ming {g} to stop by before I lev leave --

21

after I leave here {scoment} you going to be there,

22

right?  It puts it in context Your Honor and there's some

23

questions I would like to be able to ask the witness

24

about how and why he reached the opinion he did about the

25

call B 5728.

1

2          MS. JOHNSTON:  Your Honor I don't have any

3   objection if counsel wants to put in context call B 5726

4   -- no, strike that 5728.  We played call B 5728  we only

5   played an excerpt of that call.  If he wants to play the

6   rest of that call to put that call in context I don't

7   have Friday any objection to that but this call here

8   about whether they're going get together, about whose

9   mother passed away has nothing at all to do with putting

10  into context the excerpt we played of 5728  un.  Up {der}

11  rule 106 to put in context you're talking about the

12  balance of what was in that call that conversation.  Not

13  a conversation {sglfrjts} {sglfrjt} all right.  I agree.

14  I won't permit this call to be used.

15         MR. MCKNETT:  Your Honor it puts in context my

16  client's reason for going by Ms. {ket} in's house.

17         MS. JOHNSTON:  And she can testify to that.  It

18  has nothing to do with the officer's opinion.

19         MR. MCKNETT:  I should also be able to question

20  the agent about why he reached the opinion that my client

21  was going there to get drugs.  And these -- this call and

22  the next one 5727  -- {sglfrjts} {glfrjts} did you

23  transcribe the balance of 5728?

24         MR. MCKNETT:  Your Honor I thought we had but I

25  don't see it here.

1          THE COURT:  I mean it would help me to resolve
2    this if I saw the saw the balance of 5728.

3          MR. MCKNETT:  I thought we had Your Honor.
4    Q.    .

5          MS. JOHNSTON:  {jons} page 370 Your Honor I {sthi}
6    the balance.

7          THE COURT:  370?

8          MS. JOHNSTON:  Page 370.

9          THE COURT:  Okay.

10         MS. JOHNSTON:  Call B 5728.  Yes.

11         MR. MCKNETT:  Okay.  My pages are out of order
12   Your Honor.  I don't have it {sxwhrfrjts} {sxwhrfrjts}.

13         THE COURT:  I don't have those pages {jns}.

14         MS. JOHNSTON:  You don't?  I have them in the copy
15   that I got on July 21.

16         THE COURT:  Those pages are not in my copy.

17         MR. MCKNETT:  My {cebing} lek shun is that we did
18   transcribe that and for some reason we it is not in
19   thisen.

20         MR. MONTEMARANO:  It can be reproduced probably
21   floating around my office {sglfrjts} {glfrjts} put it
22   this way.  I agree the government if the context of 5728
23   is adequately demonstrate bid the {kaw} itself --

24         MS. JOHNSTON:  I think you already have B 5728  in
25   the packet you {dwot} with the letter on July 21st on

page 370.

THE COURT:  Yeah it's not in this notebook.

MS. JOHNSTON:  I'm using my old notebook because I started working on these before last Friday.

MS. GREENBERG:  Your Honor I'm using the new notebook it's not in the new book notebook it was in the old.

THE COURT:  What with are the {naij} page numbers.

MS. JOHNSTON:  Page 370.

MR. MONTEMARANO:  370 in the overall mass.

MR. MCKNETT:  The book I have is missing pages {sglchblingts} {sglfrjts} what page numbers are they for the full call.

MS. JOHNSTON:  It should be page 370.  I think it's three pages.

THE COURT:  Let me take a look at it.

MS. JOHNSTON:  Your Honor I don't know how that works into the other call, quite frankly.

MR. MCKNETT:  To save time let me pull this out I'll take a look at it and resubmit it if I still want to bring nit {sglfrjts} {glfrj} take a look at it because I'm not sure this is appropriate.  As for now I won't permit number B 5726.  All right then you have B 5727 designated on page 368.  I'ming {g}.

THE COURT:  Mr. McKnett.

MR. MCKNETT:  They go together and if the first one doesn't go in then.

THE COURT:  I will put no on that and we'll come back.  Now I skipped over two calls of Mr. {mont} ma {ra} no's, call B 5484.

MR. MONTEMARANO:  A short call to Ms. West about clothing that I within the to use the following one is a call with {kef} inScott Your Honor has already ruled on a prior {kef} inScott rule call.

