**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――――――――

**No. 07-4059**

―――――――――――――――

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

LEARLEY REED GOODWIN, a/k/a Goodie, a/k/a Lonnie Ross,

        Defendant - Appellant.

―――――――――――――――

**No. 07-4060**

―――――――――――――――

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

PAULETTE MARTIN, a/k/a Paulette Murphy, a/k/a Paulette Akuffo, a/k/a Paula Murphy, a/k/a Auntie,

        Defendant - Appellant.

―――――――――――――――

**No. 07-4062**

―――――――――――――――

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

LANORA N. ALI, a/k/a La Nora Ali-Gardner,

                  Defendant - Appellant.

---

**No. 07-4063**

---

UNITED STATES OF AMERICA,

                  Plaintiff - Appellee,

      v.

REECE COLEMAN WHITING, JR., a/k/a Guy Counts, a/k/a Cups, a/k/a Dino Whiting,

                  Defendant - Appellant.

---

**No. 07-4080**

---

UNITED STATES OF AMERICA,

                  Plaintiff - Appellee,

      v.

DERREK LEWIS BYNUM, a/k/a Bo,

                  Defendant - Appellant.

---

**No. 07-4115**

---

UNITED STATES OF AMERICA,

                  Plaintiff - Appellee,

      v.

LAVON DOBIE, a/k/a Becky Parker, a/k/a Theresa Waller, a/k/a Dobie Parker,

                Defendant - Appellant.

---

Appeals from the United States District Court for the District of Maryland, at Greenbelt.   Roger W. Titus, District Judge. (8:04-cr-00235-RWT-3; 8:04-cr-00235-RWT-1; 8:04-cr-00235-RWT-10; 8:04-cr-00235-RWT-6; 8:04-cr-00235-RWT-7; 8:04-cr-00235-RWT-9)

---

Argued:  September 20, 2011         Decided:  November 2, 2011

---

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded with instructions by unpublished opinion.   Judge Duncan wrote the opinion, in which Judge Motz and Judge Gregory joined.

---

**ARGUED:** Marc Gregory Hall, HALL & CHO, PC, Rockville, Maryland; Alan Dexter Bowman, Newark, New Jersey; G. Alan DuBois, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellants.  Anthony William Vitarelli, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** Michael D. Montemarano, MICHAEL D. MONTEMARANO, PA, Elkridge, Maryland, for Appellant Martin; Anthony D. Martin, ANTHONY D. MARTIN, PC, Greenbelt, Maryland, for Appellant Goodwin; Timothy S. Mitchell, LAW OFFICE OF TIMOTHY S. MITCHELL, Greenbelt, Maryland, for Appellant Bynum.   Rod J. Rosenstein, United States Attorney, Deborah A. Johnston, Bonnie S. Greenberg, Stefan D. Cassella, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; Lanny A. Breuer, Assistant Attorney General, Greg D. Andres, Acting Deputy Assistant Attorney General, Daniel Steven Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Learley Goodwin, Paulette Martin, Lanora Ali, Reece Whiting, Jr., Derrek Bynum, and Lavon Dobie (collectively "Appellants") were tried together and convicted of conspiracy and other offenses in relation to the distribution of narcotics. On appeal, Appellants raise numerous claims, both collectively and individually, challenging their convictions and sentences.[1] For the reasons that follow, we affirm the judgment of the district court except as to Dobie's sentence, which we vacate. We remand the case to the district court for resentencing.

I.

This case, involving a large number of individuals over an extended period of time, has produced a complex factual background. While Appellants bring multiple claims on appeal, oral argument focused on the claims of three appellants: Ali, Whiting, and Dobie. One of these claims is a collective challenge, whereas the rest are individual to Ali, Whiting, and Dobie, respectively. We have considered Appellants' remaining

---

[1] Goodwin, Martin, Bynum, and Dobie also challenge the forfeiture of their assets pursuant to 21 U.S.C. § 853. The same appellants, sans Dobie, bring identical challenges to the forfeiture in a subsequently filed appeal. We address these challenges to the criminal forfeiture in a separately filed opinion in Case No. 10-5301.

claims on appeal and conclude they lack merit. Therefore, for ease of reference, we set forth the facts relative to Ali, Whiting, and Dobie, who make the arguments warranting the most extensive, individualized discussion. We provide additional information as necessary.

