1               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
2                   SOUTHERN DIVISION

3  UNITED STATES OF AMERICA,      Criminal No.  RWT-04-0235-9

4        v.                       Greenbelt, Maryland

5  LAVON DOBIE,                   November 20, 2012

6          Defendant.            1:00 p.m.

7  -------------------------/

8               TRANSCRIPT OF RE-SENTENCING
          BEFORE THE HONORABLE ROGER W. TITUS
9              UNITED STATES DISTRICT JUDGE

10  APPEARANCES:

11  For the Government:    United States Attorneys Office
                        By: JONATHAN OPHARDT, Esquire
12                           DEBORAH JOHNSTON, Esquire
                        6500 Cherrywood Lane
13                      Greenbelt, Maryland 20770

14
    For the Defendant:    Law Offices of Mirriam Z. Seddiq
15                      By:  MIRRIAM Z. SEDDIQ, Esquire
                        3022 Javier Road
16                      Room 105A
                        Fairfax, Virginia 22031
17

18

19  Court Reporter        Lisa K. Bankins RMR
                        United States District Court
20                      6500 Cherrywood Lane
                        Greenbelt, Maryland 20770
21

22  Proceedings recorded by mechanical stenography,
    transcript produced by notereading.
23

24

25

1                    P R O C E E D I N G S

2              MR. OPHARDT:  Your Honor, Jonathan Ophardt for

3    the United States.  With me at counsel table is Deborah

4    Johnston, Assistant United States Attorney.  We are here

5    today in the matter of United States v. Lavon Dobie,

6    Criminal Number RWT-04-235-9.  We're here for

7    re-sentencing.

8              MS. SEDDIQ:  Good morning, Your Honor.  Mirriam

9    Seddiq on behalf of Lavon Dobie, who is seated at counsel

10   table with me today.

11             THE COURT:  We also have motions from Ms. Dobie.

12             MR. OPHARDT:  Yes, Your Honor.

13             THE COURT:  Why don't we hear the motions first?

14   She has a motion for retroactive adjustments for sentence

15   on the basis of the crack cocaine amendment.  Let me hear

16   your argument on that if you have any.  It's a pro se

17   motion.

18             MS. SEDDIQ:  Your Honor, it is a pro se motion.

19   And from my initial calculations and looking into it, I do

20   not believe it will change her sentence.

21             THE COURT:  The sentence was driven by the

22   heroin calculation.

23             MS. SEDDIQ:  Correct.  And it wouldn't make a

24   difference -- the calculation wouldn't make a difference

25   under the current guidelines.  And I believe she agrees.

1    We had a conversation with respect to that and at this

2    point --

3              THE COURT:  All right.  Well, unless there's

4    anything further from the government, I'll enter an order

5    denying that motion because it simply would not change her

6    sentence.  It wasn't based on the crack cocaine --

7              MR. OPHARDT:  Correct, Your Honor.

8              THE COURT:  All right.  And then there's a

9    motion with respect to tolling the time for a 2255.  Once

10   again, I think that that is moot.  That it doesn't begin

11   to run until this proceeding and any appeal of this

12   proceeding is over.

13             MS. SEDDIQ:  That's our understanding as well,

14   Your Honor.

15             THE COURT:  All right.  Well, I'll deny that

16   motion as moot because it hasn't begun to run until this

17   case is concluded including any appeal.  So that then

18   brings the re-sentencing question.  Now the --

19             MR. OPHARDT:  Your Honor, there was one other

20   motion.  I believe it was Docket Entry 1519, the Depierre

21   claim.

22             THE COURT:  Oh, yes.  All right.  Do you wish to

23   make any argument on that?

24             MS. SEDDIQ:  Your Honor, Ms. Dobie would like to

25   hold that as well until the outcome of this.

1              THE COURT:  I don't know what you mean.

2              MS. SEDDIQ:  That it's not relevant as of this

3     point in time considering the re-sentencing.  And if the

4     Court would just hold that?  I believe there was a motion

5     recently by the government to -- for a continuation of

6     time to respond.

7              MR. OPHARDT:  No, Your Honor.  There was not.  I

8     believe the motion was to hold in abeyance the right to

9     file the Depierre claim.

10             MS. SEDDIQ:  Right.

11             MR. OPHARDT:  Your Honor, whatever you want to

12    do with that.  I don't see how --

13             THE COURT:  I don't see a claim in here.  I

14    would just deny it and leave it at that.  So I'll deny the

15    motion relating to Depierre case.

16             All right.  Let's retreat now to the question of

17    sentencing.  Now the sentencing proceeding before me

18    today, the re-sentencing resulting from the Fourth

19    Circuit's opinion and let's set up the issue

20    appropriately.  I'll quote from what the Fourth Circuit

21    said and then we can proceed from there.

22             I do believe that the scope of this

23    re-sentencing proceeding is determined by the scope of the

24    remand.  I don't think and I'm concerned that Ms. Dobie

25    may believe that this is a global start from scratch

1    re-sentencing and I don't think that's correct.  The fact

2    I think that the resentencing here is for a limited

3    purpose of considering the question of the role adjustment

4    that I declined to make.  And the Fourth Circuit in its

5    opinion at pages 20 and 21 notes that Ms. Dobie requested

6    two downward adjustments on her Count 1.  First, the

7    minimal role reduction of four points or alternatively a

8    minor role reduction of two points.  And then they quote

9    what I said in the case was I said "in this case I

10   conclude that she is not entitled to a reduction for a

11   mitigating role."  The Fourth Circuit concern was that I

12   did not address her alternative argument of the minimal

13   role adjustment -- and that I rejected her minimal role

14   adjustment, but at no point specifically addressed her

15   minor role adjustment.  And so I believe the question

16   before the Court today is is she entitled to a role

17   adjustment for the minor role adjustment.  That was not

18   specifically addressed by me at the time of her earlier

19   sentencing.  And if so, what should the adjustment be, if

20   any?  So I think that's the question before the Court

21   today and I'll be glad to hear any evidence or argument on

22   her role and I'll be glad to hear from her with respect to

23   her role as well.

24          But I think unless somebody disagrees with me

25   that the role -- I mean the scope of the sentencing

1   proceeding today is limited by the scope of the remand.

2   And I know Ms. Dobie has had a lot of very supportive

3   letters and documents come to me about how well she's

4   doing in prison and a number of things she's done and

5   vouch for her good character.  But I don't think that

6   those are relevant to the specific issue on remand.  Does

7   anybody disagree with that?

8            MS. SEDDIQ:  Your Honor, the way that I had

9   wanted to proceed the way I laid it out in the memo and

10  I'm not going to belabor all of the points I made in the

11  memo is that first and foremost, the Court has to

12  determine whether or not she is entitled to a minor role

13  adjustment.  So if she is entitled to a two-point minor

14  role adjustment, then the question becomes we reduce it to

15  a level I believe it's 26, Criminal History Category 5.

16  We start from there.  But then she does get a new sentence

17  and the Court still then has to determine what that

18  sentence would be.  So the other factors would come into

19  play when and if the Court grants her a two-point role

20  reduction --

21            THE COURT:  But I don't think that argument, for

22  example, for a variance sentence would be fair game at

23  this point after the Court issued a guideline sentence.  I

24  think the question before the Fourth Circuit was whether

25  the role adjustment was correctly handled or not.  I don't

1    think I can go to a variance sentence.  But I'll be glad

2    to hear argument on that.

3              MR. OPHARDT:  Your Honor, the government

4    wouldn't oppose a new sentencing afterwards.  I think

5    Pepper actually does envision such a broad scope for the

6    Court when one factor hasn't changed.  If the guidelines

7    were to change after you were to decide to give the minor

8    role reduction with a new guideline, I think 3553(a)

9    factors all come into play under Pepper.  We would have a

10   new sentencing at that point, but only if you were to

11   choose to give the minor role reduction.

12             THE COURT:  All right.

13             MS. SEDDIQ:  Right.  That's my understanding as

14   well, Your Honor.  And I apologize if I didn't make that

15   clear in my memo.  That the first inquiry would be whether

16   she's entitled to --

17             THE COURT:  Let's address that question then.

18   So you may proceed with your argument and any testimony or

19   evidence on the question of the role adjustment.

20             MS. SEDDIQ:  Thank you, Your Honor.  I do want

21   to note for the record before I begin that, the courtroom

22   is filled with Ms. Dobie's friends and family.  As you

23   alluded to, several of them have written letters on her

24   behalf and we can get to that at the next step.

25             Your Honor, I did submit to the Court and to the

1    government a sentencing memo on behalf of Ms. Dobie.  I

2    was not her trial attorney.  I didn't get a chance to sit

3    in the courtroom through the 43 days of testimony --

4              THE COURT:  It was a long trial.

5              MS. SEDDIQ:  It was a long trial and it was

6    before Your Honor I know.  I've been in here on another

7    matter with another co-defendant in this case.  I know

8    that you recall a lot of the details of that case.  But I

9    had an opportunity to sit down and to go through all 12

10   weeks of the testimony and then kind of ferret out where

11   Ms. Dobie fit into the grand scheme of things.

12             Mitigating role, 3B1.2, the Court has already

13   determined it's not a minimal role reduction of four

14   points role reduction.  But we're only talking about the

15   minor role reduction and where does Ms. Dobie fit into

16   this.  And the inquiry is primarily could this conspiracy

17   have continued without Ms. Dobie?  Was it a thriving

18   business as it were without her involvement in it and

19   where did she play out?

20             I know Ms. Dobie received a lesser sentence than

21   the top players in this case.  There were several life

22   sentences that were handed out.  She received a sentence

23   of 147 months plus 60 months consecutive on the gun

24   charge.  And that the jury found her guilty of under one

25   kilo.  I believe it was over 100 grams and under

1   400 grams.  And her mandatory minimum was five years.  So

2   the jury in hearing all of the testimony in this matter

3   had already determined that she was a minor player.  She

4   didn't have the same scope in all of this as the other

5   players did.  That she wasn't essential to the ongoing

6   life of this conspiracy.

7            In fact, witness after witness after witness in

8   my review of the transcript testimony, Mr. Ward asked one

9   question of.  Do you recognize my client, Lavon Becky

10  Dobie?  And almost all of them said no.  She wasn't

11  someone who had a corner shop set up.  There was no

12  testimony that people were coming in and out of her home

13  at all hours of the day and night.  She wasn't responsible

14  for ferreting or carrying huge weights of any of these

15  drugs.  When they searched her house, there were 11 grams

16  found in her home and I believe she said that if I knew

17  there were 11 grams in my house, it would have been gone

18  because she was a terrible addict.

19           She didn't know the inner workings and I believe

20  there were several telephone calls where it was clear that

21  they would rather not have Ms. Dobie around while they're

22  conducting their business.  Ms. Dobie got enough drugs so

23  that she could use it.  I believe the testimony was that

24  she gave some or shared some with her nephew, with her

25  husband, who she was a drug addict and her family members

1    were drug addicts.

2            Your Honor, on page 119 of the sentencing

3    transcript, Your Honor, yourself state that listening to

4    the telephone calls and I quote was "rather dramatic

5    listening to some of her telephone recordings and the way

6    her speech sounded because she obviously was under the

7    influence of drugs, could hardly stay awake during one

8    phone call."  And therefore -- and your conclusion was is

9    that she needed to go to prison to deal with her drug

10   addiction which we get to the second part and tell you

11   that she has.

12           Your Honor, Ms. Dobie didn't know the extent of

13   this conspiracy.  She dealt primarily with --

14           THE COURT:  Does she need to?

15           MS. SEDDIQ:  I don't think she needs to know the

16   extent of it.  But she needs to be more than just somebody

17   who buys drugs from Ms. Martin to not qualify for the

18   minor role and we're not talking whether she delegated

19   conspiracy.  It's what is her role within this conspiracy.

20   And that's the person that she was connected to was

21   Ms. Martin.  And I don't believe and again I have gone

22   through the trial testimony on a couple of occasions.  I

23   don't believe that there was testimony that showed that

24   she made money other than to have money to feed her own

25   drug habit from this.  She didn't have fancy cars.  She

1    didn't buy houses.  She didn't have a lot of boyfriends.

2    She didn't have any of the things that someone who is

3    deeply entrenched in the drug conspiracy, especially one

4    that was this vast would have.  So Your Honor, I believe

5    that during the entirety of this really long trial,

6    Ms. Dobie was found guilty of the conspiracy.  But what

7    we're asking for isn't, you know, a not guilty finding of

8    the conspiracy, but just evaluate her particular role in

9    this case.

10            And as I initially said, the jury found that she

11   was in fact a minor player.  They convicted her of a much

12   smaller amount than the testimony I believe that the

13   government set out to prove against her.  And while the

14   government's argument is that, well, she got a lower

15   sentence because the jury found -- I believe that that

16   just proves our point.  I mean that's the whole point of a

17   minor role.  The jury doesn't get to decide does she get

18   an extra two-point reduction.  That's for the judge to

19   decide at sentencing and the jury's verdict was yeah,

20   she's not as culpable as the others in this case.  She had

21   less of a role and she didn't have as much to do with the

22   actual organization of this.

23            Your Honor, as I said, I've written a memo that

24   I think kind of covers the major points with respect to

25   the testimony in this case and I would like the chance to

1    allow Ms. Dobie to speak on her own behalf.

2              THE COURT:  All right.  I'll be glad to hear

3    from her.

