ferent approach in *Kentucky v. King*, 89 CrL 205 (U.S. 2011), however. The *King* court held that officers may rely on the exigent-circumstances exception to the warrant requirement even when they had a role in creating the exigency so long as they did not engage, or threaten to engage, in conduct that violates the Fourth Amendment.

Nevertheless, there are other reasons some courts have been reluctant to extend *Buie* to consent entries. In *United States v. Gould*, 364 F.3d 578, 75 CrL 3 (5th Cir. 2004) (en banc), the Fifth Circuit upheld a sweep by officers who were present in a residence pursuant to an occupant's consent. Notwithstanding its holding, the court expressed concerns about officers circumventing the warrant requirement by making a request for entry for some stated purpose when their actual purpose is "gaining access in order to then make a protective sweep of the entire home for unrelated reasons." The *Gould* court expressed similar concerns about officers obtaining entry to a limited area and then invoking the protective-sweep doctrine "*without* anything having developed since entry suggestive of greater or more imminent danger than that initially apparent just prior to entry."

In *State v. Davila*, 999 A.2d 1116, 87 CrL 700 (N.J. 2010), the New Jersey Supreme Court called for extra scrutiny of protective sweeps in situations in which officers gained entry of premises through consent. The court said it is important that the asserted reasons for the protective sweep be "carefully examined" and that the "enhanced precautions are necessary to stem the possibility that a protective sweep is nothing more than an unconstitutional warrantless search." Accord, *Hernandez v. State*, 98 So. 3d 702, 92 CrL 89 (Fla. Ct. App. 2012) (officers who entered pursuant to consent instead of seeking warrant could not rely on circumstances of which they were aware prior to entry to conduct protective sweep).

In *Guzman v. Commonwealth*, 375 S.W.3d 805, 91 CrL 530 (Ky. 2012), the Kentucky Supreme Court held that officers conducting a "knock and talk" who obtained permission to step into an apartment could not conduct a protective sweep of the area behind a blanket-draped doorway that led to the rest of the apartment. Officers reasonably concerned about their safety in the apartment could have taken their investigation back outside, it said.

**Full Steam Ahead.** The Eighth Circuit has revealed no such trepidation about extending the protective-sweep doctrine.

The issue came before it in a case in which U.S. Immigration and Customs Enforcement agents obtained information that the defendant was in the country illegally, had obtained a gun and was engaged in illegal drug activity. The agents decided to go to the apartment where the defendant was staying to conduct a knock and talk. They identified themselves to the occupant who answered the door and obtained permission to come in.

Once inside, the agents asked the occupant whether anyone else was in the apartment. The occupant did not immediately respond but made a slight head movement toward a hallway. The agents drew their guns, yelled "policia, police" and proceeded down the hall. Their ensuing encounter with the defendant led to evidence used to convict him of federal offenses related to drugs, guns and immigration.

In a prior case, *United States v. Cisneros-Gutierrez*, 598 F.3d 997 (8th Cir. 2010), the Eighth Circuit upheld a protective sweep in a nonarrest situation after a brief discussion that appeared to rely on a combination of the rationale of *Buie* and that of *Segura v. United States*, 468 U.S. 796 (1984). In *Segura*, the Supreme Court held that the Fourth Amendment allows officers with probable cause to secure premises while others seek a search warrant.

Relying on *Cisneros-Gutierrez*, the court now concluded in an opinion by Judge Bobby E. Shepherd that *Buie* justified the ICE agents' sweep in this case. The agents' information that the defendant had obtained a gun, the occupant's silence and the head gesture made it reasonable for the agents to be concerned that the apartment harbored dangerous individuals.

Patrick Damian Daly, of the U.S. Attorney's Office, Kansas City, Mo., represented the government. Melanie Susan Morgan, of Morgan & Pilate LLC, Kansas City, represented the defendant.

BY HUGH KAPLAN

*Full text at http://www.bloomberglaw.com/public/document/United_States_of_AmericaPlaintiff_Appellee_v_Giovani_CrisolisGon*

## Sentencing

## Prosecutor May Conduct Second Jury Trial To Remedy Alleyne Error, First Circuit Says

The U.S. Court of Appeals for the First Circuit Feb. 11 continued to develop the remedies available in cases involving mandatory minimum sentences unconstitutionally based on judge-found facts. Other circuits have remanded cases for resentencing without the mandatory minimum. In an opinion by Judge Juan R. Torruella, the First Circuit decided that the defendant is not entitled to a new trial on remand but that the government can choose to hold a new trial if it is dissatisfied with the sentencing range that would apply in the absence of the mandatory minimum. (*United States v. Delgado-Marrero*, 2014 BL 36048, 1st Cir., No. 11-1660, 2/11/14).

Last term in *Alleyne v. United States*, 93 CrL 389 (U.S. 2013), the U.S. Supreme Court overturned longstanding precedent to extend *Apprendi v. New Jersey*, 530 U.S. 466, 67 CrL 459 (2000), by holding that the Sixth Amendment right to a jury trial applies to facts that trigger mandatory minimum sentences.

The ruling was particularly significant in light of the large number of mandatory minimums in both the federal and state systems. Questions remain, however, about what courts are to do with the cases in which defendants were sentenced in violation of *Alleyne*.