THE COURT:  I will let you use the first but not the second.

MR. MONTEMARANO:  Thank you.

THE COURT:  Page 37three.

MR. MARTIN:  Withdrawn.

MR. MCKNETT:  Your Honor, I've looked at 5727 and and I can pull that one out.  I don't need that one.

THE COURT:  57-

MR. MCKNETT:  B 5727  {sglfrjts} {sglfrj} you're going to withdraw that.

MR. MCKNETT:  I'll withdraw that {sglchblingts} {sglfrjts} okay.

MR. MARTIN:  619 on page 37three is withdrawn.

THE COURT:  Juan withdrawn? {sglfrjts}.

MR. MARTIN:  Yes, sir {jons} I.

MS. JOHNSTON:  Aam lost right now.  I don't know

what Mr. Martin just did.

THE COURT:  What Mr. Martin just did was to withdraw call B 6189 at page 37three.  What Mr. McKnett did was to withdraw call B 5727 at page 368.

MS. JOHNSTON:  I'm good then {chl} thank you Your Honor.

THE COURT:  We're now on A 1596 at page 378.  Mr. McKnett.

MR. MCKNETT:

MS. GREENBERG:  Your Honor pus {t} to be clear where the government's transcripts are in there, counsel is going to take them out.

THE COURT:  Yes, all of these are coming out.

MR. MCKNETT:  We're at B 7733, Your Honor.

THE COURT:  New York City A 1596 at page 378.

MR. MCKNETT:  Okay.

THE COURT:  I don't know if this is your call.  It says it is.

MR. MARTIN:  Yes, it is.

MS. JOHNSTON:  It's another {kef} inScott call about what size shoes {har} {vi} Washington wears.

THE COURT:  I'm not going to permit that.  That's not something that is fair cross-examination of the witness on his opinions.  B 7733 on page 38seven.

MR. MCKNETT:  Yes, Your Honor.  Your Honor, this

-- the government play played call number -- let me find
it here.

         THE COURT:  A 1670?

         MR. MCKNETT:  It's a call that starts out with Ms.
Ali asking Ms. Martin did you get {bing} {wr567bd} then
it's Ms. Martin interrupts and says yes, I got it or yes
I have it, words to that effect.  I thought it had that
call right here but I don't seem to have it.  In any
event, the agent opined that that was a reference a coded
reference by my client asking Ms. Martin whether {nort}
she had gotten drugs and then his opinion was that Ms.
Martin had indicated yes, she had -- I got it.

         THE COURT:  Okay.

         MR. MCKNETT:  Call B 7733 puts that call in
context and challenges the agent's opinion because in
call 7733, Ms. Martin add Ms. Ali talk in great detail
about how Ms. Ali had been notified from the post office
that there was a certified letter addressed to them that
the mailman had try today {cifr} deliver it but it called
for a receipt and Ms. Ali was asking Ms. Martin if she
could to the post office and pick up the certified letter
for her -- for her husband for accurately the next day or
so and Ms. -- and then the call the government played is
Ms. Ali checking with Ms. Martin as to whether or not she
was able to pick up the certified letter and Ms. Mat inis

telling her yes, she did.

THE COURT:  All right I'll let you play that.

THE COURT:  All right.  Call B 7757 on page 39one.

MS. JOHNSTON:  That's Gilbert Williams call Your Honor having to do with.

MR. MCKNETT:  This is Ms. Ali talk {toing} gill Williams about tickets.  You need to get me some $75 tickets some top of the line.  I'll sell my tickets if you get me the $75 tickets and once you get into the rest of the conversation it's clear that they're talking about ticket toss a show somewhere {scoment} these are the same codes, the same numbers that detective Sakala indicated were in his opinion frequently references to drugs and the purchase of drugs.

MS. JOHNSTON:  Agent Sakala never said that Mr. Williams was involved in any calls where the code tickets referred to drugs.  He was very specific that Mr. Williams was involved in the concert promotion business and not in reference to any other illegitimate use of the word tickets, so it doesn't go to his opinion in relation to the parties 'conversation {ws} Mr. Williams.

THE COURT:  Would it not go into his opinion that when Ms. Ali and Ms. Martin used the term tickets they were referring to drugs?  {jons} John Ms. Martin wasn't a party to this call {sglfrjts} {sglfrjt} no I understand

that.  Would it go to test that opinion?