A.

This case involves a large drug trafficking organization that supplied drugs throughout the District of Columbia, Maryland, and Virginia. Paulette Martin was the key player in this organization. Martin acted as a major drug supply intermediary, connecting wholesale drug suppliers to street-level retail dealers. From March until June 2004, investigators, acting with court authorization, tapped Martin's phone lines. Based on information gathered from those intercepts and ensuing investigations, authorities arrested over thirty individuals and executed more than twenty search warrants.

Ali, Whiting, and Dobie were connected to the organization in different ways. Ali was a close friend and drug customer of Martin's. Over the period of the investigation, Ali contacted Martin by phone an average of three times per day. Authorities intercepted numerous phone calls during which Ali sought drugs from Martin. Authorities also recorded Ali discussing with Martin the arrests of other members of the conspiracy. During

5

the investigation, intercepted calls indicated that Martin was becoming concerned that authorities would raid her residence and that she had decided to relocate her drug business from her residence to a performing arts school that she owned. Subsequently, surveillance cameras captured Ali helping Martin move bags from Martin's residence to the performing arts school. Ali also stored in her home a locked suitcase belonging to Martin. Upon raiding Ali's residence, inside the suitcase authorities discovered $129,600 in currency and several papers bearing Martin's name.

Whiting was another drug customer of Martin's. In addition to buying drugs from Martin, Whiting also purchased drugs for resale from another member of the conspiracy, Emilio Echarte, one of Martin's drug suppliers. To repay a debt owed to Echarte relating to the resale of drugs, Whiting drove Echarte to pick up drugs from a bus arriving in Virginia.

Dobie purchased heroin and cocaine from Martin for the purpose of resale. Authorities recorded Dobie on multiple occasions discussing with Martin the resale of drugs. Authorities also recorded Dobie discussing with Martin the arrest of another member of the conspiracy. Authorities raided Dobie's residence on June 1, 2004, and found 11.65 grams of heroin, drug paraphernalia, and two handguns.

B.

Count One of the indictment on which they were tried charged Ali, Whiting, and Dobie with violating 21 U.S.C. § 846 by conspiring among themselves and with others to distribute and possess with intent to distribute five kilograms or more of cocaine, one kilogram or more of heroin, and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841. Count Sixty-One of the indictment charged Dobie with possession of a firearm in furtherance of a drug trafficking conspiracy, in violation of 18 U.S.C. § 924(c). The indictment also charged Ali, Whiting, and Dobie with multiple counts of using a communication facility in the commission of a felony.

On August 31, 2006, after 42 days of trial and deliberations, a jury convicted Ali, Whiting, and Dobie on multiple counts related to the drug conspiracy. The jury convicted each on Count One of the indictment, as well on multiple counts of using a communication facility in the commission of a felony. The jury also convicted Dobie on Count Sixty-One.

The district court sentenced Ali to a total of 120 months' imprisonment, Whiting to life imprisonment, and Dobie to 206 months' imprisonment. This appeal followed.

II.

Ali, Whiting, and Dobie collectively challenge the admission of expert testimony from government witnesses regarding drug trafficking methods. Individually, Ali challenges her § 841 conviction on Count One. Dobie individually challenges her § 924(c) conviction on Count Sixty-One as well as her sentence on Count One. Also individually, Whiting challenges the adequacy of the notice provided to him regarding the government's intention to seek enhancement of his sentence pursuant to 21 U.S.C. § 841, based on previous drug offense convictions. We address each of these claims in turn.

A.

We first consider the collective argument that the district court erred by allowing two government witnesses to testify both as fact and expert witnesses without properly bifurcating their testimony. We review a district court's decisions regarding expert testimony for abuse of discretion. United States v. Baptiste, 596 F.3d 214, 222 (4th Cir. 2010).

Detectives Christopher Sakala and Thomas Eveler were two of three case agents who led the investigation that culminated in the arrests of Appellants. Beyond the investigation related to this case, at the time of trial, Sakala and Eveler had years of experience investigating drug trafficking conspiracies, which, combined, included engaging in thousands of drug transactions,

8

dealing with numerous informants, and participating in dozens of wiretap investigations.