4              THE DEFENDANT:  Good morning, Judge Titus,

5    Ms. Johnston.  Judge Titus, I stand before you today a

6    different woman than I was eight and a half years ago.  I

7    accept full responsibility for being here today.  I'm

8    guilty of what I would have done if I could have done it.

9    Had I could have copped a kilo of cocaine from Ms. Martin

10   as Deborah Johnston put in her motion, I would have

11   because I was feeding my addiction of heroin and cocaine.

12   I couldn't.  I didn't.  I'm guilty of what I would have.

13   I'm guilty because the jurors found me guilty with their

14   evidence that was presented to them.  I accept all of

15   that, Your Honor.  The last eight and a half years have

16   changed my life drastically.

17             Do I have respect for the law?  One I have never

18   had in my life.  I stand here today.  I had to endure the

19   deaths of both of my grandparents and my only sibling

20   during this period of incarceration and I can honestly say

21   I needed to go through everything I went through in the

22   last eight years to get me to the point I am today.  I

23   pray to walk out this courtroom if it's not God's will and

24   it's not your mercy, I pray for justice today.  That's all

25   I'm asking for.  I'm not asking for no favors.  I'm asking

1    for justice.

2           If I've nodded my way into this conspiracy, God

3    knows, I don't want to use another substance in my life.

4    Deborah Johnston at sentencing on December 19, 2006 walked

5    to the defense table and said I got caught up in a spider

6    web.  I'm asking you, Ms. Johnston, let me out this spider

7    web.

8           Your Honor, you said you pray to never see me

9    unless it was under pleasant circumstances.  I pray today

10   it's these circumstances.  I need to say to my mother, I'm

11   sorry for the mess I've made out of my life.  God, God

12   knows I pray every day.  The hardest part of this eight

13   years was leaving you out there by yourself.  During my

14   incarceration, my only brother died.  I have no other

15   siblings.  She lost her mother and her father.  My

16   addiction is to blame.  I accept responsibilities for my

17   actions.  But God knows I love you.  You're the matriarch.

18   Your parents would be proud of you today.  If I don't ever

19   get to hug you again in society know that I love you and

20   I'm sorry.  I did this to me.  They not responsible.  I

21   did this.

22          God, I just leave it your hands.  Judge Titus,

23   I'm asking you for what I've been praying for.  Justice.

24   I can't see how I'm not deserving of the minor role

25   reduction.  The blessing is I got more behind me than in

```
 1    front of me.  But I'm asking you today to give me justice
 2    on this case.  Yes, I've been locked up.  I did everything
 3    I could do.  The only thing left for me to do in the
 4    penitentiary is to be warehoused.  The other options,
 5    they're not even options to me.  I'm not going to start
 6    taking pills.  As I told Deborah Johnston, I'm not going
 7    to hang myself.  I'm going to deal with all I must.  In
 8    the process of this, I have a relationship with God today
 9    and I know that he don't put no more on us than we can
10    bear.  Judge Titus, I'm just asking you again for justice.
11               THE COURT:  All right.  Thank you.  You can be
12    seated.
13               MS. SEDDIQ:  Your Honor, there is -- and I don't
14    know.  I didn't get it in the letters I had.  There's a
15    letter from Paulette Martin.  I don't know if it's in the
16    court file.  Dated July --
17               THE COURT:  Yes.  I did receive it.
18               MS. SEDDIQ:  -- 2012.  And I don't know if the
19    government has a copy of that.
20               Your Honor, I don't know if even the Court wants
21    to address the minor role issue before I have some of her
22    family members who would like to allocute.
23               THE COURT:  All right.  Let me hear from the
24    government on minor role adjustment.
25               MR. OPHARDT:  Thank you, Your Honor.  First, the
```

```
1    government believes that the Court adequately considered

2    the minor role in the first initial sentencing hearing and

3    at least implicitly rejected it.  I believe --

4              (The court reporter requested counsel to speak

5    up.)

6              MR. OPHARDT:  You concluded that the defendant

7    was not entitled to a reduction for mitigating role.  So

8    we would ask you to simply clarify that prior ruling.  But

9    even if you were to revisit the issue completely today, we

10   don't believe that the minor role reduction is warranted

11   in this case.  That is the defendant's burden to prove

12   that she is less culpable than members of the group to

13   such a degree that a distinction should be made at

14   sentencing --

15             THE COURT:  Well, tell me what the government's

16   view is of her role in this case.

17             MR. OPHARDT:  Yes, Your Honor.  She was

18   distributing narcotics.  She also was when the conspiracy

19   began to unravel offering to be an additional source of

20   supply for Ms. Martin.  There were conversations about a

21   kilogram of cocaine I believe.  At one point there was

22   heroin, there was 1.60 grams of heroin that was talked

23   about being procured for Ms. Martin.  And even if there

24   wasn't the discussion becoming a new supplier for Ms.

25   Martin, the act of distributing drugs in and of itself --
```

1           THE COURT:  Let me ask you this.  Could she be

2     accurately described as somebody who was simply a

3     distributor of drugs or is she a user who was distributing

4     to help pay for the drugs that she was using?

5           MR. OPHARDT:  Your Honor, I'm not sure there's

6     a -- I'm not sure the distinction is important under the

7     case law.  The purpose for -- she -- first of all, she

8     wasn't simply obtaining proceeds to buy more drugs.  She

9     was also in possession of firearms and therefore

10    presumably had purchased them somewhere.  In addition, she

11    was re-distributing to other individuals.  Seemed to be

12    primarily family.  But she was feeding her habit

13    through -- even if she was feeding her habit through her

14    drug sales, it still was conduct that was fundamentally

15    distinct from that of others in the conspiracy that did

16    receive a minor role reduction.

17           Your Honor, you will recall that Donna Johnson,

18    who was a simple drug courier, received a minor role

19    reduction.  Only the two levels.  That Lanora Ali, who

20    helped Ms. Martin willfully blindly move drugs as well as

21    store some cash in her home, she only received a two-level

22    minor role reduction.  Those two individuals never bought

23    drugs for the purpose of further distribution.

24           Ms. Dobie is much closer to Derrek Bynum who did

25    do such conduct.  He did not receive a reduction.  And

1    Your Honor, I believe that it's important to remember that

2    in the defendant's motion, she seemed to make the argument

3    that because she wasn't a supervisor or manager or

4    organizer, she deserves a minor role reduction.  It's a

5    false dichotomy, Your Honor.  There's more than two

6    choices here.  There's at least five in the words under

7    the guidelines and you can go in between some levels.  And

8    the guidelines envision simply a participant in a criminal

9    conduct.  And that's what Ms. Dobie is.  She's simply a

10   participant.  She was not -- she did not know the inner

11   workings of the conspiracy.  We're not asking for -- we

12   never sought an enhanced conduct aggravating role

13   enhancement.  She's simply a participant, Your Honor, and

14   that is the sentence that the Court gave as the

15   appropriate sentence.  And unless there are further

16   questions, the government would simply ask you to --

17            THE COURT:  All right.  Ms. Seddiq?

18            MS. SEDDIQ:  Your Honor, again I wasn't here at

19   trial.  I only have the transcripts.  I'm hoping that they

20   were complete.  But I don't see anywhere where Ms. Dobie

21   actually was -- any evidence that she was selling on the

22   street corner or that she was selling out of her home or

23   that she had a stash house set up somewhere.  I believe by

24   distribution, she was convicted of distributing under the

25   federal definition of that to her nephew, I believe to her

1    son and to her husband.  I don't think that there's any

2    evidence that she had substantial cash in her house.  She

3    did have one firearm that was found in her -- two

4    firearms.  I'm sorry.  Both were found in her home.

5         And as far as the conversations, Your Honor, I

6    got a chance to kind of read over all of those two and she

7    does say, well, no, I can get you a kilo and then says,

8    well, how about 60 grams?  And nothing ever comes out of

9    it.  And that's sort of the argument is that she is a

10   very -- she's peripheral.  She is a minor player.

11        And, Your Honor, has already addressed the

12   four-point reduction.  You said that she's not a minimal

13   player.  We're not even here to discuss the four-point

14   minimal reduction at this point.  But that she couldn't

15   get anything because that's not what her level of play was

16   in all of this.  She wasn't involved to that extent in the

17   drug culture other than as a user.  But what she wanted to

18   do which I think from all of her testimony was she wanted

19   to keep Ms. Martin -- she wanted to keep Ms. Martin

20   primarily on her good side.  But she continued to get

21   drugs from her.  So she could continue to go to her house

22   at all hours of the day and night, high as a kite and beg

23   her for drugs.

24        And when you talk about whether, you know, she

25   moved drugs or stored drugs, she didn't do either of those

```
 1    things.  She didn't, you know, move drugs, she didn't
 2    store drugs, she didn't store cash for Ms. Martin.  She
 3    got drugs so she could smoke it or snort it.  She got
 4    substantial physical damage from that and to share it with
 5    her family members.  Derek Bynum, if my memory is
 6    correct, actually did in fact sell drugs.  There was
 7    testimony that he wasn't sharing it with family members or
 8    sitting in his house and having people over.  But that he
 9    actually was actively involved.  I mean we're not asking
10    for anything more than the two-point reduction that other
11    individuals who did what Ms. Dobie or similar to what
12    Ms. Dobie was doing did.  And again like I said, I have
13    looked at the transcript and I can't glean from where
14    there is proof that besides the distribution to her family
15    members, that this was some sort of cash heavy industry
16    for her that she was relying on.
17              Your Honor, may I say one more --
18              THE COURT:  Yeah.
19              MS. SEDDIQ:  I have one more.  I have 29 written
20    down and I couldn't figure out why.  But at sentencing,
21    the government did in fact ask for the Court to upwardly
22    depart to a level 29 and to go over to a Criminal History
23    Category 6 for Ms. Dobie.  So they didn't in fact ask for
24    enhancement at that time and that you denied that request.
25              THE COURT:  And that was for what?
```

1          MR. OPHARDT:  Your Honor, that was the criminal

2     history underrepresentation argument that was made.  That

3     had nothing to do with role in the offense.

4          THE COURT:  Okay.

5          MR. OPHARDT:  Your Honor, if it's okay with you,

6     I'd like to be heard on a couple of the points Ms. Seddiq

7     raised.

8          THE COURT:  Certainly.

9          MR. OPHARDT:  Your Honor, first of all, these

10    are two different phone calls we're talking about.  The

11    kilogram of heroin was in one call and then a later call

12    was the 60 grams of heroin.  This isn't one conversation

13    saying oh, a key, how about 60?  This is multiple phone

14    calls.

15         The second point I'd like to make is that, Your

16    Honor, when you sentenced initially in this case, there

17    were close to 30 defendants -- 30 conspirators --

18         THE COURT:  31 to be exact.

19         MR. OPHARDT:  31.  Thank you.

20         THE COURT:  I think Ms. Johnston remembers the

21    trial.

22         MR. OPHARDT:  I was not here for the trial.

23         THE COURT:  We spent the entire summer of 2006

24    together.  I remember that well.

25         MR. OPHARDT:  There are other individuals in

```
 1    addition to Derrek Bynum, Claude Booker, Larry Lane.  Your
 2    Honor, you sentenced these individuals with the mind of
 3    avoiding disparity within this case of people's roles.
 4    And I'd simply remind the Court that you at least
 5    implicitly rejected the two-level enhancement in your
 6    initial sentencing because of the way that everyone was
 7    structured in the conspiracy.  Thank you, Your Honor.
 8              THE COURT:  Anything further, Ms. Seddiq?
 9              MS. SEDDIQ:  Your Honor, I think Ms. Dobie would
10    like to address the Court concerning the telephone call
11    that she would like to address the Court with.
12              THE COURT:  That's fine.  Go ahead.
13              THE DEFENDANT:  Your Honor, I've listened to
14    what the government have stated.  It's a phone call on the
15    wiretap that belongs to the government that I would like
16    to present.  It clearly states that Gwendolyn Levy and
17    Paulette Martin says don't let Becky in our business.
18    Paulette states in this phone call that the wiretap
19    belongs to the government.  I'm going to get my name -- my
20    numbers changed so she won't be able to contact me.
21              He spoke on Larry Lane, Mr. Goodwin's son.  For
22    God's sake, if they deserve a two-level adjustment, how
23    can I not?  You got Eugene Byrd in society today.  You got
24    Tom Farmer in society today.  Those people are known
25    addicts.  They know me as an addict in the street.  I
```

1    can't say anymore.  Anything I say now would be a feeble

2    attempt.

3            I was a addict in this conspiracy.  And the

4    government knows.  The detectives even stated nobody was

5    running in and out of my home.  I indeed shared heroin and

6    cocaine -- well, heroin with my husband.  I snorted

7    cocaine and heroin myself.  That man didn't even know I

8    was addicted again when he came back to society.  If

9    Paulette asked me for ten kilos, Your Honor, whether I was

10   high or sober because I needed to feed my addiction, the

11   lifestyle I was living at that time, I would have said

12   yes, I would try.  Your Honor, I didn't.  I would have.

13   God knows I'm guilty of would have trying.  But I didn't.

14   I can't see how I'm not entitled to it.

15           The four-level deduction, I knew what was going

16   on after -- I found out more things, Your Honor -- you

17   know for yourself.  As many motions I filed to you, I

18   found out more today in this trial than I have even knew.