The federal circuits are divided as to whether *Alleyne* benefits defendants who failed to raise jury-trial objections in the district court. See *United States v. Mack*, 729 F.3d 594, 93 CrL 772 (6th Cir. 2013).

For defendants who raised objections, the First Circuit decided in *United States v. Harakaly*, 734 F.3d 88, 94 CrL 207 (1st Cir. 2013), that *Alleyne* error can be excused as harmless.

In *United States v. Pena*, 94 CrL 558 (1st Cir. 2014), the court addressed the remedy for preserved *Alleyne* error in a case involving a guilty plea. The *Pena* court refused the government's request to empanel a sentencing jury in light of the particular circumstances surrounding the guilty plea. It also said it could find no cases in which a circuit had granted such a request.

**New Jury Trial.** In this case, the court faced the question of how to remedy reversible *Alleyne* error following a jury trial.

The defendant was found guilty of drug-trafficking offenses and received a quantity-based mandatory minimum sentence. After the jurors had returned verdicts of guilty on drug-trafficking counts, the trial judge sent them back to the jury room for a second round of deliberations on the sole issue of drug quantity. However, the judge did not specifically instruct the jurors that they were to make the quantity determination beyond a reasonable doubt. The First Circuit held that this vitiated the jury's quantity finding in a way that violated *Alleyne* and required reversal.

*Alleyne* involved a mandatory minimum provided for firearms offenses. The First Circuit found support in the opinion in *Alleyne* for a distinction between "core crimes," such as conspiracy to engage in drug trafficking, and "aggravated crimes," such as conspiracy to engage in drug trafficking involving a drug quantity that triggers a mandatory minimum.

The defendant is not entitled to a new trial because there was nothing wrong with the jury's verdict as to his "core" drug-trafficking offenses, the court decided. In *Alleyne* itself the Supreme Court ordered resentencing rather than vacatur of the conviction, it said.

> "In light of the reversal for procedural error, the government also has an interest in potentially retrying Rivera for the aggravated crime charged in the indictment."
>
> JUDGE JUAN R. TORRUELLA

Moreover, "Rivera's interests are not the only interests implicated here," the court said. "In light of the reversal for procedural error, the government also has an interest in potentially retrying Rivera for the aggravated crime charged in the indictment."

This case involved a form of "instructional error" rather than a failure of proof, and the double jeopardy clause permits a retrial following an instructional error, the court said. It followed the lead of a Fourth Circuit case involving what it found to be a comparable type of *Apprendi* error. The court remanded the case and gave the government 30 days to ask the district court to either (1) affirm the defendant's core drug-trafficking offense and resentence him under the default penalty provision or (2) reverse the convictions and remand for a new trial on the aggravated offense.

Linda Backiel, San Juan, P.R., argued for the defendant. Jacqueline D. Novas-Debién, of the U.S. Attorney's Office, San Juan, argued for the government.

BY HUGH KAPLAN

Full text at http://www.bloomberglaw.com/public/document/UNITED_STATES_OF_AMERICA_Appellee_v_RAQUEL_DELGADOMARRERO_NGEL_L_/2

*Plea Bargains*

## General Appeal Waiver of Sentence Barred Challenge to Stacked Sentences

A plea agreement that contained a provision waiving the right to appeal any sentence within or below the U.S. Sentencing Guidelines range precluded the defendant from appealing the district judge's imposition of consecutive sentences, the U.S. Court of Appeals for the Third Circuit held Feb. 12. (*United States v. Banks*, 2014 BL 37201, 3d Cir., No. 13-2094, 2/12/14)

The defendant pleaded guilty to violating the federal bank fraud statute, 18 U.S.C. § 1349, and violating the conditions of supervised release imposed on a prior conviction. The plea agreement stipulated offense levels and criminal history categories for the two offenses, but it recognized that they were not binding on the district judge. The agreement stated that the judge:

■ "may impose any reasonable sentence up to and including the statutory maximum term of imprisonment"; and

■ "may order that any sentences imposed by the sentencing judge on the violation of 18 U.S.C. § 1349, as described in the Information, and the violation of supervised release as charged in Violation #1 to the Violation Petition, be served consecutively to each other."

The appeal waiver stated that the defendant was giving up his right to file any appeal that "challenges the sentence imposed by the sentencing court if that sentence falls within or below" the guidelines ranges for the stipulated offense levels and criminal history categories. However, the waiver provision did not mention consecutive sentences.

**Other Circuits.** In *United States v. Bowman*, 634 F.3d 357, 88 CrL 590 (6th Cir. 2011), the Sixth Circuit allowed an appeal of consecutive sentences despite the absence of language in a plea agreement's waiver provision addressing consecutive sentences.

The waiver provision in that case, like the one here, stated that the defendant waived the right "to appeal any sentence which is at or below the maximum of the guideline range as determined by the court." The agreement did not mention the defendant's undischarged state prison sentence or the discretion district judges have under U.S.S.G. § 5G1.3 to impose federal sentences to run consecutively to state sentences.

The government in *Bowman* pointed out that the presentence report warned of the possibility that the district judge would order the federal sentence to run consecutively to the state sentence. However, the *Bowman* court agreed with decisions of the Second and Seventh circuits that silent appeal waivers should be construed narrowly.

"The government could have avoided any imprecision on this issue by including language that would have precluded Bowman from challenging the district court's application of U.S.S.G. § 5G1.3, but it did not do so," the Sixth Circuit said. "Bowman thus has a strong