MS. JOHNSTON:  I don't believe so Your Honor because it's in the a conversation -- they don't have any conversation {ws} Ms. Martin and Mr. Will {sproums} where they {ooefr} talking about tickets.  The agent specifically said go back that that there enwere plenty of calls where ticket {wrs} use that had we heard about actual tickets for concerts for air plain planes for use cruises this is an example zero one of those call that is is con sis ten with his testimony not inseason inconsistent -- {sglfrjts} {glfrjts} I agree.  I don't think it's inconsistent with the opinions he gave of Ms. Ali so I won't permit that one.

MR. MCKNETT:  Your Honor if I may respond the inconsistencies is that the agent's opinion seem today be when Ms. Ali talks to Ms. Mar inabout tickets they {ooefr} talking about {pwruing} drugs but when Ms. Ali talks to somebody else about ticket tickets they're not and this goes to address that ass peck of the witness 'opinion.

MS. JOHNSTON:  I think court has already allow inside calls where Ms. Martin and Ms. Ali talked about tickets that her daughter {trooes} {sa} {wawingt} bought so there are call that is the court --

THE COURT:  It's short I will let this call come

in just for that purpose.

Okay.  401, call B {vom} 15.  Neat.

MR. MCKNETT:  Your Honor I believe this is another call concerning the business relationship the entertainment business relationship between Ms. Martin and Ms. Ali.  I also wanted to get it in for the portion of the first page.  Actually, I take it back it's the first page that's relevant here.  This is the entire call.  The government introduced an excerpt of call B 7815.  It's the one I referred to earlier with Ms. A where Ms. Ali asked were you able?  Ms. Martin says yeah {vi} the {yai} I have it that's the one the government the agent {sid} said that {wawz} drug conversation but this is the call that follows the one about Ms. Ali asking Ms. Martin to pick up a certified letter {fo} her at the airport the day before.  And it gives a different interpretation it {dwif} s a basis for a different interpretation nondrug related interpretation of this conversation.

THE COURT:  All right I'll permit that.  408?

MR. MCKNETT:  I can {sglfrjts} {sglfrjt} do some redacting.

MR. MCKNETT:  I can redact just about all of this but I wanted -- the government did the redaction and they wanted to make the I wanted to make the entire

1  conversation to {stur} the jury if they want today hear

2  it {sglfrjts} {sglfrjt} Page 408, call 82202.

3          Note wit {uz} A 2202 not eight.

4          MS. JOHNSTON:  It's about whether {nort} Ms.

5  Martin is available for a cookout.

6          THE COURT:  Why is her availability.

7          MR. MCKNETT:  I can withdraw that.  That's fine.

8  {sglfrjts} {sglfrjt} speaking of cookouts GSA just turned

9  the air conditioning off to this courtroom.  We will be

10 cooked out of here very shortly with the temperature

11 outside being a hundred degrees but we only have one call

12 to go.  A 32 on Page 410.

13         MR. MCKNETT:  Your Honor this one I'm in the sure

14 if the government played this one or not.  This had to do

15 with delivery of money to Ms. Martin by her -- by Ms.

16 Ali's husband for Ms. Ali's benefit and it's again the

17 government's agent's testimony was that his opinion

18 {firs} vir all {khul} ly all the time to pa {pra} phrase

19 what my client was talking about delivering money to Ms.

20 Martin and it was drug related and I think I will be able

21 to establish other times other reasons for Ms. Ali to

22 {dlifr} money or have money {dli} today Ms. Martin not

23 involving drugs.

24         THE COURT:  If you're try {toing} establish the

25 truth of what's in this conversation that's different

than attacking the validity of the opinion of Sergeant
Sakala.

MR. MCKNETT:  His opinion was that when my {klin}
was delivering money to Ms. Mat inthat it was payment for
drugs.

MS. JOHNSTON:  And that it that would you say was
not his opinion Your Honor he look at the ledgers and
{saitd} here she an {rawp} ran up a charge --

MR. MCKNETT:  I'll withdrawal withdrawal it.

THE COURT:  {you} all right it's withdrawn.  I
think that's all the {kawls} acorrect or not.