On June 13, 2006, Sakala testified for the government as a fact witness. Sakala described, inter alia, the progression of the investigation, the use of wiretaps, and the intercepted phone conversations. Sakala returned to the stand a week later, on June 20, 2006, and gave extensive expert testimony. Upon returning to testify, the government walked Sakala through his narcotics background and training to lay the foundation for his expert testimony. The purpose of Sakala's expert testimony was to aid the jury in interpreting the intercepted calls presented to it. Sakala gave his expert opinion, for example, as to the true meaning of code words used by members of the conspiracy in their recorded phone conversations.

While not entirely clear from the record, it appears that Eveler first testified as a fact witness on July 19, 2006, and then returned to the stand to testify as an expert witness on July 25, 2006. Eveler's testimony was very similar to that of Sakala's.

Appellants argue that the district court abused its discretion in allowing the dual-role testimony because the "factual testimony was not bifurcated or delineated in any fashion from [the] expert/opinion testimony, and was not in any

way differentiated as to its sourcing or basis." Appellants'
Br. 68.

In Baptiste, this court outlined four safeguards concerning
bifurcation and delineation that a district court should
consider in exercising its discretion to allow dual-role fact
and opinion testimony. 596 F.3d at 224. First, a district
court may give a cautionary instruction to the jury reminding
the jury that it is up to it to determine the weight given to
testimony. Id. Second, defense counsel may cross-examine the
agent about his expert opinion, enabling the defense to clarify
the role of the witness at that point in the trial. Id. Third,
the government is required to establish a proper foundation for
the witness's expertise. Id. Fourth, the government may
distinguish expert opinion testimony from fact testimony by
prefacing a witness's expert testimony with a request that he
base his answers on his expertise. Id. We also noted that, in
addition to these safeguards, a district court could reduce
juror confusion "by requiring the witness to take separate trips
to the stand in each capacity." Id. at 225 n.9.

It is clear from the record and not disputed by appellants
that (1) the district court instructed the jury as to its
discretion in weighing testimony, (2) defense counsel cross-
examined Sakala and Eveler in both capacities, (3) the
government laid a proper foundation for Sakala and Eveler's

expert testimony, and (4) the government prefaced its questioning of Sakala and Eveler in their expert capacities by asking them to base their answers on their expertise. The district court and the government thus utilized each safeguard enumerated in Baptiste. The government also took the additional step of having Sakala and Eveler take separate trips to the stand--in each instance approximately a week apart--to clearly separate their fact testimony from their opinion. Accordingly, we find no abuse of discretion in the admission of Sakala and Eveler's testimony.

B.

We now turn to the consideration of the individual arguments on appeal. We begin with Ali's challenge to her conviction on Count One, for conspiracy to distribute narcotics. Ali advances two arguments in support of this challenge. First, Ali argues that there was insufficient evidence to support the conviction. When reviewing a challenge to the sufficiency of the evidence underlying a conviction, we are limited to determining whether, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt. United States v. Young, 609 F.3d 348, 354-55 (4th Cir. 2010). In the alternative, Ali argues--for the first time on appeal--

that there was a fatal variance between the conduct charged in Count One, the evidence introduced at trial as to Count One, and the district court's jury instruction on Count One. Because Ali did not raise this argument in the district court, it is subject to plain error review. See United States v. Jeffers, 570 F.3d 557, 567 (4th Cir. 2009). To show plain error, Ali must "identify an error that is plain and that substantially affects [her] rights." Id. We consider each argument in turn.

1.

Ali first argues that the evidence presented to the jury showed only that she and Martin had a buyer/seller relationship. She contends the evidence was insufficient to connect her to the conspiracy and thus was insufficient to support her conviction on Count One.

In United States v. Strickland, 245 F.3d 368 (4th Cir. 2001), this court laid out what the government must prove to connect an individual to a drug conspiracy. First, the government must prove the existence of the drug conspiracy. Id. at 385. "Once a conspiracy has been proved, the evidence need only establish a slight connection between any given defendant and the conspiracy to support conviction." Id. The government can establish such a connection by showing that a defendant had knowledge of the conspiracy and knowingly and voluntarily participated in the conspiracy. Id. This connection need only

12

be "slight" because "a defendant need not have knowledge of all of . . . the details of the conspiracy, and . . . may be convicted despite having played only a minor role." Id.