19   I was in a state of euphoria.  I didn't know what was

20   going on.  A lot of times on the telephone, I'm nodding

21   out.  Becky, Becky, get up.  Do you hear the phone?  Do

22   you hear me talking?  Like I said, anything I say would be

23   a feeble attempt.  But to make me out for this drug

24   dealer -- Your Honor, I was stealing fur coats.  I had a

25   pending fur coat charge in Henrico County when I came

1    before you.  That was the detainer.  One selling drugs of
2    this magnitude and not running in and out of stores
3    selling fur coats and stealing fur coats.  I'm not proud
4    of anything that I've done.  But charge me for what I'm
5    guilty of.  For God sake, don't keep saying I'm this hell
6    of a drug dealer, Your Honor.  Excuse my expression.  I
7    wasn't a drug dealer.  I was a drug addict.  I wasn't a
8    major participant.  I'm asking for a minor role today
9    because if I have to be guilty of something, it can't be
10   anything other than a minor role.
11           These two people -- you're saying Lanora Ali
12   deserve a two-point reduction when she knew about moving
13   some drugs?  I wasn't called because they didn't want me
14   in their business.
15           THE COURT:  All right.  The matter is before me
16   for re-sentencing because during the earlier sentencing
17   proceeding, I did not specifically address Ms. Dobie's
18   request for a minor role adjustment.
19           Let me review just briefly the text of the
20   guideline that's at issue in this case.  Section 3B1.2 is
21   entitled Mitigating Role and it authorizes an offense
22   level adjustment of four levels for a minimal participant
23   and a two-level reduction for a minor participant.  And it
24   also says in cases falling between, three levels.  And
25   then the application notes and commentary give more

1    details concerning how to apply that fairly simple

2    guideline.  The guideline as a whole is one that provides

3    a range of adjustments for a defendant who plays a part in

4    committing the offense that makes him or in this case her

5    substantially less culpable than the average participant.

6    And it goes on to note that a defendant who is accountable

7    under a relevant conduct guideline only for the conduct in

8    which the defendant personally was involved and who

9    performs a limited function in concerted criminal activity

10   is not precluded from consideration for an adjustment

11   under this guideline.  And it gives as an example a

12   defendant convicted of a drug trafficking offense, whose

13   role in that offense was limited to transporting or

14   storing drugs and who is accountable only for the quantity

15   of drugs the defendant personally transported or stored is

16   not precluded from consideration for an adjustment under

17   this guideline.

18           Then when it gets to the question of what is the

19   difference between a minimal participant and a minor

20   participant, both being under the umbrella of mitigating

21   role adjustments, a minimal participant is intended to

22   cover defendants who are plainly among the least culpable

23   of those involved within the conduct of the group.  The

24   defendant was not entitled to that adjustment.  I did not

25   make that adjustment and she does not contend entitlement

1    to that adjustment at this time.

2           What was not specifically addressed by me and

3    which the Fourth Circuit asked me to now consider was

4    whether she's entitled to a two-level adjustment as a

5    minor participant.  That section provides that -- it

6    applies to a defendant who is less culpable than most

7    other participants, but whose role could not be described

8    as minimal.  So it's perhaps not eloquently defined, but

9    it's basically a person who is less culpable than most

10   other participants, but who nevertheless could not be

11   described as minimal.  And that clearly, she cannot be

12   described as minimal.  So the real question is whether she

13   is less culpable than most other participants.

14          And that requires me to recall what took place

15   in this trial a long time ago in the summer of 2006.  I

16   recall the testimony in that trial.  I recall what the

17   defendant said at her sentencing then and at her

18   sentencing today.  What comes through loud and clear to me

19   is the defendant is an addict.  And that her participation

20   in the conspiracy was one that was not being done for pure

21   financial gain, although financial gain necessarily

22   resulted from her activities because she was reselling.

23   And I don't discount the seriousness of her being engaged

24   in selling.  But she clearly was motivated to participate

25   in this activity in the first instance by her addiction.

1    And in order to provide support for herself, she in turn

2    took drugs at various types that she acquired and sold

3    some of them and perhaps kept some of the parts to satisfy

4    her own habit.

5              This is a fairly close call on the question of

6    the minor participant adjustment.  And taking into

7    account, as I said, the addiction of the defendant which

8    was not something shared by all of the defendants in this

9    case.  There were others who were recreational users like

10   Lanora Ali, who participated in it and transporting a

11   substantial quantity of drugs from one location to another

12   along with poor Ms. Martin, who did receive a reduction.

13   I conclude -- well, it's a fairly close call, but I will

14   give her the minor participant adjustment --

15             (There were outbursts from the audience.)

16             THE COURT:  Let's have no further outbursts,

17   please.  I will reduce her offense level by two levels.

18   Now based upon a reduction of her offense level by two

19   levels, it brings her down to offense level 26 with a

20   Criminal History Category 5 and that produces a sentencing

21   range from 110 to 137.  Having made that adjustment, I

22   will be glad to hear arguments with regard to sentencing.

23             MS. SEDDIQ:  Your Honor, the people I believe

24   that were going to allocute on Ms. Dobie's behalf are I

25   think scattered at this point.  If I could have a minute

1    to gather them?

2         THE COURT:  Gather them up and let them calm

3    down.

4         MS. SEDDIQ:  Your Honor, while they're trying to

5    gather them, I can kind of go over some of the things I

6    pointed out about Ms. Dobie in the memo.  As Your Honor

7    had already noted, she was a remarkable drug addict at the

8    time.  And by remarkable, I mean I don't think there's a

9    drug that she would have turned down.  When I met her

10   initially in West Virginia, she had informed me that she

11   had received her paralegal certificate at the time and I

12   have to say she's been an incredible help with respect to

13   gathering information that I needed with respect to this

14   case, even doing some of the leg work on some of the --

15        THE COURT:  She sends regular correspondence to

16   me for a long time and the legal quality of her

17   correspondence has improved.

18        MS. SEDDIQ:  Yes.  Yes.

19        THE COURT:  And you can see that from her

20   letters.

21        MS. SEDDIQ:  Yes.  In fact she's the one that

22   brought to my attention the Pepper case and kind of pushed

23   that forward.  So I do have to commend her in being an

24   advocate for herself in this matter.  She does have in

25   fact has her paralegal certificate.  Your Honor has a

1    number of letters from various people that will attest

2    to -- and we won't even discuss so much what she's done

3    prior to being incarcerated.  But from the moment she was

4    incarcerated, the profound effect she's had on people's

5    lives in both the local jail and at the Bureau of Prisons.

6           She's been working since she's been transferred

7    even here at Chesapeake detention facility and she's

8    clearly very well known and liked among the staff there.

9    They all, you know, had said that she was a model inmate

10   at Chesapeake as well as in West Virginia.  Your Honor, so

11   she has made good use of her time.

12          And again I want to point out that when Your

13   Honor initially sentenced Ms. Dobie in laying out the --

14   what incarceration was supposed to do for her.  It was

15   supposed to get her mental health treatment because of her

16   childhood and her abusive relationship, get her drug

17   treatment, get her some educational training.  All of

18   those things have in fact been accomplished by Ms. Dobie.

19   She has been incredibly industrious.  She has accomplished

20   all of the things that Your Honor has set out for her to

21   do in prison.  I don't know if there's much else that she

22   could get out of being incarcerated at this point.  She's

23   been in there for I think 103 months as of right now.  I

24   do know that she's got a 60-month consecutive sentence on

25   the drug charge.

1          THE COURT:  How many months has she been in now?

2          MS. SEDDIQ:  103 months.

3          THE COURT:  103.

4          MS. SEDDIQ:  Eight months --

5          THE DEFENDANT:  Eight years, five months, Your

6     Honor.

7          MS. SEDDIQ:  At that point it was 22 days.

8     Eight years, five months and 22 days and we put it off for

9     another month.  So she's done a substantial amount of time

10     for the crime that she committed.

11          Your Honor, I do believe that everyone is back

12     in the courtroom at this time.  And if I could have them

13     come up?  I unfortunately don't know who is who.  So I

14     can't --

15          THE COURT:  Well, have them be brief.  I've got

16     a lot of letters and I've read them.

17          MS. SEDDIQ:  Yes.  These are not the same people

18     who wrote letters, Your Honor.  They are different people.

19          MR. MARTIN:  Good morning, Your Honor.  My name

20     is Vincent Martin.  I am the second cousin to Lavon Dobie.

21     I wrote you a letter in '08 and I sent you the same letter

22     this year.  However, God has put on my heart not to share

23     this, but to share something else with you.  I want to say

24     this.  That I myself was an addict.  I myself went to the

25     penitentiary.  It saved my life.  I got a second chance.

1    And from my second chance, I have not looked back.  I've

2    looked forward.  I've taken responsibility for my actions

3    and for my behavior.  So I'm going to read this to you and

4    pray that this supports her efforts.  I love my family and

5    I love Lavon.  So I want to leave you with this.

6            God grant me the serenity to accept the things I

7    cannot change and the courage to change the things that I

8    can and the wisdom to know the difference.  For many

9    years, I never really knew what those words really meant

10   until after my involvement in the lifestyle of

11   self-destructive behavior.  Today, I understand how

12   important it is for me and any one individual to take

13   ownership for their actions and understand sometimes

14   situations and our circumstances are beyond the

15   individual's control.  By faith, I have no doubt that as

16   long as I trust in my faith, I will continue to live

17   knowing what's right from wrong.

18            I understand second chances are earned and not

19   just given.  I believe today my family member earned her

20   second chance of becoming a productive citizen.  I believe

21   she understands the power of prayer can heal all wounds

22   whether it's mentally, emotionally, spiritually and/or

23   physically.

24            Can I give you specific reasons for her to be

25   given this opportunity?  No, I can't.  Can I say

1   throughout the years of her incarceration she has shown

2   willingness to do whatever has been placed at her feet?

3   It seems like an eternity for this day of atonement to

4   arrive in allowing her voice to be heard.  I do believe

5   she wants to make atonement for her behavior.  By granting

6   her freedom today, she can then start the act or process

7   of making amends by becoming a productive individual and

8   taxpayer in society and no longer viewed as a liability

9   for the contributing well being of others and her family.

10  Living one day at a time and one moment at a time and

11  accepting hardship as the pathway to peace.  Take as he

12  did the simple world as it is, not as I would have it.

13  Trust that he will make all things right if I surrender to

14  his will.  That I may be reasonably happy in life and

15  supremely happy with him forever in the next.  Amen.

16          THE COURT:  All right.  Thank you very much,

17  sir.

18          MS. BEST:  Hello, Your Honor.  My name Danielle

19  Best.

20          THE COURT:  You have to speak into that mic a

21  little closer.

22          MS. BEST:  My name is Danielle Best and I served

23  time with Lavon Dobie.  And from the moment I got there at

24  Hazelton on that compound, she embraced me.  I didn't know

25  what to do.  That was my first time being incarcerated.  I

1    myself am a recovering addict.  And she just encouraged me

2    to program from the time that I got there, encouraged me

3    to do positive things with my time.  I also spoke with her

4    about helping me with some issues that I had within myself

5    with my mother and my son's father and she actually gave

6    me a perspective on a mother's point of view by her being

7    older than me.  And I don't know what I would have done if

8    I was in another unit without her, without her guidance,

9    without her teaching me the right way to do my time

10   positively and not focusing on the negative things in that

11   prison.

12              I never told you this, Dobie, but I love you.

13   And I appreciate the time we spent together.  I really do.

14   I never told you, but I love you.  And I look forward

15   going to church with you real soon.  Thank you.

16              THE COURT:  All right.  Thank you very much,

17   ma'am.

18              MS. BROWN:  Good morning, Your Honor.  My name

19   is Ingrid Brown and I also wrote you a letter.

20              THE COURT:  I can't hear you, ma'am.  Speak

21   louder.

22              MS. BROWN:  Can you hear me?

23              THE COURT:  Yes.

24              MS. BROWN:  I also wrote you a letter.  Ingrid

25   Brown.  Twenty-three years ago, I was a addict.  I met

1    Lavon.  It's been over 30 years ago.  I was lost.  I

2    didn't have a good relationship with my family.  My mother

3    as I mentioned was a young mom.  Lavon's family, Lavon

4    immediately took me in and she gave me the one gift that

5    you should always give someone and that was to get saved.

6            The material things fade.  They go out of style.

7    But when someone introduce you to re-dedicate your life to

8    Christ, everything else will fall into place.  It made me

9    a better mother, a better person, a better daughter.  My

10   mother died last year from cancer and I stepped and walked

11   with her those four years because Lavon taught me no

12   matter what, that is your mother.

13           Your Honor, I told you in my letter she was an

14   addict.  I know.  I've been knowing her.  Addiction?  Yes.

15   She's an addict.  She's a recovered addict.  She gave me

16   the best gift to get baptized and to get into church.  I'm

17   a motivational speaker to this day.  Thank you.  I touch

18   millions all over the world.  I thank God for the gift,

19   thank God for Lavon Dobie and Aunt Vivian, Nanny and Pops

20   for always being there.  She is a gift.  And she's chosen.

21   Thank you for your time.  Have a blessed day.

22           THE COURT:  All right.  Anyone else?

23           MR. DOBIE:  Good afternoon.  My name is Goldie

24   Dobie.  I'm the husband of Ms. Lavon.  Well, I'm not going

25   to hold the Court up, Your Honor.  I'm just -- she said it

1    all.  So what I want to do I want to thank you for your

2    decision, Your Honor, and I want to thank Ms. Johnston

3    who's sitting -- although she's sitting at the table, I'm

4    fully aware of her expertise.  Although she didn't oppose.

5    I want to thank you, Ms. Johnston.  And I want to thank

6    you, Your Honor, again in this court for the positive

7    decisions that has been rendered in this case.  Again

8    thank you, Judge Titus.