MR. MONTEMARANO:  Yes Your Honor {sglchblingts}
{sglfrjts} I think {vi} try today be a fair steward on
what can come in and what can't come in.  {noy} it east
{nou} it's up to the defense to put this together in a
new and improved notebook with redactions with {e} limb
re{ip} {e} limb neighs we limb nation of the government
transcript portions and I think we get this down to a
reasonable size that can give sergeant {sa} {ka} get
Sergeant Sakala on the stand and off sometimes in our
sometime in our collective lifetimes.

MR. MCKNETT:  Your Honor {vi} a question.  I may
be opening up a different can of worms Your Honor {worp}
s Your Honor but we {ooef} addressed the admissibility of
these conversations with regard to cross-examination of

agent Sakala.

THE COURT:  Right.

MR. MCKNETT:  I have pounded other reasons for entering some of these conversations if and when my client should testify.  Has anything we've done today affected that issue.

THE COURT:  No.  I mean I've not addressed that issue.

MR. MCKNETT:  All right Your Honor.

THE COURT:  I'm try {toing} address {soyt} that when Sergeant Sakala comes here we know what can be done and what can't be done and be reasonably efficient with his examination.  I have not addressed that.

MR. MONTEMARANO:  Your Honor I would {tlibing} clarify status of Ms. West.

THE COURT:  Yes.

MR. MONTEMARANO:  The government has suggest that had they have information that she was selling stolen clothing to my client.  It seems that would at the very least be 404 B. as to my client and as a recipient of stolen property, but beyond that I will be calling Ms. West I will be telling her to expect to hear from somebody on behalf of the court as counsel since the government suggested that there's a fifth amendment issuely provide her cell {r57b} number she is here in the

1   state nowly provide her cell known number to your law

2   clerk however I would like to get some information about

3   this because she will certainly ask me what is this

4   they're saying about me and I'd like to be able to advise

5   her at least by way of information.

6           MS. JOHNSTON:  I think the calls speak for

7   themselves and in great measure if anyone looked at them

8   in {ne} {dmi} detail one would know she was pawning or

9   selling stolen goods that she would go out and steal from

10  different score stores and ask for lists in terms of what

11  people wanted and I don't think the government is under

12  any obligation to tell counsel anymore than that and the

13  government has done what it {thooz} do so the court can

14  provide Ms. {wes} with the an attorney to advise her of

15  her rights.

16          MR. MONTEMARANO:  That {aes} fine Your Honorly

17  tell her that and she can go from there.  I know nothing

18  about it.  ly Advise her either she will understand or

19  she won't.

20          THE COURT:  {doy} have a reviseed verdict form?

21  {sz} has that been submitted?

22          MS. GREENBERG:  Your Honor {btion} until the Ms.

23  Johnston -- {sglfrjts} {sglfrj} we do have it okay.

24          MS. GREENBERG:  Removed a count -- considering

25  removing a count.

1          THE COURT:  Okay.

2          MS. GREENBERG:  I haven't done that yet because

3  identify been here.

4          THE COURT:  Give me a new and improved version as

5  soon adds you can {chl} anything further counsel?

6          MS. GREENBERG:  Your Honor, one other thing.  I

7  hate to do this at this late hour but Mr.  Ward has filed

8  a motion relating to Ms. Dobie's examination tomorrow and

9  we're add addressing that first thing if I may summarize

10  it in two sentences -- two minutes for the court

11  {sglfrjts} {sglfrjt} okay summarize away.

12          MS. GREENBERG:  During the bench conference Mr.

13  Ward wanted to bring up a call B 238four note wit {uz} B

14  28four relating to Ms. Dobie whether or not there was a

15  conversation between Ms. Dobie and Ms. Martin.  It was

16  not through the -- he didn't want to introduce the

17  transcript he wanted to question Ms. Dobie about that and

18  the reason he said that was relevant Your Honor is

19  because there's a call B 289  where {deingt} Sakala

20  testified that hammer meant gun and that's all he said is

21  that hammer meant gun and so now Mr.  Ward wants to bring

22  in a call that happened prior to that call to say that

23  they were joking when they talked about a gun in a later

24  call which first makes no logical sense if he wants to

25  bring out the fact that they were joking about talking

about a gun it should be a subsequent call instead of a
precedent call.