Ali does not contend that the government failed to prove the existence of the drug conspiracy described in Count One. We therefore focus on Ali's connection to that conspiracy. The evidence, when viewed in the light most favorable to the government, showed that Ali had frequent contact with Martin, on the order of several times daily, and discussed with Martin the arrests of other coconspirators. It was reasonable to infer from this evidence that Ali had knowledge of the conspiracy.

The evidence also showed that Ali held drug proceeds for Martin and aided in the relocation of Martin's drug business when Martin feared detection. From this evidence, it was reasonable to infer that Ali knowingly and voluntarily played at least a minor role in the drug conspiracy. See United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984) (holding that knowing and voluntary participation in a conspiracy "can be shown by circumstantial evidence such as [a defendant's] relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude, conduct, and the nature of the conspiracy"). Accordingly, we conclude that the evidence presented at trial was sufficient to support the jury's

conclusion that Ali was involved in the drug distribution conspiracy as more than a mere purchaser of drugs.

2.

Ali alternatively argues that, although she was charged in Count One for participating in a single, large conspiracy, the evidence established two separate conspiracies: one uncharged conspiracy between only Ali and Martin, and a larger conspiracy charged in Count One between Martin and the other co-defendants. Ali contends that this created a fatal variance between the indictment and the proof at trial and that the district court compounded this variance by failing to instruct the jury that it must acquit her if it found two distinct conspiracies.

A fatal variance occurs "[w]hen the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment." United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). To determine if a variance occurred between Count One and the evidence as it relates to Ali, we must compare that evidence to what is necessary to prove a single conspiracy.

In United States v. Johnson, 54 F.3d 1150 (4th Cir. 1995), this court explained that "[a] single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and

14

the same product." Id. at 1154 (internal quotations omitted); see also Jeffers, 570 F.3d at 568 ("[A] drug conspiracy may 'result[] in only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market.'" (quoting United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993)).

The record is sufficient to show that Ali knew of the existence of the larger conspiracy and knowingly participated in it. As noted above, Ali's discussion with Martin of the arrests of other members of the conspiracy demonstrated her knowledge of the larger conspiracy in which Martin was involved. As also noted above, Ali assisted Martin by helping Martin relocate her drug business and by safeguarding Martin's drug proceeds.

In sum, the evidence showed Ali knew of the larger conspiracy in which Martin was involved and helped Martin in her attempt to avoid detection--and thus aided that larger conspiracy--by relocating the drug business. Given the inferences to be drawn in favor of the government, this evidence was sufficient to demonstrate that Ali was knowingly pursuing the same objective as all other members of the drug trafficking conspiracy charged in Count One: aiding drug distribution in the Washington, DC, area. Thus, there was no variance between

either the proof at trial or the jury instruction and the conduct charged in Count One.

C.

We next consider Dobie's challenge to the sufficiency of the evidence supporting her conviction on Count Sixty-One for possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). As we have set out, on a sufficiency challenge, our review is limited to determining whether the evidence, viewed in the light most favorable to the government and with all reasonable inferences drawn in favor of the government, supports a rational determination of guilty beyond a reasonable doubt.

Dobie begins by correctly noting that Count Sixty-One lists the conspiracy charged in Count One as the predicate offense for the violation of § 924(c). Dobie does not challenge her conviction on Count One and does not dispute that her possession of the firearms was contemporaneous with the drug conspiracy charged in Count One. Dobie insists, however, that the government failed to put forward proof to show that her possession of the firearms was in furtherance of the conspiracy charged in Count One. Because authorities found the firearms near drugs, viz. 11.65 grams of heroin, Dobie assumes that to show that her possession of the firearms was in furtherance of the conspiracy charged in Count One, the government was required

to prove that the drugs found with the firearms were connected to that drug conspiracy. Proceeding from this assumption, Dobie claims that she was involved in multiple drug conspiracies beyond the one charged in Count One and that the government failed to provide sufficient evidence to show the heroin found with the firearms was a part of the predicate conspiracy charged in Count One rather than one of the other conspiracies. Without this connection, Dobie argues, the government could not show that her possession of the firearms was in furtherance of the conspiracy charged in Count One.