9            THE COURT:  Anyone else?

10           MS. SCOTT:  Good morning, Judge Titus.  My name

11   is Shanice Scott and no, I have not sent any letters and I

12   don't have a long speech for you.  But I do want to say

13   with knowing Lavon Dobie, she is the grandmother of my

14   daughter.  And everything that I've heard today, I'm

15   belligerent to and I was actually shocked because in

16   knowing her in the two years of having my daughter, she

17   has been a positive influence.  She has always stayed

18   positive.  She always speaks positive.  She always --

19   every time when she calls, she's always happy and that's

20   rare for someone who's done time or who has gone through

21   the things that she's gone through.  And I just want to

22   say thank you for your decision and thank you for second

23   chances.  I think everyone is entitled to second chances.

24   We do fall.  We do make mistakes.  And I think that in

25   knowing that, she will never make those mistakes again and

1    I want to say thank you and we love you.  And we will see

2    you soon.

3              THE COURT:  Thank you very much.

4              MS. SEDDIQ:  Your Honor, I believe the last

5    speaker will be Ms. Dobie's mother.

6              THE COURT:  I can't hear you.

7              MS. SEDDIQ:  Ms. Dobie's mother.  I think she

8    will be the last.

9              THE COURT:  Okay.

10             MRS. DOBIE:  First of all, Judge Titus, thank

11   you for your decision.  My life changed dramatically in

12   June of 2004 when I got that phone call stating my

13   daughter had been arrested.  I sat here starting June 6,

14   2006 just like everybody else.  But I know that my

15   daughter has changed.  It's changed my life dramatically

16   because she wasn't part of my life.  I've heard her cries,

17   I've heard her laugh, holler, scream of her

18   accomplishments that she's made, not only for herself, but

19   other people that are incarcerated.  She helped get her

20   GED or whatever and I'm proud of her.  I'm glad to just

21   see her here.  As an ex-correctional officer, walking the

22   compounds of Lorton, I know what happens in the

23   penitentiary and I'm thankful that she's able to sit here,

24   no scars, no nothing in any way, but she found God.  She

25   had already found God before she left.  She kind of

swayed, but she found him again, Judge Titus.  And I'm thankful for that.

Lavon, I say to you, Becky, I say to you, you went in jail in there as a little girl.  I have seen you mature.  First of all, you can be a woman.  But you can also be a lady and I will love you until you die.  That's unconditional love.  You have the ability to be anything and do what you want to do.  Vincent, your cousin, just walked out of here.  He admitted he was an addict.  He now has his Master's Degree and working on his doctorate.  You can do the same.  I work two jobs now.  I will help you if that's what you decide to do.  But be an enabler for you, I will not.  I will not be an enabler for you.  You got a whole network.  You've got your father unfortunately that couldn't come.  He's got 37 years of clean time.  He's a drug counselor himself.  He's in Delaware.  You have a large, large family that can help you of people that walked your walk.  It's up to you now.  You've got that second chance.  And I want to promise you and say to you and look you in the face, I love you.  I made some mistakes along the way, but I've never stopped and I've never given up on you.  I've never given up and I won't. It's called unconditional love.  Okay.

Come on, baby.  Say hi to Grandma Becky.  Okay.

Thank you, Your Honor.  I want to thank

1     everybody that took time out from their busy schedules,

2     work, school or whatever to come.  I want to thank each

3     and every one of you.

4          THE COURT:  All right.  Ms. Seddiq, any argument

5     you wish to make?

6          MS. SEDDIQ:  Your Honor, just a lot of the

7     conversation has been about her post incarceration and

8     that's pursuant to the Pepper case which states we had in

9     fact -- the Court can in fact take into consideration her

10    post-incarceration rehabilitation when fashioning a

11    sentence for her.  I don't believe that there's anything

12    else.  I believe I stated it.

13         THE COURT:  Do you know what her status is in

14    terms of good conduct credits?

15         THE DEFENDANT:  Your Honor, since my eight years

16    of incarceration, you remember in the beginning I was

17    transferred, I became a trustee?  Since being in the

18    Bureau of Prisons, I received three shots.  One was for

19    having a zipper on a shirt that I didn't know that we

20    couldn't have.  I brought a shirt from someone else.

21         On September 2011, Your Honor, I have the

22    paperwork and the actual ticket from them.  I was in my

23    cell and a inmate came in my cell, Your Honor, and I did

24    what you or anybody else would do when someone come into

25    your house.  She came in.  She swung.  I defended myself.

1    They wrote the report.  I was even recommended for camp

2    after that incident.  So in answering your question, Your

3    Honor, I have one fighting shot at age 47 in prison.

4    Someone came into my cell, I defended myself and I have

5    all the particulars.  I even appealed the decision.  They

6    told me Dobie, we going to still send you to camp, we

7    going to still do what we can.  Unfortunately, the FBOP

8    does not have self-defense law, Your Honor.  So I pleaded

9    guilty to it because I indeed fought back.  They said if I

10   wouldn't have fought back, I could beat the ticket.  But,

11   Your Honor, I was trying to make sure that I didn't become

12   disfigured in the penitentiary.  I slept across from

13   somebody that was scarred from the side of their face and

14   cut and ended up with over 50-some stitches.  I didn't

15   want that to be me.  And if you want to look at it, you

16   can read the institutional report.

17          THE COURT:  My question is very simple.  To what

18   degree have you received good conduct credits?

19          MS. SEDDIQ:  I don't have the calculation with

20   respect to what her -- she may in fact have it, Your

21   Honor.

22          THE DEFENDANT:  I have evaluation.  I got 154

23   days for each year I've been locked up.  I haven't

24   calculated it.  When I left on October the 2nd, my 60

25   months running -- well, depending on how the Federal

1    Bureau of Prisons -- Ms. Johnston can correct me if I'm

2    wrong.  The 60 months would have been satisfied.  I was

3    into my 48 months which is satisfied.  I've got eight

4    years and five months which would have satisfied the 108

5    and they have vacated the 146 until today.

6            MS. SEDDIQ:  I have the document from 2011, Your

7    Honor.  I'm going to be honest.  I don't know how to

8    decipher what it means.  I can hand it up to the Court.

9            THE COURT:  I'm not sure I can decipher it if

10   you can't.

11           THE DEFENDANT:  We get 54 days a year, Your

12   Honor.  54 good days a year in the Federal Bureau of

13   Prisons.  I count by calendar days which is eight years

14   and five months.  I know that technically if I had the

15   ten-year sentence, I would be free.  It was -- you do

16   eight months.  What is it?  Four months or something like

17   that on the sentence.  All I know is what they told me

18   when I left, depending on what happen today.

19           THE COURT:  Okay.  All right.  Anything further,

20   Ms. Seddiq?

21           MS. SEDDIQ:  No, Your Honor.

22           THE COURT:  And we're really talking about the

23   sentence on all counts other than the mandatory

24   consecutive 60 months.

25           MS. SEDDIQ:  Correct, Your Honor.

1          THE COURT:  No matter what I do, she's got five

2     years to go, period.  Right?

3          MS. SEDDIQ:  Your Honor, well, yes and no.  She

4     has five years.  But we're asking that the Court actually

5     reduce the overall sentence.  So I believe the overall

6     sentence was 203 months.  Sixty months plus 146.  206

7     months.  I'm sorry.  I'm trying to do the math in my head.

8     So that we are in fact asking that the Court substantially

9     reduce that sentence to include the 60 months.

10         THE DEFENDANT:  Your Honor, if I may, according

11    to the calculation from the FBOP and my calculation, the

12    60-month sentence had I done it in the beginning, I would

13    have satisfied that.  I have 48 months, five counts of 48

14    months sentencing.  I have a copy of my sentencing order

15    from you.  I have 48 -- five counts of 48 months sentence

16    running concurrent with the 146.  At this point in time as

17    of today, I've basically satisfied my five years

18    consecutive, the 48 months running concurrent with the 146

19    and the 146 today is the issue.

20         THE COURT:  Well, I believe you don't start to

21    serve the consecutive until you've done the first part.

22    The existing sentence of 146 months and then there's 60

23    months added to that.

24         THE DEFENDANT:  That's how I said it, too.  But

25    they were concerned that if I didn't get off the ground,

1    technically nothing was holding me.  When she came April

2    the 19th, it was stated then -- the way that the Fourth

3    Circuit remanded my case back, the 146 was vacated and I

4    have basically satisfied what was left of it.

5              THE COURT:  I see.  All right.  Let me hear from

6    the government.

7              MR. OPHARDT:  Your Honor, I believe the scope of

8    the remand is the re-sentencing on Count 1, the 60 months.

9    It is consecutive to whatever sentence the Court imposes

10   today.

11             THE COURT:  I think we're focusing today on the

12   146 months sentence.

13             MR. OPHARDT:  Correct.

14             THE COURT:  And the 60 is a given and doesn't go

15   away no matter what the Court's conclusion is with respect

16   to role in this --

17             MR. OPHARDT:  Correct, Your Honor.  And, Your

18   Honor, I would like to --

19             THE COURT:  The 146 was essentially a middle of

20   the range sentence on the earlier guideline range of 28

21   and there was a 146 and that's above the middle of the

22   range of 130 to 162.  So if I were to impose a sentence

23   that was done the way, for example, most of the cocaine

24   retroactivity was done, you pick the new range and pick

25   where the -- where in the range the old one was and the

```
1    new one gets essentially the same plus or minus of that.

2    And if I'm reading this correctly, if I pick essentially

3    the middle of the range, a range of 110 to 137, it would

4    be about 118 months would be, I think what would be --

5              MR. OPHARDT:  Your Honor, I think --

6              THE COURT:  -- reasonably can be expected on an

7    adjustment like this.

8              MR. OPHARDT:  -- it's 110 to 137.

9              THE COURT:  Well, 110 to 137 is 26 and 5.

10             MR. OPHARDT:  Correct, Your Honor.  And it's a

11   27 months spread.

12             THE COURT:  Oh, 27 -- don't ever trust me with

13   mathematics.  I'm not good at that.  Twenty-seven months

14   would be --

15             MR. OPHARDT:  123, 124.

16             THE COURT:  -- 123, 124.

17             MR. OPHARDT:  Yes, Your Honor.

18             THE COURT:  That's what it would be if I did

19   that.

20             MR. OPHARDT:  That is correct, Your Honor.

21             THE COURT:  Based upon her present status, if I

22   were to impose that sentence, she would be close to the

23   end of that sentence, would she not?

24             MR. OPHARDT:  Your Honor, she's served in my

25   calculations, eight years, five months, twenty-seven days
```

1     from the time of her arrest in May of --

2              THE COURT:  So it's 103 months.

3              MR. OPHARDT:  It's just under 102 months

4     actually.

5              THE COURT:  Right.  But what I'm saying is if

6     she -- I don't know where her good conduct credits are.

7              MR. OPHARDT:  Correct.

8              THE COURT:  Assuming the highest level, she

9     would be near the end of that sentence, would she not?

10             MR. OPHARDT:  Your Honor, if B.O.P.'s

11    mathematics are complete --

12             THE COURT:  I never understood them either.

13             MR. OPHARDT:  And so I am uncomfortable talking

14    about what her good time credits would be and what they

15    would not.

16             I would like to remind the Court just about the

17    scope of this conspiracy and the need to avoid sentencing

18    disparities within that conspiracy, there are 20

19    defendants who pled guilty.  None of them benefited from

20    being able to come back to court.  The criminal history of

21    this defendant is significant.  Your Honor, we did request

22    an upward departure at sentencing.  It was denied.

23    However, you did state at the time that she's been

24    consistently involved in the criminal justice system on a

25    broad variety of grounds.  Hard at work for a long time

1    committing crimes to get to the level of 5.

2            Your Honor, I would like to remind you that she

3    testified in this case.  She obstructed justice during

4    this case.  She received an obstruction enhancement.  The

5    Court in the sentencing transcript on page 24 makes a

6    clear finding that her testimony was false, that it

7    concerned a material matter and that she did so with an

8    intent to deceive the Court and jurors.  Your Honor

9    discusses at length exactly how her testimony was false.

10   That she testified that the scales and baggies were used

11   for personal use, storing jewelry and not for resale of

12   narcotics.  She disputed whether cut was used to cut

13   drugs.  The words are certainly calls in certain phone

14   calls.  Your Honor, I'd just like to remind you of those

15   prior rulings when you're considering where Ms. Dobie

16   falls within the guideline range.

17           THE COURT:  I detect in the defendant's argument

18   that I should take into account what she is alleging is

19   her extraordinary post-offense rehabilitation efforts.

20   And if I read the guidelines correctly in 5K2.19,

21   post-offense rehabilitation efforts even if exceptional

22   undertaken by a defendant after a condition of a term of

23   imprisonment, nature of offense are not an appropriate

24   basis for a downward departure when re-sentencing the

25   defendant for that offense.

1          MR. OPHARDT:  That would be correct, Your Honor,

2     for a departure purpose.  But I think post Pepper, you

3     can't consider exceptional rehabilitation in the 3553

4     factors.  The guideline range will not change based on

5     rehabilitation.

6          We would however contend that her rehabilitation

7     is very much to be applauded and we do wish her luck at

8     the end of her incarceration period.  But we do not

9     believe that it is the exceptional level as what was in

10    Pepper.  Pepper is the exceptional case with multiple

11    remands of an individual who was released from prison

12    multiple times and had to himself report back to prison to

13    continue a sentence and had substantial exceptional

14    rehabilitation.  And I do not believe that Pepper is on

15    all fours with this case, Your Honor.