Secondly Your Honor, I submit that his argument that 806
allows the admission of this testimony is misplaced.
What he really appears to do is the declare {ent} would
be Ms. Martin and if Ms. Martin testified that Ms. Dobie
had a gun then he {ooed} be entitled to cross exam
examine her with relation to other calls in which she
joked about Ms. Dobie having a gun but he wants to ask
his client if in an earlier conversation she was joking
with Ms. Martin about her possessing guns.  So, one,
honestly {ket}'s not at all add {miz} {bl} under any
theory of hearsay but secondly Your Honor Mr.  Ward is
going to open a whole can of worms and I just don't want
to up at the bench after he does this relating this, but
he's try today keep out her prior firearms conviction the
court has {pwr} very careful of that.

There are many other calls relating to Ms. Dobie talking
about firearms and if he want toss go down this road it
{oo} {aes} very slippery slope and therefore the
government's argue {sment} twofold it's not at all as add
{miz} {bl} it's {rae} clearly hearsay and {seblingd} ly
Your Honor we're opening {tup} door to the government on
rebuttal {qush} on on cross-examination I'm sorry asking
her about times where she did talk about guns {tawm}

times when she possessed guns and admitted to {pros} s
{posz} {ses} inging guns which was her 1988 conviction to
rebut the testimony that she {uz} joking a about gun so
that's where we're at ward ward Your Honor despite the
government's inter{ar} {um} {arling} ment about slope
slippery slopes an opening up doors and so forth which is
absolute I nonsense, frankly, {ket} is clear under the
cases that I've cited -- if the court wants know argue
themly be glad to but thousand government can stand
before the court with a straight face and {sthai} this
evidence is not admissible is almost laughable.
Who opened the door by bringing out the facts through or
the opinion through Sakala that indeed a hammer on the
trigger on the hammer or whatever it was meant that my
client was carrying a gun?  It's there.  It's before the
jury.  I'm entitled to attack that opinion of Sakala by
bringing in other conversation which my client had with
Ms. Martin in which Ms. Martin says that she joked about
{sglfrjts} {12K3R50EU7B8G9S} do {vi} the transcript of
that call?  Ward ward I'm so {ri}.
          THE COURT:  Do {ri} the transcript of that call?
Ward ward there is no transcript of the call.  I'm going
to play the call and first of all I'm going ask her about
it and then when Sakala gets on the stand I intend to
have it played and ask Sakala if that has any effect on

his opinion or not.

THE COURT:  Who are the parties to the conversation you want to play?  Ward ward the party toss the conversation are Martin and my client.

THE COURT:  All right.

MS. GREENBERG:  Your Honor just to be clear ward ward the point is the government -- I don't understand this, frankly.  The government knows about both of those calls.  They know that 28four calls into question the opinion of {sa} {ka} {la}, Sakala knows about the other call and that alone calls into question his opinion and they want to leave this jury with the impression that my client was carry {ting} around a gun when they know well and that that's not a fact.  But this grant case in particular I suggest is right on point and I mean I will be glad to address the case but it's before the court.

THE COURT:  Let me do this, counsel.  It's 7:10 p.m. ward ward I know.

THE COURT:  I'm a one week after surgery and I'd like to go home and go to bed and be {pwsh} -- fit a as a fiddle to talk about this tomorrow morning on a recess or something.

MS. GREENBERG:  Your Honor it's the {firts} thing he's bringing up in the morning.

THE COURT:  We'll {pwre} bring it up on in the

morning we'll have the jury in the box at ten o'clock.

ly Be here at 910 anyone its Of teen.

MS. JOHNSTON:  Nine o'clock you're scheduled for nine o'clock in the morning.

THE COURT:  I mean nine o'clockly be here at ten minutes of nine.

(Off the record at 7:12 p.m.)

**CERTIFICATE**

I, Tracy Rae Dunlap, RPR, CRR, an Official Court Reporter for the United States District Court of Maryland, do hereby certify that I reported, by machine shorthand, in my official capacity, the proceedings adduced upon the Pretrial Proceedings in the case of UNITED STATES OF AMERICA versus PAULETTE MARTIN, et als, Criminal Action Number RWT-04-235 on July 31, 2006.

In witness whereof, I have hereto subscribed my name, this 1st day of April 2009.

_____/S/_____
TRACY RAE DUNLAP, RPR, CRR
OFFICIAL COURT REPORTER