The government responds to Dobie's argument by proceeding from the same assumption that the nexus between the firearms and the conspiracy charged in Count One must be established by connecting the heroin found in proximity to the firearms to the drug conspiracy charged in Count One. To do this, the government relies on a recording of a phone call between Dobie and Martin--the leader of the conspiracy charged in Count One-- that took place three weeks before the firearms and heroin were seized. In this phone call, Martin sought heroin for another person and inquired whether Dobie had any in her possession. Dobie responded that while she recently had as much as 50 grams of heroin in her possession, she had sold some and at the time of the call had only "10 or 15" grams remaining. J.A. 1052. Dobie and Martin then negotiated over the price. The government

argues that because the amount of heroin seized at Dobie's residence was 11.65 grams, and three weeks prior to this seizure Dobie was discussing selling through Martin "10 or 15" grams of heroin, a reasonable finder of fact could rationally conclude that the heroin found at Dobie's residence was the same heroin discussed in the phone call. The finder of fact could thus connect the heroin to the conspiracy charged in Count One. With this connection made, it is argued, a sufficient nexus exists between the firearms found in proximity to the heroin and the conspiracy charged in Count One.

Dobie does not challenge the possible existence of this connection but instead argues that to find such a connection would require a jury to pile inference upon inference, and thus, such a connection is insufficient to support a finding of guilty beyond a reasonable doubt.

Although the government's argument is tenable, we need not reach it to find the evidence underlying Dobie's 924(c) conviction to be sufficient. We have held that, in making the factual determination whether a defendant's possession of a firearm was "in furtherance" of the predicate drug trafficking crime, under § 924(c), "the fact finder is free to consider the numerous ways in which a firearm might further or advance" the conspiracy, including by providing security during drug transactions and helping defend turf. United States v. Lomax,

18

293 F.3d 701, 705 (4th Cir. 2002).[2]  Indeed, in Jeffers, we found sufficient evidence to uphold a § 924(c) conviction where no firearms or drugs were seized from the defendant, let alone together.  570 F.3d at 565-66.  We upheld the conviction because the evidence showed that the defendant possessed various firearms at different points during the time he participated in the conspiracy and also showed that the defendant was willing to use a firearm in self-defense should it become necessary.  Id. at 565-66.

Applying our precedent, we conclude that the evidence presented by the government is sufficient to sustain Dobie's § 924(c) conviction.  Dobie does not deny that she possessed the firearms, or that she was involved in the conspiracy charged in Count One, or that she possessed the firearms during that conspiracy.  Once these facts were established, the jury was "free to consider the numerous ways in which" Dobie's firearms could have furthered this conspiracy.  It would be rational for a juror to conclude, for example, that the possession of firearms by some of its members made the conspiracy, as a whole,

---

[2]  As Lomax relates to Dobie's and the government's arguments, it stands for the proposition that while evidence showing that a firearm possessed by a defendant was found near drugs involved in the predicate offense may be sufficient to sustain a § 924(c) conviction, 293 F.3d at 705, it is not necessary.

19

more secure. In addition, the evidence showed that Dobie participated in the conspiracy as a retail dealer of drugs. Given the dangers facing a street-level drug dealer, it is rational to believe that her possession of the firearms aided her in this enterprise. Under the deferential standard of review we accord jury findings, there was sufficient evidence that Dobie's possession of the firearms furthered the goals of the conspiracy as necessary to support a § 924(c) conviction.

D.

We next consider Dobie's challenge to her sentence for her conviction on Count One. Review of any sentence proceeds in two steps. First, we must determine whether the district court committed any procedural error, such as improperly calculating the guidelines range or failing to adequately explain the chosen sentence. United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). If we conclude that the district court has not committed procedural error, "we consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Id. (internal quotations omitted).

As relevant to this appeal, at her sentencing hearing, Dobie requested two downward adjustments to her offense level for Count One. Dobie requested a "minimal role" reduction of four points or, alternatively, a "minor role" reduction of two

points.[3]  The relevant portion of the sentencing hearing begins with the district court stating, "In this case I conclude that [Dobie] is not entitled to a reduction [f]or a mitigating role."[4] J.A. 2954.  The district court proceeds from this general statement to reject Dobie's "argument in support of a four level reduction" because "it is clear that Ms. Dobie obtained drugs from Ms. Martin . . . for resale, and I conclude that she's not entitled to a reduction for a minimal role."  J.A. 2954-55. Thus, the district court rejected Dobie's request for a <u>minimal</u> role adjustment but at no point specifically addressed or rejected Dobie's request for a <u>minor</u> role adjustment.  The district court went on to calculate an offense level of 28 for Count One.  This, combined with a criminal history category of V, yielded a guidelines range of 130 to 162 months.  The district court sentenced Dobie to 146 months' imprisonment on Count One.