16          THE COURT:  All right.  Ms. Seddiq, anything

17    further?

18          MS. SEDDIQ:  Your Honor, I want o say that I

19    think Pepper is exceptional because poor Mr. Pepper was

20    actually released from prison, got a college degree, got

21    married, went to work and then the government said, you

22    know, go back and do more time.  So I think that with

23    respect to his actual factual circumstances, yes.

24    However, the essential holding is that you can in fact

25    take into consideration as a factor the post-incarceration

1    achievements of a defendant who comes back for sentencing.

2    And while I do agree that the guidelines are 110 to 137 in

3    this case, she's at level 26, the Court is not constrained

4    just as it would be since the guidelines are thankfully no

5    longer mandatory and can sentence her to whatever it feels

6    is a just and appropriate sentence in this case.

7            And, Your Honor, I do believe that considering

8    the fact that Ms. Dobie was the addict that she was, that

9    her achievements are extraordinary.  She has completed

10   every drug class that she is entitled to take at the

11   prison.  She has certificate after certificate.  She's

12   gotten her G.E.D.  She's got a certificate here for

13   re-entry success.  So I mean she's got a hair dressing

14   certificate.  She voluntarily as you heard counsels women

15   at the prison.  So she's basically maxed out of what she

16   can accomplish in prison.  If the rest of it is just the

17   pound of flesh, the punishment, for doing what she did,

18   and that seems to be what we would be doing from this

19   point forward because there really is very little that she

20   can gain from sitting in prison.  I believe that she has

21   thought about what she has done.  She's contemplated her

22   crimes.  Yeah, she was.  I mean she's a level 5.  She also

23   is now -- I don't want to say your age.  Are you 50?  48.

24   I'm sorry.  48 years old.

25            THE COURT:  Don't do that with a woman.  You'll

1    be in trouble.

2         MS. SEDDIQ:  Statistically, her rate of

3    recidivism should be very low at this point, especially

4    since she does now have the ability to go out and get a

5    job or get many different kinds of jobs because of what

6    she's done in prison and we just have gone over her role

7    in this offense and where she fits into this conspiracy

8    and what she did.  And at this point she's been in prison

9    for eight and a half years.  And yet, she does have a

10   consecutive sentence.  But the Court can fashion a

11   sentence that would in fact allow her to be released much

12   sooner than 206 months.  I'm sorry, Your Honor.  Court's

13   indulgence.

14         (Pause.)

15         MS. SEDDIQ:  Your Honor, apparently there's a

16   letter sent from Mr. Joe Driver, who is the warden at

17   Hazelton --

18         THE COURT:  Yes.  I received that.

19         MS. SEDDIQ:  Did you receive that?

20         THE COURT:  Yes.

21         MS. SEDDIQ:  Is that correct?

22         THE COURT:  Yes.  Very complimentary letter.  I

23   agree.

24         MS. SEDDIQ:  Ms. Dobie would like to say some

25   final words if Your Honor --

 1              THE COURT:  All right.  This is the last word.

 2              THE DEFENDANT:  Your Honor, in spite of me not

 3     being able to get into the RDAP program because of the

 4     extensive sentence that was imposed upon me and you can

 5     only get in at 36 months prior to leaving, the first drug

 6     class I took, I took for paperwork.  I went back into the

 7     class and volunteered the second time for me.  And not

 8     only did I complete it, but I was able to encourage other

 9     people.  I think that you have letters from other people

10     that I've gotten into drug -- into the drug program, help

11     get their G.E.D.  After studying the law, today you're not

12     binded by any guidelines.  You can do whatever you choose

13     to do.  I thank you wholeheartedly for allowing the

14     reduction to be given.  But, Your Honor, I'm asking you to

15     allow me to start my life over today.  Fashion that

16     sentence for me to be able to give my mother the

17     Thanksgiving dinner that I've been praying to cook.

18              The government -- I think at this point

19     Ms. Johnston -- I'm not familiar with the gentleman

20     because he didn't sit in on our trial.  But if one thing

21     I've held onto, in the last eight years was your words to

22     me, Ms. Johnston, when she said you were caught up in a

23     spider web.  Those were her words.  Those weren't mine.  I

24     didn't intentionally get on no stand and lie to no jury.

25     My theory was different from the government's theory.  But

1    it coincided with Gwen Levy, Paulette Martin and all the

2    other people.  I can't apologize to you, Ms. Johnston, my

3    mother or nobody.  As much as I would like to, it would

4    all be a feeble attempt.  Unless it's just to warehouse

5    me, I don't know what else it is for me to do in the

6    penitentiary.  I've made the best out of the hand I was

7    dealt.  I didn't do that in society.  But I know that I

8    can be a productive member of our society.  I won't commit

9    no more crimes.  I won't stand before you on a violation.

10   I would rather be dead than to go back to prison, Your

11   Honor.  I'm not going to do this to me ever again in life.

12             THE COURT:  All right.  The defendant appears

13   before me today for re-sentencing after a remand from the

14   Fourth Circuit to consider the question of the mitigating

15   role adjustment.  I have, as directed by the Fourth

16   Circuit, evaluated the defendant's circumstances,

17   considered the arguments and the statements by Ms. Dobie

18   as well as my recollection of this very lengthy trial and

19   concluded that I would give her the benefit of the two

20   levels for the minor role adjustment as authorized by the

21   guidelines I previously discussed.  That produces for me

22   with respect to the Count 1 a revised sentencing range of

23   110 to 137 months compared to the earlier range based on

24   offense level 28 and Criminal History Category 5 of 130 to

25   162 months.

1          I previously based upon matters stated by me on

2     the record at the earlier sentencing concluded that with

3     respect to the sentence imposed for the Count 1, that the

4     appropriate sentence would be 146 months.  That reflected

5     my judgment at the time that this defendant deserved to be

6     sentenced within that, middle of that range plus or minus

7     my math, being midway.  And that took into account a

8     number of circumstances.  I mean the defendant's criminal

9     history is awful.  Criminal History Category 5 is

10    something that requires a lot of work if you get that

11    level of criminal history category.  The defendant I

12    concluded had obstructed justice by her testimony at trial

13    and I gave a very substantial sentence as a result.

14          I have considered the guideline range developed

15    by application of the minor role adjustment that I granted

16    to the defendant.  As I said, that produces a sentencing

17    range of 110 to 137 months.

18          I will address although I'm not certain it would

19    be appropriate in letters of remand like this the 3553

20    factors because I need to look at this revised range and

21    see whether in my judgment it would result in a sentence

22    with respect to Count 1 that would be sufficient but not

23    greater than necessary to comply with the purposes of

24    sentencing set forth in Section 3553(a)(2).  And I don't

25    know that I really need to re-address every single one of

1    these factors again that I did previously.  But make no

2    mistake about it, the offense the defendant engaged in was

3    a serious offense involving dealing of multiple drugs and

4    accompanied by a weapons offense.  There's no sugar

5    coating the seriousness of the offense.  Addiction or no

6    addiction and that's why the guidelines rather logically

7    produced a rather significant range for the punishment.

8    And the sentence that I imposed then and the sentence I

9    will impose now must be significant in order to promote

10   respect for the law and to afford adequate deterrence.

11         I think that the need to protect the public from

12   further crimes of the defendant in the sense of her

13   committing violence is probably rather low.  To protect

14   the public from further drug dealing is not insignificant.

15   But the sentence that's been imposed and that I will

16   impose now is I think going to be sufficient to protect

17   the public.

18         I'm required to consider the need to provide her

19   with needed educational or vocational training, medical

20   care or other correctional treatment in the most effective

21   manner which under the circumstances of this case is only

22   in an incarcerated setting.  I will comment that it is

23   quite impressive the lengths to which the defendant has

24   gone to rehabilitate herself, to educate herself.  And as

25   I noted in a slight vein of humor, that the quality of her

1     legal correspondence has elevated as she has been taking

2     paralegal type courses and obviously has been able to do

3     sufficient research to even help her counsel on some of

4     the issues before the Court today.  So it is impressive

5     and I think that she should be credited for that.

6             I'm required to consider the kinds of sentences.

7     But the only kind in this case is incarceration.

8             I'm required to consider the need to avoid

9     unwarranted sentence disparities which is one of the

10    principal purposes of the guidelines.  And finally, the

11    need to provide restitution which is not something that I

12    can consider at this time.

13            The only real issue before me on the remand is

14    the question of the adjustment to the guideline range.  I

15    made that adjustment.  I concluded as I did before that a

16    sentence within the guideline range is sufficient but not

17    greater than necessary to comply with the purposes of

18    sentencing set forth in Section 3553(a) to which I just

19    reviewed.  So the question then remains where in that

20    sentencing range should the sentence fall.

21            When the defendant was before me before, she had

22    a sentencing range of 130 to 162 months on Count 1.  And I

23    basically picked a sentence in the middle of that.  And if

24    I were to do the same thing today with a sentencing range

25    that has a 27-month spread, it would be plus or minus 13

1    months of 123 months.

2            I do believe in this case as I said that a

3    guideline sentence is the appropriate range to impose for

4    Count 1 and I don't believe that a variance would be

5    appropriate in this case for all the reasons that I've

6    previously stated when I first sentenced this defendant.

7    I do believe that in terms of where to set her in that

8    range that the efforts that she has made towards

9    rehabilitation are rather impressive.  And accordingly,

10   I'm going to impose a sentence on Count 1 on the remand of

11   110 months which is at the low end of the range which

12   fully credits her for the significant effort she made to

13   rehabilitate herself.  This, of course, will make no

14   difference on the other sentences that were imposed

15   previously which is 48 months each as to each count, 34,

16   47, 50, 53 and 57 which are to run concurrent with the

17   sentence on Count 1 and does nothing to affect the

18   sentence on Count 61 of 60 consecutive months.

19           So as I said, the previous sentence that was

20   earlier imposed was 146 months with the other sentences

21   that I previously indicated running concurrent with it and

22   then a consecutive 60 months on Count 1, which is a total

23   of 206 months.  I've concluded this time around that the

24   appropriate sentence on Count 1 will be 110 months.  The

25   other counts concurrent with it.  And then the 60 months

1    running consecutive to it for a total of 170 months total.

2    In practical terms that means that she is nearing or at

3    the end of the sentence imposed on Count 1 and the

4    concurrent counts.  And that she's in effect beginning the

5    mandatory consecutive 60 months and may be somewhere into

6    it depending on her good conduct credits.  Now and I will

7    enter an amended judgment to reflect that.

8            Ms. Dobie, you have a right to appeal the

9    revised sentence that I've just imposed in this case.  If

10   you wish to do so, you must do so within 14 days of

11   today's date.  If you're unable to pay the filing fee for

12   that appeal, there are procedures that Ms. Seddiq or the

13   clerk of the court may explain to you to have that filing

14   fee waived.  But if you wish to appeal, you must do so

15   within 14 days.  Otherwise, your rights will be waived.

16   Do you understand that?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  And that will apply also to the

19   rulings I'll be making on the other motions that you

20   previously filed.

21           I wish you luck.  You have been doing very well

22   and impressively and there is light at the end of the

23   tunnel.  So I wish you luck.  Thank you.

24           THE DEFENDANT:  Thank you.

25           (Proceedings concluded.)

1                       CERTIFICATE OF REPORTER

2

3           I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that I reported, by machine

6    shorthand, in my official capacity, the proceedings had

7    and testimony adduced upon the re-sentencing in the case

8    of the United States of America versus Lavon Dobie,

9    Criminal Number RWT-04-0235, in said court on the 20th

10   day of November, 2012.

11          I further certify that the foregoing 54 pages

12   constitute the official transcript of said proceedings, as

13   taken from my machine shorthand notes, together with the

14   backup tape of said proceedings to the best of my ability.

15   In witness whereof, I have hereto subscribed my name, this

16   15th day of May, 2013.