---

[3]  Section 3B1.2 of the United States Sentencing Guidelines describes these adjustments.

[4]  The court reporter transcribed the district court as saying, "not entitled to a reduction <u>or</u> a mitigating role" (emphasis added).  Based on the context of the district court's consideration, we believe this to be a scrivener's error.  <u>See, e.g.,</u> J.A. 2953-54 (quoting the district court as saying Dobie "also contends there should be an adjustment <u>for</u> a mitigating role" (emphasis added)).

Dobie argues that the district court committed procedural error by failing to consider her request for a minor role adjustment in calculating her sentencing guidelines range.

In Carter, this court held that a district court commits procedural error requiring remand when it fails to justify an aspect of a defendant's sentence "with an individualized rationale." 564 F.3d at 328-29. Here, the district court failed to provide an individualized rationale for rejecting Dobie's request for a minor role adjustment. Therefore, we vacate Dobie's sentence as to Count One and remand to the district court for resentencing for the purpose of considering Dobie's request for a minor role adjustment.

E.

We next consider Whiting's argument that the information filed by the government advising Whiting that it would be pursuing an enhanced sentence pursuant to 21 U.S.C. § 841 failed to provide him adequate notice as required by 21 U.S.C. § 851. We review de novo questions regarding the adequacy of a 21 U.S.C. § 851 notice. See United States v. Ladson, 643 F.3d 1335, 1341 (11th Cir. 2011).

As it relates to Whiting's sentence for his conviction on Count One, 21 U.S.C § 841 provides that anyone so convicted after "two or more prior convictions for a felony drug offense have become final, . . . shall be sentenced to a mandatory term

22

of life imprisonment." 21 U.S.C. § 841(b)(1)(A). A "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs." Id. at § 802(44). Section 851 establishes a prerequisite for such enhancement, requiring the government, prior to trial, to file an information "stating in writing the previous convictions to be relied upon." Id. at § 851(a)(1).

Here, the government filed an information prior to trial informing Whiting that it intended to rely on five prior convictions to enhance his sentence pursuant to § 841. Because the relevant part of § 841 requires proof of two convictions, we focus on only two of the five convictions listed in the information. The information noticed a "[c]onviction for a heroin offense for which [Whiting] was sentenced to 186 months' incarceration, which was later reduced pursuant via a Rule 35 [sic] to 72 months' incarceration, in the Eastern District of Virginia, Docket No. 94CR00108-101 (Ellis, J.)" ("Virginia conviction"). J.A. 506. The information also noticed a "[c]onviction for possession of cocaine in Mexico, Docket Number 153/84 (Chavez, J[.]), on or about February 1, 1986, for which [Whiting] received a sentence of eight years, three months [sic] incarceration" ("Mexico conviction"). Id. Attached to the

information was an uncertified copy of the final judgment from the Virginia conviction.

Whiting argues that the information filed by the government failed to provide him adequate notice of these convictions because the information did not come with certified copies of the records of convictions attached.

For an information to provide adequate notice as required by § 851, it must contain sufficient information to allow a defendant an opportunity "to identify [each] prior conviction and make an informed decision about whether to challenge the substance of the information." United States v. Severino, 316 F.3d 939, 943 (9th Cir. 2003); accord United States v. Beasley, 495 F.3d 142, 149 (4th Cir. 2007) (noting that the purpose of such an information is to give "the defendant an opportunity to challenge the use of the prior convictions and to prevent sentencing errors"). We have found no authority for the suggestion that adequate notice requires the provision of certified copies of the judgment.

The information filed by the government contained the date, docket number, judge, and sentence for both the Mexico and Virginia convictions. We conclude that these data were adequate to allow Whiting to identify the convictions and make an informed decision about whether to challenge their existence. Thus, the notice provided by the government satisfied § 851.

24

III.

For the foregoing reasons, we affirm the district court in all respects except as to the denial of Dobie's request for a minor role adjustment in calculating her sentence for her conviction on Count One. We vacate Dobie's sentence on Count One and remand to the district court for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART, AND</u>
<u>REMANDED WITH INSTRUCTIONS</u>