17

18

19

20                       _Lisa K. Bankins_

21                       Lisa K. Bankins
                         Official Court Reporter
22

23

24

25

'08 [1] 29/21

# 0

0235 [1] 55/9

# 1

1.60 grams [1] 15/22
100 grams [1] 8/25
102 [1] 43/3
103 [4]
105A [1] 1/16
108 [1] 39/4
11 grams [2] 9/15 9/17
110 [9]
118 [1] 42/4
119 [1] 10/2
12 [1] 8/9
123 [3]
124 [2] 42/15 42/16
13 [1] 52/25
130 [3]
137 [7]
14 [2] 54/10 54/15
146 [12]
147 [1] 8/23
1519 [1] 3/20
154 [1] 38/22
15th [1] 55/16
162 [3]
170 [1] 54/1
19 [1] 13/4
19th [1] 41/2
1:00 [1] 1/6

# 2

20 [3]
2004 [1] 35/12
2006 [4]
2011 [2] 37/21 39/6
2012 [3]
2013 [1] 55/16
203 [1] 40/6
206 [3]
20770 [2] 1/13 1/20
20th [1] 55/9
21 [1] 5/5
22 [2] 29/7 29/8
22031 [1] 1/16
2255 [1] 3/9
24 [1] 44/5
26 [4]
27 [2] 42/11 42/12
27-month [1] 52/25
28 [2] 41/20 49/24
29 [2] 19/19 19/22
2nd [1] 38/24

# 3

30 [3]
3022 [1] 1/15
31 [2] 20/18 20/19
34 [1] 53/15
3553 [5]
36 [1] 48/5
37 [1] 36/15
3B1.2 [2] 8/12 23/20

# 4

400 grams [1] 9/1
43 [1] 8/3
47 [2] 38/3 53/16

48 [9]

# 5

50 [2] 46/23 53/16
50-some [1] 38/14
53 [1] 53/16
54 [3]
57 [1] 53/16
5K2.19 [1] 44/20

# 6

60 [13]
60 grams [2] 18/8 20/12
60-month [2] 28/24 40/12
61 [1] 53/18
6500 [2] 1/12 1/20

# A

abeyance [1] 4/8
ability [3]
able [7]
about [18]
above [1] 41/21
abusive [1] 28/16
accept [4]
accepting [1] 31/11
accompanied [1] 51/4
accomplish [1] 46/16
accomplished [2] 28/18 28/19
accomplishments [1] 35/18
according [1] 40/10
accordingly [1] 53/9
account [3]
accountable [2] 24/6 24/14
accurately [1] 16/2
achievements [2] 46/1 46/9
acquired [1] 26/2
across [1] 38/12
act [2] 15/25 31/6
actions [3]
actively [1] 19/9
activities [1] 25/22
activity [2] 24/9 25/25
actual [3]
actually [9]
added [1] 40/23
addict [15]
addicted [1] 22/8
addiction [5]
addicts [2] 10/1 21/25
addition [2] 16/10 21/1
additional [1] 15/19
address [8]
addressed [4]
adduced [1] 55/7
adequate [1] 51/10
adequately [1] 15/1
adjustment [30]
adjustments [4]
admitted [1] 36/9
advocate [1] 27/24
affect [1] 53/17
afford [1] 51/10
after [11]
afternoon [1] 33/23
afterwards [1] 7/4
again [1] 11/13
against [1] 11/13
age [2] 38/3 46/23
aggravating [1] 17/12
ago [4]
agree [2] 46/2 47/23
agrees [1] 2/25

ahead [1] 21/12
Aid [3]
all [53]
alleging [1] 44/18
allocute [2] 14/22 26/24
allow [3]
allowing [2] 31/4 48/13
alluded [1] 7/23
almost [1] 9/10
along [2] 26/12 36/21
already [5]
also [10]
alternative [1] 5/12
alternatively [1] 5/7
although [4]
always [6]
am [4]
Amen [1] 31/15
amended [1] 54/7
amendment [1] 2/15
amends [1] 31/7
AMERICA [2] 1/3 55/8
among [2] 24/22 28/8
amount [2] 11/12 29/9
and/or [1] 30/22
another [6]
answering [1] 38/2
any [16]
anybody [2] 6/7 37/24
anymore [1] 22/1
Anyone [2] 33/22 34/9
anything [12]
anywhere [1] 17/20
apologize [2] 7/14 49/2
apparently [1] 47/15
appeal [5]
appealed [1] 38/5
APPEARANCES [1] 1/10
appears [1] 49/12
applauded [1] 45/7
application [2] 23/25 50/15
applies [1] 25/6
apply [2] 24/1 54/18
appreciate [1] 32/13
appropriate [8]
appropriately [1] 4/20
April [1] 41/1
are [26]
argument [13]
arguments [2] 26/22 49/17
around [2] 9/21 53/23
arrest [1] 43/1
arrested [1] 35/13
arrive [1] 31/4
as [67]
ask [5]
asked [3]
asking [14]
Assistant [1] 2/4
Assuming [1] 43/8
at [69]
atonement [2] 31/3 31/5
attempt [3]
attention [1] 27/22
attest [1] 28/1
attorney [2] 2/4 8/2
Attorneys [1] 1/11
audience [1] 26/15
Aunt [1] 33/19
authorized [1] 49/20
authorizes [1] 23/21
average [1] 24/5
avoid [2] 43/17 52/8

Case 8:04-cr-00235-DKC   Document 1622   Filed 05/15/09   Page 57 of 64

## A

avoiding [1] 21/3
awake [1] 10/7
aware [1] 34/4
away [1] 41/15
awful [1] 50/9

## B

B.O.P.'s [1] 43/10
baby [1] 36/24
back [12]
backup [1] 55/14
baggies [1] 44/10
Bankins [4]
baptized [1] 33/16
based [6]
basically [5]
basis [2] 2/15 44/24
be [76]
bear [1] 14/10
beat [1] 38/10
became [1] 37/17
because [26]
Becky [6]
become [1] 38/11
becomes [1] 6/14
becoming [3]
been [27]
before [19]
beg [1] 18/22
began [1] 15/19
begin [2] 3/10 7/21
beginning [3]
begun [1] 3/16
behalf [5]
behavior [3]
behind [1] 13/25
being [16]
belabor [1] 6/10
believe [42]
believes [1] 15/1
belligerent [1] 34/15
belongs [2] 21/15 21/19
benefit [1] 49/19
benefited [1] 43/19
besides [1] 19/14
best [5]
better [3]
between [3]
beyond [1] 30/14
binded [1] 48/12
blame [1] 13/16
blessed [1] 33/21
blessing [1] 13/25
blindly [1] 16/20
Booker [1] 21/1
both [4]
bought [1] 16/22
boyfriends [1] 11/1
brief [1] 29/15
briefly [1] 23/19
brings [2] 3/18 26/19
broad [2] 7/5 43/25
brother [1] 13/14
brought [2] 27/22 37/20
Brown [2] 32/19 32/25
burden [1] 15/11
Bureau [4]
business [4]
busy [1] 37/1
but [61]
buy [2] 11/1 16/8

## C

buys [1] 10/17
Bynum [3]
Byrd [1] 21/23

calculated [1] 38/24
calculation [5]
calculations [2] 2/19 42/25
calendar [1] 39/13
call [9]
called [2] 23/13 36/23
calls [7]
calm [1] 27/2
came [6]
camp [2] 38/1 38/6
can [37]
can't [12]
cancer [1] 33/10
cannot [2] 25/11 30/7
capacity [1] 55/6
care [1] 51/20
carrying [1] 9/14
cars [1] 10/25
case [36]
cases [1] 23/24
cash [4]
category [6]
caught [2] 13/5 48/22
cell [3]
certain [2] 44/13 50/18
certainly [2] 20/8 44/13
certificate [7]
certify [2] 55/5 55/11
chance [7]
chances [3]
change [6]
changed [6]
character [1] 6/5
charge [4]
Cherrywood [2] 1/12 1/20
Chesapeake [2] 28/7 28/10
childhood [1] 28/16
choices [1] 17/6
choose [2] 7/11 48/12
chosen [1] 33/20
Christ [1] 33/8
church [2] 32/15 33/16
Circuit [8]
Circuit's [1] 4/19
circumstances [7]
citizen [1] 30/20
claim [3]
clarify [1] 15/8
class [3]
Claude [1] 21/1
clean [1] 36/15
clear [4]
clearly [4]
clerk [1] 54/13
client [1] 9/9
close [4]
closer [2] 16/24 31/21
co [1] 8/7
co-defendant [1] 8/7
coat [1] 22/25
coating [1] 51/5
coats [3]
cocaine [8]
coincided [1] 49/1
college [1] 45/20
come [9]
comes [3]
coming [1] 9/12

commend [1] 27/23
comment [1] 51/22
commentary [1] 23/25
commit [1] 49/8
committed [1] 29/10
committing [3]
compared [1] 49/23
complete [3]
completed [1] 46/9
completely [1] 15/9
complimentary [1] 47/22
comply [2] 50/23 52/17
compound [1] 31/24
compounds [1] 35/22
concern [1] 5/11
concerned [3]
concerning [2] 21/10 24/1
concerted [1] 24/9
conclude [2] 5/10 26/13
concluded [8]
conclusion [1] 10/8 41/15
concurrent [6]
condition [1] 44/22
conduct [11]
conducting [1] 9/22
connected [1] 10/20
consecutive [11]
consider [7]
consideration [4]
considered [3]
considering [4]
consistently [1] 43/24
conspiracy [18]
conspirators [1] 20/17
constitute [1] 55/12
constrained [1] 46/3
contact [1] 21/20
contemplated [1] 46/21
contend [2] 24/25 45/6
continuation [1] 4/5
continue [3]
continued [2] 8/17 18/20
contributing [1] 31/9
control [1] 30/15
conversation [3]
conversations [2] 15/20 18/5
convicted [3]
cook [1] 48/17
copped [1] 12/9
copy [2] 14/19 40/14
corner [2] 9/11 17/22
correct [13]
correctional [2] 35/21 51/20
correctly [3]
correspondence [3]
could [15]
couldn't [5]
counsel [4]
counselor [1] 36/16
counsels [1] 46/14
count [15]
counts [5]
County [1] 22/25
couple [2] 10/22 20/6
courage [1] 30/7
courier [1] 16/18
course [1] 53/13
courses [1] 52/2
court [41]
Court's [2] 41/15 47/12
courtroom [4]
cousin [2] 29/20 36/8
cover [1] 24/22

**C**

covers [1] 11/24
crack [2] 2/15 3/6
credited [1] 52/5
credits [6]
cries [1] 35/16
crime [1] 29/10
crimes [4]
criminal [15]
culpable [7]
culture [1] 18/17
current [1] 2/25
cut [3]

**D**

damage [1] 19/4
Danielle [2] 31/18 31/22
date [1] 54/11
Dated [1] 14/16
daughter [5]
day [9]
days [10]
dead [1] 49/10
deal [2] 10/9 14/7
dealer [3]
dealing [2] 51/3 51/14
dealt [2] 10/13 49/7
deaths [1] 12/19
DEBORAH [5]
deceive [1] 44/8
December [1] 13/4
December 19 [1] 13/4
decide [4]
decipher [2] 39/8 39/9
decision [2]
decisions [1] 34/7
declined [1] 5/4
dedicate [1] 33/7
deduction [1] 22/15
deeply [1] 11/3
defendant [27]
defendant's [5]
defendants [4]
defended [2] 37/25 38/4
defense [2] 13/5 38/8
defined [1] 25/8
definition [1] 17/25
degree [4]
Delaware [1] 36/16
delegated [1] 10/18
denied [2] 19/24 43/22
deny [3]
denying [1] 3/5
depart [1] 19/22
departure [3]
depending [3]
Depierre [3]
Derrek [3]
described [4]
deserve [2] 21/22 23/12
deserved [1] 50/5
deserves [1] 17/4
deserving [1] 13/24
destructive [1] 30/11
details [2] 8/8 24/1
detainer [1] 23/1
detect [1] 44/17
detectives [1] 22/4
detention [1] 28/7
determine [2] 6/12 6/17
determined [3]
deterrence [1] 51/10

developed [1] 50/14
dichotomy [1] 17/5
did [32]
didn't [32]
die [1] 36/6
died [2] 13/14 33/10
difference [5]
different [5]
dinner [1] 48/17
directed [1] 49/15
disagree [1] 6/7
disagrees [1] 5/24
discount [1] 25/23
discuss [2] 18/13 28/2
discussed [1] 49/21
discusses [1] 44/9
discussion [1] 15/24
disfigured [1] 38/12
disparities [2] 43/18 52/9
disparity [1] 21/3
disputed [1] 44/12
distinct [1] 16/15
distinction [2] 15/13 16/6
distributing [5]
distribution [3]
distributor [1] 16/3
DISTRICT [6]
DIVISION [1] 1/2
do [62]
DOBIE [42]
Dobie's [5]
Docket [1] 3/20
doctorate [1] 36/10
document [1] 39/6
documents [1] 6/3
does [13]
doesn't [3]
doing [6]
don't [41]
done [15]
Donna [1] 16/17
doubt [1] 30/15
down [5]
downward [2] 5/6 44/24
dramatic [1] 10/4
dramatically [2] 35/11 35/15
drastically [1] 12/16
dressing [1] 46/13
driven [1] 2/21
Driver [1] 47/16
drug [23]
drugs [26]
during [6]

**E**

each [4]
earlier [6]
earned [2] 30/18 30/19
educate [1] 51/24
educational [2] 28/17 51/19
effect [2] 28/4 54/4
effective [1] 51/20
effort [1] 53/12
efforts [4]
eight [14]
either [2] 18/25 43/12
elevated [1] 52/1
eloquently [1] 25/8
else [10]
embraced [1] 31/24
emotionally [1] 30/22
enabler [2] 36/12 36/13
encourage [1] 48/8

encouraged [2] 32/1 32/2
end [6]
ended [1] 38/14
endure [1] 12/18
engaged [2] 25/23 51/2
enhanced [1] 17/12
enhancement [4]
enough [1] 9/22
enter [2] 3/4 54/7
entire [1] 20/23
entirety [1] 11/5
entitled [12]
entitlement [1] 24/25
entrenched [1] 11/3
entry [2] 3/20 46/13
envision [2] 7/5 17/8
especially [2] 11/3 47/3
Esquire [3]
essential [2] 9/5 45/24
essentially [3]
eternity [1] 31/3
Eugene [1] 21/23
euphoria [1] 22/19
evaluate [1] 11/8
evaluated [1] 49/16
evaluation [1] 38/22
even [16]
ever [4]
every [5]
everybody [2] 35/14 37/1
everyone [3]
everything [4]
evidence [5]
ex [1] 35/21
ex-correctional [1] 35/21
exact [1] 20/18
exactly [1] 44/9
example [3]
exceptional [6]
Excuse [1] 23/6
existing [1] 40/22
expected [1] 42/6
expertise [1] 34/4
explain [1] 54/13
expression [1] 23/6
extensive [1] 48/4
extent [3]
extra [1] 11/18
extraordinary [2] 44/19 46/9

**F**

face [2] 36/20 38/13
facility [1] 28/7
fact [16]
factor [2] 7/6 45/25
factors [5]
factual [1] 45/23
fade [1] 33/6
fair [1] 6/22
Fairfax [1] 1/16
fairly [3]
faith [2] 30/15 30/16
fall [3]
falling [1] 23/24
falls [1] 44/16
false [3]
familiar [1] 48/19
family [13]
fancy [1] 10/25
far [1] 18/5
Farmer [1] 21/24
fashion [2] 47/10 48/15
fashioning [1] 37/10

## F

father [3]
favors [1]  12/25
FBOP [2]  38/7 40/11
federal [3]
fee [2]  54/11 54/14
feeble [3]
feed [2]  10/24 22/10
feeding [3]
feels [1]  46/5
feet [1]  31/2
ferret [1]  8/10
ferreting [1]  9/14
fighting [1]  38/3
figure [1]  19/20
file [2]  4/9 14/16
filed [2]  22/17 54/20
filing [2]  54/11 54/13
filled [1]  7/22
final [1]  47/25
finally [1]  52/10
financial [2]  25/21 25/21
finding [2]  11/7 44/6
fine [1]  21/12
firearm [1]  18/3
firearms [2]  16/9 18/4
first [15]
fit [2]  8/11 8/15
fits [1]  47/7
five [12]
flesh [1]  46/17
focusing [2]  32/10 41/11
foregoing [1]  55/11
foremost [1]  6/11
forever [1]  31/15
forth [2]  50/24 52/18
forward [4]
fought [2]  38/9 38/10
found [13]
four [8]
four-level [1]  22/15
four-point [2]  18/12 18/13
fours [1]  45/15
Fourth [9]
free [1]  39/15
freedom [1]  31/6
friends [1]  7/22
front [1]  14/1
full [1]  12/7
fully [2]  34/4 53/12
function [1]  24/9
fundamentally [1]  16/14
fur [4]
further [10]

## G

G.E.D [2]  46/12 48/11
gain [3]
game [1]  6/22
gather [3]
gathering [1]  27/13
gave [6]
GED [1]  35/20
gentleman [1]  48/19
get [32]
gets [2]  24/18 42/1
gift [4]
girl [1]  36/4
give [9]
given [6]
gives [1]  24/11
glad [6]

glean [1]  19/13
globe [1]  4/25
go [15]
God [14]
God's [2]  12/23 21/22
goes [1]  24/6
going [17]
Goldie [1]  33/23
gone [6]
good [17]
Goodwin's [1]  21/21
got [26]
gotten [2]  46/12 48/10
government [18]
government's [3]
grams [7]
grand [1]  8/11
Grandma [1]  36/24
grandmother [1]  34/13
grandparents [1]  12/19
grant [1]  30/6
granted [1]  36/24
granting [1]  31/5
grants [1]  6/19
greater [2]  50/23 52/17
Greenbelt [3]
ground [1]  40/25
grounds [1]  43/25
group [2]  15/12 24/23
guidance [1]  32/8
guideline [15]
guidelines [11]
guilty [12]
gun [1]  8/23
Gwen [1]  49/1
Gwendolyn [1]  21/16

## H

habit [4]
had [32]
hair [1]  46/13
half [3]
hand [2]  39/8 49/6
handed [1]  8/22
handled [1]  6/25
hands [1]  13/22
hang [1]  14/7
happen [1]  39/18
happens [1]  35/22
happy [3]
Hard [1]  43/25
hardest [1]  13/12
hardly [1]  10/7
hardship [1]  31/11
has [37]
hasn't [2]  3/16 7/6
have [87]
haven't [1]  38/23
having [4]
Hazelton [2]  31/24 47/17
he [12]
He's [3]
head [1]  40/7
heal [1]  30/21
health [1]  28/15
hear [14]
heard [6]
hearing [2]  9/2 15/2
heart [1]  29/22
heavy [1]  19/15
held [1]  48/21
hell [1]  23/5
Hello [1]  31/18

help [6]
helped [2]  6/20 35/18
helping [1]  32/4
Henrico [1]  22/25
her [140]
here [17]
hereby [1]  55/5
hereto [1]  55/15
heroin [9]
herself [6]
hi [2]  36/24
high [2]  18/22 22/10
highest [1]  43/8
him [3]
himself [2]  36/16 45/12
his [5]
history [9]
hold [4]
holding [2]  41/1 45/24
holler [1]  35/17
home [6]
honest [1]  39/7
honestly [1]  12/20
Honor [105]
HONORABLE [1]  1/8
hoping [1]  17/19
hours [2]  9/13 18/22
house [7]
houses [1]  11/1
how [14]
however [4]
hug [1]  13/19
huge [1]  9/14
humor [1]  51/25
husband [4]

## I

I'd [4]
I'll [9]
I'm [59]
I've [29]
if [55]
immediately [1]  33/4
implicitly [2]  15/3 21/5
important [3]
impose [6]
imposed [8]
imposes [1]  41/9
impressive [3]
impressively [1]  54/22
imprisonment [1]  44/23
improved [1]  27/17
in [206]
incarcerated [6]
incarceration [10]
incident [1]  38/2
include [1]  40/9
including [1]  3/17
incredible [1]  27/12
incredibly [1]  28/19
indeed [2]  22/5 38/9
indicated [1]  53/21
individual [3]
individual's [1]  30/15
individuals [5]
indulgence [1]  47/13
industrious [1]  28/19
industry [1]  19/15
influence [2]  10/7 34/17
information [1]  27/13
informed [1]  27/10
Ingrid [2]  32/19 32/24
initial [3]

## I

initially [4]
inmate [2]  28/9 37/23
inner [2]  9/19 17/10
inquiry [2]  7/15 8/16
insignificant [1]  51/14
instance [1]  25/25
institutional [1]  38/16
intended [1]  24/21
intent [1]  44/8
intentionally [1]  48/24
into [23]
introduce [1]  33/7
involved [5]
involvement [2]  8/18 30/10
involving [1]  51/3
is [123]
isn't [2]  11/7 20/12
issue [7]
issued [1]  6/23
issues [2]  32/4 52/4
it [94]
it's [26]
its [1]  5/4
itself [1]  15/25

## J

jail [22]  28/5 36/4
Javier [1]  1/15
jewelry [1]  44/11
job [1]  47/5
jobs [2]  36/11 47/5
Joe [1]  47/16
Johnson [1]  16/17
JOHNSTON [14]
JONATHAN [2]  1/11 2/2
judge [10]
judgment [3]
July [1]  14/16
June [2]  35/12 35/13
June 6 [1]  35/13
jurors [2]  12/13 44/8
jury [6]
jury's [1]  11/19
just [26]
justice [8]

## K

keep [3]
kept [1]  26/3
key [1]  20/13
kilo [3]
kilogram [2]  15/21 20/11
kilos [1]  22/9
kind [7]
kinds [2]  47/5 52/6
kite [1]  18/22
knew [5]
know [42]
knowing [5]
known [2]  21/24 28/8
knows [5]

## L

lady [1]  36/6
laid [1]  6/9
Lane [4]
Lanora [3]
large [2]  36/17 36/17
Larry [2]  21/1 21/21
last [7]
later [1]  20/11

laugh [1]  35/17
LAVON [15]
Lavon's [1]  33/3
law [6]
laying [1]  28/13
least [4]
leave [3]
leaving [2]  13/13 48/5
left [5]
leg [1]  27/14
legal [2]  27/16 52/1
length [1]  44/9
lengths [1]  51/23
lengthy [1]  49/18
less [6]
lesser [1]  8/20
let [8]
let's [4]
letter [8]
letters [10]
level [20]
levels [7]
Levy [2]  21/16 49/1
liability [1]  31/8
lie [1]  48/24
life [14]
lifestyle [2]  22/11 30/10
light [1]  54/22
like [6]
liked [1]  28/8
limited [4]
Lisa [4]
listened [1]  21/13
listening [2]  10/3 10/5
little [3]
live [1]  30/16
lives [1]  28/5
living [2]  22/11 31/10
local [1]  28/5
location [1]  26/11
locked [2]  14/2 38/23
logically [1]  51/6
long [8]
longer [2]  31/8 46/5
look [4]
looked [3]
looking [1]  2/19
Lorton [1]  35/22
lost [2]  13/15 33/1
lot [7]
loud [1]  25/18
louder [1]  32/21
love [11]
low [3]
lower [1]  11/14
luck [3]

## M

ma'am [2]  32/17 32/20
machine [2]  55/5 55/13
made [14]
magnitude [1]  23/2
major [2]  11/24 23/8
make [17]
makes [2]  24/4 44/5
making [2]  31/7 54/19
man [1]  22/7
manager [1]  17/3
mandatory [4]
manner [1]  51/21
many [4]
married [1]  45/21
Martin [15]

MARYLAND [5]
Master's [1]  36/0
material [2]  33/6 44/7
math [2]  40/7 50/7
mathematics [2]  42/13 43/11
matter [9]
matters [1]  50/1
mature [1]  36/5
maxed [1]  46/15
may [10]
me [71]
mean [8]
means [2]  39/8 54/2
meant [1]  30/9
mechanical [1]  1/22
medical [1]  51/19
member [2]  30/19 49/8
members [6]
memo [6]
memory [1]  19/5
mental [1]  28/15
mentally [1]  30/22
mentioned [1]  33/3
mercy [1]  12/24
mess [1]  13/11
met [2]  27/9 32/25
mic [1]  31/20
middle [5]
midway [1]  50/7
millions [1]  33/18
mind [1]  21/2
mine [1]  48/23
minimal [12]
minimum [1]  9/1
minor [32]
minus [3]
minute [1]  26/25
Mirriam [2]
mistake [1]  51/2
mistakes [3]
mitigating [6]
model [1]  28/9
mom [1]  33/3
moment [3]
money [2]  10/24 10/24
month [4]
months [53]
moot [2]  3/10 3/16
more [13]
morning [5]
most [5]
mother [11]
mother's [1]  32/6
motion [12]
motions [4]
motivated [1]  25/24
motivational [1]  33/17
move [2]  16/20 19/1
moved [1]  18/25
moving [1]  23/12
Mr. [4]
Mr. Goodwin's [1]  21/21
Mr. Joe [1]  47/16
Mr. Pepper [1]  45/19
Mr. Ward [1]  9/8
Ms [9]
Ms. Dobie [25]
Ms. Dobie's [5]
Ms. Johnston [8]
Ms. Lavon [1]  33/24
Ms. Martin [10]

Case 8:04-cr-00235-DKC Document 1622 Filed 05/15/09 Page 61 of 64

**M**

Ms. Seddiq [5]
much [11]
multiple [4]
must [4]
my [83]
myself [8]

**N**

name [8]
Nanny [1] 33/19
narcotics [2] 15/18 44/12
nature [1] 44/23
near [1] 43/9
nearing [1] 54/2
necessarily [1] 25/21
necessary [2] 50/23 52/17
need [9]
needed [5]
needs [2] 10/15 10/16
negative [1] 32/10
nephew [2] 9/24 17/25
network [1] 36/14
never [12]
nevertheless [1] 25/10
new [7]
next [2] 7/24 31/15
night [2] 9/13 18/22
no [29]
nobody [2] 22/4 49/3
nodded [1] 13/2
nodding [1] 22/20
None [1] 43/19
not [86]
note [2] 7/21 24/6
noted [2] 27/7 51/25
notereading [1] 1/22
notes [3]
nothing [5]
November [2] 1/5 55/10
now [16]
number [5]
numbers [1] 21/20

**O**

obstructed [2] 44/3 50/12
obstruction [1] 44/4
obtaining [1] 16/8
obviously [2] 10/6 52/2
occasions [1] 10/22
October [1] 38/24
off [2] 29/8 40/25
offense [18]
offering [1] 15/19
Office [1] 1/11
officer [1] 35/21
Offices [1] 1/14
official [4]
oh [3]
okay [6]
old [2] 41/25 46/24
older [1] 32/7
on [77]
Once [1] 3/9
one [30]
ongoing [1] 9/5
only [16]
onto [1] 48/21
OPHARDT [2] 1/11 2/2
opinion [2] 4/19 5/5
opportunity [2] 8/9 30/25
oppose [2] 7/4 34/4

options [2] 14/4 14/5
or [37]
order [4]
organization [1] 11/22
organizer [1] 17/4
other [24]
others [4]
Otherwise [1] 54/15
our [6]
out [30]
outbursts [2] 26/15 26/16
outcome [1] 3/25
over [11]
overall [2] 40/5 40/5
own [3]
ownership [1] 30/13

**P**

p.m [1] 1/6
page [2] 10/2 44/5
pages [2] 5/5 55/11
paperwork [2] 37/22 48/6
paralegal [3]
parents [1] 13/18
part [5]
participant [13]
participants [3]
participate [1] 25/24
participated [1] 26/10
participation [1] 25/19
particular [1] 11/8
particulars [1] 38/5
parts [1] 26/3
pathway [1] 31/11
Paulette [5]
Pause [1] 47/14
pay [2] 16/4 54/11
peace [1] 31/11
pending [1] 22/25
penitentiary [5]
people [13]
people's [2] 21/3 28/4
Pepper [10]
performs [1] 24/9
perhaps [2] 25/8 26/3
period [3]
peripheral [1] 18/10
person [3]
personal [1] 44/11
personally [2] 24/8 24/15
perspective [1] 32/6
phone [8]
physical [1] 19/4
physically [1] 30/23
pick [3]
picked [1] 52/23
pills [1] 14/6
place [2] 25/14 33/8
placed [1] 31/2
plainly [1] 24/22
play [4]
player [4]
players [2] 8/21 9/5
plays [1] 24/3
pleaded [1] 38/8
pleasant [1] 13/9
please [1] 26/17
pled [1] 43/19
plus [5]
point [28]
pointed [1] 27/6
points [6]
poor [2] 26/12 45/19

Pops [1] 33/19
positive [5]
positively [1] 32/10
possession [1] 16/9
post [6]
post-incarceration [2] 37/10 45/25
post-offense [2] 44/19 44/21
pound [1] 46/17
power [1] 30/21
practical [1] 54/2
pray [6]
prayer [1] 30/21
praying [2] 13/23 48/17
precluded [2] 24/10 24/16
present [2] 21/16 42/21
presented [1] 12/14
presumably [1] 16/10
previous [1] 53/19
previously [7]
primarily [4]
principal [1] 52/10
prior [4]
prison [15]
Prisons [4]
pro [2] 2/16 2/18
probably [1] 51/13
procedures [1] 54/12
proceed [3]
proceeding [6]
proceedings [5]
proceeds [1] 16/8
process [2] 14/8 31/6
procured [1] 15/23
produced [2] 1/22 51/7
produces [3]
productive [3]
profound [1] 38/4
program [3]
promise [1] 36/19
promote [1] 51/9
proof [1] 19/14
protect [3]
proud [3]
prove [2] 11/13 15/11
proves [1] 11/16
provide [3]
provides [2] 24/2 25/5
public [3]
punishment [2] 46/17 51/7
purchased [1] 16/10
pure [1] 25/20
purpose [4]
purposes [3]
pursuant [1] 37/8
pushed [1] 27/22
put [4]

**Q**

qualify [1] 10/17
quality [2] 27/16 51/25
quantity [2] 24/14 26/11
question [18]
questions [1] 17/16
quite [1] 51/23
quote [3]

**R**

raised [1] 20/7
range [26]
rare [1] 34/20
rate [1] 47/2
rather [7]
RDAP [1] 48/3

## R

re [16]
re-address [1]  50/25
re-dedicate [1]  33/7
re-distributing [1]  16/11
re-entry [1]  46/13
re-sentencing [12]
read [5]
reading [1]  42/2
real [3]
really [7]
reasonably [2]  31/14 42/6
reasons [2]  30/24 53/5
recall [5]
receive [5]
received [9]
recently [1]  4/5
recidivism [1]  47/3
recognize [1]  9/9
recollection [1]  49/18
recommended [1]  38/1
record [2]  7/21 50/2
recorded [1]  1/22
recordings [1]  10/5
recovered [1]  33/15
recovering [1]  32/1
recreational [1]  26/9
reduce [4]
reduction [26]
reflect [1]  54/7
reflected [1]  50/4
regard [1]  26/22
regular [1]  27/15
rehabilitate [2]  51/24 53/13
rehabilitation [8]
rejected [3]
relating [1]  4/15
relationship [3]
released [3]
relevant [3]
relying [1]  19/16
remains [1]  52/19
remand [8]
remanded [1]  41/3
remands [1]  45/11
remarkable [2]  27/7 27/8
remember [3]
remembers [1]  20/20
remind [4]
rendered [1]  34/7
report [3]
reported [1]  55/5
reporter [5]
request [3]
requested [2]  5/5 15/4
required [3]
requires [2]  25/14 50/10
resale [1]  44/11
research [1]  52/3
reselling [1]  25/22
resentencing [1]  5/2
respect [14]
respond [1]  4/6
responsibilities [1]  13/16
responsibility [2]  12/7 30/2
responsible [2]  9/13 13/20
rest [1]  46/16
restitution [1]  52/11
result [2]  50/13 50/21
resulted [1]  25/22
resulting [1]  4/18
retreat [1]  4/16

retroactive [1]  2/14
retroactivity [1]  41/24
review [2]  9/8 23/19
reviewed [1]  52/19
revised [3]
revisit [1]  15/9
right [30]
rights [1]  54/15
RMR [1]  1/19
Road [1]  1/15
ROGER [1]  1/8
role [53]
roles [1]  21/3
Room [1]  1/16
ruling [1]  15/8
rulings [2]  44/15 54/19
run [3]
running [7]
RWT [3]
RWT-04-0235 [1]  55/9
RWT-04-0235-9 [1]  1/3
RWT-04-235-9 [1]  2/6

## S

said [27]
sake [2]  21/22 23/5
sales [1]  16/14
same [6]
sat [1]  35/13
satisfied [6]
satisfy [1]  26/3
saved [2]  29/25 33/5
say [20]
saying [4]
says [3]
scales [1]  44/10
scarred [1]  38/13
scars [1]  35/24
scattered [1]  26/25
schedules [1]  37/1
scheme [1]  8/11
school [1]  37/2
scope [8]
Scott [1]  34/11
scratch [1]  4/25
scream [1]  35/17
se [2]  2/16 2/18
searched [1]  9/15
seated [2]  2/9 14/12
second [11]
section [4]
Seddiq [10]
see [11]
seemed [2]  16/11 17/2
seems [2]  31/3 46/18
seen [1]  36/4
self [2]  30/11 38/8
self-defense [1]  38/8
self-destructive [1]  30/11
sell [1]  19/6
selling [5]
send [1]  38/6
sends [1]  27/15
sense [1]  51/12
sent [3]
sentence [58]
sentenced [5]
sentences [4]
sentencing [45]
September [1]  37/21
September 2011 [1]  37/21
serenity [1]  30/6
serious [1]  51/3

seriousness [2]  25/23 51/5
serve [3]  40/23
served [2]  31/22 42/24
set [8]
setting [1]  51/22
seven [2]  42/13 42/25
several [3]
Shanice [1]  34/11
share [3]
shared [3]
sharing [1]  19/7
she [175]
she's [40]
shirt [2]  37/19 37/20
shocked [1]  34/15
shop [1]  9/11
shorthand [2]  55/6 55/13
shot [1]  38/3
shots [1]  37/18
should [7]
showed [1]  10/23
shown [1]  31/1
sibling [1]  12/19
siblings [1]  13/15
side [2]  18/20 38/13
significant [4]
similar [1]  19/11
simple [4]
simply [9]
since [5]
single [1]  50/25
sir [2]  31/17 54/17
sit [4]
sitting [4]
situations [1]  30/14
Sixty [1]  40/6
slept [1]  38/12
slight [1]  51/25
smaller [1]  11/12
smoke [1]  19/3
snort [1]  19/3
snorted [1]  22/6
so [44]
sober [1]  22/10
society [7]
sold [1]  26/2
some [19]
somebody [4]
someone [8]
something [6]
sometimes [1]  30/13
somewhere [3]
son [2]  18/1 21/21
son's [1]  32/5
soon [2]  32/15 35/2
sooner [1]  47/12
sorry [6]
sort [2]  18/9 19/15
sought [1]  17/12
sounded [1]  10/6
source [1]  15/19
SOUTHERN [1]  1/2
speak [4]
speaker [2]  33/17 35/5
speaks [1]  34/18
specific [2]  6/6 30/24
specifically [4]
speech [2]  10/6 34/12
spent [2]  20/23 32/13
spider [3]
spiritually [1]  30/22
spite [1]  48/2
spoke [2]  21/21 32/3

**S**

spread [2]  42/11 52/25
staff [1]  28/8
stand [4]
start [6]
starting [1]  35/13
stash [1]  17/23
state [3]
stated [6]
statements [1]  49/17
states [13]
stating [1]  35/12
Statistically [1]  47/2
status [2]  37/13 42/21
stay [1]  10/7
stayed [1]  34/17
stealing [2]  22/24 23/3
stenography [1]  1/22
step [1]  7/24
stepped [1]  33/10
still [4]
stitches [1]  38/14
stopped [1]  36/21
store [3]
stored [2]  18/25 24/15
stores [1]  23/2
storing [2]  24/14 44/11
street [2]  17/22 21/25
structured [1]  21/7
studying [1]  48/11
style [1]  33/6
submit [1]  7/25
subscribed [1]  55/15
substance [1]  13/3
substantial [6]
substantially [2]  24/5 40/8
success [1]  46/13
such [3]
sufficient [4]
sugar [1]  51/4
summer [2]  20/23 25/15
supervisor [1]  17/3
supplier [1]  15/24
supply [1]  15/20
support [1]  26/1
supportive [1]  6/2
supports [1]  30/4
supposed [2]  28/14 28/15
supremely [1]  31/15
sure [4]
surrender [1]  31/13
swayed [1]  36/1
swung [1]  37/25
system [1]  43/24

**T**

table [4]
take [6]
taken [2]  30/2 55/13
taking [3]
talk [1]  18/24
talked [1]  15/22
talking [6]
tape [1]  55/14
taught [1]  33/11
taxpayer [1]  31/8
teaching [1]  32/9
technically [2]  39/14 41/1
telephone [5]
tell [2]  10/10 15/15
ten [2]  22/9 39/15
ten-year [1]  39/15

term [1]  44/22
terms [3]
terrible [1]  9/18
testified [2]  44/3 44/10
testimony [18]
text [1]  23/19
than [23]
thank [28]
thankful [2]  35/23 36/2
thankfully [1]  46/4
Thanksgiving [1]  48/17
that [309]
that's [22]
their [7]
them [15]
then [22]
theory [2]  48/25 48/25
there [35]
there's [13]
therefore [2]  10/8 16/9
these [7]
they [20]
they're [3]
thing [3]
things [15]
think [35]
this [110]
those [13]
thought [1]  46/21
three [3]
thriving [1]  8/17
through [10]
throughout [1]  31/1
ticket [2]  37/22 38/10
time [37]
times [2]  22/20 45/12
TITUS [9]
today [36]
today's [1]  54/11
together [3]
told [6]
tolling [1]  3/9
Tom [1]  21/24
too [1]  40/24
took [7]
top [1]  8/21
total [3]
touch [1]  33/17
towards [1]  17/15
trafficking [1]  24/12
training [2]  28/17 51/19
transcript [7]
transcripts [1]  17/19
transferred [2]  28/6 37/17
transported [2]  24/15
transporting [2]  24/13 26/10
treatment [3]
trial [14]
trouble [1]  47/1
trust [3]
trustee [1]  37/17
try [1]  22/12
trying [4]
tunnel [1]  54/23
turn [1]  26/1
turned [1]  27/9
twenty [3]
twenty-seven [2]  42/13 42/25
Twenty-three [1]  32/25
two [24]
two-level [5]
two-point [5]
type [1]  52/2

types [1]  26/2

**U**

umbrella [1]  24/20
unable [1]  54/11
uncomfortable [1]  43/13
unconditional [2]  36/7 36/23
under [15]
underrepresentation [1]  20/2
understand [4]
understanding [2]  3/13 7/13
understands [1]  30/21
understood [1]  43/12
undertaken [1]  44/22
unfortunately [3]
unit [1]  32/8
UNITED [10]
unless [5]
unravel [1]  15/19
until [7]
unwarranted [1]  52/9
up [17]
upon [5]
upward [1]  43/22
upwardly [1]  19/21
us [1]  14/9
use [4]
used [2]  44/10 44/12
user [2]  16/3 18/17
users [1]  26/9
using [1]  16/4

**V**

vacated [2]  39/5 41/3
variance [3]
variety [1]  43/25
various [2]  26/2 28/1
vast [1]  11/4
vein [1]  51/25
verdict [1]  11/19
versus [1]  55/8
very [14]
view [2]  15/16 32/6
viewed [1]  31/8
Vincent [2]  29/20 36/8
violation [1]  49/9
violence [1]  51/13
Virginia [3]
Vivian [1]  33/19
vocational [1]  51/19
voice [1]  31/4
voluntarily [1]  46/14
volunteered [1]  48/7
vouch [1]  6/5

**W**

waived [2]  54/14 54/15
walk [2]  12/23 36/18
walked [4]
walking [1]  35/21
want [23]
wanted [4]
wants [2]  14/20 31/5
Ward [1]  9/8
warden [1]  47/16
warehouse [1]  49/4
warehoused [1]  14/4
warranted [1]  15/10
was [149]
wasn't [14]
way [10]
we [35]
we're [11]

# W

weapons [1] 51/4
web [3]
weeks [1] 8/10
weights [1] 9/14
well [26]
went [5]
were [28]
weren't [1] 48/23
West [2] 27/10 28/10
what [62]
what's [1] 30/17
whatever [7]
when [25]
where [13]
whereof [1] 55/15
whether [11]
which [19]
while [4]
who [31]
who's [2] 34/3 34/20
whole [3]
wholeheartedly [1] 48/13
whose [2] 24/12 25/7
why [3]
will [29]
willfully [1] 16/20
willingness [1] 31/2
wiretap [2] 21/15 21/18
wisdom [1] 30/8
wish [7]
within [10]
without [5]
witness [4]
woman [3]
women [1] 46/14
won't [5]
word [1] 48/1
words [6]
work [6]
working [2] 28/6 36/10
workings [2] 9/19 17/11
world [2] 31/12 33/18
would [67]
wouldn't [4]
wounds [1] 30/21
written [3]
wrong [2] 30/17 39/2
wrote [5]

# Y

yeah [3]
year [6]
years [24]
yes [19]
yet [1] 47/9
you [164]
You'll [1] 46/25
you're [5]
you've [3]
young [1] 33/3
your [126]
yourself [3]

# Z

zipper [1] 37/19